UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:23-cv-00423-WO-JLW

TIMIA CHAPLIN and PAULINO
CASTELLANOS, on behalf of
themselves and all others
similarly situated,

        Plaintiffs,

    v.

WILLIE R. ROWE, in his
capacity as Sheriff of Wake
County; JOHN DOE SURETY, as
surety for the Sheriff of
Wake County, BRIAN ESTES, in
his official capacity as the
Sheriff of Lee County; JOHN
DOE SURETY, as surety for
the Sheriff of Lee County,
TYLER TECHNOLOGIES, INC.;
and DOES 1 THROUGH 20,
INCLUSIVE,

        Defendants.

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
TYLER TECHNOLOGIES, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................... 1

BACKGROUND ......................................... 3

    A.   North Carolina transitioned its court recordkeeping systems from a paper system to an electronic system ............. 3

    B.   Two plaintiffs allege that they were unlawfully arrested or detained ........... 5

STATEMENT OF THE QUESTIONS PRESENTED .............. 7

ARGUMENT .......................................... 7

I.   Plaintiffs' Negligence Claim Fails As A Matter Of Law.................................. 8

    A.   Tyler does not owe a duty to Plaintiffs .... 9

    B.   The Complaint does not plausibly allege a causal nexus between Tyler's conduct and Plaintiffs' alleged injuries .......... 13

II.  Plaintiffs' Class Claims Against Tyler Fail As A Matter of Law.................... 20

    A.   This motion seeks dismissal of the class allegations related to Tyler ............. 21

    B.   The proposed class against Tyler fails under both Rule 23(a) and Rule 23(b) ...... 22

        1.   Plaintiffs cannot meet the Rule 23(a) requirements of commonality or typicality ......................... 23

        2.   Plaintiffs cannot meet the more stringent Rule 23(b)(3) requirements ........................... 28

CONCLUSION ........................................ 31

CERTIFICATE OF COMPLIANCE ........................ 33

CERTIFICATE OF SERVICE ........................... 34

-i-

## INTRODUCTION

Plaintiffs' Complaint makes broad, conclusory statements about the North Carolina eCourts system and Defendants. Pointing to only two cases out of tens of thousands that were migrated over to the electronic filing system, Plaintiffs claim systemic problems with a software implementation that rise to the level of constitutional violations, legal negligence, and class actions. But Plaintiffs have no plausible factual allegations that would support a claim for relief against Defendant Tyler Technologies, Inc. ("Tyler"), either as individuals or as representatives of a class.

The only claim against Tyler is a claim for negligence. Plaintiffs cannot, however, plead the required elements of duty or causation. As a matter of law, Tyler has no legal duty to protect Plaintiffs from their alleged injuries because there is no special relationship between Tyler and Plaintiffs. Plaintiffs' own Complaint attributes their alleged injuries to third parties that arrested or detained Plaintiffs. And relatedly, even if a duty did exist, Plaintiffs cannot establish proximate cause as a matter of

1

law because of multiple, intervening factors related to the alleged arrests or detentions that have nothing to do with Tyler.

Problems with the individual claims aside, Plaintiffs' class allegations as to Tyler fail as a matter of law and should be dismissed. Plaintiffs did not move for class certification by the deadline set by this Court's rules. Even if they had, Plaintiffs cannot satisfy the Rule 23 requirements of commonality, typicality and predominance because of the individualized inquiries that would be necessary to determine each class member's entitlement to recovery. Perhaps most importantly, the Court must determine whether each plaintiff was in fact improperly arrested or detained. Without this, that plaintiff has no alleged injury and is not part of the class. But this will be an individualized inquiry for each plaintiff and cannot be determined on a class-wide basis.

Armed with "nothing more than conclusions," Plaintiffs cannot "unlock the doors of discovery" for their individual or class claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). This case should be dismissed.

2

## BACKGROUND

The Complaint alleges that North Carolina was late in adopting electronic filing and recordkeeping for its court system. Now that the State has done so, two Plaintiffs try to bring a class action regarding the implementation of the eCourts system.

### A. North Carolina transitioned its court recordkeeping systems from a paper system to an electronic system.

Prior to modernizing its court system, North Carolina experienced recordkeeping difficulties with its paper system. Compl. ¶ 30. In an effort to improve, the North Carolina Supreme Court convened a Commission to recommend technological updates. Compl. ¶¶ 32-33.

After years of work and review, and bids by multiple vendors, a selection committee chose Tyler to help develop an electronic system that might remedy the recordkeeping deficiencies in the North Carolina court system. Compl. ¶¶ 41, 44. Under the contract (as amended) that Tyler ultimately signed with the North Carolina Administrative Office of the Courts ("NCAOC"), Tyler would license an "eCourts" software package that included a case-management

3

system ("Odyssey"), and develop an online repository of warrants ("eWarrants"). Compl. ¶¶ 46-47.

Tyler's role is limited to that of a software vendor; Tyler licenses its proprietary software, implements that software so that its clients can operate it in live production, and provides maintenance and support to triage software performance issues and answer end-user questions. Compl. ¶¶ 46-47; Compl., Doc. No. 1-2 at 6-15, 19-20. Tyler is not responsible for the day-to-day use of the software, nor does it generate or own the data entered into, stored in, or processed through the software. Compl. ¶¶ 46-47; Compl., Doc. No. 1-2 at 6-15, 19-20. Those responsibilities are the purview of its client's end-users, such as the law enforcement and court officials who put records into the system and update those records with real-time information. Compl. ¶¶ 11-24, 46-47; Compl., Doc. No. 1-3 at 3-4 (noting training given to law enforcement officers, magistrates, clerks, and other court staff).

During the Odyssey implementation phase in the four pilot counties, Tyler and the NCAOC worked together to

4

resolve software issues while the pilot counties transitioned around 50,000 paper-based records into the electronic case management system. Compl. ¶¶ 55-56; Compl., Doc. No. 1-3 at 4-5. Out of tens of thousands of cases, the Complaint identifies two people who allegedly experienced arrest or detention issues.

**B. Two plaintiffs allege that they were unlawfully arrested or detained.**

On May 23, 2023, Plaintiffs filed a class action alleging that North Carolina's "transition[] [of] its courts system from paper to digital" has resulted in "hundreds of people" being "unlawfully detained." Compl. ¶ 1. Despite this broad assertion, the Complaint identifies only two individuals. Compl. ¶¶ 26-27.

The Lee County Sheriff's Office arrested Plaintiff Paulino Castellanos for rape of a child and related sex offenses on February 10, 2023. Compl. ¶ 77. At the time of his arrest, Lee County was not yet using Tyler's Odyssey system for official records. Compl. ¶ 79. According to Plaintiffs' own allegations, court staff lost the paper record of Mr. Castellanos's case. Compl. ¶¶ 79-80. On February 13, 2023, once Lee County began using Odyssey for

5

official records, a formal indictment was issued and Odyssey generated a "new case number for Mr. Castellanos," allowing him to move for a bond reduction. Compl. ¶¶ 81-83. The court promptly granted Mr. Castellanos' motion, but he was not released because an electronic monitoring device was not available, which is not part of the Tyler eCourt's system. Compl. ¶¶ 84-85.

Plaintiff Timia Chaplin was arrested on March 4, 2023 after failing to appear in court to answer criminal charges. Compl. ¶¶ 67-69. After she appeared for a rescheduled court date, the "charges against her were dismissed," and Odyssey properly designated her case as resolved. Compl. ¶ 70. Plaintiffs allege, however, that Ms. Chaplin was later rearrested on April 9, 2023, on the same failure to appear charge, because an arrest warrant for her remained outstanding. Compl. ¶ 72.

Plaintiffs filed their Complaint on May 23, 2023. Plaintiffs did not serve Tyler until August 16, 2023.

Under the local rules, Plaintiffs' motion for class certification was due on August 21, 2023. LR 23.1(b).

Plaintiffs did not move for class certification or seek an extension of that deadline.

## STATEMENT OF THE QUESTIONS PRESENTED

1. Whether Plaintiffs' negligence claim against Tyler fails to state a claim for relief.

2. Whether Plaintiffs' class claims against Tyler fail to state a claim for relief.

## ARGUMENT

A complaint cannot survive a Rule 12(b)(6) motion to dismiss if it does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Indeed, "[i]t is now well established that mere conclusory and speculative allegations are not sufficient to withstand a motion to dismiss." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d

7

342, 350 (4th Cir. 2013); *Nomani v. Qarni*, No. 1:22-CV-1065-MSN-WEF, 2023 WL 4203438, at *2 (E.D. Va. June 27, 2023) (explaining that "bald accusations" or "mere speculation" are insufficient to survive a motion to dismiss).

Plaintiffs' threadbare recital of the elements of a negligence claim lacks the factual allegations necessary to sustain a claim under North Carolina law against Tyler. Their class claims fare no better.  This Court should dismiss the Complaint with prejudice.

## I.  Plaintiffs' Negligence Claim Fails As A Matter Of Law.

Plaintiffs assert only one claim against Tyler, for negligence.  Compl. ¶¶ 104-08.  The negligence claim fails as a matter of law.

Under North Carolina law, "[t]he essential elements of any negligence claim are the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *Blackwell v. Hatley*, 202 N.C. App. 208, 212, 688 S.E.2d 742, 746 (2010).  To survive a motion to

8

dismiss, a plaintiff must allege sufficient factual allegations to establish each element of a negligence claim. *Derwort v. Polk Cnty.*, 129 N.C. App. 789, 791, 501 S.E.2d 379, 381 (1998). Here, the Complaint fails on at least two different required elements: duty and causation. Plaintiffs must plead both to state a claim, and they cannot establish either as a matter of law.

**A.  Tyler does not owe a duty to Plaintiffs.**

If a defendant owes no duty to the plaintiff, then there can be no breach, and "there can be no liability for negligence." *Derwort*, 129 N.C. App. at 791, 501 S.E.2d at 381. Plaintiffs' alleged injury results from their arrest and detention. Compl. ¶¶ 71, 86. It was state actors — not Tyler — that arrested and detained Plaintiffs. Compl. ¶¶ 71, 85.

A defendant has no duty to protect a plaintiff against harm from third persons unless the plaintiff pleads a recognized exception showing a special relationship between the parties. *King v. Durham Cnty. Mental Health Developmental Disabilities & Substance Abuse Auth.*, 113 N.C. App. 341, 345, 439 S.E.2d 771, 774 (1994). In North

9

Carolina, these special relationships are limited to a few exceptions, such as parent-child or landowner-licensee. *Id.* at 346, 439 S.E.2d at 774. Otherwise, there is no duty related to the actions of third parties. *Id.* at 345-46, 439 S.E.2d at 774.

Plaintiffs have not pleaded a legally recognized duty of care, nor can they. Plaintiffs broadly allege that Tyler owed a duty to Plaintiffs "to ensure that its eCourt system . . . would operate properly," and suggest that "[t]hese duties arose when [Tyler] undertook to provide services in its contract with the NCAOC." Compl. ¶¶ 105-06. Tyler is unaware of any cases recognizing a special-relationship duty under similar circumstances.

Courts cannot recognize new special-relationship exceptions based on a defendant's alleged failure to prevent an alleged harm caused by a third party. *See Stein v. Asheville City Bd. Of Educ.*, 360 N.C. 321, 330, 626 S.E.2d 263, 269 (2006); *Stone St. Partners, LLC v. Williamson*, No. 17 CVS 15265, 2018 WL 3619518, at *6 (N.C. Super. July 26, 2018). North Carolina "recognize[s] that the special relationship exception is in derogation of the

10

general principle that '[t]here is no duty so to control the conduct of a third person so as to prevent him from causing'" harm to another. *Stone St.*, 2018 WL 3619518, at *7 (quoting Restatement (Second) of Torts § 315) (surveying North Carolina's reported decisions on the exception).

Tyler is a software vendor, not a state or local authority with the power to arrest or detain, and there is no allegation that it exercised any such authority here. Plaintiffs' claim, then, is that Tyler had a legal duty to protect Plaintiffs against harm from third persons who have the power to arrest or detain them. Compl. ¶ 105. But because there is no special-relationship duty owed by Tyler to protect Plaintiffs from the actions of third parties, Plaintiffs' negligence claim fails as a matter of law.

Plaintiffs' own Complaint ties their alleged injuries directly to third-party actions.

For Plaintiff Castellanos, Plaintiffs allege that Defendant Sheriff Estes and his divisions are "responsible for the care and custody of" the detention facilities, and "responsible for ensuring that court papers are properly issued and that court cases are processed efficiently."

11

*See, e.g.*, Compl. ¶¶ 20-21. Plaintiffs allege that Mr. Castellanos' detention was prolonged because the state defendants "lost" his paper file before Odyssey was even being used for official records. Compl. ¶ 83. Plaintiffs also allege that he was not timely released because state actors did not have an "electronic monitoring device" available, which is hardware that is not part of the eCourts software system. Compl. ¶ 85.

Ms. Chaplin's alleged injury was the result of her arrest, which Plaintiffs attribute to Defendant Sheriff Rowe and the division he supervises, as well as other unnamed government actors. Compl. ¶¶ 14-15, 70-72. As Defendant Rowe notes in his brief in support of his motion to dismiss, the Complaint does not allege what agency issued the warrant, what agency arrested Ms. Chaplin, or what agency was responsible for marking Ms. Chaplin's warrant as "resolved" in the eWarrants system. Doc. No. 16 at 5; *see also* Compl. ¶¶ 69-72.

Tyler is not responsible for the actions of any of these third parties. And none of this creates a legal duty

that Tyler owes to the Plaintiffs.  This failure alone is sufficient to dismiss the Complaint as to Tyler.

**B.  The Complaint does not plausibly allege a causal nexus between Tyler's conduct and Plaintiffs' alleged injuries.**

Plaintiffs' Complaint also fails for the independent reason that Plaintiffs cannot establish the required element of causation.

To state a negligence claim under North Carolina law, the defendant's act must be the proximate cause of the plaintiff's alleged injury.  *Lamb v. Styles*, 263 N.C. App. 633, 645, 824 S.E.2d 170, 179 (2019); *Williamson v. Liptzin*, 141 N.C. App. 1, 10, 539 S.E.2d 313, 319 (2000); *Lane v. E. Carolina Drivers Ass'n*, 253 N.C. 764, 769, 117 S.E.2d 737, 741 (1961).  "Proximate cause is that cause which produces the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all of the facts then existing."  *Kanoy v. Hinshaw*, 273 N.C. 418, 426, 160 S.E.2d 296, 302 (1968); *Williamson*, 141 N.C. App. at 10, 539 S.E.2d at 319.  A cause cannot be considered the proximate

13

cause if there are intervening causes or the relationship between cause and effect is too attenuated. *Williamson*, 141 N.C. App. at 10-11, 539 S.E.2d at 319-20.

Dismissal is appropriate when the plaintiff fails to provide facially plausible allegations showing that the defendant's conduct proximately caused their damages. *Lamb*, 263 N.C. App. at 645, 824 S.E.2d at 179; *see also* *Stone St.*, 2018 WL 3619518, at *7 (granting motion to dismiss where connection between alleged harm and defendants' conduct was "speculative and conjectural" and "built upon a chain of attenuated inferences").

The allegations in the Complaint point to the conduct of many actors — but not Tyler. To begin with, Plaintiffs were arrested and detained because of the criminal charges against them. The Complaint contains no allegations challenging the validity of these criminal charges. State actors arrested and detained Plaintiffs. And the responsibility for entering pertinent information into the eCourts system was the responsibility of the end-users who operate the software day-to-day. Tyler's responsibilities as the software vendor were contained in the four corners

14

of their contract for licensing, implementing, and supporting the technology. *See* Compl. ¶¶ 46-47; Compl., Doc. No. 1-2.

The Complaint contains no well-pleaded allegation of any action by Tyler that caused Plaintiffs' harm. Indeed, as explained above, Plaintiffs allege that Mr. Castellanos' detention was started because the state defendants "lost" his paper file before Odyssey was even being used for official records. Compl. ¶ 83. Plaintiffs also admit that Odyssey properly generated a case number for him when the formal indictment issued. Compl. ¶ 82. The transition to Odyssey thus allowed him to move for a bond reduction in the first place. Compl. ¶ 83. Ultimately, Mr. Castellanos was not released because state actors did not have an "electronic monitoring device" available. Compl. ¶ 85. Tyler and its software have nothing to do with the availability of a third-party hardware product like an electronic monitoring device. Tyler had no control over Mr. Castellanos' arrest, detention, his paper file, or the availability of an electronic monitoring device.

15

Likewise, Ms. Chaplin was arrested by state actors that Tyler did not control. Compl. ¶ 72. Although the Complaint suggests that "Odyssey did not communicate" that her case had been resolved to eWarrants, Compl. ¶ 72, the Complaint is devoid of any allegation that a defect in the eCourts system was identified and not cured by Tyler, or any allegation concerning the reason for Ms. Chaplin's rearrest. Any such allegations would be nothing more than rank speculation that is insufficient as a matter of law. *Painter's Mill Grille*, 716 F.3d at 350; *Nomani*, 2023 WL 4203438, at *2. Indeed, Plaintiffs elsewhere acknowledge that Wake County's Judicial Services Division is "responsible for all criminal process including" warrants and processing any court documents related to "warrant services." Compl. ¶ 15.

At the end of the day, Plaintiffs were arrested and detained because of the criminal charges against them and the actions of third parties in response to those criminal charges. There are no well-pleaded allegations that would establish a causal nexus between Tyler and the injuries alleged by Plaintiffs.

Unable to manufacture facially plausible allegations showing proximate cause in their own case, Plaintiffs try misdirection — pointing to other states where (according to Plaintiffs) there were issues during the transition to a Tyler system. *See* Compl. ¶ 63. But even if Plaintiffs had accurately described the implementations in these other states (and they have not), those examples cannot establish proximate cause for *these* plaintiffs in North Carolina.

Beyond that dispositive defect, these allegations about other software implementations are irrelevant for other reasons. First, none of Plaintiffs' examples of other "harms" link Tyler's software to the alleged errors. Indeed, many of Plaintiffs' own examples decouple Tyler's actions from any alleged errors.

For example, Plaintiffs fault a sheriff in Indiana for acquiring "a jail-management software that was incompatible with Odyssey." Compl. ¶ 63g. But the problems there were not with Tyler's product, and Tyler was not a defendant in that case or settlement. *See* Complaint, *Driver et al. v. Marion Cnty. Sheriff et al.*, No. 1-14-cv-2076, ECF No. 38

17

(S.D. Ind. May 13, 2015) ("Indiana Compl.") ¶¶ 100, 102.[1]
In fact, the complaint in that case admitted that the
surrounding Indiana counties that used Tyler's Odyssey
software did not experience problems.  Indiana Compl.
¶ 107.  And that sheriff also allegedly "enacted an
unreasonable policy of not abiding by court orders for the
release of jail inmates when such orders appear on the
Odyssey system until after three separate sheriff
department employees manually read the court's entire case
minutes for the inmates' criminal case in order to 'make
sure' the court really wants the inmate released."  Indiana
Compl. ¶ 108.  An Indiana sheriff, deploying a different
software and an individualized spot-check policy, has
nothing to do with Tyler's actions in North Carolina.

Likewise, a 2021 example from Texas relies on an
article in which county officials publicly stated that
problems with the software transition were *not* due to Tyler
software issues.  Camelia Juarez, *Indigent clients held in
jail without charges during Lubbock County software*

_____

[1]    A copy of the Indiana Complaint is submitted
contemporaneously with this brief as Exhibit A.

*transition,* KCBD-11 (Nov. 11, 2021), bit.ly/44leWxW; Compl. ¶ 63f.  Similarly, for the 2016 Alameda County example, the article cited explained that no one could identify "the source of the errors" and acknowledged that warrant errors are often caused by breakdowns in communication between the "court clerk" and "the sheriff's clerk."  *See* Elizabeth Joh, *Wrongful arrest by software,* Slate (Dec. 13, 2016), bit.ly/40vAJjn; Compl. ¶ 63d.

Plaintiffs' other examples similarly deal with different state actors implementing different systems, sometimes more than ten years ago.  *See* Compl. ¶ 63.  Any alleged problems with transitions in California, Texas, and Tennessee have nothing to do with software tailored to North Carolina, deployed in North Carolina and implemented by North Carolina officials.  Compl. ¶¶ 47–48; Compl., Doc. No. 1-2; Compl., Doc. No. 1-3.

In the end, the Complaint's misplaced reliance on these irrelevant allegations cannot remedy the fact that the Complaint lacks any facially plausible allegations linking Plaintiffs' alleged harm to Tyler, as opposed to Plaintiffs' own conduct or the actions of third parties.

19

Plaintiffs' negligence claim against Tyler should be dismissed with prejudice.

## II. Plaintiffs' Class Claims Against Tyler Fail As A Matter of Law.

Plaintiffs' failure to state a negligence claim means the entire Complaint should be dismissed. But, at a minimum, the class allegations against Tyler should be dismissed as a matter of law.

Under the local rules, plaintiffs filing a class action must move for class-action determination "[w]ithin 90 days after the filing of a complaint in a class action." LR 23.1(b). Plaintiffs filed the Complaint May 23, 2023. That 90-day deadline to move for class certification passed without request for an extension. The class claims can be dismissed for this reason alone.

Even had Plaintiffs complied with the Local Rules, the class claims would still fail as a matter of law. "The plaintiffs who propose to represent the class bear the burden of demonstrating that the requirements of Rule 23 are satisfied." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); LR 23.1(d). Under Federal Rules of Civil Procedure 12(b)(6) and 23, dismissal of class

20

claims is proper at the pleadings stage "when it is clear from the face of the complaint that . . . the plaintiff has failed to properly allege facts sufficient to make out a class or could establish no facts to make out a class." *Layani v. Ouazana*, No. CV ELH-20-420, 2021 WL 805405, at *39 (D. Md. Mar. 3, 2021) (citation omitted) (cleaned up). "In other words, in such circumstances a court applies the familiar standard embodied in Rule 12(b)(6) to determine whether the pleadings plausibly allege a class." *Id.*; *Williams v. Potomac Fam. Dining Grp. Operating Co.*, No. GJH-19-1780, 2020 WL 4207589, at *12 (D. Md. July 22, 2020).

### A. This motion seeks dismissal of the class allegations related to Tyler.

The Complaint seeks two different types of classes – a Rule 23(b)(3) class against Tyler and the Sheriff Defendants seeking money damages, and a Rule 23(b)(2) class against the Sheriff Defendants seeking injunctive or declaratory relief. Compl. ¶¶ 94, 95. The only claims for declaratory or injunctive relief in the Complaint are made against the Sheriff Defendants, related to the § 1983 constitutional claims. Compl. ¶¶ 97-103 (First Claim for

21

Relief), ¶¶ 109-113 (Third Claim for Relief), ¶¶ 114-120 (Fourth Claim for Relief).  The only claim against Tyler is a negligence claim for money damages.  Compl. ¶¶ 104-08 (Second Claim for Relief).

Although the proposed class against the Sheriff Defendants may have similar problems, this motion relates to the proposed Rule 23(b)(3) class against Tyler.  As such, the allegations against the Sheriff Defendants — including the allegations relating to an alleged constitutional violation, *see, e.g.*, Compl. ¶¶ 91(a)-(d), 97-103, 109-113, 114-120 — should not be considered in deciding whether class claims are properly pleaded as to Tyler.

### B. The proposed class against Tyler fails under both Rule 23(a) and Rule 23(b).

Assessing whether a class action may proceed is a two-step analysis.  *Layani*, 2021 WL 805405, at *39.  First, the court assesses whether the putative class could meet the elements of Rule 23(a), including commonality and typicality.  *Id.*  These are necessary, but not sufficient, conditions to maintain a class.  Second, "the court must then determine whether the putative class falls within one

22

of the categories identified in Rule 23(b)." *Id.* These rigorous categories assess whether a class action is superior to other methods of adjudication and case management.

Both steps must be met before a class action can proceed. Plaintiffs cannot successfully plead either as a matter of law.

### 1. Plaintiffs cannot meet the Rule 23(a) requirements of commonality or typicality.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 407 (D. Md. 2014). Bringing the same cause of action or alleging a violation of the same provision of law is not enough. *Dukes*, 564 U.S. at 350. The claims must share common questions, capable of class-wide resolution, and those "common questions must be dispositive and over-shadow other issues." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001); *Dukes*, 564 U.S. at 350.

23

Similarly, but in addition, Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement goes to the heart of a representative parties' ability to represent a class," and those parties' interest in "prosecuting [their] own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). Typicality requires that the class claims arise "from the same event or practice or course of conduct" and that the claims "are based on the same legal theory." *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 268 (D. Md. 2004). That is, "a class representative must . . . possess the same interest and suffer the same injury as the class members." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (citation omitted).

The only common questions to Tyler that Plaintiffs allege are whether Tyler breached a cognizable duty or proximately caused damages to "Plaintiffs and the proposed Class." Compl. ¶¶ 91(e)-(f). Plaintiffs fail to allege

24

facially plausible factual allegations on either question. *See supra* Part I. But even if they could manufacture a duty or causal nexus, a negligence claim requires many individualized inquiries that examine "all of the circumstances" of each situation, *Stein*, 360 N.C. at 331, 626 S.E.2d at 269, and are not appropriate for class treatment.

These circumstances will vary widely for each hypothetical class member. For each, the Court will need to consider, among other things and by way of example:

- whether the individual was improperly arrested or detained;

- the circumstances of that arrest or detention;

- which state agency or agencies were involved in that arrest or detention;

- whether information in the eCourts system led to that improper arrest or detention;

- and, if so,

  o what information was entered into the eCourts system,

  o by whom,

25

o and whether there were any errors in that data entry.

Perhaps most importantly, the Court will need to evaluate whether such arrest or detention was justified. If it was, then the hypothetical class member has suffered no injury at all and could not be included in the class or any class award. These are all individualized inquiries that are not subject to class treatment. *See Kirkman v. North Carolina R.R. Co.*, 220 F.R.D. 49, 52-53 (M.D.N.C. 2004) (holding that a proposed class did not meet the commonality requirement because individualized trials would be needed to determine whether a class member suffered an injury).

Likewise, as Plaintiffs' own allegations illustrate, their claims lack typicality because each arrest or detention will turn on a unique set of facts and will involve distinct legal inquiries. *See id.* There is no single event or unitary course of conduct that unifies claims of all hypothetical class members.

Indeed, there is no typicality even between the two named Plaintiffs. Plaintiff Chaplin claims to have been wrongly arrested. Compl. ¶ 71. Plaintiff Castellanos does

not challenge his arrest but claims to have been detained improperly because of individualized issues that delayed his release (and were not even related to the eCourts system). Compl. ¶¶ 83-86. Even assuming injury, calculating damages for an arrest versus a two-week stay in jail would require different considerations and would not be amenable to a one-size-fits-all class award.

This will be true for all hypothetical class members as well. Any damages would vary based on whether they were arrested or detained, how long they were detained, and what damages (if any) they sustained as a result of the arrest or detention. In such a circumstance, Plaintiffs cannot satisfy the typicality requirement. *See Kirkman*, 220 F.R.D. at 52-53 (holding that a proposed class did not meet the typicality requirement because the individualized issues would make "it difficult for any individual plaintiff to establish that his claims are typical of any other plaintiff's claims").

These Plaintiffs have different claims, interests, and injuries. Thus, even comparing their two situations, their claims and circumstances lack commonality and typicality.

27

### 2. Plaintiffs cannot meet the more stringent Rule 23(b)(3) requirements.

Even if Plaintiffs were to satisfy Rule 23(a) (and they do not), they cannot satisfy the more stringent Rule 23(b)(3) requirements as a matter of law.

A Rule 23(b)(3) class is appropriate only if common questions "predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3)'s predominance requirement is 'far more demanding' than Rule 23(a)'s commonality requirement and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Gariety*, 368 F.3d at 362 (citation omitted). "That inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

"[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1778 (3d

ed.) (collecting cases).  That is true here, as the claim against Tyler is one for negligence, which requires an individualized inquiry of each potential class member's unique circumstances.  In the Fourth Circuit, common issues cannot predominate when issues like causation and damages require individualized inquiries.  *See Thorn v. Jefferson Pilot Life Ins. Co.*, 445 F.3d 311, 327-29 (4th Cir. 2006); *Parks Auto. Grp., Inc. v. Gen. Motors Corp.*, 237 F.R.D. 567, 571-72 (D.S.C. 2006); *Abbott v. Am. Elec. Power, Inc.*, No. 2:12-CV-00243, 2012 WL 3260406, at *4 (S.D.W. Va. Aug. 8, 2012).

Here, the class claims cannot satisfy predominance when they already fail to exhibit commonality or typicality. *See supra* Part II.B.1.  Managing the class action would devolve into a series of mini-trials to determine, among other things, whether a hypothetical class member's arrest or detention was justified under the circumstances, or whether the arrest or detention was in any way related to the eCourts system.  Absent such determinations — which must be made on an individualized basis — there is no injury, and that plaintiff has no legal claim.

29

Additional individualized inquiries would be required to review each potential class member's arrest or detention and determine what defendants (or unnamed court officials) were responsible for any improper arrest or delayed release. Furthermore, each detainee would need to be evaluated case-by-case to determine whether they would have met release conditions like having the means and ability to post bond. The Court also would need to assess the length of each detention (if any) to determine what delay, if any, occurred because of an error and whether that delay was part of the normal detention process (e.g., short holds because of the time of day the individual was booked).

Even if those mini-trials could establish liability for each class member, the damages sustained by each member would require even more individualized inquiries. Commonalities cannot predominate when breach, causation, damages, and liability apportionment all must be determined on an individualized basis.

Rather than burden unlike cases with class discovery and other delays, courts can adjudicate any suits individually. To the extent like plaintiffs ever arise,

joinder of those claims would be more appropriate than certifying an indefinite wide-ranging class that could sweep in anyone detained after February 13, 2023. *Cf.* Compl. ¶ 89.

Plaintiffs cannot satisfy the Rule 23(b)(3) requirements as a matter of law, and their class claims against Tyler should be dismissed.

## **CONCLUSION**

For all these reasons, Tyler requests that Plaintiffs' Complaint be dismissed as to Tyler with prejudice.

This 20th day of September, 2023.

                                   s/ Gregory L. Skidmore
                                   Gregory L. Skidmore
N.C. Bar No. 35571
gskidmore@robinsonbradshaw.com

H. Hunter Bruton
N.C. Bar No. 50601
hbruton@robinsonbradshaw.com

**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

*Attorneys for Defendant Tyler Technologies, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief contains fewer than 6,250 words (not counting the portions of the brief excluded by Local Rule 7.3(d)(1) as reported by the word-processing software.

This 20th day of September, 2023.

s/ Gregory L. Skidmore
Gregory L. Skidmore

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed using the Court's e-filing system, which will automatically and electronically notify the following CM/ECF-registered counsel of record:

Gagan Gupta
ggupta@tinfulton.com

Abraham Rubert-Schewel
schewel@tinfulton.com

Zachary William Ezor
zezor@tinfulton.com
Tin Fulton Walker & Owen PLLC
115 E. Main Street
Durham, NC 27701
Telephone: (919) 307-8400

*Attorneys for Plaintiffs Timia Chaplin
And Paulino Castellanos, on behalf
Of themselves and all others similarly
Situated*

Robert Lane
robert.lane@wake.gov
Wake County Sheriff's Office
330 S. Salisbury Street
Raleigh, NC 27602
Telephone: (919) 856-5380

Roger Askew
roger.askew@wakegov.com
Senior Deputy County Attorney
Wake County Attorney's Office

34

P.O. Box 500
Raleigh, NC 27602
Telephone: (919) 856-5500

*Attorneys for Defendant Wake County Sheriff
Willie Rowe*


James R. Morgan Jr.
Jim.Morgan@wbd-us.com
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone:  (336)721-3710

*Attorney for Defendant Brian Estes*



This 20th day of September, 2023.


s/ Gregory L. Skidmore
Gregory L. Skidmore