IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:23-cv-00423-WO-JLW

| | |
|---|---|
| TIMIA CHAPLIN; KEVIN SPRUILL; ROTESHA MCNEIL; QIANA ROBERTSON; YOUSEF JALLAL; MESSIEJAH BRADLEY; PAULINO CASTELLANOS; ROBERT LEWIS; and ALLEN SIFFORD, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> WILLIE R. ROWE, in his official capacity as the Sheriff of Wake County; BRIAN ESTES, in his official capacity as the Sheriff of Lee County; THE OHIO CASUALTY INSURANCE COMPANY, as surety for the Sheriff of Wake County and as surety for the Sheriff of Lee County; TYLER TECHNOLOGIES, INC.; NORTH CAROLINA ADMINISTRATIVE OFFICE OF THE COURTS; RYAN BOYCE, in his official capacity as the Executive Director of the North Carolina Administrative Office of the Courts; BRAD FOWLER, in his official capacity as the eCourts Executive Sponsor and Chief Business Officer of the North Carolina Administrative Office of the Courts; BLAIR WILLIAMS, in his official capacity as the Wake County Clerk of Superior Court; SUSIE K. THOMAS, in her official capacity as the Lee County Clerk of Superior Court; JOHN DOE SURETY, as the surety for the Wake County Clerk of Superior Court and the Lee County Clerk of Superior Court; and DOES 1 THROUGH 20, INCLUSIVE, <br><br> *Defendants*. | **MEMORANDUM OF LAW** <br> IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION UNDER LOCAL RULE 23.1 |

Plaintiffs respectfully file this memorandum in support of their motion for class certification under Local Rule 23.1(b).

## INTRODUCTION

The current deadline to move for class certification under Local Rule 23.1(b) is December 15, 2023 (today). On November 29, 2023, Plaintiffs filed a consent motion to extend the time to move for certification. (ECF No. 45 (the "Consent Motion")) Given this Court's stated preference to "address the class question after any motion to dismiss is resolved," the Consent Motion requests that the time to move for certification be set by the court in a scheduling order after the resolution of all motions to dismiss. (ECF Nos. 36 at 2; 45 at 3) All Defendants whose counsel had made an appearance in this case by that point consented to that proposal.[1] (*Id.* at 2)

This Court has yet to rule on the Consent Motion. Therefore, in order to comply with the current deadline and the Local Rules, Plaintiffs submit this class-certification motion. Should this Court later grant the Consent Motion or, in the alternative, exercise its authority under Local Rule 23.1(b) to defer the class question, Plaintiffs respectfully request the opportunity to file a revised certification motion at a later date.[2]

That said, the allegations in the First Amended Complaint show that the proposed classes currently satisfy the criteria for certification—and will moreso if pre-certification discovery is allowed. *See* Fed. R. Civ. P. 23(a), (b). Since the Supreme Court's landmark decision in *Wal-*

---

[1] Since that time, Defendant The Ohio Casualty Insurance Company as surety has made an appearance and filed an answer to the operative complaint. (ECF No. 51)

[2] Local Rule 23.1(b) provides that, in ruling on a certification motion, the Court "may order postponement of the determination pending discovery or such other preliminary procedures as appear to be appropriate and necessary in the circumstances." LR 23.1(b).

2

Case 1:23-cv-00423-WO-JLW   Document 53-1   Filed 12/15/23   Page 2 of 12

*Mart Stores, Inc. v. Dukes*, 64 U.S. 338 (2011), precertification discovery has become the norm. *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004); *Cty. of Dorchester, S.C. v. AT&T Corp.*, 407 F. Supp. 3d 561, 568 (D.S.C. 2019) (explaining that plaintiffs are "generally entitled to pre-certification discovery" (cleaned up)).[3] And in this case, there is every indication that the evidence brought forth in pre-certification discovery will confirm the propriety of class certification.

As described at length in the complaint, this case arises out of North Carolina's adoption and implementation of "eCourts," a package of software applications developed by Defendant Tyler Technologies. (ECF No. 30 ¶¶ 41-89) The Seventh Circuit recently addressed class certification in a similar case, *Driver v. Marion County*, where the named plaintiffs sought to certify a class of "all individuals who . . . were victims of the computer issues spawned by" the adoption of new software at a county jail. 859 F.3d 489, 494–95 (7th Cir. 2020). In reversing the district court's denial of class certification, the Seventh Circuit recognized that evidence adduced during discovery—specifically "evidence of a dramatic increase in detention times in correlation with the implementation of the computer system"—bolstered the case for certification under Federal Rule 23. *Id.* at 494. As alleged in the operative complaint, the same will be true here.

Again, Plaintiffs submit that the most prudent course here is to either (a) grant the Consent Motion and allow for a later, revised certification motion or (b) formally postpone a decision on certification pursuant to Local Rule 23.1(b). Moreover, while Plaintiffs maintain

---

[3] *See also* 6A Fed. Proc., L. Ed. § 12:268 ("Because the propriety of a class action often cannot be determined without discovery, the better and more advisable practice for a district court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable.").

3

that this Court could certify the proposed classes on the complaint alone, pre-certification discovery would likely aid the Court in conducting the "rigorous analysis" required by Federal Rule 23. *See Gariety*, 368 F.3d at 365.

## FACTUAL BACKGROUND

This lawsuit arises out of Defendants' adoption and implementation of "eCourts," a package of new software applications designed to modernize North Carolina's state court system from paper to digital. (ECF No. 30 ¶¶ 1, 59 (First Amended Complaint)) The purchase and roll out of eCourts is governed by a $100-million contract signed by Defendants North Carolina Administrative Office of the Courts ("NCAOC") and Tyler Technologies, Inc. The contract includes an agreement to develop "eWarrants," an online warrant repository bespoke to North Carolina, and to implement a case management system known as "Odyssey" that would allow courts to electronically process and manage all case types. (*Id.* ¶ 60)

As detailed in the operative complaint, while the adoption of eCourts represents an important step in moving the State into the modern era, the system has resulted in hundreds of people being unlawfully detained. (*Id.* ¶¶ 1-3, 81; *see also id.* ¶¶ 90-176 (detailing unlawful detentions of the Plaintiffs named herein)) During the initial rollout, state officials logged and reported more than 573 software application defects. (*Id.* ¶ 71) These and similar defects caused people to be arrested multiple times on the same warrant—even after their charges have been dismissed by a judge. (*Id.* ¶¶ 1-3) Others have spent days or weeks longer than necessary in jail. (*Id.* ¶¶ 1-3) Defendants were plainly aware of these risks. (*Id.* ¶¶ 82-86) But they forged ahead without any failsafe or alternative in place to prevent these violations. (*Id.* ¶¶ 4-5)

Accordingly, Plaintiffs filed suit, bringing claims against Defendants for negligence (*Id.* ¶¶ 185-201); for violations of 42 U.S.C. § 1983 and *Monell* (*Id.* ¶¶ 202-18); and for injunctive

relief requiring Defendants to implement and adopt failsafe procedures to ensure future legal violations are prevented (*Id.* ¶¶ 242-51). Plaintiffs additionally bring claims against the official surety bonds held by the Sheriff Defendants pursuant to N.C.G.S. §§ 58-76-5. (*Id.* ¶¶ 219-41).

## ARGUMENT

I. **This Court should certify the proposed classes.**

Pursuant to Federal Rules 23(a), (b)(2), and (b)(3), Plaintiffs seek to certify three classes as follows:

> **The statewide, injunctive-relief class**: All individuals in the state of North Carolina who, beginning on and including July 1, 2022, were unlawfully arrested, detained, or overdetained due to Defendants' adoption and implementation of eCourts, including eWarrants. All named Plaintiffs are class representatives for this class.
>
> **The wrongful-arrest or wrongful-detention class:** All members of the statewide class who were unlawfully arrested or detained due to Defendants' adoption and implementation of eCourts, including eWarrants. Class representatives for this class include Timia Chaplin, Kevin Spruill, Allen Sifford, and Rotesha McNeil, among others.
>
> **The overdetention class:** All members of the statewide class who were overdetained due to Defendants' adoption and implementation of eCourts, including eWarrants. The class representative for this class is Paulino Castellanos.

Class certification is appropriate where the four requirements of Rule 23(a) are met, and the action falls within one of the three categories listed in Rule 23(b). *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 416, 423–24 (4th Cir. 2003) (emphasizing that, given class actions' "important public purposes," courts "should give Rule 23 a liberal construction" (cleaned up)). As explained below, these requirements are satisfied, and discovery will substantiate them.

A. **The proposed classes satisfy the requirements of Rule 23(a).**

1. **Numerosity.**

5

First, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although no specific number is needed to satisfy the numerosity requirement, the Fourth Circuit has found that a class of 40 or more members "raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (citing 1 Newberg on Class Actions § 3:12 (5th ed. 2021)); *see also Lilly v. Harris–Teeter Supermarket*, 720 F.2d 326, 333 (4th Cir.1983) (229 class members "easily enough").

That threshold is easily met here. As alleged in the amended complaint, the eCourts rollout has already caused hundreds of unlawful detentions. (*E.g.* ECF Nos. 30 ¶¶ 75 (noting a single episode that caused 179 warrants to be inadvertently deleted, leaving them unserved), 81 (noting that, in the first week after eCourts launched in Mecklenburg County, 66 people were held in custody despite meeting their conditions of release)) And the number of potential class members is likely to grow during discovery, and over the life of this case—eWarrants software is now operative in every North Carolina county; the Odyssey case-management system is online in five counties, including the state's two largest (Mecklenburg and Wake); and the entire eCourts package is expected to be in use statewide in short order. Thus, the numerosity requirement is satisfied.

### 2. Commonality.

Second, Rule 23(a)(2) requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Commonality means that the class members' claims "depend on a common contention" of fact or law, such that "determination of its truth or falsity will resolve an issue that is central to the validity of . . . the claims in one stroke." *Dukes*, 564 U.S. at 350. The

commonality requirement, therefore, "is not demanding" and "relatively easy to satisfy." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (cleaned up).

Plaintiffs raise many issues that are common to the proposed classes. Among them are:

- Whether defects in the eCourts software—including eWarrants and Odyssey—caused Plaintiffs and putative class members to be wrongly arrested and overdetained.

- Whether the Defendants enacted adequate safeguards to prevent the obvious risk of harm attendant with implementing eCourts.

- Whether the United States Constitution protects a detainee's right to be released from confinement once ordered released by a judicial official.

- Whether the United States Constitution provides a right to be free from confinement based upon an invalid warrant.

- Whether Defendant Tyler Technologies owed a duty of care to the proposed classes and, if so, whether it breached said duty.

- Whether the Defendants' failure to enact adequate safeguard amounted to deliberate indifference.

(*See* ECF No. 30 ¶ 179) These questions pervade this case, and their common answers will drive resolution of the litigation for all putative class members.

### 3. Typicality.

Third, Rule 23(a)(3) requires that the named representatives' claims be typical of those of the class. The claims of the named representatives and the other members of the class need not be "perfectly identical or perfectly aligned," so long as the representatives' pursuit of their own interests "simultaneously tend to advance the interest of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).

Here, the named Plaintiffs and class members have all suffered (or are suffering, or will suffer again) deprivations of their liberty due to the roll out of eCourts in North Carolina. Each of the named Plaintiffs meets the statewide class definition, and at least one named Plaintiff

7

meets each of the other class definitions. The named Plaintiffs' claims also arise from similar acts or omissions by the Defendants and are based on the same set of legal theories.

### 4. Adequacy of representation.

Finally, under Rule 23(a)(4), a class may be certified only if the representative parties "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy analysis serves to "uncover conflicts between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The requirement "also factors in competency and conflicts of class counsel." *Id.* at 626 n.20.

As demonstrated in the commonality and typicality sections above, the named Plaintiffs' interests are coextensive, rather than antagonistic, to the rest of the class. *Id.* (adequacy "tends to merge" with commonality and typicality). There are no known intra-class conflicts, and, given the nature of this action, it is unlikely that any conflict will manifest. Named plaintiffs and class members share a common interest in seeking recovery for their unlawful detention and preventing future unlawful detentions.

Further, Plaintiffs' counsel are qualified to competently represent the class. Counsel are experienced in class-action litigation in federal courts (in this Circuit and others) and in matters of constitutional law, civil rights, and wrongful detention. Counsel will prosecute this action vigorously and completely.

In sum, Plaintiffs will fairly and adequately protect the interests of the putative classes in this action.

## B. The proposed classes are certifiable under Rules 23(b)(2) and (3).

### 1. The statewide class satisfies Rule 23(b)(2).

Plaintiffs' proposed statewide class is well-suited for certification under Rule 23(b)(2). Under that Rule, the party seeking certification must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "This is a simple inquiry in most cases." *Newberg on Class Actions* § 4:28 (5th ed.). The purpose of the requirement is to "ensure[] that the class's interests are related in a manner that makes aggregate litigation appropriate . . . and therefore efficient." *Id.* Thus, "Rule 23(b)(2) applies . . . when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

The proposed statewide class is exactly the kind that Rule 23(b)(2) envisions. As the experiences of the named Plaintiffs demonstrate, the adoption of eCourts has caused many unlawful arrests and prolonged detentions. As alleged in the complaint, the causes of these harms are systemic—for instance, a single "integration error" leading to many delayed releases from jail, or a top-down policy requiring the use of eCourts in all but the most extraordinary instances. Moreover, absent final injunctive relief the named Plaintiffs and proposed class members cannot rest assured that the same harms will not befall them again. (*See e.g.* ECF No. 30 ¶ 90–102 (describing Plaintiff Kevin Spruill's experience of being arrested multiple times on the same invalid warrant).

### 2. All three proposed classes satisfy Rule 23(b)(3).

Each of the three proposed classes may also be certified under Rule 23(b)(3). That rule provides for certification when (a) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (b) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

R. Civ. P. 23(b)(3). The proposed classes satisfy both the "predominance" and "superiority" requirements here.

First, the common issues identified above, *see supra* 6–7, predominate over any questions affecting individual members. At bottom, the named Plaintiffs allege common injuries (unlawful detention) with a common cause—Defendant's adoption and implementation of eCourts. As such, the resolution of each of the named Plaintiffs' (and class members') claims will turn on whether their wrongful arrests or overdetentions were caused by defects in the eCourts software; implementation of the software without a failsafe; inadequate training in the use of the software; a practice of continuing to use the software once constitutional violations were known to result (or highly likely to result); or the like.

Federal courts have routinely certified classes raising such questions, as they predominate over individual issues. *See e.g.*, *Driver*, 859 F.3d at 491 (certifying class of people unlawfully detained due to defects in software adopted by prison); *Healey v. Louisville Metro Gov't*, No. 317CV00071RGJRSE, 2021 WL 149859, at *25 (W.D. Ky. Jan. 15, 2021) (holding that predominance was satisfied where plaintiff alleged that defendants' "inadequate process for timely releasing inmates caused respective subclass members to be over-detained").

The superiority requirement is also satisfied. To determine whether a class action is the superior method for adjudicating a controversy, courts consider several factors:

(A) The class members' interests in individually controlling the prosecution or defense of separate actions;

(B) The extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) The likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D)  Each of these factors support certification.

First, given the complexity of the legal issues and the value of individual claims, the class members are unlikely to have interest in prosecuting separate actions.  Indeed, many attorneys have referred clients to undersigned counsel for participation in this matter, rather than pursue actions on their behalf.

Second, counsel is unaware of any individual actions related to unlawful detention resulting from the roll out eCourts in North Carolina.

Third, the resolution of this case in one judicial proceeding is far preferable than having multiple proceedings in this or other courts, as that would likely result in an "inefficient situation, fraught with potential for inconsistency, confusion, and unnecessary expense" *Cf. Groseclose v. Dutton*, 829 F.2d 581, 584 (6th Cir. 1987).

Finally, the classes are ascertainable and manageable.  Ironically, the same digital systems responsible for the harms alleged in this action make class members readily ascertainable.  Using Defendants' records, it is feasible to discover when a warrant is displaying as "active" in one database, but not another; when someone was released from jail relative to the time their release was ordered; or whether an arrest was based on a previously resolved charge.  Moreover, class members do not need to be identified at the time of certification.  Rather, Plaintiffs must simply show that class members could be identified "without extensive and individualized fact-finding or mini-trials." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).  That is certainly the case here.

Further, none of the practical problems that may render a class unmanageable are present here.  Class-action suits raising similar claims have been certified and resolved without any

practical difficulty. *See, e.g.*, *Driver*, 859 F.3d 489, 494–95; *Turnage v. Oldham*, 2:16-cv-2907, Dkt. No. 390 (W.D. Tenn. Dec. 9, 2021). This class action is manageable.

## CONCLUSION

Plaintiffs respectfully request that this Court grant its earlier-filed Consent Motion extend the time to move for class certification or, in the alternative, postpone making any certification determination under Local Rule 23.1(b).

Should the Court prefer to address the class question now, Plaintiffs submit that certification is proper, as the First Amended Complaint demonstrates that the requirements of Federal Rules 23(a), (b)(2), and (b)(3) have been satisfied.

This the 15th day of December, 2023.

/s/ Zachary Ezor
Zachary Ezor (NCSB #: 55070)
Email: zezor@tinfulton.com
Gagan Gupta (NCSB #: 53119)
Email: ggupta@tinfulton.com
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN PLLC
119 Orange Street
Durham, NC 27701
Telephone: (919) 307-8400

A. Dami Animashaun
Email: dami@animashaun.me
933 South Grand Avenue, Suite 2450 Los Angeles, CA 90071
Telephone: 929-266-3971

*Counsel for Plaintiffs on behalf of themselves and all others similarly situated*

Served on all parties: Via ECF