IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:23-cv-00423-WO-JLW

TIMIA CHAPLIN, KEVIN SPRUILL, ROTESHA
MCNEIL, QIANA ROBERTSON, YOUSEF JALLAL,
MESSIEJAH BRADLEY, PAULINO CASTELLANOS,
ROBERT LEWIS AND ALLEN SIFFORD, on behalf of
themselves and all others similarly
situated,

   Plaintiffs,

 v.

WILLIE R. ROWE, in his capacity as Sheriff
of Wake County, BRIAN ESTES, in his official
capacity as the Sheriff of Lee County, THE
OHIO CASUALTY INSURANCE COMPANY, as the
surety for the Sheriff of Wake County and as
surety for the Sheriff of Lee County, TYLER
TECHNOLOGIES, INC., NORTH CAROLINA
ADMINISTRATIVE OFFICE OF THE COURTS, RYAN
BOYCE, in his official capacity as the
Executive Director of the North Carolina
Administrative Office of the Courts, BRAD
FOWLER, in his official capacity as the
eCourts Executive Sponsor and Chief Business
Officer of the North Carolina Administrative
Office of the Courts, BLAIR WILLIAMS, in his
official capacity as the Wake County Clerk
of Superior Court, SUSIE K. THOMAS, in her
official capacity as the Lee County Clerk of
Superior Court, JOHN DOE SURETY, as the
surety for the Wake County Clerk of Superior
Court and the Lee County Clerk of Superior
Court, and DOES 1 THROUGH 20, INCLUSIVE,

   Defendants.

DEFENDANT TYLER TECHNOLOGIES, INC.'S BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................... iii

INTRODUCTION ............................................ 1

BACKGROUND ............................................. 3

    A.   North Carolina transitioned its court recordkeeping system from a paper system to an electronic system. ..................................... 3

    B.   Nine plaintiffs allege that they were unlawfully arrested or detained. .................................. 5

    C.   Plaintiffs seek to resolve all claims through class-wide relief. .......... 6

ARGUMENT ............................................... 8

    I.   The individualized mini-trials required to prove injury and damages preclude Plaintiffs from satisfying multiple Rule 23 requirements as a matter of law. ............. 9

    A.   The negligence claim against Tyler is incapable of class resolution. ......... 10

    B.   Plaintiffs cannot show commonality and typicality – Rule 23(a)(2) and Rule 23(a)(3). ........................... 14

    C.   Plaintiffs cannot show predominance – Rule 23(b)(3). .......................... 18

    D.   Plaintiffs cannot show that class members are "readily identifiable" or "ascertainable." ....................... 21

    II.  Plaintiffs have not carried their evidentiary burden for class certification. ................................. 25

CONCLUSION ............................................ 31

CERTIFICATE OF COMPLIANCE .............................. 33

Case 1:23-cv-00423-WO-JLW   Document 60   Filed 01/05/24   Page 2 of 41

**TABLE OF CONTENTS**
(continued)

**Page**

CERTIFICATE OF SERVICE ................................ 34

Case 1:23-cv-00423-WO-JLW   Document 60   Filed 01/05/24   Page 3 of 41

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abbott v. Am. Elec. Power, Inc.*,
  No. 2:12-CV-00243, 2012 WL 32604064 (S.D.W. Va.
  Aug. 8, 2012).......................................19, 21

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)....................................19

*Anderson v. Laboratory Corp. of Am. Holdings*,
  No.1:17cv193, 2023 WL 1970953 (M.D.N.C. Feb. 13,
  2023)..............................................22, 24

*Bigelow v. Syneos Health, LLC*,
  No. 5:20-CV-28-D, 2020 WL 5078770 (E.D.N.C. Aug.
  27, 2020)..............................................24

*Blackwell v. Hatley*,
  202 N.C. App. 208, 688 S.E.2d 742 (2010)...............10

*Bond v. Marriott Int'l, Inc.*,
  296 F.R.D. 403 (D. Md. 2014)...........................14

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006)...........................15

*Driver v. Marion Cnty. Sheriff*,
  859 F.3d 489 (7th Cir. 2017).......................27, 28

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014)...............21, 22, 23, 25

*Fuller v. Duke Univ.*,
  No. C-75-445-D, 1979 WL 15398 (M.D.N.C. Aug. 29,
  1979)..................................................26

*Gariety v. Grant Thornton, LLP*,
  368 F.3d 356 (4th Cir. 2004)......................passim

*General Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982)....................................15

-iii-

*Healey v. Louisville Metro Gov't*,
  No. 317CV00071RGJRSE, 2021 WL 149859 (W.D. Ky. Jan.
  15, 2021)...........................................28

*In re Zetia (Ezetimibe) Antitrust Litig.*,
  7 F.4th 227 (4th Cir. 2021)............................29

*Kirkman v. N. Carolina R.R. Co.*,
  220 F.R.D. 49 (M.D.N.C. 2004)..................13, 18, 23

*Lienhart v. Dryvit Sys., Inc.*,
  255 F.3d 138 (4th Cir. 2001)......................14, 15

*Monroe v. City of Charlottesville, Va.*,
  579 F.3d 380 (4th Cir. 2009)...........................26

*Mr. Dee's Inc. v. Inmar, Inc.*,
  No. 1:19-CV-141, 2023 WL 5436178 (M.D.N.C. Aug. 23,
  2023)......................................8, 23, 24, 27

*Parks Auto. Grp., Inc. v. Gen. Motors Corp.*,
  237 F.R.D. 567 (D.S.C. 2006).......................19, 21

*Stein v. Asheville City Bd. Of Educ.*,
  360 N.C. 321, 626 S.E.2d 263(2006).....................10

*Talley v. ARINC, Inc.*,
  222 F.R.D. 260 (D. Md. 2004)...........................15

*Thorn v. Jefferson Pilot Life Ins.*,
  445 F.3d 311 (4th Cir. 2006)...................8, 19, 21

*Turnage v. Oldham*,
  No. 2:16-cv-2907, 2021 WL 5855637 (W.D. Tenn. Dec.
  9, 2021)...............................................28

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................8, 14

**Other Authorities**

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1778
  (3d ed.)...............................................19

Case 1:23-cv-00423-WO-JLW   Document 60   Filed 01/05/24   Page 5 of 41

**Rules**

Fed. R. Civ. P. 23(a)(1) .................................29

Fed. R. Civ. P. 23(a)(2) .................................14

Fed. R. Civ. P. 23(a)(3) .................................14

Fed. R. Civ. P. 23(a)(4) .................................30

Fed. R. Civ. P. 23(b)(3) .................................18

M.D.N.C. L.R. 23.1(d) ...................................25

## INTRODUCTION

Plaintiffs cannot satisfy, and have not satisfied, the requirements for class certification set out in Federal Rule of Civil Procedure 23 for any proposed class against Defendant Tyler Technologies, Inc. ("Tyler").

To begin with, adjudication of Plaintiffs' claim against Tyler cannot be done on a class-wide basis. Plaintiffs assert only a negligence claim against Tyler, arguing that Tyler's alleged negligence in the provision of its "eCourts" software package to North Carolina courts resulted in class members being arrested or detained unlawfully. To prove actual injury (required for a negligence claim), each class member's claim will require an individualized mini-trial focused on the unique circumstances of the class member's arrest or detention. These mini-trials will need to determine, among other things (i) whether each class member was arrested or detained; (ii) the circumstances of the arrest or detention; (iii) whether the arrest or detention was justified; (iv) whether information in the eCourts system led to the arrest or detention and, if so, the details of

1

that, or if there was a different, intervening cause; and
(v) facts around any damages claimed.

The need for these individualized mini-trials means
that Plaintiffs cannot satisfy, as a matter of law, the
required elements of commonality or typicality, much less
the more stringent requirement that common issues
"predominate" over individualized issues. Additionally,
Plaintiffs cannot prove that the class members are readily
identifiable or ascertainable — a separate requirement for
class certification. There is no evidence Plaintiffs could
adduce that would eliminate the need for these
individualized mini-trials, and the motion for class
certification should be denied with prejudice.

Second, Plaintiffs have the burden of proof for class
certification, and they have failed to carry this burden.
Despite it being more than six months since Plaintiffs
filed their original complaint, Plaintiffs have not even
introduced an affidavit (much less any other evidence) to
carry their evidentiary burden. As a result, Plaintiffs
cannot satisfy any of the Rule 23 requirements surveyed
above, or the other elements of numerosity and adequacy of

2

representation. The failure of Plaintiffs' to submit any evidence renders their request for discovery too little, too late and provides a separate basis to deny Plaintiffs' motion.

<u>**BACKGROUND**</u>

Plaintiffs filed their original complaint on May 23, 2023. ECF No. 1. After Defendants moved to dismiss, Plaintiffs filed the First Amended Complaint on October 27, 2023. ECF No. 30 ("Complaint"). On December 15, Plaintiffs moved for class certification. Plaintiffs did not include any evidence supporting their motion.

**A.    North Carolina transitioned its court recordkeeping system from a paper system to an electronic system.**

Prior to modernizing its court system, North Carolina experienced recordkeeping difficulties with its paper system. Compl. ¶ 43.

After years of work and review, and bids by multiple vendors, a selection committee chose Tyler to help develop an electronic system that might remedy the recordkeeping deficiencies in the North Carolina court system. Compl. ¶¶ 54, 57. Under the contract that Tyler ultimately signed with the North Carolina Administrative Office of the Courts

3

("NCAOC"), Tyler agreed to license an "eCourts" software package that included a case-management system ("Odyssey") and to develop an online repository of warrants ("eWarrants"). Compl. ¶¶ 59-60.

Tyler's role is limited to that of a software vendor; Tyler licenses its proprietary software, implements that software so that its clients can operate it in live production, and provides maintenance and support to triage software performance issues and answer end-user questions. Compl. ¶¶ 59-60; Compl., ECF No. 30-2 at 6-15, 19-20. Tyler is not responsible for the day-to-day use of the software, nor does it generate or own the data entered into, stored in, or processed through the software. Compl. ¶¶ 59-60; *see also* Compl., ECF No. 30-2 at 6-15, 19-20. Those responsibilities are the purview of its client's end-users, such as the law enforcement and court officials who put records into the system and update those records with real-time information. Compl. ¶¶ 12-23, 59-60, 237-38; *see also* Compl., ECF No. 30-3 at 3-4.

During the Odyssey implementation phase in four pilot counties, Tyler and the NCAOC worked together to resolve

4

software issues while the pilot counties transitioned around 50,000 paper-based records into the electronic case management system. Compl. ¶¶ 71-72; *see also* Compl., ECF No. 30-3 at 4-5. Following the pilot program, Mecklenburg County went into live production on Odyssey on October 9, 2023. Compl. ¶ 78. Out of thousands of cases, the Complaint identifies nine people who allegedly experienced arrest or detention issues across these five counties.

**B.  Nine plaintiffs allege that they were unlawfully arrested or detained.**

Plaintiffs' Complaint alleges, without support, that North Carolina's "transition[] [of] its courts system from paper to digital" has resulted in "hundreds of people" being "unlawfully detained." Compl. ¶ 1. Plaintiffs' original complaint named two individual Plaintiffs. The Complaint adds seven new Plaintiffs. But despite Plaintiffs' allegations about "statewide" conduct, the Complaint focuses on third-party conduct from only five counties, two of which are not named as Defendants. Compl. ¶¶ 32-40.

Six Plaintiffs are Wake County residents who were arrested or detained by or because of Wake County state

5

actors. *See e.g.*, Compl. ¶¶ 93, 104-107, 118 (alleging that an "employee of the Wake County Sheriff's Office informed" a Johnston County Sheriff's deputy that Plaintiff Rotesha McNeil had a valid warrant for arrest), 127-30, 138, 147-48.

Outside of Wake County, Plaintiff Paulino Castellanos was arrested and detained by the Lee County Sheriff's Office – another pilot county. Compl. ¶ 151.

Plaintiff Allen Sifford was arrested by unidentified state actors in Gaston County. Compl. ¶ 175. Plaintiff Robert Lewis is a resident of Guilford County who alleges that "local law enforcement" arrested and detained him. *See* Compl. ¶¶ 163-64.

Plaintiffs have not added the arresting actors or agencies from any other county besides Wake and Lee as defendants.

### C. Plaintiffs seek to resolve all claims through class-wide relief.

Although Plaintiffs did not file a motion for class certification by the deadline set in the Local Rules, Plaintiffs did file a motion on December 15 ("Motion"). The Motion seeks certification of three classes: one statewide,

6

injunctive class under Rule 23(b)(2) ("statewide injunctive class"); and two different money damages class actions under Rule 23(b)(3) — one for plaintiffs allegedly wrongfully arrested or detained ("wrongful detention class"), and one for plaintiffs allegedly detained for longer than they should have been ("overdetention class"). Mot. 5.

The Motion does not separately justify class certification for any of the three classes, and it is even unclear which Defendants each class targets. It *is* clear, however, that the statewide injunctive class is not targeted at Tyler because there is no claim for injunctive relief made against Tyler. The claims for injunctive relief are made only against the Defendants that are state actors, as related to the § 1983 constitutional claims. Compl. ¶¶ 242-51. The only claim against Tyler is a negligence claim for money damages. Compl. ¶¶ 185-94.

Although the proposed statewide injunctive class under Rule 23(b)(2) may have similar problems, this brief relates only to the proposed Rule 23(b)(3) classes against Tyler. Thus, the allegations against the other Defendants —

including the allegations relating to an alleged constitutional violation, *see, e.g.*, Compl. ¶¶ 179(a)-(i), 202-18, 242-51 — should not be considered in deciding whether class claims are properly pleaded as to Tyler.

## ARGUMENT

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Mr. Dee's Inc. v. Inmar, Inc.*, No. 1:19-CV-141, 2023 WL 5436178, at *4 (M.D.N.C. Aug. 23, 2023)(citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). "The plaintiffs who propose to represent the class bear the burden of demonstrating that the requirements of Rule 23 are satisfied." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *Thorn v. Jefferson Pilot Life Ins.*, 445 F.3d 311, 317 (4th Cir. 2006).

Plaintiffs' Motion fails for two, independent reasons.

First, Plaintiffs cannot show that class certification is warranted as a matter of law. Based on the allegations of the Complaint and the Plaintiffs' proposed classes,

8

there are no facts that would allow Plaintiffs to satisfy all Rule 23 requirements.

Second, even putting this aside, Plaintiffs have included no evidence that would allow them to satisfy their evidentiary burden under Rule 23. Despite having months to prepare a class certification motion, Plaintiffs included nothing – no fact affidavits, no expert affidavits, nothing to even attempt to satisfy their burden under Rule 23. The motion for class certification should be denied.

I. **The individualized mini-trials required to prove injury and damages preclude Plaintiffs from satisfying multiple Rule 23 requirements as a matter of law.**

Plaintiffs cannot satisfy their Rule 23 burden for the proposed classes against Tyler because the claim against Tyler cannot be resolved on a class-wide basis. The need for individualized mini-trials prevents, as a matter of law, Plaintiffs from being able to satisfy the required elements of commonality and typicality, much less the more stringent standard of predominance. Equally important, Plaintiffs cannot satisfy the requirement that members of the class be readily identifiable through an objective standard. The failure on each one of these factors,

9

standing alone, provides an independent basis to deny class certification.

### A. The negligence claim against Tyler is incapable of class resolution.

The only claim alleged against Tyler is a negligence claim. Compl. ¶¶ 185-94. To prevail on this claim, each potential class member must prove "the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *Blackwell v. Hatley*, 202 N.C. App. 208, 212, 688 S.E.2d 742, 746 (2010) (cleaned up). A negligence claim requires many individualized inquiries that examine "all of the circumstances" of each situation. *Stein v. Asheville City Bd. Of Educ.*, 360 N.C. 321, 331, 626 S.E.2d 263, 269 (2006).

As Tyler explained in its motion to dismiss the original complaint (and will do so again in its motion to dismiss the Complaint), Plaintiffs cannot establish either the existence of a legal duty or causation as a matter of law. Separately, however, it is the requirement for each

10

plaintiff to prove an "actual injury or loss" that dooms the request for class certification.

The only injury or loss alleged in the Complaint is that Plaintiffs were "unlawfully detained" – either wrongfully arrested or detained, or detained for longer than they should have been. *E.g.*, Compl. ¶¶ 1, 3, 83-85, 177. The only injury Plaintiffs allege was caused by Tyler is unlawful detention. *See* Compl. ¶ 193 ("As a direct and proximate result of Tyler Technologies' negligence ... Plaintiffs and the Class have suffered needless and prolonged detentions resulting in the damages pled herein."). Likewise, the two proposed 23(b)(3) classes in the Motion both relate to alleged unlawful detention – the wrongful detention class is defined as individuals "who were unlawfully arrested or detained," and the overdetention class is defined as individuals "who were overdetained." Mot. 5.

Thus, both to be a member of the class and to prove liability, each potential class member must prove not only that she was arrested or detained, but that she was *unlawfully* arrested or detained. Put another way, each

11

potential class member must show that she was arrested or detained when she should not have been, or was detained longer than she should have been. This showing cannot be made on a class-wide basis. On the contrary, having to make this showing will require individualized evidence by each potential class member. For each potential class member here, the Court will need to consider, among other things and by way of example:

- whether the individual was arrested or detained;
- the circumstances of that arrest or detention, including which state actors or agencies participated in that arrest or detention;
- for how long the individual was arrested or detained;
- whether the arrest or detention was justified;
- whether the length of the detention was justified;
- whether information in the eCourts system led to any improper arrest or detention;
- and, if so,
  - what information was entered into the eCourts system,

12

- by whom,

- whether there were any errors in that data
  entry, and

- whether the design or functionality of the
  eCourts system, in a way attributable to
  Tyler, contributed in any way to the alleged
  injury.

These are all individualized inquiries that are not subject to class treatment. *See Kirkman v. N. Carolina R.R. Co.*, 220 F.R.D. 49, 52-53 (M.D.N.C. 2004) (holding that a proposed class did not meet Rule 23 requirements because individualized trials would be needed to determine whether a class member suffered an injury).

The required individualized inquiries prevent Plaintiffs from proving several required elements of Rule 23. There is no evidence Plaintiffs could adduce that would eliminate the need for these individualized, mini-trials. Individual inquiries will always be necessary to determine whether a particular class member's detention or arrest was "unlawful" or "wrongful." Thus, Plaintiffs' requests for discovery, *see* Mot. 2-3, are not only late, but they are

13

also futile. The Court should deny the Motion, with prejudice.

## B. Plaintiffs cannot show commonality and typicality – Rule 23(a)(2) and Rule 23(a)(3).

Plaintiffs must prove both that there are "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3). Plaintiffs can prove neither.

Commonality requires the plaintiff to demonstrate that the class members have "suffered the same injury." *Dukes*, 564 U.S. at 350; *see also Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 407 (D. Md. 2014). Bringing the same cause of action or alleging a violation of the same law is not enough. *See Dukes*, 564 U.S. at 350. The claims must share common questions, capable of class-wide resolution, and those "common questions must be dispositive and over-shadow other issues." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001); *Dukes*, 564 U.S. at 350.

"The typicality requirement goes to the heart of a representative parties' ability to represent a class," and

14

those parties' interest in "prosecuting [their] own case
must simultaneously tend to advance the interests of the
absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d
461, 466 (4th Cir. 2006). Typicality requires that the
class claims arise "from the same event or practice or
course of conduct" and that the claims "are based on the
same legal theory." *Talley v. ARINC, Inc.*, 222 F.R.D. 260,
268 (D. Md. 2004). That is, "a class representative
must ... possess the same interest and suffer the same
injury as the class members." *General Tel. Co. of the
Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (cleaned up).

Here, there are not common questions, capable of class-
wide resolution, that are "dispositive and over-shadow
other issues." *Lienhart*, 255 F.3d at 146. The common issues
Plaintiffs allege with respect to Tyler are whether Tyler
owed a duty of care to Plaintiffs, and whether Tyler
breached that duty because of defects in the software or
the failure to enact safeguards. Mot. 7. But even if these
were legally cognizable common questions (and they are not
as described in Tyler's forthcoming motion to dismiss),
they are overwhelmed by the individual questions related to

15

each class member's arrest or detention. *See supra* pp. 12-13. Circumstances will vary widely for each hypothetical class member. Furthermore, any damages would vary based on whether a plaintiff was arrested or detained, who detained them, how long they were detained, and what damages (if any) they sustained as a result of the arrest or detention.

Because each arrest or detention produces a unique set of facts and involve distinct legal inquiries, the claims also lack typicality. Even within the proposed wrongful detention class, the individual circumstances of each proposed class representative differs.

- Plaintiff McNeill alleges that she was wrongfully arrested and detained because state actors told an unnamed Johnston County Sheriff's deputy that her warrant was valid despite Odyssey showing her case was "disposed." Compl. ¶¶ 115-19. She also alleges that Defendant Williams offered her a settlement and release because her warrant "should have been stricken" — raising unique, individualized questions in her case that are not connected to eCourts or typical of the other Plaintiffs. Compl. ¶¶ 121, 123.

16

- In contrast, Plaintiff Robertson alleges that her wrongful arrest resulted from her hearing date being "Reset by Court." Compl. ¶¶ 128, 130.

- Plaintiffs Chaplin, Spruill, Jallal, and Bradley allege wrongful arrests and detentions of different lengths that resulted from vaguely alleged courses of conduct. *See* Compl. ¶¶ 94-98, 105-108, 134-49.

- Plaintiffs Lewis and Sifford both allege wrongful arrests resulting from warrants that were issued — and allegedly dissolved — long before either the eCourts system was implemented in North Carolina or any of the other Plaintiffs' alleged harm occurred. *See* Compl. ¶¶ 161-76.

The same will be true of the overdetention class, which as of now has only one class representative, Plaintiff Castellanos. Mot. 5. Plaintiff Castellanos claims to have been detained improperly because of individualized issues arising from Defendant Thomas's failure to convert his paper file to eCourts (which has nothing to do with Tyler). Compl. ¶¶ 157-58, 160, 238. These allegations are unlikely to be shared by other potential class members.

17

As in *Kirkman*, Plaintiffs' alleged common questions about Tyler are "only part of the equation" and are overwhelmed by all of the individual questions necessary to determine whether a plaintiff has an injury, as well as that plaintiff's damages (if any). *Kirkman*, 220 F.R.D. at 52-53. Because "a preliminary legal determination is necessary for each potential class member before the Defendants' conduct is even relevant," Plaintiffs cannot satisfy the requirements of commonality and typicality. *Id.* at 53 (denying a class certification motion for failure on commonality and typicality).

**C.  Plaintiffs cannot show predominance – Rule 23(b)(3).**

Even if Plaintiffs could satisfy Rule 23(a), they must also satisfy the more stringent Rule 23(b)(3) requirements. They cannot, because common questions do not predominate over the myriad of individualized issues.

A Rule 23(b)(3) class is appropriate only if common questions "predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

18

"Rule 23(b)(3)'s predominance requirement is 'far more demanding' than Rule 23(a)'s commonality requirement and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Gariety*, 368 F.3d at 362 (cleaned up). "That inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

"[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1778 (3d ed.) (collecting cases). Common issues cannot predominate when issues like causation and damages require individualized inquiries. *See Thorn*, 445 F.3d at 327-29 ; *Parks Auto. Grp., Inc. v. Gen. Motors Corp.*, 237 F.R.D. 567, 571-72 (D.S.C. 2006); *Abbott v. Am. Elec. Power, Inc.*, No. 2:12-CV-00243, 2012 WL 3260406, at *4 (S.D.W. Va. Aug. 8, 2012).

Here, the class claims cannot satisfy predominance when managing the class action would devolve into a series of

19

mini-trials to determine, among other things, whether a hypothetical class member's arrest or detention was justified under the circumstances, or whether the arrest or detention was in any way related to the as-designed operation of the eCourts system. Without those determinations — which must be made on an individualized basis — there is no injury, and that plaintiff has no legal claim.

Additional individualized inquiries would need to review each potential class member's arrest or detention and determine what defendants (or unnamed state actors) were responsible for any improper arrest or delayed release. Furthermore, each detainee would need to be evaluated case-by-case to determine whether he would have met release conditions. The Court also would need to assess the length of each detention (if any) to determine what delay (if any) occurred because of an error and whether that delay was part of the normal detention process (e.g., short holds because of the time of day the individual was booked), which would have nothing to do with the functionality of eCourts.

Even if those mini-trials could establish liability for each class member, the damages sustained by each member would require even more individualized inquiries. Common questions cannot predominate when breach, causation, damages, and liability apportionment all must be determined on an individualized basis. *Thorn*, 445 F.3d at 327-29; *Parks Auto. Grp.*, 237 F.R.D. at 571-72; *Abbott*, 2012 WL 3260406, at *4.

### D. Plaintiffs cannot show that class members are "readily identifiable" or "ascertainable."

Lurking beyond these legal deficiencies is a more fundamental failing. There is no way to identify or ascertain the members of Plaintiffs' proposed classes.

The Fourth Circuit has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (citing cases). "A class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* "If class members are impossible to identify without extensive and individualized fact-

21

finding or 'mini-trials,' then a class action is inappropriate." *Id.*

Plaintiffs' two proposed 23(b)(3) class definitions fail this test because they define class membership based on whether an arrest or detention was "wrongful" or "unlawful." Mot. 5. By definition, this is not an objective criteria divorced from the merits of individualized claims. There is no list anywhere, in the records of any government body or defendant, that lists individuals who have been arrested or detained "wrongfully" or "unlawfully." The only potential lists are of individuals who have been arrested or detained. But it would take individualized mini-trials for every single potential class member to determine whether the arrest or detention was wrongful or unlawful. *See Anderson v. Laboratory Corp. of Am. Holdings*, No.1:17cv193, 2023 WL 1970953, at *14 (M.D.N.C. Feb. 13, 2023) (finding proposed class was not ascertainable when such determination "would require the sort of 'mini trials' that the ascertainability requirement was designed to avoid").

22

Put another way, there is no way to ascertain class members or assess class membership without adjudicating the merits of every individualized case. This task is "not administratively feasible given the number of potential [class] members" from thousands of arrest records. Plaintiffs' proposed class thus fails the "readily identifiable" requirement. *Kirkman*, 220 F.R.D. at 53 (finding this requirement not satisfied, even though the Court could determine class membership by conducting title searches, because doing so was not "administratively feasible"). This failure alone precludes certification of a class under Rule 23. *See EQT Prod. Co.*, 764 F.3d at 358; *see also Mr. Dee's*, 2022 WL 1750537, at *2.

In addition, Plaintiffs have proposed improper "fail-safe" classes, that is, classes that are "defined so that whether a person qualifies as a member of the class depends on whether the person has a valid claim." *Mr. Dee's*, 2022 WL 1750537, at *2 (citing *EQT Prod. Co.*, 764 F.3d at 360 n.9). Courts nationwide reject fail-safe classes because they form a "class that cannot be defined until the case is resolved on its merits." *Bigelow v. Syneos Health, LLC*, No.

23

5:20-CV-28-D, 2020 WL 5078770, at *4 (E.D.N.C. Aug. 27, 2020) (collecting cases).

Fail-safe classes are improper for two reasons.

First, they fail to provide the resolution of the claims of *all* class members envisioned in class action litigation. In a fail-safe class, a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment. *Mr. Dee's*, 2022 WL 1750537, at *2; *Bigelow*, 2020 WL 5078770, at *4.

Second, fail-safe classes do not comply with Rule 23's requirement that members of a proposed class be readily identifiable, or ascertainable. *Mr. Dee's*, 2022 WL 1750537, at *2; *Anderson*, 2023 WL 1970953, at *14. "Because a fail-safe class requires a court to inquire into the merits of the underlying case to identify the members of the class, fail-safe class definitions violate these principles." *Mr. Dee's*, 2022 WL 1750537, at *2 (citing *Bigelow*, 2020 WL 5078770, at *4).

Here, Plaintiffs' two 23(b)(3) classes are fail-safe classes. If a proposed class member's detention was "wrongful" or "unlawful," then they would have a successful

24

claim (under Plaintiffs' view of the world). If the detention was not "wrongful" or "unlawful," then they are not part of the class as defined by Plaintiffs. This provides an independent reason to deny class certification.

## II. Plaintiffs have not carried their evidentiary burden for class certification.

In their Motion, Plaintiffs did not put forward any evidence to support their request for class certification. This provides another basis to deny the Motion. *See Gariety*, 368 F.3d at 362 (plaintiffs bear the burden); L.R. 23.1(d) (plaintiffs bear the burden "to present an evidentiary basis to the Court showing that the [class] action is properly maintainable as such.").

"A party seeking class certification must do more than plead compliance with the aforementioned Rule 23 requirements. Rather, the party must present evidence that the putative class complies with Rule 23." *EQT Prod. Co.*, 764 F.3d at 357 (cleaned up); *see also* L.R. 23.1(d).

Plaintiffs here have done no more than insufficiently plead compliance with Rule 23. Their class motion rests only on the "allegations in the First Amended Complaint." Mot. 2.

25

But "[w]hen deciding a motion for class certification, a district court does not accept the plaintiff's allegations as true." *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 384 (4th Cir. 2009); *Gariety*, 368 F.3d at 365 (A court cannot "simply ... accept the allegations of a complaint at face value in making class action findings."). It has long been the case that plaintiffs cannot rest on allegations to satisfy their Rule 23 burden on certification. *Gariety*, 368 F.3d at 365; *see also Fuller v. Duke Univ.*, No. C-75-445-D, 1979 WL 15398, at *1 (M.D.N.C. Aug. 29, 1979). If that was all that was required for certification then "every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities for taking a 'close look' at relevant matters, for conducting a 'rigorous analysis' of such matters, and for making 'findings' that the requirements of Rule 23 have been satisfied." *Gariety*, 368 F.3d at 365 (cleaned up).

Beyond the fact that Plaintiffs' request for class certification fails on the pleadings (*see supra* Part I),

Plaintiffs have put forward no evidence at all to even attempt to carry their burden. They have not put forth a single affidavit, any proposed expert testimony, or otherwise offered any evidence in support of their motion for class certification. *See Mr. Dee's*, 2023 WL 5436178, at *13-19 (declining to certify a class where plaintiffs submitted an expert report but failed to offer evidence that almost a third of the class had suffered injury).

Plaintiffs' failure means they cannot satisfy any of the Rule 23(a) or Rule 23(b) requirements necessary to certify a class surveyed above. *See Gariety*, 368 F.3d at 362, 365. Plaintiffs have submitted no evidence (because they cannot) that they can satisfy the elements of commonality, typicality, predominance, and ascertainability.

These failings distinguish this case from the *Driver* case cited by Plaintiffs. Mot. 3 (citing *Driver v. Marion Cnty. Sheriff*, 859 F.3d 489, 494 (7th Cir. 2017)). To begin with, *Driver* does not involve Tyler or the Odyssey software, but rather a software program that was found to be incompatible with the Odyssey software already at use in

27

that jurisdiction. *Id.* at 493-94. The Court held that certification of a class could be proper, pointing to significant evidence introduced by the plaintiffs in that case. *Id.* at 494. Plaintiffs have no evidence here.

*Healey v. Louisville Metro Government* is similarly distinguishable. No. 317CV00071RGJRSE, 2021 WL 149859 (W.D. Ky. Jan. 15, 2021). *Healey* also did not involve Tyler or the Odyssey software, but instead involved delays by a single actor — Louisville — employing "a manual workflow system." *Id.* at 4. Indeed, the court acknowledged that theories related to "over-detention liability" are not generally "amenable to class treatment because determining whether a given detention rises to the level of a constitutional violation requires individualized determinations about the reason the inmate's release was delayed." *Id.* at *16.[1]

_____

[1] Likewise, this case is distinguishable from *Turnage*. Mot. 12 (citing *Turnage v. Oldham*, No. 2:16-cv-2907, 2021 WL 5855637 (W.D. Tenn. Dec. 9, 2021)). The parties in *Turnage* resolved their dispute through settlement — the case did not resolve a disputed motion for class certification at all, nor did the court have to address the complications from mini trials. *Turnage*, 2021 WL 5855637, at *1.

28

Moreover, Rule 23 imposes additional burdens on
Plaintiffs to put forth evidence on numerosity and adequacy
of counsel. Plaintiffs have not done so.

A class action is appropriate only if "the class is so
numerous that joinder of all members is impracticable."
Fed. R. Civ. P. 23(a)(1). As the Fourth Circuit has
explained, numerosity is not satisfied by a showing that,
without a class action, many separate lawsuits could occur
or some claimants might lack economic motivation to sue. *In
re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 235-36
(4th Cir. 2021). Rather, joinder of like plaintiffs or
suits must be impractical. *Id.* at 236.

Although Plaintiffs generically allege that there are
"likely hundreds of proposed class members," Compl. ¶ 178,
and state (without support) that "the number of potential
class members is likely to grow during discovery," Mot. 6,
they have identified only nine plaintiffs in the seven
months since they filed their original complaint. One of
the proposed classes – the overdetention class – has only
one member (who cannot tie his alleged injury to Tyler).
Mot. 5. The lack of representative plaintiffs undermines

29

the plausibility of Plaintiffs' claim that hundreds have already been injured across the state. *See* Compl ¶ 178. And while Plaintiffs contend that sixty-six people have been unlawfully detained in Mecklenburg County alone as a result of eCourts, Compl. ¶ 81, the Complaint does not add any Mecklenburg County plaintiffs.

Plaintiffs have submitted no evidence at all to carry their burden that, despite naming only nine plaintiffs, it is reasonably likely that there will be sufficient plaintiffs so that joinder will be impracticable. Without that evidence, Plaintiffs cannot prove numerosity, and the Motion should be denied.

The same is true for adequacy. Plaintiffs have submitted no evidence that the named Plaintiffs will adequately represent the proposed classes. Fed. R. Civ. P. 23(a)(4). This is especially important for the overdetention class, which has only one named representative with unique factual circumstance.

Plaintiffs cannot plead that they need discovery for class certification, *see* Mot. 3, when they made no attempt at all to satisfy their evidentiary burden. Because

30

Plaintiffs have not tried to carry their evidentiary burden under Rule 23, the Motion should be denied with prejudice.

**CONCLUSION**

For all these reasons, Tyler Technologies requests that Plaintiffs' motion for class certification be denied with prejudice.

This 5th day of January, 2024.

s/ Gregory L. Skidmore
Gregory L. Skidmore
N.C. Bar No. 35571
gskidmore@robinsonbradshaw.com
H. Hunter Bruton
N.C. Bar No. 50601
hbruton@robinsonbradshaw.com

**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone:  (704) 377-2536
Facsimile:  (704) 378-4000

*Counsel for Defendant Tyler*
*Technologies, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief contains fewer than 6,250 words (not counting the portions of the brief excluded by Local Rule 7.3(d)(1)) as reported by the word-processing software.

This 5th day of January, 2024.

s/ Gregory L. Skidmore
Gregory L. Skidmore

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed using the Court's e-filing system, which will automatically and electronically notify the following CM/ECF-registered counsel of record:

Gagan Gupta
ggupta@tinfulton.com
Abraham Rubert-Schewel
schewel@tinfulton.com
Zachary William Ezor
zezor@tinfulton.com
Tin Fulton Walker & Owen PLLC
115 E. Main Street
Durham, NC 27701
Telephone: (919) 307-8400

A. Dami Animashaun
dami@animashaun.me
933 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (929) 266-3971

*Attorneys for Plaintiffs Timia Chaplin, Kevin Spruill, Rotesha McNeil, Qiana Robertson, Yousef Jallal, Messiejah Bradley, Paulino Castellanos, Robert Lewis and Allen Sifford, on behalf of themselves and all others similarly situated*

Robert Lane
robert.lane@wake.gov
Wake County Sheriff's Office
330 S. Salisbury Street
Raleigh, NC 27602
Telephone: (919) 856-5380

34

Roger Askew
roger.askew@wakegov.com
Senior Deputy County Attorney
Wake County Attorney's Office
P.O. Box 500
Raleigh, NC 27602
Telephone: (919) 856-5500

*Attorneys for Defendant Wake County Sheriff*
*Willie Rowe*


James R. Morgan Jr.
Jim.Morgan@wbd-us.com
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone:  (336)721-3710

*Attorney for Defendant Brian Estes*


This 5th day of January, 2024.

s/ Gregory L. Skidmore
Gregory L. Skidmore