UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:23-cv-00423-WO-JLW

TIMIA CHAPLIN, KEVIN SPRUILL, ROTESHA
MCNEIL, QIANA ROBERTSON, YOUSEF JALLAL,
MESSIEJAH BRADLEY, PAULINO CASTELLANOS,
ROBERT LEWIS AND ALLEN SIFFORD, on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

    v.

WILLIE R. ROWE, in his capacity as Sheriff
of Wake County, BRIAN ESTES, in his official
capacity as the Sheriff of Lee County, THE
OHIO CASUALTY INSURANCE COMPANY, as the
surety for the Sheriff of Wake County and as
surety for the Sheriff of Lee County, TYLER
TECHNOLOGIES, INC., NORTH CAROLINA
ADMINISTRATIVE OFFICE OF THE COURTS, RYAN
BOYCE, in his official capacity as the
Executive Director of the North Carolina
Administrative Office of the Courts, BRAD
FOWLER, in his official capacity as the
eCourts Executive Sponsor and Chief Business
Officer of the North Carolina Administrative
Office of the Courts, BLAIR WILLIAMS, in his
official capacity as the Wake County Clerk
of Superior Court, SUSIE K. THOMAS, in her
official capacity as the Lee County Clerk of
Superior Court, JOHN DOE SURETY, as the
surety for the Wake County Clerk of Superior
Court and the Lee County Clerk of Superior
Court, and DOES 1 THROUGH 20, INCLUSIVE,

        Defendants.

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
TYLER TECHNOLOGIES, INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES............................... iii

INTRODUCTION........................................ 1

BACKGROUND......................................... 3

    A.   North Carolina transitioned its court recordkeeping system from a paper system to an electronic system .................... 3

    B.   Nine plaintiffs allege that they were unlawfully arrested or detained ........... 5

STATEMENT OF THE QUESTIONS PRESENTED................ 7

ARGUMENT........................................... 7

    I.   Plaintiffs' Negligence Claim Fails As A Matter Of Law................................ 8

    A.   Tyler does not owe a duty to Plaintiffs .... 8

    B.   The Complaint does not plausibly allege a causal nexus between Tyler's conduct and Plaintiffs' alleged injuries .............. 12

        1.   The Complaint alleges that state actors caused Plaintiffs' alleged injuries ................................ 13

        2.   The Complaint's reliance on outside statements does not establish causation ..................... 17

        3.   Plaintiffs' references to other states do not link harm to Tyler's software and are irrelevant ............ 19

    C.   Plaintiffs' failure-to-warn claim also fails ..................................... 22

    II.  Plaintiffs' Class Claim Against Tyler Fails As A Matter of Law.................... 26

**TABLE OF CONTENTS**
(continued)

CONCLUSION ....................................... 32

CERTIFICATE OF COMPLIANCE ......................... 34

CERTIFICATE OF SERVICE ............................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Am. Elec. Power, Inc.*,
  No. 2:12-CV-00243, 2012 WL 3260406 (S.D.W. Va. Aug.
  8, 2012) ............................................... 30

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................... 30

*Anderson v. Lab'y Corp. of Am. Holdings*,
  No.1:17cv193, 2023 WL 1970953 (M.D.N.C. Feb. 13,
  2023) ................................................. 31

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................... 3, 7, 31

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................... 7

*Blackwell v. Hatley*,
  202 N.C. App. 208, 688 S.E.2d 742 (2010) ........... 8, 30

*Bryant v. Adams*,
  116 N.C. App. 448, 448 S.E.2d 832 (1994) .............. 22

*Cahoon v. Edward Orton, Jr. Ceramic Found.*,
  No. 2:17-CV-63-D, 2020 WL 918753 (E.D.N.C. Feb. 24,
  2020) ................................................. 25

*City of High Point, N. Carolina v. Suez Treatment
  Sols. Inc.*,
  485 F. Supp. 3d 608 (M.D.N.C. 2020) ............... 23, 24

*Derwort v. Polk Cnty.*,
  129 N.C. App. 789, 501 S.E.2d 379 (1998) ............... 8

*Driver v. Marion Cnty. Sheriff*,
  No. 1-14-cv-2076, ECF No. 38 (S.D. Ind. May 13,
  2015) ............................................. 20, 21

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) .......................... 30

-iii-

*Finch v. Covil Corp.*,
  388 F. Supp. 3d 593 (M.D.N.C. 2019), *aff'd*, 972
  F.3d 507 (4th Cir. 2020)................................24

*Fontenot v. TASER Int'l, Inc.*,
  No. 3:10CV125-RJC-DCK, 2011 WL 2535016 (W.D.N.C.
  June 27, 2011).........................................25

*Gariety v. Grant Thornton, LLP*,
  368 F.3d 356 (4th Cir. 2004)...........................26

*General Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982)....................................29

*Harris v. Daimler Chrysler Corp.*,
  180 N.C. App. 551, 638 S.E.2d 260 (2006)...............11

*King v. Durham Cnty. Mental Health Developmental*
  *Disabilities & Substance Abuse Auth.*,
  113 N.C. App. 341, 439 S.E.2d 771 (1994)................9

*Kirkman v. N. Carolina R.R. Co.*,
  220 F.R.D. 49 (M.D.N.C. 2004)......................28, 29

*Lamb v. Styles*,
  263 N.C. App. 633, 824 S.E.2d 170 (2019)...........12, 20

*Layani v. Ouazana*,
  No. CV ELH-20-420, 2021 WL 805405 (D. Md. Mar. 3,
  2021)..................................................26

*Lienhart v. Dryvit Sys., Inc.*,
  255 F.3d 138 (4th Cir. 2001)...........................29

*Nomani v. Qarni*,
  No. 1:22-cv-1065, 2023 WL 4203438 (E.D. Va. June
  27, 2023)..............................................17

*Painter's Mill Grille, LLC v. Brown*,
  716 F.3d 342 (4th Cir. 2013).........................7, 17

*Parks Auto. Grp., Inc. v. Gen. Motors Corp.*,
  237 F.R.D. 567 (D.S.C. 2006)...........................30

*Pennsylvania Nat'l Mut. Cas. Ins. Co. v. STIHL Inc.*,
  No. 7:23-CV-00018-M, 2023 WL 5029142 (E.D.N.C. Aug.
  7, 2023)................................................22

*Presnell v. Snap-On Securecorp, Inc.*,
  583 F. Supp. 3d 702 (M.D.N.C. 2022).................23, 24

*Scadden v. Holt*,
  222 N.C. App. 799, 733 S.E.2d 90, 95 (2012)............11

*Stein v. Asheville City Bd. Of Educ.*,
  360 N.C. 321, 626 S.E.2d 263 (2006)....................11

*Stone St. Partners, LLC v. Williamson*,
  No. 17 CVS 15265, 2018 WL 3619518 (N.C. Super. July
  26, 2018)..............................................11

*Talley v. Pride Mobility Prod. Corp.*,
  259 N.C. App. 734, 816 S.E.2d 533 (2018)...............25

*Thorn v. Jefferson Pilot Life Ins.*,
  445 F.3d 311 (4th Cir. 2006)...........................30

*Wal-Mart Stores, Inc., v. Dukes*,
  564 U.S. 338 (2011)....................................29

*Williams v. Potomac Fam. Dining Grp. Operating Co.*,
  No. GJH-19-1780, 2020 WL 4207589 (D. Md. July 22,
  2020)..................................................26

*Williamson v. Liptzin*,
  141 N.C. App. 1, 539 S.E.2d 313 (2000).................12

**Statute**

N.C. Gen. Stat. § 99B-5(a) ...........................22, 24

**Other Authorities**

24 N.C. Index 4th Products Liability § 14 ................25

Michelle Boudin, '*It's kind of like the rapture*';
  *Concerns ahead of changes at the court*, WDNC
  Charlotte (Feb. 8, 2023), https://bit.ly/3QJiFkt........18

Restatement (Second) of Torts § 315 ......................11

**<u>Rule</u>**

M.D.N.C. Local Rule 23.1(d) ..............................26

**INTRODUCTION**

Plaintiffs' First Amended Complaint makes broad, conclusory statements about the North Carolina eCourts system and Defendants. Pointing to a handful of matters out of tens of thousands that were migrated over to the electronic filing system, Plaintiffs claim systemic problems with a software implementation that purport to rise to the level of constitutional violations, legal negligence, and class actions allegations. But Plaintiffs, either as individuals or as class representatives, have no plausible factual allegations that would support a claim for relief against Defendant Tyler Technologies, Inc. ("Tyler").

The only claim against Tyler is a claim for negligence related to the eCourts software Tyler provided. Plaintiffs' new complaint highlights why this claim fails as a matter of law.

First, Tyler has no legal duty to protect Plaintiffs from their alleged injuries because there is no special relationship between Tyler and Plaintiffs. Tyler's role is limited to that of a software vendor. Plaintiffs' own complaint attributes their alleged injuries to third

-1-

parties that use that software, not Tyler. Well-settled law holds that Tyler has no duty to protect Plaintiffs from the actions of these third parties.

Second, even if a duty did exist, Plaintiffs cannot show proximate cause as a matter of law. Plaintiffs' own allegations demonstrate the multiple, intervening factors related to the alleged arrests or detentions that have nothing to do with Tyler. These intervening factors break the causal chain and defeat the claim against Tyler as a matter of law.

Plaintiffs try to shore up their negligence claim against Tyler by adding a cursory failure-to-warn theory. This theory also fails on duty and causation. Nor have Plaintiffs pleaded allegations that could show that the eCourts software was a dangerous product or that any inadequate warnings caused their alleged injuries.

Problems with the individual claims aside, Plaintiffs' class allegations as to Tyler fail as a matter of law and should be dismissed. Plaintiffs cannot satisfy the Rule 23 requirements of commonality, typicality, and predominance because of the individualized inquiries that would be necessary to determine each class member's entitlement to

-2-

recovery. Perhaps most importantly, an individualized mini-trial will be required for each purported class member to determine whether that individual's arrest or detention was unlawful, which is needed to prove injury. There is no discovery that could change the need for these individualized inquiries, making dismissal of the class claims appropriate on the pleadings.

Armed with "nothing more than conclusions," Plaintiffs cannot "unlock the doors of discovery" for their individual or class claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). This case should be dismissed.

## BACKGROUND

Plaintiffs filed their original complaint on May 23, 2023. ECF No. 1. After Defendants moved to dismiss, Plaintiffs filed the First Amended Complaint ("Complaint") on October 27, 2023. The Complaint adds seven new Plaintiffs and three new Defendants.

### A. North Carolina transitioned its court recordkeeping system from a paper system to an electronic system.

Prior to modernizing its court system, North Carolina experienced recordkeeping difficulties with its paper-based system. Compl. ¶ 43.

After years of work and review, and bids by multiple vendors, a selection committee chose Tyler to implement an electronic system that might remedy the recordkeeping deficiencies in the North Carolina court system. Compl. ¶¶ 54, 57. Under the contract that Tyler ultimately signed with the North Carolina Administrative Office of the Courts ("NCAOC"), Tyler agreed to license an "eCourts" software package that included a case-management system (commonly known as "Odyssey"), and a software application for requesting and processing warrants ("eWarrants"). Compl. ¶¶ 59-60.

Tyler's role is limited to that of a software vendor; Tyler licenses its proprietary software, implements that software so that its clients can operate it in live production, and provides maintenance and support to triage software performance issues and answer end-user questions. Compl. ¶¶ 59-60; Compl., ECF No. 30-2 at 6-15, 19-20. Tyler is not responsible for the day-to-day use of the software, nor does it generate or own the data entered into, stored in, or processed through the software. Compl. ¶¶ 59-60; *see also* Compl., ECF No. 30-2 at 6-15, 19-20. Those responsibilities are the purview of its clients' end-users,

-4-

such as the law enforcement and court officials who put records into the system and update those records with real-time information. Compl. ¶¶ 12-23, 59-60, 237-38; *see also* Compl., ECF No. 30-3 at 3-4.

During the Odyssey implementation phase in the four pilot counties, Tyler and the NCAOC worked together to resolve software issues while the pilot counties transitioned around 50,000 paper-based records into the electronic case management system. Compl. ¶¶ 71-72; *see also* Compl., ECF No. 30-3 at 4-5. Following the pilot program, Mecklenburg County went into live production on Odyssey on October 9, 2023. Compl. ¶ 78. Out of thousands of cases, the Complaint identifies nine people who allegedly experienced arrest or detention issues across these five counties.

## B. Nine plaintiffs allege that they were unlawfully arrested or detained.

Plaintiffs' Complaint alleges that North Carolina's "transition[] [of] its courts system from paper to digital" has resulted in "hundreds of people" being "unlawfully detained." Compl. ¶ 1. But the Complaint references only nine individuals. And despite Plaintiffs' allegations about "statewide" conduct, the Complaint focuses on third-party

-5-

conduct from only five counties, two of which are not named as Defendants. Compl. ¶¶ 32-40.

Six Plaintiffs are Wake County residents who were arrested or detained by or because of alleged activity by Wake County state actors. *See e.g.*, Compl. ¶¶ 93, 10–107, 118 (alleging that an "employee of the Wake County Sheriff's Office informed" a Johnston County Sheriff's deputy that Plaintiff Rotesha McNeil had a valid warrant for arrest), 127-30, 138, 147-48.

Outside of Wake County, Plaintiff Paulino Castellanos was arrested and detained by the Lee County Sheriff's Office – another pilot county. Compl. ¶ 151.

Plaintiff Allen Sifford was arrested by unidentified state actors in Gaston County. Compl. ¶ 175. Plaintiff Robert Lewis is a resident of Guilford County who alleges that "local law enforcement" arrested and detained him. *See* Compl. ¶¶ 163-64.

Plaintiffs have not added the arresting actors or agencies from any other county besides Wake and Lee as defendants.

## STATEMENT OF THE QUESTIONS PRESENTED

1. Whether Plaintiffs' negligence claim against Tyler fails to state a claim for relief.

2. Whether Plaintiffs' class action allegations against Tyler fail to state a claim for relief.

## ARGUMENT

A complaint cannot survive a Rule 12(b)(6) motion to dismiss if it does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Indeed, "[i]t is now well established that mere conclusory and speculative allegations are not sufficient to withstand a motion to dismiss." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

Plaintiffs' threadbare recital of the elements of a negligence claim lacks the factual allegations necessary to sustain a claim under North Carolina law against Tyler. Their class action allegations fare no better. This Court should dismiss the Complaint with prejudice.

–7–

## I. Plaintiffs' Negligence Claim Fails As A Matter Of Law.

Plaintiffs' negligence claim against Tyler fails as a matter of law. To survive a motion to dismiss, a plaintiff must allege sufficient factual allegations to establish each element of negligence, including duty and causation. *Derwort v. Polk Cnty.*, 129 N.C. App. 789, 791, 501 S.E.2d 379, 381 (1998); *Blackwell v. Hatley*, 202 N.C. App. 208, 212, 688 S.E.2d 742, 746 (2010). Plaintiffs have not adequately alleged that Tyler owed a duty to Plaintiffs or that Tyler proximately caused Plaintiffs' alleged injuries. Tacking on a failure-to-warn claim does not remedy those deficiencies. And a failure-to-warn claim requires Plaintiffs to plead additional elements that are lacking here.

### A. Tyler does not owe a duty to Plaintiffs.

If a defendant owes no duty to the plaintiff, then there can be no breach and "no liability for negligence." *Derwort*, 129 N.C. App. at 791, 501 S.E.2d at 381. Tyler owed no duty to protect Plaintiffs from the harm alleged – arrest and detention by state actors.

In general, a defendant has no duty to protect a plaintiff against harm from third persons unless there is a

-8-

recognized special-relationship exception. *King v. Durham Cnty. Mental Health Developmental Disabilities & Substance Abuse Auth.*, 113 N.C. App. 341, 345, 439 S.E.2d 771, 774 (1994). In North Carolina, these special relationships are limited to a few exceptions, such as parent-child or landowner-licensee. *Id.* at 346, 439 S.E.2d at 774. Otherwise, there is no duty related to the actions of third parties. *Id.* at 345-46, 439 S.E.2d at 774.

Plaintiffs have not pleaded a legally recognized duty of care, nor can they. Plaintiffs broadly allege that Tyler voluntarily assumed a duty "to ensure that its eCourts system ... would operate properly." Compl. ¶¶ 187-88. Plaintiffs also allege that Tyler's contractual obligations to NCAOC are somehow owed to Plaintiffs. Compl. ¶ 188. Tyler is unaware of any cases recognizing a special-relationship duty under similar circumstances.

Tyler is a software vendor that licensed the software and assisted with its implementation so that it could be used in live production by various government authorities. Compl. ¶ 60. As the Complaint alleges, it was those authorities that use the software for their daily operations, input data into the software, and act on the

-9-

inputs in the software. For example, the Complaint alleges that the government authorities are "responsible for ensuring that court papers are properly issued," Compl. ¶¶ 15, 21; and are obligated "to accurately enter data into Odyssey and eWarrants," "to identify technological defects" that allegedly led to invalid warrants appearing valid, and "to appropriately train staff" to use eCourts, Compl. ¶ 237. Ultimately, it was government authorities who allegedly arrested or detained Plaintiffs. All these actions are outside of Tyler's control.

Plaintiffs' claim, then, is that Tyler had a legal duty to protect Plaintiffs against harm from third persons. Compl. ¶ 187. But because there is no special-relationship duty owed by Tyler to protect Plaintiffs from these third-party actions, Plaintiffs' negligence claim fails as a matter of law.

Nor can Plaintiffs argue that there should be a special-relationship exception created here. North Carolina courts "recognize that the special relationship exception is in derogation of the general principle that '[t]here is no duty so to control the conduct of a third person so as to prevent him from causing'" harm to another. *Stone St.*

-10-

*Partners, LLC v. Williamson*, No. 17 CVS 15265, 2018 WL
3619518, at *7 (N.C. Super. July 26, 2018) (quoting
Restatement (Second) of Torts § 315, which surveys North
Carolina's reported decisions on the exception). Courts
cannot recognize new special-relationship exceptions based
on an alleged failure to prevent harm caused by third
parties. *See Stein v. Asheville City Bd. Of Educ.*, 360 N.C.
321, 330, 626 S.E.2d 263, 269 (2006); *Stone St.*, 2018 WL
3619518, at *7.

North Carolina also does not appear to have recognized
"the existence of a special relationship in circumstances
other than those in which the plaintiff was alleged to have
suffered a physical injury." *Stone St.*, 2018 WL 3619518, at
*6 (surveying North Carolina decisions). The special-
relationship cases turn on both the ability of a third
party to control the tortfeasor, and "knowledge of the
person's propensity for violence." *Harris v. Daimler
Chrysler Corp.*, 180 N.C. App. 551, 556, 638 S.E.2d 260, 265
(2006); *see also Scadden v. Holt*, 222 N.C. App. 799, 806,
733 S.E.2d 90, 95 (2012) (dismissing negligence claim that
alleged special-relationship duty where allegations did not
show that the defendant knew or should of individual's

-11-

violent propensities). Plaintiffs do not allege any physical injuries here. That provides an independent reason to conclude that no duty exists.

The failure to plead a recognized special-relationship duty is sufficient standing alone to dismiss the Complaint as to Tyler.

**B.  The Complaint does not plausibly allege a causal nexus between Tyler's conduct and Plaintiffs' alleged injuries.**

Plaintiffs' Complaint also fails for the independent reason that Plaintiffs cannot establish the required element of causation.

To state a negligence claim, the defendant's act must be the proximate cause of the plaintiff's alleged injury. *Lamb v. Styles*, 263 N.C. App. 633, 645, 824 S.E.2d 170, 179 (2019); *Williamson v. Liptzin*, 141 N.C. App. 1, 10, 539 S.E.2d 313, 319 (2000). A cause is not proximate if there are intervening causes or the relationship between cause and effect is too attenuated. *Williamson*, 141 N.C. App. at 10-11, 539 S.E.2d at 319-20.

-12-

### 1. The Complaint alleges that state actors caused Plaintiffs' alleged injuries.

The allegations here point to the conduct of many state actors — not Tyler. State actors arrested and detained Plaintiffs. And the responsibility for entering pertinent information into the eCourts system was the responsibility of the end-users who operate the software day-to-day. *See, e.g.*, Compl. ¶¶ 15-16, 21-22, 237-38. Tyler's responsibilities as the software vendor were contained in the four corners of its contract for licensing, implementing, and supporting the technology. *See* Compl. ¶¶ 59-61; ECF No. 30-2. The Complaint contains no well-pleaded allegation that any action by Tyler caused Plaintiffs' harm.

Plaintiffs' generalized allegations acknowledge that each county's Judicial Services Divisions are "responsible for all criminal process including" warrants and processing any court documents related to "warrant services." *See* Compl. ¶¶ 16, 22. And Plaintiffs also acknowledge that the Clerk of Court for Wake and Lee County are responsible for "scanning and filing documents; checking boxes on electronic interfaces; [and] relating the contents of an

-13-

order." Compl. ¶ 240. These are the actions that Plaintiffs allege caused their injuries.

In Mr. Castellanos case, for example, Plaintiffs allege that Mr. Castellanos' detention was prolonged because Defendant Thomas failed to "ensure the effective conversion of paper case files to eCourts." Compl. ¶ 238. Plaintiffs admit that Odyssey properly generated a case number for Mr. Castellanos when court staff input his information. Compl. ¶ 156. The transition to Odyssey thus allowed him to move for a bond reduction in the first place. Compl. ¶ 157.[1] The allegations do not tie the alleged harm to Tyler's conduct.

Plaintiff Lewis objects to the failure of unnamed state defendants to dissolve a restraining order in 2016 – long before eCourts was implemented. Compl. ¶ 162. Plaintiffs do not allege that Plaintiff Lewis was ever in a pilot county using eCourts, *see* Compl. ¶¶ 66, 161, only that unidentified officers arrested him and an unidentified

---

[1]     In the original complaint, Plaintiffs alleged that Mr. Castellanos' detention was prolonged because the state defendants did not have an electronic monitoring device available, which is not part of the Courts system. ECF. No. 1 ¶¶ 84-85. Plaintiffs have removed this reference, but they do not allege that it was Tyler's responsibility to ensure that state defendants could manage their separate electronic monitoring system or that there was an electronic monitoring device available. *See* Compl. ¶ 158.

District Attorney stated the arrest was made in "error." Compl. ¶¶ 164, 167. No allegation ties this to eCourts.

Plaintiff Spruill alleges that he was detained because of an invalid warrant. Compl. ¶¶ 93, 98. Plaintiffs allege that the arresting officers contacted the Wake County Sheriff's Office to correct the issue, but that the warrant status was not updated. *See* Compl. ¶¶ 96-98. The Complaint does not allege that this failure was because of an eCourts' defect. Instead, the Complaint attributes this to user error because he was released once the Wake County Clerk updated his file in eCourts. Compl. ¶¶ 101, 237.

Likewise, Plaintiff McNeil attributes her detention to state actors entering a failure-to-appear charge in error, Compl. ¶ 114, which has nothing to do with Tyler. The Complaint alleges that Odyssey reflected that Ms. McNeil's case was disposed after correction, Compl. ¶ 115, but an employee of the Wake County Sheriff's Office mistakenly informed them that the warrant was valid, Compl. ¶¶ 117-18. The Complaint then alleges that Wake County officials later conceded that the warrant "should have been recalled from the electronic system." Compl. ¶ 121. Again, there is no allegation of harm caused by Tyler.

Similarly, the Complaint alleges that the remaining Plaintiffs' injuries resulted from state actors — some unidentified — not because of any actions controlled by Tyler. *See, e.g.*, Compl. ¶¶ 124-33 (alleging Ms. Robertson was arrested because her court date was "Reset by Court," even when her continuance "was reflected in Odyssey"), ¶¶ 134-41 (alleging Mr. Jallal's case was "incorrectly designated" by unidentified actors but that no one entered the dismissal document into Odyssey), ¶¶ 142-49 (alleging Mr. Bradley's paperwork was submitted but not that it was filed and noting that Odyssey was updated to reflect dismissal), ¶¶ 168-76 (alleging that unidentified officers arrested Mr. Sifford because his warrant "appeared 'active'"), ¶¶ 211-16 (attributing the failure to confirm the validity of Ms. Chaplin's warrant to Sheriff Rowe and the arresting officers).

In short, Plaintiffs attribute their alleged injuries to third-party state actors that Tyler does not control. There are no well-pleaded allegations that would demonstrate a causal nexus between Tyler and the injuries Plaintiffs allege.

-16-

## 2. The Complaint's reliance on outside statements does not establish causation.

The Complaint tries to cure these pleading defects by relying on outside statements related to eCourts. But there are no well-pleaded allegations supporting these statements, making them no more than innuendo and speculation insufficient to state a claim as a matter of law. *See Painter's Mill Grille*, 716 F.3d at 350; *Nomani v. Qarni*, No. 1:22-cv-1065, 2023 WL 4203438, at *2 (E.D. Va. June 27, 2023).

For example, Plaintiffs allege that Defendants NCAOC had unspecified internal communications concerning "179 warrants [that] were 'inadvertently deleted'." Compl. ¶ 75. But Plaintiffs do not allege who deleted the warrants, and do not allege that the deletion of warrants is done spontaneously by software – as opposed to inadvertent entries by the software *users*. Plaintiffs also allege no details about these supposedly deleted warrants, including who the warrants were for, whether the issue was resolved, or whether any state actors arrested or detained anyone based on these warrants. *See* Compl. ¶¶ 73-76. Thus, there

-17-

is nothing to tie this statement to any claim in the Complaint.

Plaintiffs also highlight Judge Trosch's email to court personnel about an "integration issue" in eCourts. Compl. ¶ 80. But the face of the email shows that this issue is a problem only if magistrates and clerks do not update the system, or if the magistrate fails to look under the correct tab. *See* ECF No. 30-4. And the Complaint has no allegations tying this "integration issue" to any alleged harm.

Finally, Plaintiffs quote Mecklenburg County's chief information officer stating that "Tyler Technologies continued to struggle with defects" that delayed the rollout. Compl. ¶ 63. But the Complaint omits that this statement was made in August 2021, long before eCourts went live in any county and long before any of the events alleged in the Complaint. *See* Michelle Boudin, '*It's kind of like the rapture'; Concerns ahead of changes at the court*, WDNC Charlotte (Feb. 8, 2023), https://bit.ly/3QJiFkt. The Complaint has no allegations tying this statement to either the live operation of eCourts or any events alleged in the Complaint.

-18-

Plaintiffs also allege that sixty six people were detained in Mecklenburg County for two to three days following the launch of eCourts. Compl. ¶ 81. These allegations again lack any details, making them insufficient to support a claim. Equally important, the Complaint does not allege that Tyler was somehow responsible for these detentions. *See* Compl. ¶ 81. And tellingly, Plaintiffs have not added any Mecklenburg County plaintiffs or defendants.

These statements are unrelated to Plaintiffs and the events alleged in the Complaint. Plaintiffs cannot use them to get around their failure to plead causation as to Tyler.

### 3. **Plaintiffs' references to other states do not link harm to Tyler's software and are irrelevant**.

Unable to manufacture facially plausible allegations tying Tyler to the harm alleged here, Plaintiffs point to other states where (according to Plaintiffs) there were issues during the transition to a Tyler system. *See* Compl. ¶ 86. But even if Plaintiffs had accurately described the implementations in these other states (and they have not), those examples cannot establish proximate cause for *these* Plaintiffs in North Carolina. To survive the pleading stage,

-19-

the allegations must explain "how Defendants' conduct was the proximate cause of *Plaintiffs'* damages." *Lamb*, 263 N.C. App. at 646, 824 S.E.2d at 180 (emphasis added).

Beyond that dispositive defect, these allegations about other software implementations are irrelevant for other reasons.

None of Plaintiffs' examples of other "harms" link Tyler's software to the alleged errors. Indeed, many of Plaintiffs' own examples decouple Tyler's actions from any alleged errors.

For example, Plaintiffs fault a sheriff in Indiana for acquiring "a jail-management software that was incompatible with Odyssey." Compl. ¶ 86g. An allegation about the acquisition of a different software product has nothing to do with Tyler. And the referenced complaint focuses not only on non-Tyler software, but also an individualized spot-check policy that has no relevance here. *See* Complaint, *Driver v. Marion Cnty. Sheriff*, No. 1-14-cv-2076, ECF No. 38 (S.D. Ind. May 13, 2015) ("Indiana Compl.") ¶¶ 100, 102, 108.[2] Tyler was not a defendant in

---

[2]    A copy of the Indiana Complaint is submitted along with this brief as Exhibit A.

that case or settlement. *See id*. An Indiana sheriff, deploying a different software and an individualized spot-check policy, has nothing to do with Tyler's software or actions in North Carolina.

Plaintiffs' other examples similarly deal with different state actors implementing different systems, sometimes more than ten years ago. *See* Compl. ¶ 86. Any alleged problems with transitions in California, Texas, and Tennessee have nothing to do with software configured for North Carolina, deployed in North Carolina and operated by North Carolina officials. Compl. ¶¶ 60, 64; Compl., ECF No. 30-2; Compl., ECF No. 30-3.

The Complaint's misplaced reliance on these irrelevant allegations cannot remedy the fact that the Complaint lacks any facially plausible allegations linking Plaintiffs' alleged harm to Tyler, rather than Plaintiffs' own conduct or the actions of third parties. Plaintiffs' failure to plead causation provides a separate, independent basis to dismiss the claim against Tyler with prejudice.

**C.  Plaintiffs' failure-to-warn claim also fails.**

Plaintiffs also now try to allege a failure-to-warn theory of liability in a single, conclusory paragraph. Compl. ¶ 194. This claim also fails for several reasons.

First, to successfully plead a failure-to-warn claim based on negligence, a plaintiff must plausibly allege all of the essential elements of a negligence claim. *Bryant v. Adams*, 116 N.C. App. 448, 465, 448 S.E.2d 832, 841 (1994). Plaintiffs' failure to adequately plead duty and causation thus dooms this claim as well. *Supra* Part I.A-B.

Second, a failure-to-warn theory is limited to products that are "unreasonably dangerous" or "pose a substantial risk of harm." N.C. Gen. Stat. § 99B-5(a). Not only must a plaintiff allege that the defendant's negligence caused the injury, but she must specifically plead that the product posed such a danger that the defendant had to issue a warning in the first place, and that the *failure to warn* caused the injury. *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. STIHL Inc.*, No. 7:23-CV-00018-M, 2023 WL 5029142, at *3 (E.D.N.C. Aug. 7, 2023) (cleaned up).

For example, this Court has dismissed failure-to-warn claims when the plaintiff failed to plausibly allege that

-22-

the failure to warn "played any role" in the plaintiff's decision to use the product and only made conclusory allegations that it caused the plaintiff's harm. *See, e.g.*, *Presnell v. Snap-On Securecorp, Inc.*, 583 F. Supp. 3d 702, 710 (M.D.N.C. 2022); *City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 632–33 (M.D.N.C. 2020).

The Complaint here contains no allegations about what warnings were provided or how those warnings were inadequate. Indeed, the only allegation is simply that Tyler "provided inadequate warning." Compl. ¶ 194. Conclusory allegations that a warning was deficient are insufficient to plausibly state a claim for relief and warrant dismissal. *See Presnell*, 583 F. Supp. 3d at 709-10.

Third, the Complaint does not plausibly allege that a failure to warn caused Plaintiffs' injuries. Instead, the Complaint makes only the conclusory statement that Tyler "acted unreasonably in failing to warn," and that this failure was a proximate cause of Plaintiffs' harms. Compl. ¶ 194. This Court recently dismissed a failure-to-warn claim where the complaint relied on nearly identical, generalized allegations. *See Suez Treatment Solutions*, 485

-23-

F. Supp. 3d at 632-33. Because the Complaint "fails to demonstrate more than a sheer possibility that a defendant has acted unlawfully," the Court should dismiss this claim. *See id.*

Nor does the Complaint allege how a failure to warn could have affected the Plaintiffs' alleged unlawful arrests and detentions. With no plausible allegation that a failure to warn "played any role" in causing Plaintiffs' harm, this claim should be dismissed. *See Presnell*, 583 F. Supp. 3d at 710.

Finally, the Complaint does not plausibly allege that eCourts posed a substantial risk of harm without an adequate warning or that North Carolina courts have ever required a similar warning for software or technology products. In North Carolina, a failure-to-warn claim applies only to products that are "*unreasonably* dangerous" or that pose a "*substantial* risk of harm." *See, e.g.*, N.C. Gen. Stat. § 99B-5(a) (emphasis added). This is a high bar and this showing has been met by products like asbestos, equipment explosions, and lethal Tasers. *Finch v. Covil Corp.*, 388 F. Supp. 3d 593, 604 (M.D.N.C. 2019), *aff'd*, 972 F.3d 507 (4th Cir. 2020); *Talley v. Pride Mobility Prod.*

-24-

*Corp.*, 259 N.C. App. 734, 816 S.E.2d 533 (2018); *Fontenot*
*v. TASER Int'l, Inc.*, No. 3:10CV125-RJC-DCK, 2011 WL
2535016, at *2 (W.D.N.C. June 27, 2011). The Complaint does
not allege facts to support why this cause of action should
be expanded to apply to software or technology products.
And as discussed above, *supra* Part I.B, far from showing
that eCourts was "unreasonably dangerous" or posed a
"substantial risk" at the time it left Tyler's control, the
Complaint alleges that actions by users of the eCourts
software caused Plaintiffs' harms.

     The Complaint also lacks allegations of how a
substantial risk was created *by* an inadequate warning. Any
failure to properly enter information into eCourts is a
generalized, apparent risk for which Tyler is not liable.
*See, e.g.*, *Cahoon v. Edward Orton, Jr. Ceramic Found.*, No.
2:17-CV-63-D, 2020 WL 918753, at *8 (E.D.N.C. Feb. 24,
2020) (holding a seller or manufacturer cannot be held
liable for "generalized hazards"); 24 N.C. Index 4th
Products Liability § 14 (noting a seller or manufacturer
cannot be liable if the harm is an "open and obvious risk
or a risk that is a matter of common knowledge" and
collecting authority).

Any one of these reasons, standing alone, is sufficient to dismiss the failure-to-warn claim against Tyler.

## II. Plaintiffs' Class Claim Against Tyler Fails As A Matter of Law.

Plaintiffs' failure to state a negligence claim means the entire Complaint should be dismissed as to Tyler. But, at a minimum, the class allegations against Tyler should be dismissed.

Under Federal Rules of Civil Procedure 12(b)(6) and 23, dismissal of class claims is proper at the pleadings stage "when it is clear from the face of the complaint that ... the plaintiff has failed to properly allege facts sufficient to make out a class or could establish no facts to make out a class." *Layani v. Ouazana*, No. CV ELH-20-420, 2021 WL 805405, at *39 (D. Md. Mar. 3, 2021) (cleaned up). "In other words, in such circumstances a court applies the familiar standard embodied in Rule 12(b)(6) to determine whether the pleadings plausibly allege a class." *Id.*; *Williams v. Potomac Fam. Dining Grp. Operating Co.*, No. GJH-19-1780, 2020 WL 4207589, at *12 (D. Md. July 22, 2020); *see also Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004) (plaintiffs bear the burden to demonstrate class-wide relief); LR 23.1(d).

It is clear from the face of the Complaint that Plaintiffs cannot satisfy Rule 23 for the proposed Rule 23(b)(3) classes against Tyler. The individualized mini-trials necessary to determine class membership defeat commonality, typicality, predominance, and ascertainability.

As outlined in Tyler's opposition to class certification, ECF No. 60 ("Class Opp."), the only injury Plaintiffs allege is detention or arrest that is "unlawful" or "wrongful." *Id.* at 10; Compl. ¶¶ 1, 193. As a result, to prove injury – a required element of negligence – each purported class member will have to make an individualized showing that is not amenable to class-wide resolution. Class Opp. 11-13. These individualized showings will require the Court to consider, for each purported class member:

- whether the individual was arrested or detained;
- the circumstances of that arrest or detention, including which state actors or agencies participated in that arrest or detention;
- for how long the individual was arrested or detained;

- whether the arrest or detention was justified;

- whether the length of the detention was justified;

- whether information in the eCourts system led to any improper arrest or detention;

- and, if so,
    - what information was entered into the eCourts system,
    - by whom,
    - whether there were any errors in that data entry, and
    - whether the design or functionality of the eCourts system, in a way attributable to Tyler, contributed in any way to the alleged injury.

These are all individualized inquiries that are not subject to class treatment. *See Kirkman v. N. Carolina R.R. Co.*, 220 F.R.D. 49, 52-53 (M.D.N.C. 2004); Class Opp. 10-13. The need to make these individualized showings will require "mini-trials" for each class member.

As a matter of law, then, Plaintiffs cannot satisfy the Rule 23(a) elements of commonality or typicality. Class Opp. 14-18. Commonality requires more than alleging the

same cause of action; a plaintiff must show that class members have "suffered the same injury." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011). "Common questions must be dispositive and over-shadow other issues." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (cleaned up). Similarly, typicality means that class representative must "possess the same interest and suffer the same injury as the class members." *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (cleaned up). Even if Plaintiffs could allege a cognizable duty and causal relationship, whether negligence occurred would require an individualized inquiry. Furthermore, any damages would vary based on whether a plaintiff was arrested or detained, who detained them, how long they were detained, and what damages (if any) they sustained as a result of the arrest or detention. *See Kirkman*, 220 F.R.D. at 52-53.

These individualized issues necessarily mean that Plaintiffs cannot satisfy the heightened showing for predominance under Rule 23(b)(3). Class Opp. 18-20. Class questions must "predominate" over individualized issues and a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy."

Fed. R. Civ. P. 23(b)(3). Common issues cannot predominate when issues like causation and damages require individualized inquiries. *See Thorn v. Jefferson Pilot Life Ins.*, 445 F.3d 311, 327-29 (4th Cir. 2006); *Parks Auto. Grp., Inc. v. Gen. Motors Corp.*, 237 F.R.D. 567, 571-72 (D.S.C. 2006); *Abbott v. Am. Elec. Power, Inc.*, No. 2:12-CV-00243, 2012 WL 3260406, at *4 (S.D.W. Va. Aug. 8, 2012). "Given the greater number of questions peculiar to the" class members, a class action is not superior to individual or smaller joint actions. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).

These failings illustrate another flaw that independently warrants dismissal: there is not a readily ascertainable way to identify members of Plaintiffs' proposed class. Class Opp. 21-25. A class is not ascertainable if "extensive and individualized fact-finding or 'mini-trials,'" are necessary to objectively identify class members. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (citing cases). Here, class membership turns on whether an arrest or detention was wrongful or unlawful, but there is no list anywhere, in the records of any government body or defendant, that lists individuals

-30-

who have been arrested or detained "wrongfully" or "unlawfully." The only potential lists are of individuals who have been arrested or detained. But it would take individualized mini-trials for every single potential class member to determine whether the arrest or detention was wrongful or unlawful. *See Anderson v. Lab'y Corp. of Am. Holdings*, No.1:17cv193, 2023 WL 1970953, at *14 (M.D.N.C. Feb. 13, 2023). As a result, Plaintiffs cannot establish ascertainability as a matter of law.

Because Plaintiffs' allegations fail as a matter of law, there is no need to await class discovery to dismiss Plaintiffs' class claim against Tyler. There is no evidence Plaintiffs could introduce that would eliminate the need for these individualized mini-trials. *See* Class Opp. 25-31. The doors to discovery are closed. *See Iqbal*, 556 U.S. at 678-79.

Plaintiffs cannot satisfy the Rule 23 requirements, and their class claim against Tyler should be dismissed with prejudice.

## CONCLUSION

For all these reasons, Tyler requests that Plaintiffs'
Complaint be dismissed as to Tyler with prejudice.

-32-

This 16th day of January, 2024.

s/ Gregory L. Skidmore
Gregory L. Skidmore
N.C. Bar No. 35571
gskidmore@robinsonbradshaw.com

H. Hunter Bruton
N.C. Bar No. 50601
hbruton@robinsonbradshaw.com

Garrett A. Steadman
N.C. Bar No. 55449
gsteadman@robinsonbradshaw.com

**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone:  (704) 377-2536
Facsimile:  (704) 378-4000

*Attorneys for Defendant Tyler Technologies, Inc.*

-33-

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief contains fewer than 6,250 words (not counting the portions of the brief excluded by Local Rule 7.3(d)(1)) as reported by the word-processing software.

This 16th day of January, 2024.

s/ Gregory L. Skidmore

Gregory L. Skidmore

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed using the Court's e-filing system, which will automatically and electronically notify the following CM/ECF-registered counsel of record:

Gagan Gupta
ggupta@tinfulton.com

Abraham Rubert-Schewel
schewel@tinfulton.com

Zachary William Ezor
zezor@tinfulton.com
Tin Fulton Walker & Owen PLLC
115 E. Main Street
Durham, NC 27701
Telephone: (919) 307-8400

A. Dami Animashaun
dami@animashaun.me
933 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (929) 266-3971

*Attorneys for Plaintiffs Timia Chaplin
And Paulino Castellanos, on behalf
Of themselves and all others similarly
Situated*

Robert Lane
robert.lane@wake.gov
Wake County Sheriff's Office
330 S. Salisbury Street
Raleigh, NC 27602
Telephone: (919) 856-5380

35

Roger Askew
roger.askew@wakegov.com
Senior Deputy County Attorney
Wake County Attorney's Office
P.O. Box 500
Raleigh, NC 27602
Telephone: (919) 856-5500

*Attorneys for Defendant Wake County Sheriff
Willie Rowe*


James R. Morgan Jr.
Jim.Morgan@wbd-us.com
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone:  (336)721-3710

*Attorney for Defendant Brian Estes*



This 16th day of January, 2024.


                                        s/ Gregory L. Skidmore
                                        Gregory L. Skidmore