IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
NO. 1:23-CV-00423

| | |
|---|---|
| TIMIA CHAPLIN; KEVIN SPRUILL; ROTESHA MCNEIL; QIANA ROBERTSON; YOUSEF JALLAL; MESSIEJAH BRADLEY; PAULINO CASTELLANOS; ROBERT LEWIS; and ALLEN SIFFORD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIE R. ROWE, in his official capacity as the Sheriff of Wake County; BRIAN ESTES, in his official capacity as the Sheriff of Lee County; THE OHIO CASUALTY INSURANCE COMPANY, as surety for the Sheriff of Wake County and as surety for the Sheriff of Lee County; TYLER TECHNOLOGIES, INC.; NORTH CAROLINA ADMINISTRATIVE OFFICE OF THE COURTS; RYAN BOYCE, in his official capacity as the Executive Director of the North Carolina Administrative Office of the Courts; BRAD FOWLER, in his official capacity as the eCourts Executive Sponsor and Chief Business Officer of the North Carolina Administrative Office of the Courts; BLAIR WILLIAMS, in his official capacity as the Wake County Clerk of Superior Court; SUSIE K. THOMAS, in her official capacity as the Lee County Clerk of Superior Court; SUSIE K. THOMAS, in her official capacity as the Lee County Clerk of Superior Court; JOHN DOE SURETY, as the surety for the Wake County Clerk of Superior Court and the Lee County Clerk of Superior Court; and DOES 1 THROUGH 20, INCLUSIVE,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

# DEFENDANT ROWE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

NOW COMES Defendant, WILLIE R. ROWE, in his official capacity as the Sheriff of Wake County ("Defendant Rowe"), and through undersigned counsel, and pursuant to Local Rule 7.1(d) and 7.2, hereby submits this Memorandum of Law in Support of its Motion to Dismiss First Amended Complaint filed contemporaneously with this memorandum. In support of the motion to dismiss, Defendant Rowe states the following:

## STANDARD OF LEGAL REVIEW

Rule 12(b) authorizes dismissal based on a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319 (1989). For the purposes of a defendant's motion to dismiss, the court must take Plaintiff's factual allegations as true. *Republican Party of North Carolina v. Martin*, 980 F.2d 943 (4th Cir. 1992) (citing *Jenkins v. McKeithen*, 395 U.S. 411 (1969)). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A motion to dismiss will be granted if there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Quraishi v. Shalala*, 962 F. Supp. 55 (D. Md. 1997) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990); and *Sutton v. Eastern Viavi Co*., 138 F.2d 959 (7th Cir. 1943) (holding that "no claim for relief is stated if the complaint pleads facts insufficient to show that a legal wrong has been committed, or omits an averment necessary to establish the wrong or fails so to link the parties with the wrong as to entitle the plaintiff to redress").

## NATURE OF THE CASE

Plaintiffs' First Amended Complaint ("Amended Complaint") seeks compensatory and special damages arising out of the following five (5) Causes of Action: (1) a Negligence claim against Defendant Tyler Technologies, Inc. only [Claim I, DE 30, ¶¶ 185-194]; (2) a Negligence claim against Defendant Rowe, in his official capacity as the Sheriff of Wake County, and the Sheriff of Lee County, Brian Estes, in his official capacity ("Defendant Estes") (together, "Sheriff Defendants") [Claim II, DE 30, ¶¶ 195-201]; (3) a 42 U.S.C. § 1983 claim against Defendant Rowe only for alleged violation(s) of federal civil rights [Claim III, DE 30, ¶¶ 202 - 218]; (4) a Surety Bond claim against Sheriff Defendants based on Claims II & III [Claim IV, DE 30, ¶¶ 219 – 227]; and (5) a Surety Bond claim against the Wake County Clerk of Court and Lee County Clerk of Court (together, "Clerk Defendants") [Claim V, DE 30, ¶¶ 228-241]. Plaintiffs also seek Injunctive Relief against Sheriff Defendants, Defendant Boyce, and Defendant Fowler. [Sixth Claim for Relief, DE 30, ¶¶ 242 -251]. These claims arise out of the plaintiffs' arrests on what plaintiffs allege were warrants which were "resolved" but did not show as "resolved" in the newly established eWarrants system adopted in four (4) pilot counties which included Wake and Lee Counties.

## STATEMENT OF THE FACTS

Plaintiffs claim that the North Carolina state court's launch of a new "eCourts" electronic court filings "has caused people to spend days or weeks longer than necessary in jail. Others have been arrested multiple times on the same warrant— even after their charges have been dismissed by a judge." [DE 30, ¶ 3]. Plaintiffs bring this action against Defendant Rowe, the duly elected and serving Sheriff of Wake County, arising out of what plaintiffs claim was their wrongful detention as a result of outstanding but defective recalled or resolved warrants in the eCourts

system.

Plaintiffs allege that Defendant Rowe, as Sheriff, oversees the Judicial Services division of the Wake County Sheriff's Office and that the Judicial Services Division is tasked with protecting the Wake County Justice Center and Courthouse and is responsible for "ensuring that court papers are properly issued and that court cases are processed efficiently." [DE 30, ¶ 15]. Plaintiffs allege that the Judicial Services Division "also houses the Warrant unit." (DE 30, ¶ 16]. Plaintiffs further allege that in 2019 the North Carolina Administrative Office of the Courts ("NCAOC") contracted with defendant Tyler Technologies to, among other things, "develop eWarrants—an online warrant repository bespoke to North Carolina." [DE 30, ¶ 60(a)]. The rollout of the eCourts electronic court filings was to take five (5) years with four "pilot counties", which included Wake County. [DE 30, ¶¶ 62, 64].

Plaintiffs further alleged that after the launch on February 13, 2023 in the four pilot counties, "it soon became clear that eCourts was besieged by defects." [DE 30, ¶ 70]. The allegations of the Amended Complaint include some individuals spending days or weeks longer in jail than necessary, and some being arrested multiple times on the same warrant. [DE 30, ¶¶ 83, 84]. As it relates to Defendant Rowe, plaintiff Chaplin alleges that she was criminally charged in Wake County, was called to court in Wake County and failed to appear and was arrested on March 4, 2023 for failure to appear. [DE 30, ¶¶ 103-105]. Chaplin allegedly appeared in district court for a rescheduled court date during which the charges were dismissed and her case was designated in the Odyssey system as "resolved." [DE 30, ¶ 106]. Chaplin alleges she was rearrested on April 9, 2023 "because, although her case had been 'resolved,' Odyssey did not communicate that resolution to eWarrants, in contravention of the software's intended design. As a result, an arrest warrant remained outstanding for Ms. Chaplin nearly a month after her case had been dismissed."

4

[DE 30, ¶ 108]. Chaplin alleges that she was subject to a traffic stop on April 17, 2023 and she asked the officer whether any warrants remain outstanding against her and the officer informed her that the original warrant was "still active." [DE 30, ¶ 110].

As it relates to the Sheriff Defendants, the Amended Complaint purports to assert a class action and, as a basis, alleges that the questions of fact and law common to all purported members of the claims:

> Whether the acts or omissions of the Defendant Sheriffs in connection with adopting and implementing eCourts – including their policies, practices and procedure regarding issuing and recalling warrants and arresting people based on resolved warrants- were the proximate cause of the constitutional deprivations of Plaintiffs and the proposed Class, and/or whether these Defendants' failure to properly train and supervise their subordinates with respect to eCourts/warrants was the proximate cause of the constitutional deprivations of Plaintiffs and the proposed Class; and Whether the Defendant Sheriffs' implementation of their administrative policies amounts to a policy of deliberate indifference and/or inaction to the constitutional rights of Plaintiffs and the proposed Class.

[DE 30, ¶ 179, g & h].

Plaintiffs remaining allegations against Defendant Rowe are that he is sued in his official capacity for negligence, under 42 U.S.C. § 1983 and *Monell;* that Defendant Rowe has waived immunity for the negligence claim by the purchase of insurance; that Defendant Rowe was negligent and breached duties owed to Plaintiffs Kevin Spruill, Timia Chaplin, Rotesha McNeil, Qiana Robertson, Messiejah Bradley, Yousef Jallal and Paul Castellanos; that Defendant Rowe, through his policies, customs, practices, omissions, and failure to train, violated plaintiffs' Kevin Spruill, Timia Chaplin, Rotesha McNeil, Qiana Robertson, Messiejah Bradley and Yousef Jallal rights under the Fourth and Fourteenth Amendments of the United States Constitution; and that Defendant Rowe's customs, policies, omissions, practices and failure to train, related to the adoption and implementation of eCourts caused Plaintiffs to be searched, seized and detained without a lawful basis. [DE 30, ¶¶ 196-197, 199, 202-205, 217]. Finally, Sheriff defendants as

well as Defendant Boyce and Fowler are implicated in the plaintiffs' claims for injunctive relief.

## ARGUMENT

**I. Plaintiff Chaplin's Complaint Fails to State a Claim against Defendant Sheriff Rowe because as a matter of law the Sheriff has no discretion on whether a warrant is valid and is required by law to serve warrants and process when presented to him.**

The office of Sheriff is created by the N.C. Constitution, Article VII, Sec. 2. The North Carolina courts have held that Sheriffs are "the chief law enforcement office of the county." *Southern Railway v. Mecklenburg*, 231 N.C. 148, 56 S.E.2d 438 (1949). North Carolina courts have further held that law enforcement officers are "public officers." *Blake v. Allen*, 221 N.C. 445, 20 S.E.2d 552 (1942). Public officers enjoy no special immunity for unauthorized acts, or acts outside their official duty. *Gallimore v. Sink*, 27 N.C.App. 65, 218 S.E.2d 181 (1975). However, "officers cannot be deemed to act maliciously when they enforce a court order that is valid on its face. They are not to be expected to go behind the face of the order." *Greer v. Broadcasting Co.*, 256 N.C. 382, 124 S.E.2d 98 (1962); *Alexander v. Lindsey*, 230 N.C. 663, 55 S.E.2d 470 (1949). It is generally held that public officers are acting "ministerially," and are qualifiedly immune even when:

> "(A)cting under an unconstitutional statute, which can confer no jurisdiction at all, the courts are being driven slowly to the view that the officer cannot be required to determine legal questions which would often perplex a court, and that if he has acted in good faith he should not be liable."

Prosser, Torts, 1971 Ed., Immunities, § 132, p. 991. *State ex rel. Jacobs v. Sherard*, 36 N.C. App. 60, 65–66, 243 S.E.2d 184, 188 (1978).

Defendant Rowe also contends that when a law enforcement office is in possession of a facially valid warrant, North Carolina law provides the authority to effectuate the arrest. N.C. Gen. Stat. Ann. § 15A-401 provides as follows:

6

> (a) Arrest by Officer Pursuant to a Warrant.--
>> (1) Warrant in Possession of Officer.--An officer having a warrant for arrest in his possession may arrest the person named or described therein at any time and at any place within the officer's territorial jurisdiction.

Indeed, N.C. Gen. Stat. Ann. § 15A-304 provides that a warrant for arrest may be issued, instead of or subsequent to a criminal summons, when it appears to the judicial official that the person named should be taken into custody. The validity of a warrant or order for arrest, it therefore, a judicial function. The execution of that judicial decree is more ministerially, the function of the sheriff.

"Every sheriff, by himself or his lawful deputies, shall execute and make due return of all writs and other process to him legally issued and directed, within his county or upon any river, bay or creek adjoining thereto, or in any other place where he may lawfully execute the same." N.C. Gen. Stat. Ann. § 162-14. Thus, when an otherwise valid warrant is presented to a sheriff, his job is not in inquire into its validity – his or her job is to serve it.[1] Indeed plaintiffs mistakenly allege that the sheriff defendants were required to "ensure that the warrants issued in their respective counties and appearing in eWarrants was valid and to confirm the validity of the warrants." [DE 30, ¶ 198 (a)].

Despite plaintiffs' assertions to the contrary, in North Carolina, a sheriff has no discretion in whether to serve what otherwise appears to be a valid warrant. In *Lawson v. Lawson*, 241 N.C. App. 399, 775 S.E.2d 36 (2015), the court concluded:

---

[1] The sheriff's eviction of the plaintiffs from a municipal housing project pursuant to an order of ejectment did not constitute a violation of the plaintiffs' Fourth Amendment rights so as to subject the sheriff to a claim for damages under 42 U.S.C. § 1983, even assuming that the sheriff had a policy and agreement with the housing authority for the unofficial cancellation of ejectment orders and that the housing authority had notified the sheriff to cancel execution of the ejectment order against the plaintiffs because a violation of an unofficial and informal agreement or policy between the sheriff and the holder of an ejectment judgment was at most a breach of the duty to exercise ordinary care and did not divest the sheriff of authority to execute a valid judicial order. *McDowell v. Davis*, 33 N.C. App. 529, 235 S.E.2d 896 (1977) (overruled on other grounds by, *Johnson v. Ruark Obstetrics and Gynecology Associates, P.A.*, 327 N.C. 283, 395 S.E.2d 85 (1990)).

> Our appellate courts have recognized the duty of law enforcement officers to serve a properly issued warrant. When a warrant, valid in form and issued by a court of competent jurisdiction, is placed in the hands of an officer for execution, it is his duty to carry out its demands without delay, and he incurs no liability for its proper execution, however disastrous may be the effect on the person against whom it is issued. If it is regular on its face, he is bound to serve it, and failure to do so would be disobedience of a lawful court order, punishable as contempt. *State v. Harvey*, 281 N.C. 1, 9, 187 S.E.2d 706, 712 (1972); see also *Robinson v. City of Winston–Salem*, 34 N.C.App. 401, 406, 238 S.E.2d 628, 631 (1977) ("[A law enforcement officer's] failure to serve [a] warrant may amount to dereliction of duty[.]").[2]

Plaintiffs have not identified any legal authority for the proposition that a sheriff is required to inquire into whether a warrant was "properly issued."

Similarly, federal courts have held that an arrest pursuant to a facially valid warrant does not give rise to liability under 42 U.S.C. § 1983 for violation of the Fourth Amendment. (see *Peacock v. Mayor & City Council of Baltimore*, 199 F. Supp. 2d 306, 310 (D. Md. 2002)). ([Plaintiff's] arrest is legally justified in Maryland, even if unbeknownst to the arresting police officer, the warrant is in fact improper.) *Id.* (*quoting Ashton v. Brown,* 339 Md. 70, 660 A.2d 447, 472 (1995)). For the reasons stated above regarding the alleged Fourteenth Amendment violations, there is no factual basis for holding members of the Sheriff's Office liable for plaintiff's continued detention. Even so, the continued detention was legally justified. *Peacock v. Mayor & City Council of Baltimore*, 199 F. Supp. 2d 306, 310 (D. Md. 2002).

The Fourth Circuit has similarly held that a County sheriff and clerks of court could not be held liable in civil rights action to arrestee who was arrested pursuant to recalled bench warrant, absent showing that failure to recall warrant was anything more than active negligence or that county had policy of serving invalid warrants. *Mitchell v. Aluisi*, 872 F.2d 577 (4th Cir. 1989).

---

[2] The North Carolina Supreme Court noted in the *Harvey* case that the officer, as he was required to do, executed the warrant, valid on its face. The warrant was issued by a magistrate, in compliance with his duty, upon a complaint which furnished him probable cause to believe that the crime charged had been committed by defendant. The arrest was a valid arrest. *State v. Harvey*, 281 N.C. 1, 10, 187 S.E.2d 706, 712 (1972)

8

Case 1:23-cv-00423-WO-JLW   Document 68   Filed 01/16/24   Page 8 of 18

This is the exact claim plaintiffs are making in this case. Again, as to the allegation that Defendant Rowe had a "policy" in place, this allegation is totally implausible because 1) the sheriff would have no authority to issue his or her own distinct policy for service of warrants in a statewide system of electronic court filings; and 2) plaintiffs allege that the eWarrants system went live and Plaintiff Timia Chaplin's arrest was two months later.

In *Baker v. McCollan*, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979) the United States Supreme Court considered a § 1983 case against a county sheriff for mistakenly arresting plaintiff on a facially valid warrant held that (1) the complaint filed by plaintiff who was arrested pursuant to valid warrant and detained in jail for three days despite his protests of mistaken identity failed to allege cause of action against county sheriff under civil rights statute affording liability for deprivation of rights under color of law, since plaintiff's detention was pursuant to a warrant conforming to constitutional requirements and thus did not amount to a deprivation of liberty without due process of law; (2) plaintiff's innocence of charge contained in arrest warrant, while relevant to a tort claim of false imprisonment in most jurisdictions, was largely irrelevant to his claim of deprivation of liberty without due process of law, since Constitution does not guarantee that only the guilty will be arrested. *Id.*, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979). The Supreme Court concluded:

> We may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

**II. THE SIX NAMED WAKE COUNTY PLAINTIFFS' FACTUAL ALLEGATIONS, WHILE VARYING GREATLY, STILL DO NOT STATE VALID CLAIMS AGAINST DEFENDANT ROWE FOR NEGLIGENCE OR UNDER 1983.**

The plaintiffs specifically contend the sheriff defendants were negligent because they "failed to recall or excise from the eWarrants system those warrants issued in their respective counties", "failed to confirm the validity of warrants prior to arresting individuals pursuant to a warrant;" and "further ways as may be shown by the evidence." [DE. 30, ¶ 199]. Plaintiffs cite no legal authority for the proposition that a sheriff has the ability or authority to "recall" a facially valid order for arrest. Plaintiffs conflate the sheriffs' duties with judicial functions. N.C. Gen. Stat. § 15A-301(g) (only judicial official can recall criminal process such as an order for arrest). Judges and Magistrates have authority over orders for arrest. N.C. Gen. Stat. § 15A-305 (specifying that an order for arrest may only be issued by a judge of a magistrate). Court clerks have responsibility for imputing court directed instructions into the legal process which follows judicial action. N.C. Gen. Stat. § 7A-109(a) (providing that each clerk shall maintain court records, files, dockets and indexes); see also § 7A-109(a)(1) (judicial function to "provide an accurate record of every determinative legal action, proceeding, or event . . . ."). Plaintiffs assert without basis and in a conclusory fashion that Defendant Rowe "knew that because of defects in eCourts, invalid bond orders and invalid warrants issued in Wake County remained 'active' in the eWarrants system" and that Defendant Rowe "knew of these defects as early as February 13, 2023, the date of the eCourts rollout". [DE 30, ¶¶ 207-208]. Plaintiffs cite the detention of a non-plaintiff Clegg, the March 4, 2023 detention of plaintiff Spruill and the April 2023 arrests of other plaintiffs to support the contention that Defendant Rowe "knew" about defects and within a matter of eight (8) weeks should (or could) have instated policies to correct "defects" emanating from a statewide electronic filing system.

Plaintiffs' allegations that two of North Carolina's one hundred Sheriffs would have responsibility for customs, policies or practices related to the adoption of eCourts has stretched

10

plausibility to the breaking point. These could never be a consistent working plan for a statewide rollout of a statewide eCourts and eWarrants systems if every sheriff in North Carolina was empowered to implement his or her own policies. Plaintiffs similarly allege that Defendant Rowe is responsible for ensuring that court papers are "properly issued and that court cases are processed efficiently" [DE 30, ¶ 15] and incredibly alleges that somehow the Sheriffs had some say "in connection with adopting and implementing eCourts." [DE 30, ¶ 179].

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955; *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Here, plaintiffs' protestations that the Sheriff was somehow lacking in implementation or adoption of the eCourts pilot program is implausible on its face and does not deserve the assumption of truth for purposes of this motion.

### III. THE AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS AS TO PLAINTIFFS SPRUILL, CHAPLIN, MCNEIL, ROBERTSON, BRADLEY OR JALLAL TO SUPPORT THE CLAIMS ASSERTED.

Each of the individual plaintiffs bringing claims against Defendant Rowe suffer from a paucity of factual allegations sufficient to state claims against Defendant Rowe. In each case, details of the reasons for the arrest are absent, and in others, the plaintiffs allege that the software

11

was not "communicating." Thus, these individual claims are subject to surmise or conjecture, are void of essential allegations as a foundational basis to move forward with their legal claims even if a cognizable claim were asserted and each suffer similar infirmities. The myriad differences between the situations of each of the "representative" plaintiffs certainly forecast wide factual disparities among a purported class.

*Plaintiff Kevin Spruill*

Spruill was alleged arrested and posted bond on February 15, 2023. He alleges that "nevertheless, the warrant for his arrest remained as marked 'active' in eWarrants." [DE. 30, ¶ 92]. He was thereafter pulled over on March 4, 2023 by a Wake County police officer (not identified in the Amended Complaint), produced paperwork, was released and then re-arrested on March 8, 2023. Spruill alleges he was released once his file was "reviewed by the [sheriff's office] and the Wake County Clerk of Court and updated in eCourts." [DE. 30, ¶ 101]. Plaintiff does not identify who caused his warrant to remain active and who should (or could) have prevented that. He only alleges that the Wake deputy arrested him on what can only be described as a "facially" active warrant.

*Plaintiff Timia Chaplin*

Plaintiff Chaplin was arrested by an unidentified law enforcement officer on March 4, 2023 on a failure to appear which was resolved in Odyssey. She was arrested again on April 9, 2023 - incredibly, she alleges that she was arrested because although her case was "resolved" in Odyssey, "Odyssey did not communicate that resolution to eWarrants, in contravention of the software's intended design. . .[h]ad Odyssey properly communicated to eWarrants that Ms. Chaplin's warrant was resolved and no longer outstanding – or if the arresting officer were properly trained on where

12

Case 1:23-cv-00423-WO-JLW   Document 68   Filed 01/16/24   Page 12 of 18

to learn this fact – the arresting officer would not have detained Ms. Chaplin." [DE. 30, ¶ 108]. It remains a mystery how the Sheriff of Wake County could have been responsible for two software systems not communicating or who the arresting officer was who failed to educate himself or herself on this fact.

*Plaintiff Rotesha McNeil*

McNeil pled guilty to a traffic citation and on September 12, 2022 a failure to appear was stricken and her case disposed of well before eCourts was implemented. She was allegedly arrested by a non-party Johnston County Sheriff on May 29, 2023. She alleges that the Johnston deputy contacted the Wake County Sheriff's Office (not the clerk of court) where an unidentified "employee" informed the Johnston County deputy that the warrant was "valid." When McNeil was released, she went to the Wake County Clerk of Court "who apologized" and explained that the failure to appear should have been recalled from the electronic system. Assuming these allegations (including a phone call to the Wake Sheriff's Office) are true, no allegation appears as to whether the sheriff, the Johnston County deputy or the clerk of court could have or should have caught this error.

*Plaintiff Qiana Robertson*

Plaintiff Robertson was arrested for driving while impaired and, after her first appearance, alleges that her initial court date of June 26, 2023 was inexplicably moved to May 5, 2023 unbeknownst to her or her attorney. Odyssey indicated that the date was "Reset by the Court." [DE 30, ¶ 128]. She was thereafter arrested on a called and failure to appear. The Sheriff of Wake County in no way could be responsible for this.

*Plaintiff Yousef Jallal*

Jallal was issued a citation for misdemeanor possession of marijuana and his case dismissed

13

June 6, 2023. He alleges that his case was "incorrectly designated as 'called and failed'" and as a result, an order for arrest was issued and he was arrested by a Wake County Deputy. [DE 30, ¶¶ 136-138]. The Wake County sheriff is not alleged to have incorrectly designated his case as "called and failed" and the subsequent arrest was otherwise pursuant to a facially valid court order. The Sheriff does not designate directives from the court in open court and is duty bound to execute facially valid orders of the court.

*Plaintiff Messiejah Bradley*

Bradley's citation was dismissed after successful completion of a first-offender drug diversion program on July 20, 2023. His dismissal was "never reflected in Odyssey" and as a result an arrest warrant for failure to appear was issued and he was arrested by an unidentified (and ostensibly nonparty) police officer. [DE 30, ¶¶ 144 – 147]. There are no allegations that the arrest warrant was anything other than a facially valid warrant. He was held for five (5) hours in the Wake County Detention Center. The only involvement with the Wake County Sheriff is Bradley's 5 hour detention was in Wake County.

**IV.　Plaintiffs' claims for negligence are against Defendant Rowe in his official capacity and any claims in excess of the Sheriff's official bond are barred by governmental immunity.**

Under the doctrine of governmental immunity, both a county and a county's public officials4 are immune from suits alleging negligence in the exercise of a governmental function, unless the plaintiff shows that the county or county's public officials waived immunity. *Butterfield v. Gray*, 279 N.C. App. 549, 554, 866 S.E.2d 296, 301 (2021). In the case of *Lee v. Cnty. of Cumberland*, 257 N.C. App. 952, 809 S.E.2d 407 (2018) (unpublished), the trial court dismissed a cause of action for negligence and false imprisonment against a sheriff for allegedly arresting

14

plaintiff on a "recalled" order for arrest.[3] The North Carolina Court of Appeals held that "the trial court properly determined the Sheriff's Office Defendants are public officials sued in their official capacities. These Defendants are therefore shielded from tort liability when discharging or performing a governmental function. The Sheriff's Office Defendants acted in the performance of their official duties, and therefore the doctrine of governmental immunity bars Plaintiff's suit."

Defendant Rowe concedes that this immunity is waived under North Carolina law but only to the extent of the Sheriff's bond or insurance. According to N.C. Gen.Stat. § 58–76–5, a sheriff waives governmental immunity by purchasing a bond as is required by N.C. Gen.Stat. § 162–8. See also *Sellers v. Rodriguez*, 149 N.C.App. 619, 624, 561 S.E.2d 336, 339 (2002) (stating that "a sheriff may also waive governmental immunity by purchasing a bond"). However, the purchase of a bond precludes a sheriff from relying upon "the protective embrace of governmental immunity ... only where the surety is joined as a party to the action," *Summey v. Barker*, 142 N.C.App. 688, 691, 544 S.E.2d 262, 265 (2001).

CONCLUSION

In this case, plaintiffs' imbue legal duties upon a county Sheriff that are not founded in the law. Sheriffs have no authority to look behind a facially valid process and interpret judicial decrees. Sheriffs are duty bound to execute process when presented to them. Contrary to plaintiffs' assertion, Sheriffs are not empowered to develop separate policies for execution of legal process. Such a scheme would wreak havoc and foment chaos, discord and lack of uniformity in the statewide system of execution of orders and warrants. Finally, as demonstrated above, each individual plaintiff comes in this lawsuit with wildly divergent facts given rise to what they allege is a wrongful arrest after one or more prior cases were resolved, or what amounts to a simple error

---

[3] A copy of this opinion is attached hereto as Attachment 1.

made by someone other than the county Sheriff which reflects incorrect information on legal papers. This is not the job of the sheriff. "The law declares it to be a sheriff's duty to execute all process which comes to his hands with the utmost expedition, or as soon after it comes to his hands as the nature of the case will admit." *Lindsay's Ex'rs v. Armfield*, 10 N.C. 548, 549 (1825). Therefore, for the foregoing reasons, the complaint simply fails to state a legally cognizable claim against defendant Wake County Sheriff Willie Rowe and should be dismissed.

Respectfully submitted this the 16th day of January, 2024.

WAKE COUNTY ATTORNEY'S OFFICE

/s/ *Roger A. Askew*
Roger A. Askew, NCSB # 18081
Senior Deputy County Attorney
Post Office Box 550
Raleigh, North Carolina 27602
Phone: (919) 856-5500
Fax:    (919) 856-5504
*Attorney for Defendant Wake County Sheriff*
  *Willie Rowe*

/s/ Robert J. Lane
Robert J. Lane, NCSB # 53767
Assistant County Attorney
Post Office Box 550
Raleigh, North Carolina 27602
Phone: (919) 856-5500
Fax:    (919) 856-5504
*Attorney for Defendant Wake County Sheriff*
  *Willie Rowe*

## LOCAL RULE 7.3(d)(1) CERTIFICATION

The undersigned hereby certifies that this brief does not exceed 6,250 words and is therefore compliant with Local Rule 7.3(d)(1). More specifically, the body of the brief, headings, and footnotes comprise 4,885 words.

WAKE COUNTY ATTORNEY'S OFFICE

/s/ *Roger A. Askew*
Roger A. Askew, NCSB # 18081
Senior Deputy County Attorney
Post Office Box 550
Raleigh, North Carolina 27602
Phone: (919) 856-5500
Fax:    (919) 856-5504
*Attorney for Defendant Wake County Sheriff Willie Rowe*

## CERTIFICATE OF SERVICE

I, the undersigned attorney for defendant Sheriff Willie Rowe hereby certifies that on the day indicated below the foregoing and attached **MEMORANDUM IN SUPPORT OF DEFENDANT SHERIFF ROWE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF filing system and served via electronic transmission through the Court's CM/ECF system in accordance with Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure and applicable local rules upon the CM/ECF participants:

This the 16th day of January, 2024.

/s/ *Roger A. Askew*
Roger A. Askew, NCSB # 18081
Senior Deputy County Attorney
Wake County Attorney's Office
P.O. Box 500
Raleigh, NC 27602
Telephone: 919-856-5500
Facsimile: 919-856-5504
E-Mail: Roger.askew@wakegov.com
*Attorney for Defendant Wake County Sheriff Willie Rowe*