# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### Case No.: 1:23-cv-00423-WO-JLW

| | | |
|---|---|---|
| CHAPLIN, et al. | ) | **NCAOC AND CLERK** |
| | ) | **DEFENDANTS'** |
| *Plaintiffs,* | ) | **MEMORANDUM OF LAW** |
| | ) | **IN SUPPORT OF THEIR** |
| v. | ) | **MOTION TO DISMISS** |
| | ) | |
| ROWE, et al. | ) | |
| | ) | |
| *Defendants.* | ) | |

NOW COME Defendants North Carolina Administrative Office of the Courts, Ryan Boyce, in his official capacity as the Director of the North Carolina Administrative Office of the Courts, Brad Fowler, in his official capacity as the eCourts Executive Sponsor and Chief Business Officer of the North Carolina Administrative Office of the Courts, Blair Williams, in his official capacity as the Wake County Clerk of Superior Court, and Susie K. Thomas, in her official capacity as the Lee County Clerk of Superior Court, to hereby submit this Memorandum in Support of their Motion to Dismiss all claims against them.

1

## INTRODUCTION

eCourts is the culmination of years of learning, planning, and training by numerous judicial stakeholders, including the Judicial Defendants named here. As evidenced in the Amended Complaint and its Exhibits, the Judicial Defendants are committed to successfully implementing eCourts and enabling judicial officials, litigants, law enforcement officers, and others to conduct court business fairly and efficiently. It is unclear what claims Plaintiffs bring against the Judicial Defendants and what relief they seek due to fundamental pleading deficiencies. Further, it appears Plaintiffs appear to ask this Court to halt core public safety and court functions, with no identified alternative. This Court should decline to do so and dismiss all claims against Defendants.

## STATEMENT OF THE CASE

On October 27, 2023, Plaintiffs filed their First Amended Complaint, which added the Judicial Defendants to this action. [DE 30] In Claim Five, Plaintiffs assert a negligence claim against Clerk Defendants brought as an action on their official bond. In Claim Six, Plaintiffs assert a claim – 42 U.S.C. § 1983 claim for injunctive relief – against Defendants Boyce and Fowler. While named in the caption, no claims are brought against the North Carolina Administrative Office of the Courts.

## STATEMENT OF FACTS[1]

Prior to the implementation of eCourts, North Carolina courts depended on paper filing, which provided multiple opportunities for error, and made courts slow and inefficient. [DE 30, ¶ 43] The transition to a digital court management system was a "long-term project covering many years and three judicial administrations." [DE 30-3, p. 2] North Carolina began the modernization of its court system in 2015 with the North Carolina Commission on the Administration of Law and Justice ("Commission"). [DE 30, ¶ 45, DE 30-3, p. 2] The Commission held numerous meetings, public hearings, and solicited feedback from judicial stakeholders to develop a plan to transition from paper-based to digital-based case management. [DE 30, ¶¶ 41-53, DE 30-3, p. 2]

NCAOC partnered with the National Center for State Courts to develop a Request for Proposal to choose a vendor to effectuate digital based case management. [DE 30, ¶¶ 50-52, DE 30-3, pp. 2-3] In 2018, the Selection Committee recommended NCAOC partner with Defendant Tyler to implement digital-based case management. [DE 30, ¶¶ 54-57] The Selection Committee

---

[1] The factual allegations of the Amended Complaint are presented and accepted as true as required at the motion to dismiss stage of litigation. The Judicial Defendants do not admit the truth of any such allegations by referring to them here.

advised NCAOC to investigate legal claims arising in other jurisdictions. [DE 30, ¶ 58]

On June 7, 2019, NCAOC and Defendant Tyler entered a ten-year contract wherein Defendant Tyler would license an eCourts software package and for the development and licensure of an online repository of warrants (eWarrants), over the course of five years. [DE 30, ¶¶ 59-60, 62, DE 30-3, p. 3]

In July 2022, eWarrants was implemented statewide. [DE 30, ¶ 63] eWarrants is a product developed specifically for North Carolina. [DE 30-3, p. 3] "NCAOC conducted over 170 pre-implementation training sessions with magistrates and clerks and over 60 law enforcement train-the-trainer training sessions." [DE 30-3, p. 3]

Odyssey launched in Wake, Lee, Harnett, and Johnston counties, on February 13, 2023, and in Mecklenburg County on October 9, 2023. [DE 30, ¶¶ 64, 66] "Odyssey is a cloud based, integrated case management system that is designed to replace NCAOC's legacy criminal, civil, and juvenile mainframe hosted indexes, the agency's financial management system, and the court system's paper-based filing and records management processes." [DE 30-3, p. 4] To prepare for the transition, NCAOC conducted "over 50 mock court walkthroughs in local courthouses," and "90 multi-day training sessions in the four pilot counties and Mecklenburg County." [DE 30, p. 4] Starting on the day of transition, NCAOC "provided dedicated on-staff support in each county

4

to assist with questions and to report any software defects or procedural issues." [Id.]

The Plaintiffs allege they experienced arrest or detention issues. [DE 30, ¶¶ 90-176]

### 1. Kevin Spruill

Mr. Spruill was arrested pursuant to a warrant for felony obtaining property by false pretense on February 11, 2023. [DE 30, ¶ 90] Mr. Spruill posted bond, but was twice briefly detained on the original warrant. [DE 30, ¶¶ 92-101]

### 2. Timia Chaplin

Ms. Chaplin failed to appear on her December 13, 2022, court date, and "the district court then issued a warrant for failure to appear." [DE 30, ¶ 104] On March 4, 2023, she was arrested for failing to appear and released on a bond. [DE 30, ¶ 105] On March 16, 2023, her charges were dismissed. Which were accurately reflected in Odyssey. [DE 30, ¶ 106] On April 9, 2023, Ms. Chaplin was arrested by an unidentified law enforcement agency, allegedly on the December 13, 2022, order for arrest for her failure to appear. [DE 30, ¶ 107]

### 3. Rotesha McNeil

Ms. McNeil was cited for driving with a suspended license in July of 2021. [DE 30, ¶ 111] On August 11, 2022, an arrest warrant was issued for Ms.

5

McNeil's for failure to appear. Ms. McNeil appeared in court and pled guilty on September 12, 2022, where "the Court noted that the failure to appear was entered in error and was stricken." [DE 30, ¶ 114] Odyssey reflects that her case was disposed that date. [DE 30, ¶ 115] On May 29, 2023, Ms. McNeill was arrested by a Johnston County Sheriff's deputy on the August 11, 2022, order for arrest. [DE 30, ¶ 116]

### 4. Qiana Robertson

Ms. Robertson was not notified that her court date for Driving While Impaired was "reset by Court." [DE 30, ¶¶ 124-129] Ms. Robertson was called and failed and an order for arrest issued. [DE 30, ¶ 130] On June 11, 2023, Ms. Roberston was arrested on the failure to appear warrant. [DE 30, ¶¶ 131-32]

### 5. Yousef Jallal

Mr. Jallal's citation for misdemeanor marijuana possession was dismissed on June 6, 2023. [DE 30, ¶ 135] On July 3, 2023, an order for arrest was issued for failure to appear and Mr. Jallal was arrested by a Wake County Sheriff's deputy on August 10, 2023. [DE 30, ¶ 137-39]

### 6. Messiejah Bradley

In August 2022, Mr. Bradley was arrested for possession of marijuana in Wake County. [DE 30, ¶ 142] On July 20, 2023, Mr. Bradley's charges were dismissed. [DE 30, ¶¶ 143-44] Odyssey "incorrectly marked his case on July 20, 2023 as called and failed," [DE 30, ¶ 145] and he was arrested on December

6

27, 2023 on a warrant for failure to appear. [DE 30, ¶¶ 145-148] On September 28, 2023, Odyssey indicated his case was dismissed on July 20, 2023. [DE 30, ¶ 149]

### 7. *Paulino Castellanos*

On Friday, February 10, 2023, Mr. Castellanos was arrested in Lee County and appeared before a magistrate who set a bond. [DE 30, ¶ 151] Mr. Castellanos' attorney sought to have a judge review Mr. Castellanos' pretrial release conditions, but his file could not be located. [DE 30, ¶ 152] The following Monday, February 13, 2023, the day eCourts launched in Lee County, a Grand Jury indicted Mr. Castellanos and bound over to Superior Court. [DE 30, ¶¶ 155-56] On Wednesday, the Superior Court modified his bond to allow release on electronic monitoring pending trial. [DE 30, ¶ 158] Mr. Castellanos alleges if his file were immediately located, a judge would have granted him a bond reduction that day. [DE 30, ¶ 160][2]

### 8. *Robert Lewis*

Mr. Lewis works as a caretaker for an elderly client in Guilford County. [DE 30, ¶ 161] In 2016, his client took out a restraining order against him but it was allegedly dissolved. [DE 30, ¶ 162] In 2022, police were called out to

---

[2] Notably left out of the Amended Complaint is the factual allegation included in the initial Complaint that Mr. Castellanos remained in jail until February 23, 2023 "purportedly because no electronic monitoring device was available." [DE 1 at ¶ 85].

7

investigate an altercation between Mr. Lewis and his neighbor. [DE 30, ¶ 163] The responding officer saw the restraining order in eWarrants, and Mr. Lewis was arrested for violating the protective order. [DE 30, ¶ 164]

### 9. Allen Sifford

In 2009, an arrest warrant was issued for Mr. Sifford but never served. [DE 30, ¶¶ 168-69] On October 25, 2022, Mr. Sifford alleges his case was dismissed. [DE 30, ¶ 172] On July 7, 2023, Mr. Sifford was pulled over for committing a traffic offense and arrested on the 2009 warrant that appeared valid in eWarrants. [DE 30, ¶¶ 173-176]

## ARGUMENT

## I. STANDARD OF REVIEW

Subject matter jurisdiction is a threshold question that must be addressed by the court before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). Federal courts have limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court must grant a motion to dismiss for lack of subject matter jurisdiction if the court lacks statutory authority at any time to hear and decide the dispute. Fed. R. Civ. P. 12(b)(1). "The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

8

A claim must be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 679 (citations omitted).

## II. CLAIM SIX – 42 U.S.C. § 1983 INJUNCTIVE RELIEF AGAINST DEFENDANTS BOYCE AND FOWLER – IS BARRED BY THE ELEVENTH AMENDMENT AND FAILS TO STATE A CLAIM

### A. The Eleventh Amendment Bars Claim Six

The Eleventh Amendment restricts the ability of individuals to sue states in federal court. The Supreme Court has held consistently that "an

9

unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This immunity extends to "arms[s] of the State," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), including state agencies and state officers acting in their official capacity, *Gray v. L.*, 51 F.3d 426, 430 (4th Cir. 1995). A suit against a state official sued in their official capacity is a suit against the official's office, not the individual him or herself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Just "as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984).

Exceptions to Eleventh Amendment sovereign immunity are narrow and inapplicable here. A lawsuit against a state official may only proceed when one of the following three exceptions applies: (1) where Congress, while acting pursuant to its powers under the Fourteenth Amendment, has properly abrogated a state's immunity, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–56 (1976); (2) where a state has waived its immunity to suit in federal court, *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); or (3) where a private party sues an appropriate state officer for prospective injunctive or declaratory relief from an ongoing violation of federal

10

law, *Ex parte Young*, 209 U.S. 123, 155–56 (1908).

The Amended Complaint does not implicate the first two exceptions. Accordingly, Plaintiffs must demonstrate that Claim Six fits within the confines of the *Ex parte Young* doctrine. They have not and cannot.

The *Ex parte Young* doctrine established a narrow exception to sovereign immunity to seek prospective relief against state officers who are charged with enforcing an unconstitutional state law. Under this doctrine, a plaintiff must sue an official who is "directly involved" in enforcing the state laws and policies alleged to contradict federal law. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 332 (4th Cir. 2001). To determine whether the *Ex parte Young* exception applies, the merits of Plaintiff's injunctive relief claim must be addressed.

### 1. Plaintiffs fail to allege that their arrests and/or detentions violated the Constitution.

Injunctive relief is available only against conduct violating the Constitution. While the Amended Complaint repeatedly uses the conclusory terms "unlawful," "unconstitutional" and "deprivation of liberty," it fails to sufficiently allege a violation of the Constitution, much less a violation of the Constitution directly involving Defendants Boyce or Fowler. Plaintiffs don't even allege a federal right that Defendants Boyce and Fowler have violated.

11

Only once does the Amended Complaint reference a right arising under the Constitution – a reference to the Fourth and Fourteenth Amendments in Claim Three against Defendant Rowe. [DE 30, ¶ 205] The Fourth and Fourteenth Amendments protect against deprivations of liberty accomplished without due process of law. *Baker v. McCollan*, 443 U.S. 137, 145 (1979); *see also Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("The deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law"). In other words, to establish that an arrest or detention is unlawful, a plaintiff must demonstrate a deprivation of liberty accomplished without due process. *Id.*

The majority of the allegations relate to orders for arrest that appeared valid in eWarrants, but were allegedly either already served, issued in a now dismissed case, recalled, or issued in error. Plaintiff blames this upon negligence, either by the Sheriff Defendants and/or the Clerk Defendants, or by defects in the eCourts software. [DE 30, ¶¶ 187, 191, 193, 194, 199, 200, 201, 215, 216, 237] However, detention pursuant to a facially valid warrant later determined to be served, recalled, or issued in error, does not, without more, violate due process, and thus is not constitutionally unlawful. *See Baker v. McCollan*, 443 U.S. 137 (1979) (noting a three-day detention over a holiday weekend did not amount to a deprivation of liberty for a detainee who was

12

arrested in a case of mistaken identity because the warrant was facially valid); *see also Mitchell v. Aluisi*, 872 F.2d 577 (4th Cir. 1989) (finding no due process violation when Plaintiff was arrested, detained, and served with a facially valid bench warrant that had been recalled, unbeknownst to the arresting officers); *Peacock v. Mayor & City Council of Baltimore*, 199 F. Supp. 2d 306, 309 (D. Md. 2002) (finding a man's ten-day detention pursuant to a warrant did not violate the Fourth Amendment because it was facially valid in the Sherriff's "in house computer system," even though the warrant was actually invalid as the suspect had already served the sentence for which the warrant had been issued).

Two additional allegations are unrelated to arrest warrants. First, Mr. Lewis alleges he was arrested for violating a protection order that he alleges was "dissolved" but still appeared to the officer as valid in eWarrants. [DE 30, ¶ 162-64] However, it is a matter of black letter law that arrests based on probable cause do not violate the Constitution. *See McKinney v. Richland Cnty. Sheriff's Dep't*, 431 F.3d 415, 418 (4th Cir. 2005). It is also well established that a police officer has probable cause to arrest an individual whenever "the facts and circumstances within [the officer's] knowledge . . . [a]re sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964).

13

Second, Mr. Castellanos alleges he was unable to schedule an immediate, additional bond determination due to the "Defendants" lack of "due care in the adoption and implementation of eCourts." [DE 30, ¶ 160] The Amended Complaint does not allege that Mr. Castellanos' detention violated the constitution, nor could it. Mr. Castellanos does not allege any facts to plausibly support a constitutional violation. Neither the Eighth nor the Fourteenth Amendments provide an absolute right to be released on bail. *See e.g. United States v. Salerno*, 481 U.S. 739, 752 (1987). Mr. Castellanos was afforded due process when he appeared before a magistrate for his initial appearance and a bond was set. [DE 30, ¶ 151] That his request to review his bond was not heard immediately by another judicial official is not a violation of the constitution.

Further, the allegations in the Amended Complaint reflect the language of negligence. To the extent Plaintiffs allege detentions were the result of some parties' negligence, that is insufficient to support a claim of violation of the Fourth and Fourteenth Amendment. *See Daniels v. Williams*, 474 U.S. 327 (1986) (stating that negligent conduct by a state official does not constitute a deprivation of the Due Process Clause, even if it causes injury).

## 2. *Ex parte Young* does not permit the permanent injunctive relief Plaintiffs seek.

The Supreme Court recently noted, "an injunction against a state court" or its "machinery" "would be a violation of the whole scheme of our

Case 1:23-cv-00423-WO-JLW Document 70 Filed 01/16/24 Page 14 of 30

Government." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 142 (2021) (quoting *Ex parte Young*, 209 U.S. at 163). While it's unclear what action Plaintiffs want this Court to enjoin, it appears they desire that court officials cease using eCourts and eWarrants software. An injunction of this nature would prevent North Carolina courts from functioning, and would act as "an injunction against a state court" or its "machinery," exactly the type of injunctive relief *Ex parte Young* disallows.

The Eleventh Amendment bars Plaintiffs' claim against Defendants Boyce and Fowler, and the injunctive relief sought by Plaintiffs is not allowed under the *Ex parte Young* exception.

### B. The Amended Complaint fails to state a claim.

The Amended Complaint does not plausibly allege a claim against Defendants Boyce or Fowler. To survive a 12(b)(6) motion to dismiss, a complaint must contain more than mere legal conclusions. *Iqbal*, 556 U.S. at 678. A complaint must plead facts sufficient to "raise a right to relief above the speculative level" and demonstrate that the claim is "plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the factual content of the complaint allows the court to "draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere

15

conclusory statements, do not suffice." *Id*. Further, a court need not accept as true legal conclusions stated by a plaintiff. *Iqbal* 556 U.S. at 678.

The allegations in the Amended Complaint are precisely the type that *Iqbal* and *Twombly* tell us are insufficient. The Amended Complaint fails to provide factual detail to create a plausible inference that Defendants Boyce or Fowler violated the Plaintiffs' constitutional rights. Regarding Fowler, Plaintiffs make *no* allegations regarding him *whatsoever*, besides identifying him. [DE 30, ¶ 27] Similarly, outside of identifying him, the Amended Complaint only mentions Defendant Boyce once, and then only to note that he is the signatory of a letter to a state Representative that discusses defects with the eCourts system. [DE 30, ¶ 71] However, the defects identified in the letter do not relate to the Plaintiff's allegations. [DE 30-3]. To the contrary, the letter notes that "NCAOC has worked with local officials to investigate any specific complaints and has not found an instance where an Odyssey defect led to an individual's delayed release from incarceration." *Id*.

Instead of alleging facts related to Defendants Boyce and Fowler, the Amended Complaint repeats the legal conclusions of "unlawful" or "unconstitutional," without even naming the constitutional right implicated or how Defendants Boyce and Fowler violated the right. The Amended Complaint references the Fourth and Fourteenth Amendments *one time* in its 251 paragraphs, and even then, that is specifically in reference to a *Monell* claim

16

against Defendant Rowe. [DE 30, ¶ 205] As explained in more detail below, the Amended Complaint fails to sufficiently allege any unconstitutional act attributed to either Defendant Boyce or Fowler, and this Court should dismiss all claims against them.

### 1. There is no independent cause of action for injunctive relief.

Plaintiffs bring Claim Six, titled "Injunctive Relief Claim," against Defendants Boyce and Fowler as an independent cause of action. However, an injunction is a remedy, not a stand-alone claim. *See Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 682 (D. Md. 2001). "A request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in the [ ] substantive counts." *Id.* at 682, n,1; *see also Bell v. WestRock CP, LLC*, No. 3:17-CV-829, 2018 WL 3493077 (E.D. Va. July 20, 2018) (dismissing improperly pled injunctive relief as a separate cause of action because "injunctive relief is a remedy, not a cause of action.") Because Plaintiffs do not bring any substantive claim against Defendants Boyce or Fowler, Claim Six is deficient and this Court must dismiss it.

### 2. Allegations relating to alleged unconstitutional policies fail to state a claim.

The Amended Complaint alleges, in the most general and conclusory terms, that Defendants Boyce and Fowler's "administrative policies constitute

a policy or custom of inaction and a policy or custom amounting to deliberate indifference to the rights of Plaintiffs and the Class." [DE 30, ¶ 246] Plaintiffs then ask this Court to enjoin Defendants Boyce and Fowler "from any further continuation of their policies and practices that have resulted in the violations of Plaintiff's constitutional rights." [DE 30, ¶ 251] Plaintiffs further request the Court mandate Defendants Boyce and Fowler "implement and adopt failsafe procedures to ensure a mechanism exists for immediately remedying future violations of the rights of North Carolinians that arise due to the use of eCourts system, including the violations suffered by Plaintiffs and the Class as alleged herein."

Pleadings serve to inform the defendant about the nature of the claims against him so that he may adequately prepare a defense. *See* Fed. R. Civ. P. 8(a); *see also Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). "While the pleadings need not be minutely detailed, they must provide enough factual details to allow the defendant to discern exactly what act he has committed that the Plaintiff alleges is illegal." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 418 (E.D. Va. 1999).

The alleged unconstitutional policy or practice at issue must be defined "with precision" to state a claim. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). An assertion that a policy or practice exists is insufficient. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 (1982). Plaintiffs' burden requires

them to identify the specific practice or policy they are attacking. *Cf. Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988) (citing *Connecticut v. Teal*, 457 U.S. 440 (1982)).

Here, the Amended Complaint fails to identify **<u>any</u>** specific practice or policy it claims is unconstitutional. Indeed, the Amended Complaint does not describe **<u>any</u>** administrative policies or practices of Defendant Boyce or Fowler. Moreover, Plaintiffs do not demonstrate that Defendant Fowler has the authority to promulgate or enforce policies or practices because they don't allege **<u>any facts whatsoever</u>** against him. The Court should dismiss the claim against Defendants Boyce and Fowler because Plaintiffs have not met their burden to identify a specific practice or policy that these Defendants have promulgated or enforced that violates their Constitutional rights.

### 3. Allegations relating to deliberate indifference fail to state a claim.

The Amended Complaint makes the conclusory allegation that "Defendants' administrative policies constitute a policy or custom of inaction and a policy or custom amounting to deliberate indifference to the rights of Plaintiffs and the Class." [DE 30, ¶ 246] Plaintiffs do not specify whether this deliberate indifference claim (which is not pled anywhere within the body of the Amended Complaint) arises under the Eighth or Fourteenth Amendments. Further, there are no factual allegations to support this claim.

19

"Deliberate indifference is a very high standard - a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). "Deliberate indifference requires a 'deliberate or conscious choice' to ignore something." *See Koon v. North Carolina*, 50 F.4th 398, 406 (4th Cir. 2022); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (cleaned up). "Deliberate indifference is a high bar." *Koon*, 50 F.4th at 407. Generally, "good-faith efforts to remedy the plaintiff's problems will prevent finding deliberate indifference, absent extraordinary circumstances." *Id.* "It is not enough simply to point to what could or should have been done. That is the language of negligence." *Id.* at 406. Further, "a supervisory official who responds reasonably to a known risk is not deliberately indifferent even if the harm is not averted." *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001).

While the Amended Complaint alleges issues with implementation of eCourts, those factual allegations reflect, at most, negligence. [DE 30, ¶¶ 82, 86, 87, 236, 237, 238] There are no allegations that any implementation issue is related to any policy or practice, let alone one attributable to Defendants Boyce and Fowler. Notably, the Amended Complaint contains ample allegations of reasonable good faith efforts by supervisory officials to remedy issues related to eCourts, including issues related to eWarrants. [DE 30, ¶¶ 71, 73, 74, 75, 77, 80, DE 30-3, DE 30-4] These allegations are not sufficient to meet the very high standard required to demonstrate Defendants Boyce or

Fowler have violated Plaintiffs' constitutional rights with deliberate indifference.

### 4. The Amended Complaint fails to allege the elements required to obtain injunctive relief.

A Plaintiff seeking a permanent injunction must show (1) "that it has suffered an irreparable injury;" (2) "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;" (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted;" and (4) "that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Amended Complaint fails to demonstrate each of the required prerequisites to obtain injunctive relief.

As explained above, the allegations in the Amended Complaint do not sufficiently allege violation of a constitutional right by Defendants Boyce or Fowler such that this court may assume irreparable injury. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Additionally, Plaintiffs seek compensatory damages in this case. [DE 30, p. 39] Further, the balance of equities does not support an injunction. Enjoining Defendants Boyce and Fowler from operating eCourts or eWarrants would create an irreparable injury to the State and its citizens because state courts in eCourts counties would grind to a halt. Finally, the public interest weighs heavily against enjoining Defendants Boyce and

21

Fowler. It is obviously in the interest of the State to operate its courts without interference. Moreover, it is unclear what specific relief Plaintiffs ask this Court to provide, as they do not identify any policy or practice of Defendants Boyce or Fowler.

Although not stated with any specificity, it appears that Plaintiffs are asking NCAOC to cease using eCourts. [DE 30, ¶ 251] It cannot be understated how incredibly disruptive enjoining the use of eCourts would be to the delivery of justice in North Carolina. As Plaintiffs' pleadings demonstrate, in just the first two months in the four pilot counties, 50,000 cases were electronically filed using Odyssey, 465,000 pieces of paper were saved, and public users conducted approximately 10,000 Portal searches per day, saving thousands of trips to local courthouses. [DE 30-3, p. 5] Nearly a year later, eCourts is now live in five counties, and has accepted over 600,000 electronic filings, saving 2,300,000 sheets of paper, and disposing of hundreds of thousands of cases across the state.[3] Since launching in July 2022, more than 36,000 registered eWarrants users have issued 1.2 million criminal processes.[4] eCourts involves thousands of litigants, in all types of cases, as well as making court information easily available to the public. In sum, the Plaintiffs have failed to allege any

---

[3] *See* https://www.nccourts.gov/news/tag/press-release/ecourts-expansion-announced-for-2024 (last accessed January 15, 2024).
[4] *Id.*

facts that would allow this Court to infer that injunctive relief is an available remedy, and therefore, this Court should dismiss the claim for injunctive relief.

## III. CLAIM FIVE – ACTION ON BOND AGAINST CLERK DEFENDANTS – IS NOT A COGNIZABLE CLAIM

Claim Five is an action on the bond of the Clerk Defendants brought pursuant to N.C. Gen. Stat. § 58-76-5. [DE 30, ¶¶ 228-241] Plaintiffs allege the Clerk Defendants acted negligently in their ministerial and administrative duties. [DE 30, ¶¶ 237–238]

The North Carolina Supreme Court recently made clear that actions brought pursuant to N.C. Gen. Stat. § 58-76-5 may only be brought against bonded county officials. *Wynn v. Frederick*, 895 S.E.2d 371, 380 (N.C. 2023). The Court held that state officers, such as court clerks, are not included within the scope of "other officers" under N.C. Gen. Stat. § 58-76-5, and the statute does not waive state officials' sovereign immunity. *Id.* Accordingly, an action on the bond of the Clerk Defendants is a non-viable claim, and is barred by the Eleventh Amendment.

## IV. THIS COURT SHOULD ABSTAIN TO AVOID INTERFERENCE WITH NORTH CAROLINA'S JUDICIAL PROCESS AND TO PREVENT INTRUSION INTO STATE LITIGATION

Plaintiffs seek to "remedy past harms" and "prevent future harms." [DE 30, ¶ 6] Any claim for past harms is retrospective in nature, and barred by the Eleventh Amendment. *See Republic of Paraguay v. Allen*, 134 F.3d 622, 627

23

(4th Cir. 1998). Injunctive relief to prevent future harms is likewise barred by the Eleventh Amendment and fails to state a claim, as explained above. Furthermore, the extraordinary permanent injunctive relief requested by Plaintiffs implicates concepts of equity, federalism, and comity.

Although federal courts have an obligation to exercise jurisdiction when proper, there are classes of cases in which "the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do[.]'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (citing *Younger v. Harris*, 401 U.S. 37, 45 (1971)). "To avoid friction between federal and state courts, abstention doctrines prohibit a federal court from deciding a case within its jurisdiction when a state proceeding is pending or state judicial processes are implicated." *Bishop v. Funderburk*, No. 3:21-CV-679-MOC-DCK, 2022 WL 1446807 (W.D.N.C. May 6, 2022).

## A. *O'Shea* Requires Abstention to Avoid Intrusion in State Court Processes.

The Supreme Court articulated applicable abstention principals in *O'Shea v. Littleton*, 414 U.S. 488 (1974). The *O'Shea* plaintiffs sought injunctions in connection with the discriminatory administration of the criminal justice system in an Illinois county. *O'Shea*, 414 U.S. at 491–92. They challenged criminal prosecutions "brought under seemingly valid state laws"

and, in essence, sought an order that would likely lead to future "interruption of state proceedings to adjudicate assertions of noncompliance" by the defendants. *Id.* at 500. The Supreme Court held that "an injunction aimed at controlling or preventing the occurrence of specific events that might take place" in future proceedings would lead to the federal interference in state judicial proceedings prohibited under the abstention principles. *Id.* The *O'Shea* abstention doctrine aims to protect state judicial processes from intrusions by federal courts.

Plaintiffs' requested injunctive relief would amount to an ongoing federal audit of state proceedings, an outcome rejected by the Supreme Court. The *O'Shea* Court instructed federal courts not to exercise jurisdiction over lawsuits that seek to impose "an ongoing federal audit of state . . . proceedings." *Id.* The Supreme Court explained:

> What [plaintiffs] seek is an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials. The order the Court of Appeals thought should be available if [plaintiffs] proved their allegations would be operative only where permissible state prosecutions are pending against one or more of the beneficiaries of the injunction. Apparently the order would contemplate interruption of state proceedings to adjudicate assertions of noncompliance by petitioners. This seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris,* [...] and related cases sought to prevent. A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable.

*O'Shea*, 414 U.S. at 500.

Here, Plaintiffs seek prospective injunctive relief to "prevent future harms" that "are still being understood." [DE 30, ¶ 6, 82] This request for equitable relief is precisely the kind of "audit" prohibited by *Shea*.

## B. *Burford* Requires Abstention Because The Requested Prospective Relief Unduly Intrudes Upon Complex State Administrative Processes.

Plaintiffs claim for injunctive relief asks this Court to unduly intrude upon North Carolina's independence, and create and implement its own policies pertaining to state court case management in North Carolina. As highlighted in the Amended Complaint, the transition of state court case management into the digital age was exceedingly complex, requiring the coordination of an array of activities and numerous parties within and external to the judiciary, and taking hundreds, if not thousands, of hours of ongoing training, to implement.

The *Burford* abstention doctrine considers whether federal adjudication "threatens to frustrate the purpose of a state's complex administrative system." *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 331–32 (1943)). Under the *Burford* doctrine, "[c]ourts must balance the state and federal interests to determine whether . . . the state interest in uniform regulation outweighs the federal interest in adjudicating the case at bar." *Martin*, 499 F.3d at 364. Specifically, the *Burford* doctrine

"permits abstention when federal adjudication would 'unduly intrude' upon 'complex state administrative processes' because either: (1) 'there are difficult questions of state law . . . whose importance transcends the result in the case then at bar'; or (2) federal review would disrupt 'state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Id.* (quoting *New Orleans Public Service, Inc.*, 491 U.S. at 361–63).

Federal interference here would undoubtedly disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Service, Inc.*, 491 U.S. at 361–63. Intervention by the federal court would have an impermissibly disruptive effect on state policies and implicates important state interests. Accordingly, abstention is appropriate.

## **CONCLUSION**

For all of these reasons, Defendants NCAOC, Boyce, Fowler, Williams, and Thomas, respectfully request the Court grant their Motion to Dismiss.

Respectfully submitted this the 16th day of January, 2024.

JOSHUA H. STEIN
Attorney General

/s/Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885

27

E-mail: eobrien@ncdoj.gov
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6800
Fax: (919) 716-6755
*Counsel for Defendants NCAOC,*
*Boyce, Fowler, Williams and*
*Thomas*

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief, including the body of the brief, headings and footnotes, but excluding the caption, signature lines, certificate of service, and any cover page or index not included, does not exceed the 6,250 word limit on briefs supporting motions and responsive briefs, or if a reply brief, does not exceed the 3,125 word limit. See LR 7.3(d)(1).

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice

Case 1:23-cv-00423-WO-JLW   Document 70   Filed 01/16/24   Page 29 of 30

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day electronically filed the foregoing **NCAOC AND CLERK DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS** using the CM/ECF system, which will send notification of such filing to all the counsel of record for the parties who participate in the CM/ECF system.

This the 16th day of January, 2024.

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice