IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:23-cv-00423-WO-JLW

| | |
|---|---|
| TIMIA CHAPLIN; KEVIN SPRUILL; ROTESHA MCNEIL; QIANA ROBERTSON; YOUSEF JALLAL; MESSIEJAH BRADLEY; PAULINO CASTELLANOS; ROBERT LEWIS; and ALLEN SIFFORD, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> WILLIE R. ROWE, in his official capacity as the Sheriff of Wake County; BRIAN ESTES, in his official capacity as the Sheriff of Lee County; THE OHIO CASUALTY INSURANCE COMPANY, as surety for the Sheriff of Wake County and as surety for the Sheriff of Lee County; TYLER TECHNOLOGIES, INC.; NORTH CAROLINA ADMINISTRATIVE OFFICE OF THE COURTS; RYAN BOYCE, in his official capacity as the Executive Director of the North Carolina Administrative Office of the Courts; BRAD FOWLER, in his official capacity as the eCourts Executive Sponsor and Chief Business Officer of the North Carolina Administrative Office of the Courts; BLAIR WILLIAMS, in his official capacity as the Wake County Clerk of Superior Court; SUSIE K. THOMAS, in her official capacity as the Lee County Clerk of Superior Court; JOHN DOE SURETY, as the surety for the Wake County Clerk of Superior Court and the Lee County Clerk of Superior Court; and DOES 1 THROUGH 20, INCLUSIVE, <br><br> *Defendants*. | **REPLY** <br> IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION UNDER LOCAL RULE 23.1 |

Plaintiffs respectfully file this reply memorandum in support of their motion for class certification under Local Rule 23.1(b).

**ARGUMENT**

I. **Plaintiffs' Motion Should Be Granted or Held in Abeyance Pending Discovery.**

As previously explained, the proposed classes satisfy Rule 23. ECF No. 54 at 5-11. But the prudent course is to defer ruling on certification. There are two ready ways to do so:

First, this Court can grant the pending consent motion to extend the time to move for certification. ECF No. 45 (the "Consent Motion").[1] The relief requested therein—setting the time to move for certification in a scheduling order—aligns with this Court's stated preference to "address the class question after any motion to dismiss is resolved."[2] ECF Nos. 36 at 2; 45 at 3.

Alternatively, this Court can exercise its discretion under Local Rule 23.1(b) to "order postponement of the determination pending discovery." LR 23.1(b). As Defendant Sheriff Rowe notes in his response, "'it is seldom, if ever, possible to resolve class representation questions from the pleadings.'" ECF No. 58 at 2 (quoting *Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1989)). Plaintiffs maintain that precertification discovery will bolster the case for certification. But regardless, discovery will better enable this Court to conduct the "rigorous analysis" that Rule 23 requires. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 367 (admonishing district court for "defaulting on [its] important responsibility [to] carefully determin[e] . . . class action issues"). As Sheriff Rowe rightly puts it, a certification ruling would be "premature" absent "some discovery." ECF No. 58 at 4.

---

[1] All Defendants whose counsel had appeared in this case by the time the Consent Motion was filed consented to the proposed extension.

[2] As of this reply, every Defendant except for Ohio Casualty has moved to dismiss the operative complaint. ECF Nos. 49, 65, 67, 69.

2

Relatedly, Defendant Tyler Technologies, Inc.'s ("Tyler") assertion that Plaintiffs have "not carried their evidentiary burden for class certification" is misplaced. ECF No. 60 at 25. There is no dispute that Plaintiffs must ultimately "present an evidentiary basis to the Court" showing that a class action is "properly maintainable." LR 23.1(d). But rare is the case where plaintiffs will be able to prove their class allegations prior to any discovery. *See Gibson v. Confie Ins. Grp. Holdings, Inc.*, No. 2:16-cv-02872-DCN, 2017 WL 2936219, at *12 (D.S.C. July 19, 2017) (collecting cases to show that plaintiffs are "generally entitled to pre-certification discovery"). Indeed, the only reason Plaintiffs moved for certification at this early juncture was to comply with the timeframes set forth in Local Rule 23.1(b) and this Court's orders. And when Plaintiffs moved for an extension of time, all Defendants—including Tyler—consented. ECF No. 45. Still, Plaintiffs have demonstrated that the classes should be certified; pre-certification discovery will only reinforce the strength of their claims.

Plaintiffs agree with Defendant Sheriff Rowe that "the Motion for Class Certification is premature" and should, at worst, "be dismissed without prejudice until dispositive motions based on issues of law have been adjudicated and some discovery had . . . ." ECF No. 58 at 4.

## II.     The Proposed Classes Should Be Certified.

If the Court reaches the merits of Plaintiffs' certification motion at this juncture, the motion should be granted. Defendants' principal opposition appears in the brief opposing class certification submitted by Defendant Tyler.[3] ECF No. 60. The arguments pressed by Tyler are unpersuasive.

---

[3] The remaining defendants adopt substantial portions or the entirety of Tyler's brief. *See* ECF No. 58 at 2 (defendant Sheriff Rowe adopting sections I.B and II); ECF No. 59 at 1 (defendant Sheriff Estes adopting all briefs and responses filed "by the other defendants in this lawsuit"); ECF No. 61 at 2-3 (State Defendants adopting Tyler's brief in full).

Plaintiffs bring a negligence claim against Tyler for developing the eCourts software replete with known defects that led to the arrests and detentions suffered by the class. ECF No. 30 at ¶¶ 185-94. This claim can be resolved on a classwide basis. For every putative class member, Tyler's liability turns on three predominate questions: (1) whether Tyler owed a duty of care to class members to develop its software free of defects; (2) whether Tyler breached that duty; and (3) whether that breach caused the class members to be arrested or detained after legal authority for those arrests and detentions ceased.

Tyler does not dispute that these questions can be resolved classwide. Nor can it because the individualized circumstances surrounding the arrests and detentions of putative class members have no bearing on these questions. Whether Tyler owed a duty to ensure that eWarrants and Odyssey communicated with one another so as to supply accurate information between and among the applications, for example, has nothing to do with the identity of the agency that arrested any given class member. *See* ECF No. 60 at 12 (bullet two arguing that "the circumstances of . . . arrest or detention" defeats certification).

Tyler instead argues that class certification is "doom[ed]" because "actual injury or loss" cannot be determined classwide. ECF No. 60 at 10-11. In support of this argument, Tyler lists seven purportedly individualized issues. But none of these issues require mini-trials or bear relevance to the class certification inquiry.

For example, "whether the individual was arrested or detained," ECF No. 60 at 12 (bullet one), is a threshold question that can easily be determined based on Defendants' records. It is hardly the type of question that defeats class certification. As discussed, the identity of the arresting or detaining agency, *id.* (bullet two), is irrelevant, so long as the agency relied on a defect in Tyler's software. The length of an arrest or detention, *id.* (bullet three), is merely "one

4

way in measuring the alleged [] violation" and does not destroy commonality, typicality, or predominance. *Thompson v. Jackson*, No. 1:16-CV-04217, 2018 WL 5993867, at *1 (N.D. Ga. Nov. 15, 2018). Whether the arrest, detention, or length of detention were justified under constitutional standards, ECF No. 60 at 12 (bullets four and five), is irrelevant in determining Tyler's liability under negligence standards. If a wrongful-arrest class member, for example, was arrested pursuant to a resolved warrant that was nevertheless reactivated due to a negligent software defect, Tyler is still liable in negligence for that arrest even if the arresting officer acted pursuant to a facially valid warrant.[4]

The remaining purportedly individualized issue Tyler raises is "whether information in the eCourts system led to any improper arrest or detention." ECF No. 60 at 12-13 (bullets six and seven). The current record shows how this issue can be resolved on a classwide basis. As Mecklenburg County's Chief District Court Judge explained, due to a "known defect relat[ing] to the integration between eWarrants and Odyssey," the Odyssey case management portal does not reflect updated conditions of release orders entered in eWarrants, resulting in overdetentions and requiring two judicially-imposed "workarounds." ECF No. 30 at Exhibit D (*Honorable Elizabeth Thornton Trosch, Chief District Court Judge, Email regarding Procedure For Reconciling Bond Update Discrepancies Between eWarrants and Odyssey*, at *1-2 (Oct. 17, 2023)). This is but one

---

[4] Whether an overdetention was justified is, with respect to all Defendants, at best a damages issue. Without some indication that Defendants are detaining individuals for longer than constitutionally permissible for reasons unrelated to eCourts, the issue is a red herring. Nonetheless, classwide litigation does not preclude Defendants from raising this as a damages defense on a classwide basis. *See Fant v. City of Ferguson, Missouri*, No. 4:15-CV-00253-AGF, 2022 WL 2072647, at *17 (E.D. Mo. June 9, 2022) ("As with the other classes described above, to the extent that the City wishes to argue in defense that some portion of the detention was due to other reasons (such as an outside warrant or warrantless arrest), the data necessary to establish such an argument is available from court records, which reflect any such dual-purpose arrests. Litigation on a classwide, as opposed to individual, basis would not impede the City's ability to pursue such a defense.").

important example of how it can easily be determined whether defects in the eCourts software created by Tyler led to the arrests and overdetentions for which legal authority had ceased.

Tyler presses substantially the same arguments in contending that the common questions identified by Plaintiffs do not predominate. ECF No. 60 at 19-21. Not so, as already explained. The only additional argument Tyler makes is that class members' damages "would require even more individualized inquiries." *Id.* at 21. As *Kirkman*—a case cited by Tyler—explains, "[t]he necessity for individual damage determinations does not necessarily foreclose class certification . . . especially where damage calculations are not complex." *Kirkman v. N.C. R.R.*, 220 F.R.D. 49, 54 (M.D.N.C. 2003) (citing *Gunnells v. Healthplan Services*, Inc., 348 F.3d 417, 428-29 (4th Cir. 2003)). For this reason, courts routinely grant class certification in wrongful detention cases. *See, e.g.*, *Driver v. Marion Cty. Sheriff*, 859 F.3d 489, 490 (7th Cir. 2017). This Court should also do so here.

## III. Plaintiffs Do Not Plead A Fail-Safe Class

Contrary to Tyler's remaining argument, ECF No. 60 at 23-25, Plaintiffs' two damages classes are not impermissibly failsafe. As Plaintiffs have noted, ECF No. 54 at 11, discovery will reveal the identities of every member of the damages classes. These classes therefore do not implicate the concerns underlying failsafe classes, namely that class members cannot be identified and will not be bound by judgement. *Mr. Dee's Inc. v. Inmar, Inc.*, No. 1:19CV141, 2022 WL 1750537, at *3 (M.D.N.C. Apr. 27, 2022). Where, as here, a list of all class members can be created before adjudication of the merits, the class is not failsafe because class members can be ascertained (they are known and identified in a class list) and membership of the class is not contingent on adjudication of the merits. *See, e.g.*, *McKeage v. Bass Pro Outdoor World, L.L.C.*, No. 12-03157, 2014 WL 12754996, at *3 (W.D. Mo. Oct. 7, 2014) (finding specific list

of class members did not create "fail-safe class," because it did not "condition class membership on being entitled to relief"); *Johnson v. City of Grants Pass*, 72 F.4th 868, 887 n.23 (9th Cir. 2023) (finding proposed class was not "fail-safe" where "the class would have consisted of exactly the same population whether [defendant] won or lost on the merits").[5]

**IV.  Class Certification Is Proper Against the State Defendants**

The "additional arguments" offered by the State Defendants fare no better. *See* ECF No. 61 at 3-10. For starters, the State Defendants misapprehend Plaintiffs' core theory of liability— that the adoption and use of Tyler's software, without proper safeguards, predictably led to wrongful arrests and overdetentions. *Compare* ECF No. 30 at 37-39, *with* ECF No. 61 at 6-7. This is not a case where court and law-enforcement officials "occasionally ma[de] mistakes," but, rather, one in which Defendants embraced a "policy [of] serving invalid warrants" and keeping people in jail too long. *See Mitchell v. Aluisi*, 872 F.2d 577, 580 (4th Cir. 1989).

Courts have repeatedly recognized that this kind of challenge is viable—and suitable for class resolution. For example, in *Driver v. Marion County Sheriff*, the Seventh Circuit held that class certification was proper where plaintiffs "assert[ed] that the defendants' policy or practice caused them to be detained for an unconstitutionally-unreasonable length of time." 859 F.3d 489, 492 (7th Cir. 2017). In *Driver*, as here, the proposed class was comprised of "persons for whom legal authority for detention ha[d] ceased, whether by acquittal after trial, release on recognizance bond, completion of jail time in the sentence, or otherwise." *Id.* at 491.

---

[5] If the Court should find any proposed class definition to be failsafe, the proper course is to allow for the amendment of the definitions after some discovery is conducted. *Mr. Dees*, 2022 WL 1750537, at *3 ("[C]ourts recognize the problem with fail-safe classes often should be solved by refining the class definition rather than by flatly denying class certification on that basis." (internal marks omitted)).

Similarly, in *Oviatt v. Pearce*, the Ninth Circuit held that a county sheriff could be held liable under § 1983 when it failed to adopt "internal procedures for keeping track" of inmates' attendance at scheduled court appearances. 954 F.2d 1470, 1474 (9th Cir. 1992). The sheriff was "aware," for example, that "'from time to time' individuals were not arraigned because of "mistakes made by the court or the jail"—specifically, failing to cross reference computer-generated booking registers with arraignment lists. *Id.* at 1476-78. Because this "policy of deliberate indifference" was "closely related" to the plaintiff's unnecessary detention, liability under § 1983 was appropriate. *Id.*

## CONCLUSION

Plaintiffs respectfully request that this Court grant its earlier-filed Consent Motion and extend the time to move for class certification or, in the alternative, postpone making any certification determination under Local Rule 23.1(b).

In any event, Plaintiffs submit that certification is proper.

\* \* \* Signature Block Appears on Next Page \* \* \*

This the 19th day of January, 2024.

/s/ Zachary Ezor
Zachary Ezor (NCSB #: 55070)
Email: zezor@tinfulton.com
Gagan Gupta (NCSB #: 53119)
Email: ggupta@tinfulton.com
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN PLLC
119 Orange Street, Floor 2
Durham, NC 27701
Telephone: (919) 307-8400

A. Dami Animashaun
Email: dami@animashaun.me
933 South Grand Avenue, Suite 2450 Los Angeles, CA 90071
Telephone: 929-266-3971

*Counsel for Plaintiffs on behalf of themselves and all others similarly situated*

Served on all parties: Via ECF

## CERTIFICATE OF WORD COUNT

Undersigned counsel certifies that the above reply memorandum complies with all word-count requirements set forth in the Local Rules, including Local Civil Rule 7.3(d).

Specifically, the brief does not exceed 3,125 words, as determined by the word-count feature of the word processing software used to assemble the brief.

This the 19th day of January, 2024.

/s/ Zachary Ezor
Zachary Ezor
