IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:23-cv-00423-WO-JLW

| | |
|---|---|
| TIMIA CHAPLIN; SARAH FIELDS; SAYELINE NUNEZ; THOMAS HAYWARD; KEVIN SPRUILL; ROTESHA MCNEIL; QIANA ROBERTSON; YOUSEF JALLAL; MESSIEJAH BRADLEY; DENNIS KEITH LASSITER; PAULINO CASTELLANOS; ROBERT LEWIS; and ALLEN SIFFORD, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GARY L. MCFADDEN, officially, as the Sheriff of Mecklenburg County; JOHN DOE SURETY, as surety for the Sheriff of Mecklenburg County; WILLIE R. ROWE, officially, as the Sheriff of Wake County; BRIAN ESTES, officially, as the Sheriffs of Lee County; THE OHIO CASUALTY INSURANCE COMPANY, as the surety for the Sheriff of Wake County and Lee County; TYLER TECHNOLOGIES, INC.; RYAN BOYCE, officially, as the Executive Director of the North Carolina Administrative Office of the Courts; BRAD FOWLER, officially, as the eCourts Executive Sponsor and Chief Business Officer of the North Carolina Administrative Office of the Courts; ELISA CHINN-GARY, individually and officially, as the Mecklenburg County Clerk of Superior Court; BLAIR WILLIAMS, individually and officially, as the Wake County Clerk of Superior Court; SUSIE K. THOMAS, individually and officially, as the Lee County Clerk of Superior Court; and DOES 1 THROUGH 20, INCLUSIVE, <br><br> Defendants. | **BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT OF DEFENDANT BRIAN ESTES, IN HIS OFFICIAL CAPACITY AS SHERIFF OF LEE COUNTY** |

NOW COMES the defendant Brian Estes, in his official capacity as Sheriff of Lee County, and files this brief in support of his motion to dismiss Plaintiffs' Second Amended Complaint ("Second Amended Complaint") pursuant to Rule 12(b)(6).

## INTRODUCTION

This is a lawsuit in which the Plaintiffs complain at some length about the State of North Carolina's "rollout of 'eCourts' in four pilot counties" and how the "eCourts launch" by the State of North Carolina and its officers, along with Defendant Tyler Technologies, Inc., has led to problems. ( Second Amended Complaint, pars. 1-6, 52-100, 237-246, 308-324 and exhibits thereto). Most of the factual allegations in the Second Amended Complaint relate to the State of North Carolina and its officers and to Defendant Tyler Technologies, Inc. (See Second Amended Complaint, pars. 1-6, 52-100, 237-246 and exhibits thereto).

However, for some reason the Plaintiffs also included, as a defendant, Brian Estes "in his official capacity as Sheriff of Lee County." (Second Amended Complaint, caption and par. 24). The "official capacity" suit against Sheriff Estes is in reality a suit against the Office of Sheriff of Lee County, since "an official capacity suit is…to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-166, 105 S. Ct. 3099, 3105 (1985). See Gantt v. Whitaker, 203 F.Supp.2d 503, 508 (M.D.N.C. 2002) (holding that an "official capacity" suit against the Sheriff of Davie County was actually a suit against the Office of Sheriff of Davie County), aff'd, 57 Fed.Appx. 141 (4th Cir. 2003).

2

## Factual Allegations in the Second Amended Complaint
## Relating to Defendant Sheriff Estes

The few allegations in the Second Amended Complaint containing factual content relating to Sheriff Estes are found in paragraphs 24-29 of the Second Amended Complaint, which state as follows:

> 24. Defendant Brian Estes ("Sheriff Estes") is the elected Sheriff of Lee County, North Carolina, and is sued in his official capacity as the Sheriff of Lee County.

> 25. Defendant Sheriff Estes is charged by statute with control and operation of the Lee County's Sheriff's Office, including policymaking, training and supervision relating to the employees of the Lee County Sheriff's Office.

> 26. Defendant Sheriff Estes is further responsible for the care and custody of Lee County's detention facilities.

> 27. Upon information and belief, Defendant Sheriff Estes oversees the Judicial Services division of Lee County Sheriff's Office. Upon information and belief, the Judicial Services Division is tasked with protecting the Lee County Justice Center and Courthouse and is responsible for ensuring that court papers are properly issued and that court cases are processed efficiently.

> 28. Upon information and belief, the Judicial Services Division also houses the Warrant unit. This unit is responsible for all criminal process including the issuance of criminal warrants. This unit also processes judicial orders pertaining to criminal summons, restraining orders and warrant services.

> 29. Defendant Sheriff Estes, through Lee County, had, at the time of Plaintiffs' unlawful detentions, waived governmental or sovereign immunity from the state law tort claims in this case pursuant to N.C.G.S. § 153A-435, either by participating in a government risk pool or through purchasing commercial insurance that will indemnify him and his agents for any judgment against him or his agents named in this action. Defendant Sheriff Estes has also waived immunity for the independent reason that he purchased an official bond.

3

**<u>Factual Allegations in the Second Amended Complaint Relating to
the Sole "Lee County Plaintiff," Plaintiff Paulino Castellanos</u>**

Plaintiff Paulino Castellanos is identified in Plaintiffs' Second Amended Complaint as the sole "Lee County Plaintiff." (Second Amended Complaint, page 27). Plaintiff Castellanos is a resident of Lee County (Second Amended Complaint, par. 49) and was arrested in Lee County for unspecified reasons by an unnamed officer from an unidentified law enforcement agency. (Second Amended Complaint, par. 203). Since Plaintiff Castellanos is identified by Plaintiffs as the "Lee County Plaintiff" and was arrested in Lee County, Castellanos is presumably the only plaintiff in this case intending to sue Sheriff Estes in his official capacity as Sheriff of Lee County.

The specific factual allegations relating to Plaintiff Castellanos appear at paragraphs 49 and 202-212 of the Second Amended Complaint. Plaintiff Castellanos alleges that he suffers from arthritis, is "often confined to a wheelchair," and was arrested for unspecified reasons by unspecified officers from an unnamed law enforcement agency in Lee County on February 10, 2023. (Second Amended Complaint, pars. 202-203). The State set a bond amount that Castellanos "could not afford to pay." (Second Amended Complaint, par. 203). Due to Castellanos' disability, counsel for Castellanos "endeavored to secure" Castellanos' immediate release. (Second Amended Complaint, par. 204). However, because the State court system had "no record of Mr. Castellanos' case," apparently due to the State's transition to the eCourts system, Mr. Castellanos "was unable to move for bond reduction, or pay his active bond, on February 10, 2023." (Second Amended Complaint, pars. 205-206). On February 13, 2023, the Lee County Court system, an arm of the State

4

of North Carolina, transitioned to the eCourts system, and Castellanos' attorney moved for and obtained a bond reduction from the court on February 15, 2023, and the court ordered that Castellanos be released pending trial. (Second Amended Complaint, pars. 207-210). Plaintiff Castellanos does not allege that there was any delay regarding his release after the court ordered his release.

Plaintiff also makes the conclusory allegation that if unspecified "Defendants" had "exercised due care in the adoption and implementation of eCourts, Mr. Castellanos could have moved for and received a bond reduction on the day of his arrest, avoiding spending any longer than a few hours in jail." (Second Amended Complaint, par. 212). There is no allegation in Plaintiff's Second Amended Complaint that Sheriff Estes had any involvement in the "adoption and implementation of eCourts." Instead Plaintiff's Second Amended Complaint clearly alleges that the State of North Carolina and Tyler Technologies were responsible for the adoption and implementation of eCourts. (Second Amended Complaint, pars. 1-6, 52-100, 237-246 and exhibits thereto).

Significantly, the allegations in the Second Amended Complaint relating to Plaintiff Castellanos make no factual allegations relating to or against Sheriff Estes. In fact, the factual allegations in the Second Amended Complaint dealing with Castellanos (Second Amended Complaint, pars. 49 and 202-212) do not mention Sheriff Estes at all.[1]

---

[1] The allegations in the Second Amended Complaint relating to the other various Plaintiffs also make no mention of Sheriff Estes. (Second Amended Complaint, pars. 101-201, 213-228).

## Claims in the Second Amended Complaint Asserted Against Defendant Estes

The Plaintiffs have asserted three claims against Sheriff Estes.

### 1.    "Negligence Against All Sheriff Defendants"

Plaintiffs' Second Claim for Relief purports to be a claim for "Negligence Against All Sheriff Defendants." (Second Amended Complaint, pars. 247-257). Plaintiff Castellanos purports to sue Sheriff Estes for negligence "on behalf of himself individually" and the "Overdetention Class." (Second Amended Complaint, par. 250). Plaintiffs define the "Overdetention Class" as "[a]ll individuals in the State of North Carolina who, beginning on and including February 13, 2023, and due to [unspecified] Defendants' adoption, implementation and design of eCourts…were released from jail more that two (2) hours after the basis for their detention ended." (Second Amended Complaint, par. 229).[2]  As noted above, Plaintiffs do not allege that Sheriff Estes had any involvement in the adoption, implementation, and/or design of eCourts; instead, Plaintiffs very clearly allege that the State of North Carolina and Tyler Technologies were responsible for the adoption, implementation, and design of eCourts. (Second Amended Complaint pars. 1-6, 52-100, 237-246 and exhibits thereto).

With regard to the negligence claims against "Sheriff Defendants" relating to the "Overdetention Class," the Plaintiffs allege, in conclusory fashion, that "Sheriff

---

[2] Defendant Estes does not believe that the "Overdetention Class" is a proper class. However, Defendant Estes includes references to the "Overdetention Class" in an attempt to explain Plaintiff Castellanos' apparent theory underlying Castellanos' negligence claim against Sheriff Estes.

6

Defendants" were "negligent and breached duties owed to Plaintiffs" by failing to "implement systems to ensure that individuals ordered released or who had otherwise satisfied conditions of release, would be released in a timely fashion," and by "detain[ing] individuals for over two hours beyond the time they had be ordered released or otherwise satisfied their conditions of release…." (Second Amended Complaint, par. 254(d) and (e)). Plaintiffs' Second Claim for Relief also alleges, in conclusory fashion, that "the Sheriff Defendants' negligence" caused the "Overdetention Class" to be "wrongfully…detained." (Second Amended Complaint, par. 256). However, there are no factual allegations in the Second Amended Complaint indicating that Castellanos had "satisfied conditions of release" prior to the State ordering his release on February 15, 2023, and there are no factual allegations in the Second Amended Complaint stating that Sheriff Estes detained Castellanos after the State ordered Castellanos' release or otherwise "wrongfully" detained Castellanos.

### 2. A Claim Under N.C. Gen. Stat. § 58-76-5

The Plaintiffs' Fifth Claim for Relief purports to be a claim pursuant to N.C. Gen. Stat. § 58-76-5, an action on the Sheriff Defendants' official bond, against the "Sheriff Defendants" and the Ohio Casualty Insurance Company. (Second Amended Complaint, pars. 297-307). As to Sheriff Estes, the Plaintiffs' claim against Sheriff Estes is based on Plaintiffs' allegations of negligence against Sheriff Estes, as contained in Plaintiffs' Second Claim for Relief. (Second Amended Complaint, par. 305).

### 3. **Claim for Injunctive Relief**

The Seventh Claim for Relief purports to be a claim for injunctive relief against the "Sheriff Defendants" and others. (Second Amended Complaint, pars. 325-336). The Seventh Claim for Relief includes conclusory assertions that undifferentiated "Defendants" adopted and/or implemented undescribed "administrative policies" that are "unconstitutional." (Second Amended Complaint, pars. 331-333). However, the Plaintiffs' Seventh Claim, like the rest of Plaintiffs' Second Amended Complaint, contains no factual allegations relating to any alleged wrongful or illegal action taken by Sheriff Estes or the Lee County Sheriff's Office.

Defendant Brian Estes, in his official capacity as Sheriff of Lee County, now moves to dismiss all of Plaintiffs' claims against him pursuant to Rule 12(b)(6).

## ARGUMENT

### DEFENDANT SHERIFF ESTES IS ENTITLED TO DISMISSAL OF PLAINTIFFS' CLAIMS AGAINST HIM BECAUSE PLAINTIFFS HAVE NOT PLAUSIBLY PLED ANY CAUSE OF ACTION AGAINST ESTES

### A. Standard for Rule 12(b)(6) Motions

Under Rule 12(b)(6), a complaint must give each defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). To meet this requirement, the complaint must be supported by factual allegations. "While legal conclusions can provide the framework of the complaint," neither legal conclusions nor conclusory statements are themselves sufficient and such conclusory statements are not entitled to a presumption of truth.

8

Ashcroft v. Iqbal, 556 U.S. 662, 678-679, 129 S.Ct. 1937, 1949-50 (2009). To survive a motion to dismiss, a plaintiff's complaint must allege "more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. at 678, 129 S.Ct. at 1949. Instead, a complaint will survive a motion to dismiss under Rule 12(b)(6) only if it contains facts sufficient to "state a claim that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Twombly and Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the presumption of truth. Iqbal, supra. at 678, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Id. (Citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Courts do not "accept as true a legal conclusion couched as a factual allegation." Iqbal, supra. at 678, 129 S.Ct. at 1949-50. Twombly and Iqbal require "more than an unadorned, the defendant-unlawfully-harmed-me accusation." Twombly, 550 U.S. at 555. "Although the pleading requirements stated in Rule 8 [of the Federal Rules of Civil Procedure] mark[ ] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era…it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal at 678-79. In other words, while the court may accept factual

9

allegations in a complaint as true and considers the facts in the light most favorable to the plaintiff in ruling on a motion to dismiss, "conclusory" allegations, "naked assertions," Twombly, 550 U.S. at 557, and/or "formulaic recitations," Id. at 555, should be disregarded for purposes of a motion to dismiss. Id. at 555-57. Thus, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Market Incorporated v. J.V. Associates, LP, 213 F.3d 175, 180 (4th Cir. 2000). See Twombly, 550 U.S. at 555 (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Thus, conclusory allegations are not entitled to the presumption of truth and must therefore be disregarded when analyzing a motion to dismiss under Rule 12(b)(6).

The next step is for the court to determine whether the remaining well-pleaded facts make out a plausible claim – i.e., whether the factual allegations are "enough to raise a right of relief above the speculative level…on the assumption that all the [well pleaded factual] allegations in the complaint are true…." Twombly at 555. This is because in order for Plaintiffs to withstand a motion to dismiss, the Complaint must contain "enough factual matter" to make out a claim that is "plausible." Id. at 556. Determining whether a complaint contains sufficient facts to state a "plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, supra. at 679. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the

pleader is entitled to relief,'" and therefore should be dismissed. <u>Id</u>. (quoting Fed. R. Civ. P. 8(a)(2)).

**B.    Plaintiffs' Lawsuit Against Sheriff Estes Must Be Dismissed Because Plaintiffs Have Failed to Allege Any Facts Stating a Plausible Claim for Relief Against Sheriff Estes**

**1.    The conclusory statements and formulaic recitations in Plaintiffs' Second Amended Complaint are not entitled to the presumption of truth, and should be disregarded for purposes of Sheriff Estes' motion to dismiss**

The Plaintiffs' Second Amended Complaint contains a few conclusory statements, legal assertions, and/or formulaic recitations that relate (or purport to relate) to Defendant Estes. For example, in paragraphs 253-256 of Plaintiffs' Second Amended Complaint, Plaintiffs state, in conclusory fashion, that the "Sheriff Defendants" were negligent in various ways, and that this negligence proximately caused Plaintiffs to be "wrongfully arrested and detained." (Second Amended Complaint, pars. 253-257). However, Plaintiffs have pled no factual content describing any acts taken by Sheriff Estes that could be considered negligent acts, and, significantly, Plaintiffs have pled no factual content showing that Sheriff Estes took any action that caused any Plaintiff to be arrested and/or wrongfully detained.

Also, in paragraphs 331-333 of Plaintiffs' Second Amended Complaint, Plaintiffs state, in conclusory fashion, that "Plaintiffs and the Class" "have suffered and will continue to suffer unconstitutional deprivations of their liberty interests" caused by unspecified unconstitutional "administrative policies" of the "Sheriff Defendants" and others. (Second

Amended Complaint, pars. 331-333). However, Plaintiffs have pled no factual content relating to these unspecified "administrative policies" of Defendant Estes.

As explained above, these few conclusory statements, conclusory allegations, naked assertions, and/or formulaic recitations are not entitled to the presumption of truth, and should therefore be disregarded for purposes of Defendant Estes' motion to dismiss. Iqbal at 678-79; Twombly at 555-557.

Similarly, to the extent that Plaintiffs may argue that their collective allegations against undifferentiated "Defendants" can somehow be construed as allegations against Sheriff Estes, such an argument would be fatally flawed. As the Fourth Circuit specifically held in Langford v. Joyner, 62 F.4d 12 (4th Cir. 2023), in cases involving multiple named defendants, "generalized, conclusory, and collective allegations" against undifferentiated "Defendants" do not plausibly plead or state a claim against a particular defendant. Id. at 124-126. Thus, the Langford court stated in part as follows:

> Defendants argue that Langford's "generalized, conclusory and collective allegations" fail to plausibly allege [wrongdoing] on the part of each Defendants…. We are constrained to agree.
>
> …Courts have been critical of complaints that "fail[ ] to isolate the allegedly constitutional acts of each defendant." Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008), or that "make[ ] only categorical references to 'Defendants.'" Marcillis v. Twp. of Redford, 693 F.3d 589, 596 (6th Cir. 2012).
>
> The courts have reasoned that requiring specific factual allegations for each defendant gives fair notice to *that* defendant of the plaintiff's claim and the underlying factual support. See e.g., Robbins, 519 F.3d at 1250 ("Given the complaint's use of … the collective term 'Defendants' … it is impossible for any of these individuals to ascertain what particular unconstitutional acts

they are alleged to have committed."); <u>Marcillis</u>, 693 F.3d at 569-97 (collecting cases)….

> On appeal, Langford argues that the repeated general references to "Defendants" in his complaint are sufficient because he brings the same allegations against each Defendant, so "Defendants" functions as a shorthand alternative to listing each Defendant by name. But Langford has the burden of pleading a facially plausible claim. <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. 1937. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the* defendant is liable for the misconducted alleged." <u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955) (emphasis added). And it is not reasonable to infer liability against each Defendant based on the facts alleged.

<u>Id</u>. at 124-126 (emphasis in original). <u>See also e.g.</u>, <u>Inpatient Consultants of North Carolina, P.C. v. Goad</u>, 2023 WL 2611128 at* 8 (W.D. Va. 2023) (unpublished) (in RICO case, court granted motion to dismiss because "when claims are made against multiple defendants, the complaint must, at the very least, 'minimally…apprise each defendant[ ] of who did what to whom and when'") (internal citations omitted); <u>Gomez v. Fields</u>, 2023 WL 2527161 at * 2 (W.D. Va. 2023) (unpublished) (granting motion to dismiss "[b]ecause the pleadings do not describe any interactions that Gomez had with Webb, much less identify acts committed by Webb that allegedly violated Gomez's constitutional rights, the allegations are insufficient to state a plausible claim for relief against Webb."); <u>Whaley v. Multiple Unknown Defendants</u>, 2023 WL 5757689 at *2 (D.SC. 2023) (unpublished) (citing <u>Langford</u> for proposition that "collective allegations" against "all Defendants" without identifying how each individual defendant personally interacted with plaintiff or was responsible for the denial of constitutional rights do not comply with the tenets of <u>Twombly</u> and <u>Iqbal</u>.").

13

In short, Plaintiffs' conclusory statements and formulaic recitations regarding Sheriff Estes are not entitled to the presumption of truth, Iqbal, supra., and Plaintiffs' conclusory allegations against collective, undifferentiated "Defendants" cannot be viewed as specific factual allegations against Sheriff Estes. Langford, supra. Therefore, these conclusory statements and allegations must be disregarded for purposes of Sheriff Estes' motion to dismiss.

>    **2.    The few factual allegations in Plaintiffs' Second Amended Complaint relating to Defendant Estes do not state a plausible claim for relief against Estes**

As discussed above, the next step in the analysis of Defendant Estes' Rule 12(b)(6) motion is for the court to determine whether the well-pleaded facts in the Second Amended Complaint make out a plausible claim – i.e., whether the factual allegations are "enough to raise a right of relief above the speculative level…on the assumption that all the [well pleaded factual] allegations in the complaint are true…." Twombly at 555. If the Second Amended Complaint does not contain "enough factual matter" relating to Estes to make out a claim against Estes that is "plausible," the suit against Estes must be dismissed. Id. at 556. In the instant case, as shown below, the very few factual allegations relating to Defendant Estes do not state a plausible claim for relief against Defendant Estes. Accordingly, Defendant Estes' motion to dismiss should be granted.

As noted above, the only factual allegations in the Second Amended Complaint relating to Defendant Estes are found at paragraphs 24 through 29, which state as follows:

14

24. Defendant Brian Estes ("Sheriff Estes") is the elected Sheriff of Lee County, North Carolina, and is sued in his official capacity as the Sheriff of Lee County.

25. Defendant Sheriff Estes is charged by statute with control and operation of the Lee County's Sheriff's Office, including policymaking, training and supervision relating to the employees of the Lee County Sheriff's Office.

26. Defendant Sheriff Estes is further responsible for the care and custody of Lee County's detention facilities.

27. Upon information and belief, Defendant Sheriff Estes oversees the Judicial Services division of Lee County Sheriff's Office. Upon information and belief, the Judicial Services Division is tasked with protecting the Lee County Justice Center and Courthouse and is responsible for ensuring that court papers are properly issued and that court cases are processed efficiently.

28. Upon information and belief, the Judicial Services Division also houses the Warrant unit. This unit is responsible for all criminal process including the issuance of criminal warrants. This unit also processes judicial orders pertaining to criminal summons, restraining orders and warrant services.

29. Defendant Sheriff Estes, through Lee County, had, at the time of Plaintiffs' unlawful detentions, waived governmental or sovereign immunity from the state law tort claims in this case pursuant to N.C.G.S. § 153A-435, either by participating in a government risk pool or through purchasing commercial insurance that will indemnify him and his agents for any judgment against him or his agents named in this action. Defendant Sheriff Estes has also waived immunity for the independent reason that he purchased an official bond.

There are no factual allegations in Plaintiffs' Second Amended Complaint indicating that Sheriff Estes committed any wrongful acts. Indeed, there are no factual allegations in the Second Amended Complaint stating that Sheriff Estes and/or the Office of Sheriff of Lee County took <u>any</u> action that had any affect on Plaintiff Castellanos or any

15

other Plaintiff. For example, Plaintiffs do not allege that there was any delay in releasing Castellanos from jail after the court ordered his release on February 15, 2023.

As noted above, Plaintiffs have asserted three claims against Sheriff Estes.

Plaintiffs' Second Claim for Relief purports to be a claim for "Negligence Against All Sheriff Defendants." However, neither the Second Claim for Relief nor the rest of Plaintiffs' Second Amended Complaint contain factual matter or specific factual allegations describing any acts of Sheriff Estes that could in any way be considered negligent. As noted above, Plaintiff Castellanos purports to sue Sheriff Estes for the common law tort of negligence "on behalf of himself individually" and on behalf of the "Overdetention Class." (Second Amended Complaint, par. 250). Plaintiffs define "Overdetention Class" as follows: "All individuals in the State of North Carolina who, beginning on and including February 13, 2023, and due to [unspecified] Defendants' adoption, implementation and design of eCourts...were released from jail more than two (2) hours after the basis for their detention ended." (Second Amended Complaint, par. 229). Significantly, Plaintiffs do not allege that Sheriff Estes had any involvement in the "adoption, implementation and design of eCourts;" instead, Plaintiffs clearly allege that the State of North Carolina and Tyler Technologies were responsible for the adoption, implementation and design of eCourts. (Second Amended Complaint, pars. 1-6, 52-100, 237-246 and exhibits thereto).

With respect to the Plaintiffs' negligence claims against "Sheriff Defendants" relating to the "Overdetention Class," Plaintiffs allege, in broad conclusory fashion, that

16

"Sheriff Defendants" were "negligent and breached duties owed to [undifferentiated] Plaintiffs" by failing to "implement systems to ensure that individuals ordered released or who had otherwise satisfied conditions of release, would be released in a timely fashion," and by "detain[ing] individuals for over two hours beyond the time they had been ordered released or otherwise satisfied their conditions of release...."  (Second Amended Complaint, pars. 254(d) and (e)).  However, as noted above, Plaintiffs do not allege that Sheriff Estes had any involvement in the adoption, implementation and design of eCourts. Furthermore, Plaintiffs allege no facts indicating that Castellanos had "satisfied conditions of release" prior to the state court ordering Plaintiff Castellanos' release on February 15, 2023.  Finally, Plaintiffs do not allege that after there was any delay in releasing Castellanos after the state court ordered Castellanos to be released on February 15, 2023.  Therefore, the few factual allegations relating to Sheriff Estes and Plaintiff Castellanos do not state a plausible claim for negligence against Sheriff Estes.

The Plaintiffs' Fifth Claim for Relief purports to be a claim pursuant to N.C. Gen. Stat. § 58-76-5, an action of the Sheriff Defendants' official bond, against the "Sheriff Defendants" and the Ohio Casualty Insurance Company.  (Second Amended Complaint, pars. 297-307).  As to Sheriff Estes, the Plaintiffs' claim against Sheriff Estes is based on Plaintiffs' allegations of negligence against Sheriff Estes, as contained in Plaintiffs' Second Claim for Relief.  (Second Amended Complaint, par. 305).  However, as noted above, neither the Second Claim for Relief nor the rest of Plaintiffs' Second Amended Complaint contains factual matter describing any negligent act or acts of Sheriff Estes.  Since Plaintiffs

17

have not plausibly pled a negligence claim against Sheriff Estes, the statutory bond claim must also be dismissed. This is because dismissal of the only common law that claim against Sheriff Estes "necessitates the dismissal of [the] statutory bond claim." <u>Stafford v. Barker</u>, 126 N.C.App. 576, 585, 502 S.E.2d 1, 6 (1998).

The Seventh Claim for Relief purports to be a claim for injunctive judgment against the "Sheriff Defendants" and others. (Second Amended Complaint, pars. 325-336). The Seventh Claim for Relief includes conclusory assertions that undifferentiated "Defendants" adopted and/or implemented undescribed "administrative policies" that are "unconstitutional." (Second Amended Complaint, pars. 331-333). However, the Seventh Cause of Action, like the rest of Plaintiffs' Second Amended Complaint, contains no factual allegations regarding any alleged wrongful or illegal action taken by Sheriff Estes or the Lee County Sheriff's Office.

In short, the few factual allegations in the Second Amended Complaint relating to Sheriff Estes do not contain facts sufficient to state a claim that is "plausible on its face" against Estes under <u>Iqbal</u> and <u>Twombly</u>. As explained above, to survive a motion to dismiss, Plaintiffs must allege "more than an unadorned, the defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, <u>supra</u>. at 678. In this case, the few specific factual allegations relating to Sheriff Estes do not state that Estes committed any wrongful or illegal acts. Since Plaintiffs have not alleged any wrongful or illegal acts by Sheriff Estes, Sheriff Estes has neither "fair notice" of any claim against him nor notice of the "grounds upon [any] claim against [him] rests." <u>Twombly</u>, <u>supra</u>. at 555. Thus, the facts as pled by

18

Plaintiffs do not permit the Court to infer even the possibility of misconduct by Sheriff Estes. See Iqbal, supra. at 679. Accordingly, under the cases cited in this brief, including Iqbal and Twombly, all claims against Sheriff Estes should be dismissed.

## **CONCLUSION**

Based on the foregoing arguments and authorities, the defendant Sheriff Brian Estes, in his official capacity as Sheriff of Lee County, respectfully submits that his motion to dismiss pursuant to Rule 12(b)(6) should be granted.

Respectfully submitted, this the 8th day of April, 2024.

/s/ *James R. Morgan, Jr.*
James R. Morgan, Jr.
N.C. State Bar No. 12496
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3710
Facsimile: (336) 733-8394
E-mail: Jim.Morgan@wbd-us.com
*Attorney for Defendant Brian Estes*

## LOCAL RULE 7.3(d)(1) CERTIFICATION

The undersigned hereby certifies that this brief does not exceed 6,250 words and is therefore compliant with Local Rule 7.3(d)(1). More specifically, the body of the brief, headings, and footnotes comprise 4,575 words.

/s/ James R. Morgan, Jr.
James R. Morgan, Jr.
N.C. State Bar No. 12496
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3710
Facsimile: (336) 733-8394
E-mail: Jim.Morgan@wbd-us.com
*Attorney for Defendant Brian Estes*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2024, I electronically filed the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT OF DEFENDANT BRIAN ESTES, IN HIS OFFICIAL CAPACITY AS SHERIFF OF LEE COUNTY** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all Counsel of record.

/s/ *James R. Morgan, Jr.*
James R. Morgan, Jr.
N.C. State Bar No. 12496
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3710
Facsimile: (336) 733-8394
E-mail: Jim.Morgan@wbd-us.com
*Attorney for Defendant Brian Estes*