UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:23-cv-00423-WO-JLW

TIMIA CHAPLIN; SARAH FIELDS; SAYELINE NUNEZ;
THOMAS HAYWARD; KEVIN SPRUILL; ROTESHA MCNEIL;
QIANA ROBERTSON; YOUSEF JALLAL; MESSIEJAH
BRADLEY; DENNIS KEITH LASSITER; PAULINO
CASTELLANOS; ROBERT LEWIS; and ALLEN SIFFORD, on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

    v.

GARY L. MCFADDEN, officially as the Sheriff of
Mecklenburg County, JOHN DOE Surety, as surety
for the Sheriff of Mecklenburg County; WILLIE R.
ROWE, in his capacity as Sheriff of Wake County;
BRIAN ESTES, in his official capacity as the
Sheriff of Lee County; THE OHIO CASUALTY
INSURANCE COMPANY, as the surety for the Sheriff
of Wake County and as surety for the Sheriff of
Lee County; TYLER TECHNOLOGIES, INC.; RYAN BOYCE,
in his official capacity as the Executive
Director of the North Carolina Administrative
Office of the Courts; BRAD FOWLER, in his
official capacity as the eCourts Executive
Sponsor and Chief Business Officer of the North
Carolina Administrative Office of the Courts;
ELISA CHINN-GARY, individually and officially, as
the Mecklenburg County Clerk of Superior Court;
BLAIR WILLIAMS, in his official capacity as the
Wake County Clerk of Superior Court; SUSIE K.
THOMAS, in her official capacity as the Lee
County Clerk of Superior Court; and DOES 1
THROUGH 20, INCLUSIVE,

        Defendants.

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
TYLER TECHNOLOGIES, INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

Page

Table of Authorities............................... iii

INTRODUCTION........................................ 1

BACKGROUND.......................................... 3

    A.  North Carolina transitions its court recordkeeping system from a paper to an electronic system ......................... 3

    B.  Thirteen plaintiffs allege that they were unlawfully arrested or detained ........... 4

STATEMENT OF THE QUESTIONS PRESENTED................ 5

ARGUMENT............................................ 5

  I.  Plaintiffs' Negligence Claim Fails As A Matter Of Law................................ 6

    A.  Tyler does not owe a duty to Plaintiffs .... 7

      1.  Tyler does not have a special-relationship duty to protect Plaintiffs from third parties ........... 7

      2.  Tyler has no duty to ensure end-users are properly trained to use its products .......................... 10

    B.  The SAC does not plausibly allege a causal nexus between Tyler's conduct and Plaintiffs' alleged injuries ............. 13

      1.  The SAC alleges that state actors caused Plaintiffs' alleged injuries ............................... 13

      2.  The SAC's reliance on outside statements does not establish causation ............................... 18

3. References to other states do not link alleged harm to Tyler and are irrelevant .............................. 20

C. Plaintiffs' failure-to-warn claim also fails ..................................... 21

II. Plaintiffs' Class Claim Against Tyler Fails As A Matter of Law..................... 24

A. Plaintiffs cannot meet the Rule 23(a) requirements of commonality or typicality . 27

B. Plaintiffs cannot meet the more stringent Rule 23(b)(3) requirements ................ 31

CONCLUSION........................................... 34

CERTIFICATE OF COMPLIANCE........................... 36

CERTIFICATE OF SERVICE.............................. 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Am. Elec. Power, Inc.*,
  No. 2:12-CV-00243, 2012 WL 3260406 (S.D.W. Va. Aug.
  8, 2012)..........................................32, 34

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997).....................................32

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................3, 5

*Blackwell v. Hatley*,
  202 N.C. App. 208, 688 S.E.2d 742 (2010).................6

*Bond v. Marriott Int'l, Inc.*,
  296 F.R.D. 403 (D. Md. 2014)...........................27

*Bryant v. Adams*,
  116 N.C. App. 448, 448 S.E.2d 832 (1994)...............22

*Cahoon v. Edward Orton, Jr. Ceramic Found.*,
  No. 2:17-CV-63-D, 2020 WL 918753 (E.D.N.C. Feb. 24,
  2020)..................................................24

*City of High Point, N. Carolina v. Suez Treatment
  Sols. Inc.*,
  485 F. Supp. 3d 608 (M.D.N.C. 2020)................22, 23

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006)...........................28

*Derwort v. Polk Cnty.*,
  129 N.C. App. 789, 501 S.E.2d 379 (1998).............6, 7

*Driver v. Marion Cnty. Sheriff*,
  No. 1:14-cv-2076, (S.D. Ind. May 13, 2015).............21

*Finch v. Covil Corp.*,
  388 F. Supp. 3d 593 (M.D.N.C. 2019), *aff'd*, 972
  F.3d 507 (4th Cir. 2020)...........................23, 24

Case 1:23-cv-00423-WO-JLW   Document 91   Filed 04/09/24   Page 4 of 45

*Fontenot v. TASER Int'l, Inc.*,
  No. 3:10CV125-RJC-DCK, 2011 WL 2535016 (W.D.N.C.
  June 27, 2011)..........................................24

*Foster v. Crandell*,
  181 N.C. App. 152, 638 S.E.2d 526 (2007)................12

*Gariety v. Grant Thornton, LLP*,
  368 F.3d 356 (4th Cir. 2004).......................31, 32

*General Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982).....................................27

*Harris v. Daimler Chrysler Corp.*,
  180 N.C. App. 551, 638 S.E.2d 260 (2006)................10

*King v. Durham Cnty. Mental Health Developmental
  Disabilities & Substance Abuse Auth.*,
  113 N.C. App. 341, 439 S.E.2d 771 (1994).................7

*Kirkman v. N. Carolina R.R. Co.*,
  220 F.R.D. 49 (M.D.N.C. 2004)......................29, 31

*Lamb v. Styles*,
  263 N.C. App. 633, 824 S.E.2d 170 (2019)...........13, 20

*Layani v. Ouazana*,
  No. CV ELH-20-420, 2021 WL 805405 (D. Md. Mar. 3,
  2021)..............................................25, 26

*Lienhart v. Dryvit Sys., Inc.*,
  255 F.3d 138 (4th Cir. 2001)............................27

*Nance v. Rowan-Salisbury Bd. of Educ.*,
  336 F. Supp. 3d 593 (M.D.N.C. 2018)................11, 12

*Nomani v. Qarni*,
  No. 1:22-cv-1065, 2023 WL 4203438 (E.D. Va. June
  27, 2023)...............................................18

*Painter's Mill Grille, LLC v. Brown*,
  716 F.3d 342 (4th Cir. 2013).......................5, 6, 18

*Parks Auto. Grp., Inc. v. Gen. Motors Corp.*,
  237 F.R.D. 567 (D.S.C. 2006)............................32

-iv-

*Pennsylvania Nat'l Mut. Cas. Ins. Co. v. STIHL Inc.*,
  No. 7:23-CV-00018-M, 2023 WL 5029142 (E.D.N.C. Aug.
  7, 2023)...............................................22

*Presnell v. Snap-On Securecorp, Inc.*,
  583 F. Supp. 3d 702 (M.D.N.C. 2022)................22, 23

*Sauers v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*,
  179 F. Supp. 3d 544 (M.D.N.C. 2016).................11, 12

*Scadden v. Holt*,
  222 N.C. App. 799, 733 S.E.2d 90 (2012)................10

*Stein v. Asheville City Bd. Of Educ.*,
  360 N.C. 321, 626 S.E.2d 263 (2006).............9, 10, 28

*Stone St. Partners, LLC v. Williamson*,
  No. 17 CVS 15265, 2018 WL 3619518 (N.C. Super. July
  26, 2018).........................................9, 10

*Talley v. Pride Mobility Prod. Corp.*,
  259 N.C. App. 734, 816 S.E.2d 533 (2018)...........24, 27

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006).......................32, 33

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)....................................27

*Williams v. Potomac Fam. Dining Grp. Operating Co.*,
  No. GJH-19-1780, 2020 WL 4207589 (D. Md. July 22,
  2020)..................................................25

*Williamson v. Liptzin*,
  141 N.C. App. 1, 539 S.E.2d 313 (2000).................13

**Statute**

N.C. Gen. Stat. § 99B-5(a) ..........................22, 23

**Other Authorities**

24 N.C. Index 4th Products Liability § 14 ...............24

-v-

Michelle Boudin, '*It's kind of like the rapture';
  Concerns ahead of changes at the court*, WDNC
  Charlotte (Feb. 8, 2023), https://bit.ly/3QJiFkt........19

Restatement (Second) of Torts § 315 .......................9

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1778
  (3d ed.).............................................32

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................25

Fed. R. Civ. P. 23 ....................................2, 25

Fed. R. Civ. P. 23(a) ..........................26, 27, 31

Fed. R. Civ. P. 23(a)(2) .................................27

Fed. R. Civ. P. 23(a)(3) .................................27

Fed. R. Civ. P. 23(b)(3) ............................26, 31

M.D.N.C. Local Rule 23.1(d) ..............................25

# INTRODUCTION

Plaintiffs' broad, conclusory statements about the North Carolina eCourts system do not state a legal claim against Defendant Tyler Technologies ("Tyler"). Pointing to a handful of matters out of tens of thousands that were migrated to eCourts, Plaintiffs' Second Amended Complaint ("SAC") claims systemic problems with how the eCourts software was used by government actors. But Plaintiffs have no plausible factual allegations supporting their sole claim against Tyler, for negligence, as either an individual or a class claim.

First, Tyler has no duty to protect Plaintiffs from their alleged injuries because there is no special relationship between Tyler and Plaintiffs. The SAC attributes Plaintiffs' alleged injuries to use of the eCourts software. But Tyler was a software vendor; other parties used the software. And neither Plaintiffs' failure-to-train theory, nor the contract between Tyler and the North Carolina Administrative Office of the Courts ("NCAOC"), creates a legal duty owed by Tyler to Plaintiffs.

-1-

Second, Plaintiffs cannot show proximate cause as a matter of law. Plaintiffs allege multiple, intervening factors related to the allegedly unlawful arrests or detentions that do not involve Tyler. These intervening acts break the causal chain and defeat the negligence claim against Tyler.

Plaintiffs' cursory failure-to-warn theory does not rectify their duty and causation problems. This theory also fails because there are no allegations that the eCourts software is a dangerous product or that inadequate warnings caused the alleged injuries.

Problems with individual claims aside, Plaintiffs' class allegations fail as a matter of law and should be dismissed on the pleadings. The only way to determine whether a class member suffered injury, *i.e.*, was arrested or detained unlawfully, is through individualized inquiry. No evidence uncovered in discovery could change this. The need for these individualized inquiries means Plaintiffs cannot satisfy the Rule 23 requirements of commonality, typicality, and predominance as a matter of law.

Armed with "nothing more than conclusions," Plaintiffs cannot "unlock the doors of discovery" for their individual

or class claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). This case should be dismissed.

## BACKGROUND

Plaintiffs filed their original complaint on May 23, 2023, ECF No. 1, and the First Amended Complaint in October 2023, ECF No. 30. Plaintiffs filed the SAC on February 28, 2024. The SAC adds new plaintiffs and defendants, but does not cure the material defects that have been present from the start.

### A. North Carolina transitions its court recordkeeping system from a paper to an electronic system.

Prior to modernizing its court system, North Carolina experienced recordkeeping difficulties with its paper-based system. SAC ¶ 54. After years of work, and bids by multiple vendors, a selection committee chose Tyler to implement an electronic system to improve the recordkeeping deficiencies in the court system. SAC ¶¶ 65, 68. In Tyler's contract with the NCAOC, Tyler agreed to license an "eCourts" software package, including a case-management system ("Odyssey"), and a software application for requesting and processing warrants ("eWarrants"). SAC ¶¶ 70-71.

Tyler is a software vendor. Tyler licenses its software, assists in implementing that software so that its

-3-

clients can operate it in live production, and provides maintenance and support to triage performance issues and answer end-user questions. SAC ¶¶ 70-71; ECF No. 77-2 at 6-15, 19-20.

Tyler is not responsible for the day-to-day use of the software. *See* SAC ¶¶ 70-71. Tyler does not generate or own the data entered into, stored in, or processed through the software. SAC ¶¶ 70-71; *see also* ECF No. 77-2 at 6-15, 19-20. Those responsibilities fall to the software's end-users, such as the state officials who input records and update the system with real-time information. SAC ¶¶ 13-29, 70-71, 313-14; *see also* ECF No. 77-3 at 3-4.

During the Odyssey implementation in four pilot counties (including Wake and Lee), Tyler and NCAOC worked to resolve software issues while the counties transitioned around 50,000 paper-based records. SAC ¶¶ 77-78; *see also* ECF No. 77-3 at 4-5. Following the pilot program, Mecklenburg County went into live production on Odyssey in October 2023. SAC ¶ 89.

> **B.  Thirteen plaintiffs allege that they were unlawfully arrested or detained.**

Despite alleging that the transition to eCourts resulted in "hundreds of people" being "unlawfully

-4-

detained," SAC ¶ 1, the SAC names only thirteen plaintiffs (out of thousands of matters) who allegedly experienced issues. Plaintiffs allege that they were unlawfully arrested or detained by third parties - officials in Wake, Mecklenburg, Lee, Gaston, and Guilford counties. *See* SAC ¶¶ 101-228. Plaintiffs do not identify all relevant state actors, much less name them as defendants.

### STATEMENT OF THE QUESTIONS PRESENTED

**1.** Whether Plaintiffs fail to state a negligence claim against Tyler.

**2.** Whether Plaintiffs' class-action allegations against Tyler fail to state a claim.

### ARGUMENT

Dismissal is warranted if a complaint does not "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). "It is now well established that mere conclusory and speculative allegations are not sufficient to withstand a motion to dismiss." *Painter's*

-5-

*Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

Plaintiffs' threadbare recital of the elements of negligence lacks the factual allegations necessary to sustain a claim against Tyler. Their class-action allegations fare no better. This Court should dismiss the claim against Tyler with prejudice.

## I. Plaintiffs' Negligence Claim Fails As A Matter Of Law.

To survive a motion to dismiss, a plaintiff must allege sufficient facts to establish each element of negligence, including duty and causation. *Derwort v. Polk Cnty.*, 129 N.C. App. 789, 791, 501 S.E.2d 379, 381 (1998); *Blackwell v. Hatley*, 202 N.C. App. 208, 212, 688 S.E.2d 742, 746 (2010). Plaintiffs have not adequately alleged that Tyler owed a duty to Plaintiffs or that Tyler proximately caused Plaintiffs' alleged injuries. Tacking on a failure-to-warn claim does not remedy those deficiencies. And that claim requires Plaintiffs to plead additional elements lacking here. Despite amending twice, Plaintiffs have not remedied these deficiencies – because they cannot.

-6-

**A. Tyler does not owe a duty to Plaintiffs.**

If a defendant owes no duty to the plaintiff, then there can be "no liability for negligence." *Derwort*, 129 N.C. App. at 791, 501 S.E.2d at 381. Tyler owed no duty to protect Plaintiffs from the harm alleged – arrest and detention by state actors.

In general, a defendant has no duty to protect a plaintiff against harm from third persons unless there is a recognized special-relationship exception. *King v. Durham Cnty. Mental Health Developmental Disabilities & Substance Abuse Auth.*, 113 N.C. App. 341, 345, 439 S.E.2d 771, 774 (1994). In North Carolina, these special relationships are limited to a few exceptions, such as parent-child or landowner-licensee. *Id.* at 346, 439 S.E.2d at 774. Otherwise, there is no duty related to third-party actions. *Id.* at 345-46, 439 S.E.2d at 774.

**1. Tyler does not have a special-relationship duty to protect Plaintiffs from third parties.**

Plaintiffs have not, and cannot, plead a legally recognized duty. Plaintiffs broadly allege that Tyler voluntarily assumed a duty "to ensure that its eCourts system...would operate properly." SAC ¶¶ 239-40. Plaintiffs also allege that Tyler's contractual obligations to NCAOC

-7-

are somehow owed to Plaintiffs. SAC ¶¶ 240-42. Tyler is unaware of any cases recognizing a special-relationship duty under similar circumstances.

Tyler is a software vendor that licensed the software and assisted with its implementation. SAC ¶ 71. As the SAC alleges, various government authorities actually use the software for daily operations, input data into the software, and act on the inputs. For example, the SAC alleges that the government authorities are responsible for:

- "ensuring that court papers are properly issued," SAC ¶¶ 15, 21, 27;

- "maintain[ing] accurate electronic case records," SAC ¶ 318;

- "identify[ing] and or remov[ing] invalid warrants from Odyssey and eWarrants, confirm[ing] that arrest orders...were not issued in error, and ensur[ing] that release orders were properly effectuated," *id.*,

- "[e]xecuting all clerical and record-keeping functions," "[i]ssuing arrest orders and

warrants," and "[d]igitizing paper court records,"

SAC ¶ 313.

Ultimately, it was government authorities who allegedly arrested or detained Plaintiffs. All these actions are outside of Tyler's control.

Plaintiffs' claim, then, is that Tyler had a legal duty to protect Plaintiffs against third-party harm. SAC ¶ 239. But because Tyler owes no special-relationship duty, Plaintiffs' negligence claim fails as a matter of law.

Plaintiffs also do not request a new special-relationship exception. North Carolina courts "recognize that the special relationship exception is in derogation of the general principle that '[t]here is no duty to control the conduct of a third person so as to prevent him from causing'" harm to another. *Stone St. Partners, LLC v. Williamson*, No. 17 CVS 15265, 2018 WL 3619518, at *7 (N.C. Super. July 26, 2018) (quoting Restatement (Second) of Torts § 315, which surveys North Carolina's reported decisions on the exception). Courts cannot recognize new special-relationship exceptions based on an alleged failure to prevent harm caused by third parties. *See Stein v.*

*Asheville City Bd. Of Educ.*, 360 N.C. 321, 330, 626 S.E.2d 263, 269 (2006); *Stone St.*, 2018 WL 3619518, at *7.

North Carolina also does not appear to have recognized "the existence of a special relationship in circumstances other than those in which the plaintiff was alleged to have suffered a physical injury." *Stone St.*, 2018 WL 3619518, at *6 (surveying North Carolina decisions). The special-relationship cases turn on both the ability of a third party to control the tortfeasor, and "knowledge of the person's propensity for violence." *Harris v. Daimler Chrysler Corp.*, 180 N.C. App. 551, 556, 638 S.E.2d 260, 265 (2006); *see also Scadden v. Holt*, 222 N.C. App. 799, 806, 733 S.E.2d 90, 95 (2012). Plaintiffs do not allege any physical injuries here. That provides an independent reason to conclude that no duty exists.

### 2. Tyler has no duty to ensure end-users are properly trained to use its products.

After Tyler argued in its prior motions to dismiss that Plaintiffs cannot establish duty, Plaintiffs try a new tactic in the SAC – claiming that Tyler had a duty to ensure that state actors were properly trained on how to use eWarrants and Odyssey. SAC ¶ 241d. This tactic also fails. Tyler is unaware of any North Carolina cases

recognizing a generalized or special duty based on failure to train. To the extent Plaintiffs are alleging a separate claim for negligent training under North Carolina law, that claim fails.

"Claims of negligent supervision and training are grounded in active negligence by the *employer*." *Nance v. Rowan-Salisbury Bd. of Educ.*, 336 F. Supp. 3d 593, 597 (M.D.N.C. 2018) (cleaned up) (emphasis added). To establish a negligent-training claim, a plaintiff must allege: (1) the specific negligent act on which the claim is founded; (2) incompetency, by inherent unfitness or prior negligent acts; (3) actual or constructive notice of such unfitness or bad habits; and (4) that the incompetency caused the injury. *Id.* "[O]nly cases involving notoriously unsuitable employees or allegations of misconduct repeatedly ignored by an employer have met these elements." *Sauers v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 179 F. Supp. 3d 544, 556 (M.D.N.C. 2016).

Plaintiffs' claim fails first and foremost because Tyler is not the employer of the state actors. Allegations outside of the employer-employee context are not "within the purview of a claim for negligent supervision and

training." *Sauers*, 179 F. Supp. 3d at 556 n. 10; *Foster v. Crandell*, 181 N.C. App. 152, 171, 638 S.E.2d 526, 539 (2007).

The SAC also fails on the remaining elements. Apart from the conclusory allegation that Tyler had a duty to "ensure end-users of eCourts were properly trained on how to use" eCourts, SAC ¶ 241d, there are no allegations that Tyler was negligent in training any end-users. Indeed, there are no allegations as to what deficient training Tyler did or did not provide, or how it caused any harm. *See Sauers*, 179 F. Supp. 3d at 556-57 (dismissing negligent training claim when plaintiff failed to allege how training was deficient or how it related to the alleged injury); *Nance*, 336 F. Supp. 3d at 597.

Nor are there any allegations that any end-users – the other Defendants and various unnamed state actors – were incompetent.

Finally, the SAC alleges no facts suggesting that Tyler knew or should have known of a need for specific training or of the unsuitability of any end-users. *See Sauers*, 179 F. Supp. 3d at 557. To the contrary, Plaintiffs allege – without specific factual allegations – that *state actors*

-12-

(not Tyler) were responsible for and failed to train their employees on eCourts. *See, e.g.*, SAC ¶¶ 13, 231h, 262, 277 (Sheriff McFadden); ¶¶ 19, 283, 293 (Sheriff Rowe); ¶ 25 (Sheriff Estes); ¶ 231j (Defendant Clerks). As Plaintiffs cannot plead duty as a matter of law, their negligence claim against Tyler fails.

**B.   The SAC does not plausibly allege a causal nexus between Tyler's conduct and Plaintiffs' alleged injuries.**

Plaintiffs' claim against Tyler also fails because Plaintiffs cannot show proximate cause as a matter of law.

To state a negligence claim, the defendant's act must be the proximate cause of the plaintiff's alleged injury. *Lamb v. Styles*, 263 N.C. App. 633, 645, 824 S.E.2d 170, 179 (2019); *Williamson v. Liptzin*, 141 N.C. App. 1, 10, 539 S.E.2d 313, 319 (2000). A cause is not proximate if there are intervening causes or the relationship between cause and effect is too attenuated. *Williamson*, 141 N.C. App. at 10-11, 539 S.E.2d at 319-20.

**1.   The SAC alleges that state actors caused Plaintiffs' alleged injuries.**

The allegations here point to the conduct of many state actors – not Tyler. State actors arrested and detained Plaintiffs. *See, e.g.*, SAC ¶ 243. And the responsibility

-13-

for entering pertinent information into the eCourts system was the responsibility of the end-users who operate the software day-to-day. *See, e.g.*, SAC ¶¶ 15-16, 21-22, 27-28, 313. No well-pleaded allegation links any action by Tyler, as a software vendor, to Plaintiffs' harm.

Plaintiffs' generalized allegations acknowledge that each county's Judicial Services Division is "responsible for all criminal process including" warrants and processing any court documents related to "warrant services." *See* SAC ¶¶ 14-16, 22, 28. And Plaintiffs also acknowledge that the Clerks of Court are responsible for "executing all clerical and record-keeping functions; issuing arrest orders and warrants, including for 'failures to appear'; digitizing paper court records; [and] ensuring that release orders are properly effectuated." SAC ¶ 313 (cleaned up). These are the actions that Plaintiffs allege caused their injuries.

The Mecklenburg County allegations exemplify the SAC's causal deficiencies as to Tyler. Plaintiffs allege that unidentified state actors arrested Plaintiffs Fields, Nunez, and Hayward. SAC ¶¶ 101-02, 109-10, 117-18. Plaintiffs allege that, despite obtaining release orders,

-14-

these Plaintiffs were held overnight. SAC ¶¶ 104-06, 112-14
120-23. Plaintiffs expressly allege that this alleged
unlawful overdetention was the "direct and proximate
result" of Defendant McFadden's "policies, customs,
practices, omissions, and failures to train...his employees
on...how to use [eCourts] to ensure that individuals were
timely released from detention." SAC ¶¶ 260, 275-79.

The other Plaintiffs' allegations fare no better.
Indeed, all Plaintiffs allege that their harm resulted as
"a direct and proximate result of the Sheriff Defendants'
negligence." SAC ¶ 256.

In Mr. Castellanos' case, for example, Plaintiffs
originally alleged that his detention was prolonged because
there was no available electronic monitoring device, which
has nothing to do with Tyler or eCourts. ECF No. 1, ¶¶ 84-
85. He now alleges that his detention was prolonged because
Defendant Thomas failed to digitize "paper court records,"
and ensure "release orders are properly effectuated."
SAC ¶ 313. Plaintiffs admit that Odyssey properly generated
a case number for Mr. Castellanos when court staff input
his information. SAC ¶ 208. The transition to Odyssey thus
allowed him to move for a bond reduction in the first

-15-

place. SAC ¶ 209. The allegations do not tie the alleged harm to Tyler's conduct.

Plaintiff Lewis does not even live in a County where eCourts has gone live, SAC ¶¶ 50, 213, and he objects to the failure of unnamed state defendants to dissolve a restraining order from 2016 – long before eCourts was implemented, SAC ¶¶ 214-16. No allegation ties this to eCourts, much less Tyler.

Plaintiff Spruill alleges his detention was caused by the failure of the Wake County Sheriff's Office to correct an invalid warrant, not because of eCourts. SAC ¶¶ 132-35. Indeed, once the Wake County Clerk updated his file in eCourts, he was released. SAC ¶ 137.

Likewise, Plaintiff McNeil attributes her detention to state actors entering a failure-to-appear charge in error, SAC ¶ 150, which does not involve Tyler. She alleges that Odyssey reflected that her case was disposed after correction, SAC ¶ 151, but an employee of the Wake County Sheriff's Office mistakenly informed officers that the warrant was valid, SAC ¶ 154. Wake County officials later conceded that the warrant "should have been recalled from the electronic system." SAC ¶ 157.

Similarly, the SAC alleges that the remaining Plaintiffs' injuries resulted from state actors – some unidentified – and not because of actions controlled by Tyler. *See, e.g.*, SAC ¶¶ 160-69 (alleging Robertson was arrested because her court date was "Reset by Court," even when her continuance "was reflected in Odyssey"), ¶¶ 170-77 (alleging Jallal's case was "incorrectly designated" by unidentified actors but that no one entered the dismissal into Odyssey), ¶¶ 178-85 (alleging Bradley's paperwork was submitted but not that it was filed and noting that Odyssey was updated to reflect dismissal), ¶¶ 186-201(alleging that Wake County state actors detained Lassiter because of two invalid warrants), ¶¶ 220-28 (alleging that unidentified officers arrested Sifford because of an invalid warrant), ¶¶ 139-46 (attributing the failure to confirm the validity of Chaplin's warrant to Sheriff Rowe and arresting officers).

In short, Plaintiffs attribute their alleged injuries to third-party state actors that Tyler does not control. No well-pleaded allegations demonstrate a causal nexus between Tyler and the injuries Plaintiffs allege.

## 2. The SAC's reliance on outside statements does not establish causation.

Plaintiffs try to cure these defects by relying on outside statements about eCourts. But there are no well-pleaded allegations supporting these statements, making them no more than innuendo and speculation insufficient to support a claim. *See Painter's Mill Grille*, 716 F.3d at 350; *Nomani v. Qarni*, No. 1:22-cv-1065, 2023 WL 4203438, at *2 (E.D. Va. June 27, 2023).

For example, Plaintiffs allege that Defendant NCAOC had unspecified internal communications concerning "179 warrants [that] were 'inadvertently deleted'." SAC ¶ 86. But Plaintiffs do not allege who deleted the warrants and do not allege that the deletion was done spontaneously by software – as opposed to inadvertent entries by the software *users*. Plaintiffs also do not allege who the warrants were for, or whether any state actors arrested or detained anyone based on these warrants. *See* SAC ¶¶ 83-87. Thus, nothing ties this statement to any claim in the SAC.

Plaintiffs also highlight Judge Trosch's email to court personnel about an alleged "integration issue" in eCourts. SAC ¶ 91. But the email states this was a problem only if magistrates and clerks do not update the system, or if the

-18-

magistrate fails to look under the correct tab. *See* ECF No. 77-4. And the SAC does not tie this alleged "integration issue" to any alleged harm.

Finally, Plaintiffs quote Mecklenburg County's chief information officer suggesting that defects delayed the rollout. SAC ¶ 74. But the SAC omits that this statement was made in August 2021, long before eCourts went live in any county and long before the events alleged in the SAC. *See* Michelle Boudin, '*It's kind of like the rapture*'; *Concerns ahead of changes at the court*, WDNC Charlotte (Feb. 8, 2023), https://bit.ly/3QJiFkt. The SAC does not tie this statement to the live operation of eCourts.

Plaintiffs also allege that sixty-six people were detained in Mecklenburg County following the launch of eCourts. SAC ¶ 92. This allegation again lacks sufficient details, and the SAC does not allege that Tyler was somehow responsible for these detentions. *See* SAC ¶ 92.

These smokescreen statements do not pertain to Plaintiffs, and they do not cure Plaintiffs' proximate-cause problem.

### 3. References to other states do not link alleged harm to Tyler and are irrelevant.

Unable to manufacture facially plausible allegations tying Tyler to the harm alleged here, Plaintiffs point to other states where (according to Plaintiffs) there were issues during the transition to a Tyler system. *See* SAC ¶ 97. But even if Plaintiffs had accurately described the implementations in these other states (and they have not), those examples cannot establish proximate cause for *these* Plaintiffs in North Carolina. To survive the pleading stage, the allegations must explain "how Defendants' conduct was the proximate cause of *Plaintiffs'* damages." *Lamb*, 263 N.C. App. at 646, 824 S.E.2d at 180 (emphasis added).

Beyond that dispositive defect, these allegations about other software implementations do not link Tyler's software to the alleged errors. Indeed, many of Plaintiffs' own examples decouple Tyler's actions from any alleged errors.

For example, Plaintiffs fault an Indiana sheriff for acquiring "a jail-management software that was incompatible with Odyssey." SAC ¶ 97g. The acquisition of a different software product has nothing to do with Tyler. And the referenced complaint focuses not only on non-Tyler

-20-

software, but also on an individualized spot-check policy
that has no relevance here. *See* Complaint, *Driver v. Marion
Cnty. Sheriff*, No. 1:14-cv-2076, ECF No. 38 (S.D. Ind. May
13, 2015) ¶¶ 100, 102, 108 (attached Exhibit A). Tyler was
not a defendant in that case or settlement. *See id.* An
Indiana sheriff, deploying a different software and an
individualized spot-check policy, has nothing to do with
Tyler's software or actions in North Carolina.

Plaintiffs' other examples similarly deal with
different states and actors implementing different systems,
sometimes more than ten years ago. *See* SAC ¶ 97. These
stale allegations have nothing to do with software
configured for North Carolina, deployed in North Carolina
and operated by North Carolina officials. *E.g.*, SAC ¶ 71;
ECF No. 77-2; ECF No. 77-3.

## C. Plaintiffs' failure-to-warn claim also fails.

Plaintiffs allege a failure-to-warn theory in a single,
conclusory paragraph. SAC ¶ 246. This claim fails for
several reasons, each of which provides independent grounds
to dismiss the claim.

First, a failure-to-warn claim based on negligence must
plausibly allege all the essential elements of negligence.

*Bryant v. Adams*, 116 N.C. App. 448, 465, 448 S.E.2d 832, 841 (1994). Plaintiffs' failure to adequately plead duty and causation thus also dooms this claim. *Supra* Part I.A-B.

Second, a failure-to-warn theory is limited to products that are "unreasonably dangerous" or "pose a substantial risk of harm." N.C. Gen. Stat. § 99B-5(a). Not only must a plaintiff allege that the defendant's negligence caused the injury, but they must specifically plead that the product posed such a danger that the defendant had to issue a warning in the first place, and that the *failure to warn* caused the injury. *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. STIHL Inc.*, No. 7:23-CV-00018-M, 2023 WL 5029142, at *3 (E.D.N.C. Aug. 7, 2023).

For example, this Court has dismissed failure-to-warn claims when the plaintiff failed to plausibly allege that the failure to warn "played any role" in the decision to use the product and only made conclusory allegations that it caused harm. *See, e.g.*, *Presnell v. Snap-On Securecorp, Inc.*, 583 F. Supp. 3d 702, 710 (M.D.N.C. 2022); *City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 632–33 (M.D.N.C. 2020).

The SAC contains no allegations about what warnings were provided or how those warnings were inadequate. Plaintiffs make only the conclusory statement that Tyler "acted unreasonably in failing to warn," and that this failure was a proximate cause of Plaintiffs' harms. SAC ¶ 246. This Court recently dismissed a failure-to-warn claim where the complaint relied on nearly identical, generalized allegations. *See Suez Treatment Solutions*, 485 F. Supp. 3d at 632-33. Because the SAC "fails to demonstrate more than a sheer possibility that a defendant has acted unlawfully," the Court should dismiss this claim. *See id.; see also Presnell*, 583 F. Supp. 3d at 709-10.

Third, the SAC also does not plausibly allege that eCourts posed a substantial risk of harm without an adequate warning or that North Carolina courts have ever required a similar warning for software or technology products. In North Carolina, a failure-to-warn claim applies only to products that are "*unreasonably* dangerous" or that pose a "*substantial* risk of harm." *See, e.g.*, N.C. Gen. Stat. § 99B-5(a) (emphasis added). This is a high bar and this showing has been met by products like asbestos, equipment explosives, and lethal Tasers. *Finch v. Covil*

*Corp.*, 388 F. Supp. 3d 593, 604 (M.D.N.C. 2019), *aff'd*, 972 F.3d 507 (4th Cir. 2020); *Talley v. Pride Mobility Prod. Corp.*, 259 N.C. App. 734, 816 S.E.2d 533 (2018); *Fontenot v. TASER Int'l, Inc.*, No. 3:10CV125-RJC-DCK, 2011 WL 2535016, at *2 (W.D.N.C. June 27, 2011). The SAC does not allege facts to support expanding this cause of action to software.

Finally, the SAC also lacks allegations of how a substantial risk was created *by* an inadequate warning. An alleged failure to properly enter information into eCourts is a generalized, apparent risk for which Tyler is not liable. *See, e.g.*, *Cahoon v. Edward Orton, Jr. Ceramic Found.*, No. 2:17-CV-63-D, 2020 WL 918753, at *8 (E.D.N.C. Feb. 24, 2020) (holding a seller or manufacturer cannot be held liable for "generalized hazards"); 24 N.C. Index 4th Products Liability § 14 (same and collecting authority).

## II. Plaintiffs' Class Claim Against Tyler Fails As A Matter of Law.

Plaintiffs' failure to state a negligence claim means the entire SAC should be dismissed as to Tyler. But, at a minimum, the class allegations against Tyler should be dismissed.

-24-

Under Rules 12(b)(6) and 23, dismissal of class claims is proper "when it is clear from the face of the complaint that...the plaintiff has failed to properly allege facts sufficient to make out a class or could establish no facts to make out a class." *Layani v. Ouazana*, No. CV ELH-20-420, 2021 WL 805405, at *39 (D. Md. Mar. 3, 2021) (cleaned up). "In other words, in such circumstances a court applies the familiar standard embodied in Rule 12(b)(6) to determine whether the pleadings plausibly allege a class." *Id.*; *Williams v. Potomac Fam. Dining Grp. Operating Co.*, No. GJH-19-1780, 2020 WL 4207589, at *12 (D. Md. July 22, 2020); LR 23.1(d).

The SAC seeks three different classes – but only two against Tyler. *Compare* SAC ¶ 229, *with* SAC ¶¶ 237-336. The "Overdetention Class" is defined as individuals who were allegedly unlawfully detained for "more than two (2) hours after the basis for their detention ended." SAC ¶ 229. The "Wrongful Arrest Class" is defined as individuals who were allegedly unlawfully arrested or detained. SAC ¶ 229. The only claim against Tyler is a negligence claim for money damages. SAC ¶¶ 237-46. Accordingly, the allegations against the other Defendants – including the allegations

relating to alleged constitutional violations, *see, e.g.*, SAC ¶¶ 231(a)-(g) – cannot be considered in deciding whether class claims are properly pleaded as to Tyler.

Assessing whether the proposed classes against Tyler may proceed is a two-step analysis. *Layani*, 2021 WL 805405, at *39. First, does the putative class meet the elements of Rule 23(a), including commonality and typicality? *Id.* Second, does the class satisfy the Rule 23(b)(3) requirement that common questions predominate over individual inquiries?

The only injury Plaintiffs allege is *unlawful* arrest or *unlawful* detention. Individualized inquiries will be needed for each class member to determine not only whether the class member was arrested or detained, but whether that arrest or detention was unlawful. The need for these individualized inquiries prevents Plaintiffs from satisfying either step. As there is nothing Plaintiffs could uncover in discovery that would alleviate the need for these individualized inquiries, dismissal of the class claims is warranted now.

## A. Plaintiffs cannot meet the Rule 23(a) requirements of commonality or typicality.

The Rule 23(a)(2) commonality requirement requires the plaintiff to demonstrate that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 407 (D. Md. 2014). Bringing the same cause of action or alleging a violation of the same provision of law is not enough. *Dukes*, 564 U.S. at 350. The common questions, capable of class-wide resolution, "must be dispositive and over-shadow other issues." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001); *Dukes*, 564 U.S. at 350.

Similarly, but additionally, the named plaintiffs' claims must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that the class claims arise "from the same event or practice or course of conduct," *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 268 (D. Md. 2004), and "a class representative must...possess the same interest and suffer the same injury as the class members," *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (citation omitted); *see*

*also Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).

In prior briefing, and in the SAC, Plaintiffs argue that there are common questions about whether Tyler owed a cognizable duty, breached that duty, or proximately caused damages. *See* SAC ¶ 231(k)-(m). First, because Plaintiffs cannot state a claim on these elements, *see supra* Part I, they cannot support class allegations.

Second, as to proximate cause and the separate required element of injury (which Plaintiffs do not mention), Plaintiffs ignore the significant individualized inquiries required. The inquiries would overwhelm any basic common questions on duty. *See Stein*, 360 N.C. at 331, 626 S.E.2d at 269.

Circumstances will vary widely for each hypothetical class member. For each, the Court will need to consider, among other things:

- whether the individual was arrested or detained;

- the circumstances of that arrest or detention, including which state actors or agencies participated;

- the length of the arrest or detention;

- whether the arrest or detention and its length were justified;

- when the basis for detention ended;

- whether the individual was detained after the basis for detention ended, and if so, for how long;

- whether information in the eCourts system led to any improper arrest or detention; and, if so,

  o what information was entered into the system,

  o by whom,

  o whether there were any errors in that data entry, and

  o whether the design or functionality of the eCourts system, in a way attributable to Tyler, contributed to the alleged injury.

These are all individualized inquiries that are not subject to class treatment. *See Kirkman v. N. Carolina R.R. Co.*, 220 F.R.D. 49, 52-53 (M.D.N.C. 2004).

Likewise, as Plaintiffs' own allegations illustrate, their claims lack typicality because each arrest or detention turns on a unique set of facts involving distinct legal inquiries. *See supra* Part I.B. Indeed, there is no

typicality even between the named Plaintiffs within each class. *See id.*

Within the "Wrongful Arrest Class," some Plaintiffs allege wrongful arrests and detentions of different lengths resulting from vaguely alleged courses of conduct, *see* SAC ¶¶ 128-37, 142-44, 172-77, 180-85; others allege wrongful arrests and detentions resulting from warrants issued – and allegedly dissolved – long before either the eCourts system was implemented in North Carolina or any of the alleged harm occurred, *see* SAC ¶¶ 190-200, 216-19, 224-27; and others allege wrongful arrests and detentions arising from various clerical errors, *see* SAC ¶¶ 151-57, 164-67.

The same is true of the "Overdetention Class," which only includes Castellanos and the Mecklenburg County Plaintiffs Fields, Nunez, and Hayward. *See* SAC ¶ 229. The Mecklenburg County Plaintiffs allege that they were detained for processing for unidentified reasons, *see* SAC ¶¶ 101-25, while Plaintiff Castellanos alleges he was unlawfully detained because state actors failed to digitize his records and ensure his release orders were "properly effectuated," SAC ¶ 313.

Separately, any damages for all hypothetical class members would vary based on whether they were arrested or detained, the length of detention, and what damages (if any) they sustained because of the arrest or detention. In such a circumstance, Plaintiffs cannot satisfy the typicality requirement. *See Kirkman*, 220 F.R.D. at 52-53.

These Plaintiffs have different claims, interests, and injuries. Thus, even comparing their own situations, their claims and circumstances lack commonality and typicality.

## B. Plaintiffs cannot meet the more stringent Rule 23(b)(3) requirements.

Even if Plaintiffs could satisfy Rule 23(a), they cannot – and will never be able to – satisfy the more stringent Rule 23(b)(3) requirements.

A Rule 23(b)(3) class is appropriate only if common questions "predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This "requirement is far more demanding than Rule 23(a)'s commonality requirement and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d

356, 362 (4th Cir. 2004) (cleaned up). "That inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1778 (3d ed.) (collecting cases).

In the Fourth Circuit, common issues cannot predominate when issues like causation, injury, and damages require individualized inquiries. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 327-29 (4th Cir. 2006); *Parks Auto. Grp., Inc. v. Gen. Motors Corp.*, 237 F.R.D. 567, 571-72 (D.S.C. 2006); *Abbott v. Am. Elec. Power, Inc.*, No. 2:12-CV-00243, 2012 WL 3260406, at *4 (S.D.W. Va. Aug. 8, 2012).

Here, managing the class action would devolve into a series of mini-trials. Critically, the injury alleged is not arrest or detention, but rather arrest or detention that is *unlawful*. If the arrest or detention was lawful, the class member has no claim. The Court will have to determine this individually for each class member, and these individualized determinations will overwhelm any common issues. *See Thorn*, 445 F.3d at 328-29. There will thus be no efficiency to proceeding as a class, rather than

-32-

having individual plaintiffs press whatever claims they may have. *Id.*

The Court will also have to determine, for each hypothetical class member:

- whether a hypothetical class member's arrest or detention was in any way related to the eCourts system;

- whether the arrest or detention was justified under the circumstances;

- whether the detainee would have met release conditions like having the means and ability to post bond;

- what delay, if any, occurred because of an error and whether that delay was part of the normal detention process; and

- what defendants (or unnamed court officials) were responsible for any issues.

Beyond the mini-trials needed to establish liability, additional individualized inquiries would be needed to determine the damages (if any) sustained by each class member.

-33-

Commonalities cannot predominate when breach, causation, damages, and liability apportionment all must be determined on an individualized basis. *Abbot*, 2012 WL 3260406, at *4. Rather than burden unlike cases with class discovery and other delays, courts can adjudicate any suits individually. To the extent like plaintiffs ever arise, joinder of those claims would be more appropriate than certifying indefinite wide-ranging classes. *Cf*. SAC ¶ 229.

There is no evidence Plaintiffs could adduce that would eliminate the need for these individualized, mini-trials. As a result, there is no need to wait for class discovery or class certification motions. Because Plaintiffs' class claims fail as a matter of law, dismissal of the claims is warranted now.

<u>**CONCLUSION**</u>

For all these reasons, Tyler requests that Plaintiffs' SAC be dismissed as to Tyler with prejudice.

-34-

This 9th day of April, 2024.

s/ Gregory L. Skidmore
Gregory L. Skidmore
N.C. Bar No. 35571
gskidmore@robinsonbradshaw.com

H. Hunter Bruton
N.C. Bar No. 50601
hbruton@robinsonbradshaw.com

Garrett A. Steadman
N.C. Bar No. 55449
gsteadman@robinsonbradshaw.com

**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone:  (704) 377-2536
Facsimile:  (704) 378-4000

*Attorneys for Defendant Tyler Technologies, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief contains fewer than 6,250 words (not counting the portions of the brief excluded by Local Rule 7.3(d)(1)) as reported by the word-processing software.

This 9th day of April, 2024.

s/ Gregory L. Skidmore
Gregory L. Skidmore

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed using the Court's e-filing system, which will automatically and electronically notify the following CM/ECF-registered counsel of record:


Gagan Gupta
ggupta@tinfulton.com

Abraham Rubert-Schewel
schewel@tinfulton.com

Zachary William Ezor
zezor@tinfulton.com
Tin Fulton Walker & Owen PLLC
115 E. Main Street
Durham, NC 27701
Telephone: (919) 307-8400

A. Dami Animashaun
dami@animashaun.me
933 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (929) 266-3971


*Attorneys for Plaintiffs Timia Chaplin*
*And Paulino Castellanos, on behalf*
*Of themselves and all others similarly*
*Situated*


Robert Lane
robert.lane@wake.gov
Wake County Sheriff's Office
330 S. Salisbury Street
Raleigh, NC 27602
Telephone: (919) 856-5380

37

Roger Askew
roger.askew@wakegov.com
Senior Deputy County Attorney
Wake County Attorney's Office
P.O. Box 500
Raleigh, NC 27602
Telephone: (919) 856-5500

*Attorneys for Defendant Wake County Sheriff*
*Willie Rowe*


James R. Morgan Jr.
Jim.Morgan@wbd-us.com
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone:  (336)721-3710

*Attorney for Defendant Brian Estes*



This 9th day of April, 2024.


                              s/ Gregory L. Skidmore
                              Gregory L. Skidmore