# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL DRIVER, ) | |
| TERRY CLAYTON, ) | |
| MICHAEL BOYD, ) | |
| NICHOLAS SWORDS, and, ) | |
| ROY SHOFNER, ) | |
| individually and as representatives ) | CAUSE NO. 1:14-cv-2076 RLY-MJD |
| of a class of all similarly situated individuals, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Jury Trial Requested |
| ) | |
| THE MARION COUNTY SHERIFF, ) | |
| and, ) | |
| THE CONSOLIDATED CITY OF ) | |
| INDIANAPOLIS AND MARION COUNTY, ) | |
| Defendant. ) | |

**PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

## I. Introduction

1. This case seeks money damages for a class of individuals who were incarcerated in the Marion County correctional system for unreasonable periods of time as a result of the Marion County Sheriff's practice of instituting a 72 hour release time period and employing unreasonable release procedures and processes.

## II. Jurisdiction and Venue

2. This action is brought pursuant to 42 U.S.C. §1983 and is premised on the fourth and fourteenth amendments to the United States Constitution. This Court has original subject matter jurisdiction of the federal questions presented pursuant to 28 U.S.C. §§1331 and 1343.

3. This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court and Division, pursuant to 28 U.S.C. §1391, because the events giving rise to this action occurred in, and the defendant is located in the Indianapolis Division of the Southern District of Indiana.

### III. Parties

5. Plaintiff Michael Driver is an adult resident of Indiana. He brings this suit in his individual capacity and as a representative, under Federal Rule of Civil Procedure 23, of a class of all other similarly situated persons who were subjected to the Marion County Sheriff's unreasonable release procedures and incarcerated longer than legally authorized and then released from the Marion County correctional system.

6. Plaintiff Terry Clayton is an adult resident of Indiana. He brings this suit in his individual capacity and as a representative, under Federal Rule of Civil Procedure 23, of a class of all other similarly situated persons who were subjected to the Marion County Sheriff's unreasonable release procedures and incarcerated longer than legally authorized and then released from the Marion County correctional system.

7. Plaintiff Michael Boyd is an adult resident of Indiana. He brings this suit in his individual capacity and as a representative, under Federal Rule of Civil Procedure 23, of a class of all other similarly situated persons who were subjected to the Marion County Sheriff's unreasonable release procedures and incarcerated longer than legally authorized and then released from the Marion County correctional system.

8. Plaintiff Nicholas Swords is an adult resident of Indiana. He brings this suit in his individual capacity and as a representative, under Federal Rule of Civil Procedure 23, of a class of all other similarly situated persons who were subjected to the Marion County Sheriff's

unreasonable release procedures and incarcerated longer than legally authorized and then released from the Marion County correctional system.

9. Plaintiff Roy Shofner is an adult resident of Indiana. He brings this suit in his individual capacity and as a representative, under Federal Rule of Civil Procedure 23, of a class of all other similarly situated persons who were subjected to the Marion County Sheriff's unreasonable release procedures and incarcerated longer than legally authorized and then released from the Marion County correctional system.

10. The putative class consists of those individuals who have been released from confinement and does not include individuals who are presently incarcerated as of the date of the filing of this amended complaint.

11. Defendant Marion County Sheriff is located in Marion County, Indiana, and is a political subdivision of the state of Indiana.

12. Defendant Consolidated City of Indianapolis and Marion County ("City/County") is a political subdivision of the state of Indiana.

## IV. Facts

13. The Marion County Sherif, individually and in collaboration with the Consolidated City of Indianapolis and Marion County, has instituted and maintained unreasonable policies and practices resulting in its keeping individuals detained in the Marion County correctional system for extended periods of time after they have been ordered released or legal authority for their detention has ceased.

14. The experiences of plaintiffs Michael Driver, Terry Clayton, Michael Boyd, Nicholas Swords, and Roy Shofner are representative of experiences of numerous detainees.

**Michael Driver**

15. On Saturday, December 13, 2014 Michael Driver was arrested for operating a motor vehicle with a blood alcohol content of .08 mg/dl or greater, a Class C Misdemeanor.

16. Mr. Driver was transported to the Arrestee Processing Center and then transferred to the Marion County Jail.

17. A bond was set for Mr. Driver at $1,500.

18. Mr. Driver's lawyer petitioned the court to lower or eliminate the bond.

19. On Monday, December 15, 2014, at approximately 1:30 p.m., the court having jurisdiction over Mr. Driver held a hearing on his bond reduction motion.

20. The sheriff brought Mr. Driver to the hearing, removed his handcuffs, and produced him in open court.

21. At the hearing, the court found that Mr. Driver was employed, had only one other very old minor criminal conviction, and was not a flight risk. The court then vacated the order setting the bond and ordered Mr. Driver released on his own recognizance.

22. Rather than releasing Mr. Driver on his own recognizance, Marion County Sheriff deputies, following the Sheriff's standard operating procedures, handcuffed Mr. Driver, put him in chains, and returned him under guard to the Marion County Jail where they reimprisoned him.

23. Rather than being processed and released promptly, Mr. Driver was imprisoned at the jail an additional two days, and not released until Wednesday, December 17, 2014 at approximately 6:00 p.m.

24. There were 6 or 7 inmates in the Marion County cell block where Mr. Driver was confined

who had been approved for release who had been waiting 1 to 5 days and had still not been released.

25. It was common knowledge among the inmate population where Mr. Driver was confined that the Sheriff took up to seventy-two (72) hours or even longer to release prisoners.

26. Mr. Driver contacted his counsel, who then contacted the staff of the criminal court which had ordered Mr. Driver released on his own recognizance.

27. The court staff then contacted the Sheriff's office, and complained that the court's order had not been implemented.

28. It was not until the court's staff contacted the Sheriff's office that Mr. Driver was finally released.

29. Once initiated, the actual release process of providing Mr. Driver his clothing and property took approximately one hour.

30. Mr. Driver missed two full days of work as a result of the defendant's practices.

31. The Marion County Sheriff's practice of not releasing inmates ordered released on their own recognizance, but rather re-arresting these individuals and imprisoning them in the Marion County correctional system, is unreasonable and results in substantial delays in the release of these individuals.

**Terry Clayton**

32. In December, 2014 Terry Clayton was a pretrial detainee in the Marion County Jail awaiting trial.

33. On Wednesday, December 10, 2014, at approximately 11:30 p.m., Mr. Clayton's jury

returned a non-guilty verdict in his favor.

34. The judge presiding over the trial entered an order for Mr. Clayton's immediate release.

35. Instead of releasing Mr. Clayton, Marion County Sheriff deputies, following the Sheriff's standard operating procedures, handcuffed Mr. Clayton and took him from the courtroom and took him under guard to the Marion County Jail where they reimprisoned him.

36. Instead of being promptly released, Mr. Clayton was held at the jail for almost another two days and not released until Friday, December 12, 2014 at approximately 4:00 p.m.

37. Mr. Clayton complained about the delay in his release and was told by correctional officers and a correctional sergeant that the jail had 72 hours to release inmates.

38. It was not until Mr. Clayton's public defender prompted the court which had presided over his criminal case to intervene with the Sheriff's Department that the Sheriff's department released Mr. Clayton.

39. The Marion County Sheriff's practice of not releasing inmates acquitted or found not guilty of criminal charges, or who have had their charges vacated or dismissed and for whom the Sheriff no longer has any legal right to detain, but rather re-arresting and imprisoning these individuals in the Marion County correctional system, is unreasonable and results in substantial delays in the release of these individuals.

**Michael Boyd**

40. Michael Boyd is a 46-year-old Marion County resident who pled guilty to DUI.

41. Mr. Boyd was sentenced to ten (10) days in the Marion County Jail, with one-for-one credit, meaning he would physically serve five (5) days of his sentence in jail.

-6-

42. Prior to going to court to enter his guilty plea and begin his sentence, Mr. Boyd made arrangements with his work to take five days off.

43. Mr. Boyd's confinement was to begin immediately at the conclusion of his plea hearing on November 20, 2014 and was to end on November 24, 2014.

44. At the conclusion of his plea hearing, Marion County Sheriff's courtroom deputies took Mr. Boyd into custody.

45. When he was taken into custody, Mr. Boyd inspected the sentencing information sheet that the court provided to the sheriff, and it correctly set forth that he had a ten day sentence and would receive one-for-one credit for each day served, meaning that he should be released after five (5) days.

46. Mr. Boyd was incarcerated in the Marion County Jail ("Jail I") for approximately a day and a half, and then transferred to the Marion County Jail II.

47. On November 24, 2014, Mr. Boyd complained to officials at Jail II that he should be released. His complaints were ignored.

48. By telephone, Mr. Boyd informed his parents of the situation, and asked if his father could assist in contacting the sheriff's department and the sentencing court to aid in his release.

49. Mr. Boyd's father attempted to contact the sheriff's department and the court by telephone, but to no avail.

50. Mr. Boyd's father traveled to the City-County building where he informed the court staff of his son's situation.

51. The court's staff confirmed that Mr. Boyd should have been released on November 24, 2014.

52. The Marion Superior Court staff intervened with the Sheriff's custody officials, and Mr. Boyd was finally released on November 26, 2014, two days later than he was scheduled to

have been released.

53. The Marion County Sheriff's practice of not releasing inmates at the conclusion of their sentences, but rather keeping them in jail past their scheduled release time while the Sheriff then "processes" them out of the Marion County correctional system, is unreasonable and results in substantial delays in the release of these individuals.

**Nicholas Swords**

54. Nicholas Swords is a 39-year-old Boone County resident who had never been arrested before December 10, 2014.

55. On December 10, 2014 Mr. Swords was arrested in Marion County and charged with two misdemeanor criminal charges for operating a motor vehicle while intoxicated.

56. Mr. Swords was taken into custody and processed at the Arrestee Processing Center where he was taken before a judge who set his bail at $150 cash bond.

57. Mr. Swords was able to contact family members and his cousin, Marty Murphy, paid the bond on the morning of December 12, 2014.

58. The Marion County Sheriff does not accept cash or surety bonds directly at the jail.

59. Instead, the Marion County Sheriff has outsourced the payment and collection of cash bonds to the Marion County Clerk.

60. These bonds are paid at the same designated office of the Marion County Clerk which accepts both bond payments and child support payments.

61. Mr. Swords should have been released shortly after the cash bond was paid.

62. Instead, when Mr. Murphy paid his cousin's cash bond, he was told by the clerk not to wait

around downtown for his cousin because it would take "up to 72 hours" for the Sheriff to release Mr. Swords.

63. Instead of processing Mr. Swords for release, the Marion County Sheriff's computers did not accurately reflect that Mr. Swords had even seen a judge or that his cash bond had been paid.

64. Mr. Murphy, Mr. Sword's cousin who paid the cash bond, repeatedly called the Marion County Jail where his cousin was incarcerated, in order to determine when he would be released.

65. Marion County Sheriff employees responding to these calls told Mr. Murphy that the Sheriff's office had 72 hours to release Mr. Swords.

66. When Mr. Swords complained about not being released despite his bond having been paid, correctional officers informed him that the jail had 72 hours to release him.

67. When Mr. Swords was finally processed out for release, the supervising correctional officer conducting the processing informed Mr. Swords that the jail processes a set number of prisoners out of the jail each day, and that it takes up to 72 hours to release prisoners.

68. Mr. Swords was kept in the Marion County Jail three days after his cash bond was paid, and not released until December 15, 2014.

69. Once commenced, the actual processing of Mr. Swords for release took approximately 45 minutes to one hour.

70. The Marion County Sheriff's practice of not releasing inmates upon payment of their bonds, but rather keeping them in jail while they then "process" them out of the Marion County correctional system within 72 hours is unreasonable and results in substantial delays in the release of these individuals.

**Roy Shofner**

71. Roy Shofner is a 46-year-old Hendricks County resident who pled guilty to DUI in Marion County.

72. Mr. Shofner was sentenced to serve nine (9) actual days in the Marion County Jail, with his sentence to begin on February 4, 2015 and to end on February 12, 2015.

73. At the conclusion of his physical incarceration in jail, Mr. Shofner was to begin a sentence of electronic monitoring/home detention by Marion County Community Correction.

74. The sentencing court explained to Mr. Shofner that he was to be released from the jail on February 12, 2015 and that he should then walk over and report to Marion County Community Corrections to receive an ankle bracelet and electronic monitoring devise.

75. The Chronological Case Summary for Mr. Shofner's case set forth the sentence as: "Split sentence as follows: 1st (9) actual days to be served in the Marion County Jail Defendant give 1 actual day credit. Defendant to be released on 2-12-15. Followed by 170 days on Marion County Community Corrections/Home Detention."

76. The conditions of Mr. Shofner's electronic monitoring/home detention sentence permitted him to continue working outside of the home.

77. Before reporting for his jail sentence of nine days, Mr. Shofner made arrangements with his employer to take the time off, and he was scheduled to report back to work following those nine days.

78. Instead of being released from the Marion County Jail on February 12, 2015, Mr. Shofner was kept incarcerated by the Marion County Sheriff for an additional five days, until February 17, 2015.

79. Mr. Shofner lost his job because he missed scheduled shifts he was obligated to work during the time he was falsely incarcerated.

80. Rather than release Mr. Shofner on February 12, 2015 and allow him to report to Community Correction per the Court order, the Marion County Sheriff followed its standard practice to keep such individuals incarcerated until Community Corrections is "ready" to process a group of such individuals, and then the Sheriff transports the individuals as a group under guard to the Community Correction facility just a few blocks away from the jail.

81. The result of the Sheriff's practice is to keep such individuals incarcerated many days past their legal sentences.

82. Mr. Shofner complained about his over-incarceration to the correctional officers holding him, and was told that the Sheriff had 72 hours to release inmates.

83. Mr. Shofner complained to correctional officers that he should be released to report to Community Corrections, and was told that the Sheriff used to release inmates to self-report, but that some inmates did not report, so now the practice is to keep inmates in the jail until they could be transported under guard and processed as a group at Community Corrections.

84. The Marion County Sheriff's practice of not releasing inmates at the conclusion of their sentences, but rather keeping them in jail until Community Corrections is "ready" to process them as a group, is unreasonable and results in substantial delays in the release of these individuals.

**Common Facts**

85. The above individual plaintiffs' experiences, of being held past the time they should have been released, is part of a policy, pattern, and practice of the Marion County Sheriff and the

-11-

Consolidated City of Indianapolis and Marion County of enacting unreasonable procedures resulting in the Sheriff holding incarcerated persons longer than legally authorized.

86. A number of individuals who complained about being incarcerated after they have been legally released, were told by Sheriff Department personnel that the Sheriff has seventy-two (72) hours after a release order to process prisoners out of jail.

87. The Sheriff's practice of operating under a standard of seventy-two (72) hours to release prisoners who are ordered released is unreasonable.

88. The Sheriff employs or operates a computer system inadequate for the purposes intended with respect to the timely release of prisoners.

89. The Sheriff's practice of re-arresting and imprisoning individuals who are released on their own recognizance, found not guilty or acquitted, or who have had their criminal charges vacated or dismissed, and for whom the Sheriff no longer has any legal right to detain, but rather re-arresting and imprisoning these individuals in the Marion County correctional system, is unreasonable and results in substantial delays in the release of these individuals.

90. The Sheriff's practice of not accepting cash or surety bonds but instead outsourcing the payment and processing of these bonds to the Marion County Clerk, is unreasonable and results in individuals being held for unreasonable periods of time.

91. Due to these above policies and procedures, it is not uncommon for prisoners who have been released by the courts on their own recognizance, paid a bond, found not guilty, had all criminal charges against them dismissed or vacated, or pled guilty and completed their sentences, to be held by the Marion County Sheriff longer than legally authorized, including days, past the time they should have been released.

92. A number of individuals, their family members, and their lawyers, have complained to the sheriff about these practices, but to no avail.

93. Historically, the Marion County Sheriff processed individuals out of the Marion County Jail within a half-hour of the payment of a bond or other court orders for release.

94. This is consistent with the practices of the Indiana counties surrounding Marion County, and of counties with large urban areas such as Lake County, all of which process inmates out of their jails in approximately thirty (30) minutes after payment of a bond or other court orders for release.

95. This 30 minute processing time is still the norm followed by the Marion County Sheriff when bonds are paid for arrestees at the Arrestee Processing Center.

96. However, when arrestees are transferred from the Arrestee Processing Center to the Marion County Jail or the Marion County Jail II, much longer release times are the norm.

97. Historically, the Marion County Sheriff would release prisoners from the Marion County Jail or Lock-Up in approximately 30 minutes after the prisoner's bond was paid at the Marion County Lock-Up located in the basement of the City County Building or at the Marion County Jail.

98. However, during the tenure of Sheriff Frank Anderson, (2003-2011), the Sheriff changed its practice and no longer permitted bonds to be paid at the Marion County Lock-Up or Jail, and instead required such bonds to be paid to the Marion County Clerk in the City-County Building.

99. The transfer of this bond payment and processing function substantially increased the time period it would take the Sheriff to release prisoners once bond was paid, increasing that time from approximately 30 minutes to 6 to 8 hours.

100. In June 2014 this already substantial and unreasonable delay in the release of prisoners was increased from hours to days when the Sheriff and the City/County implemented a new software system to interface with a state-mandated software system for courts named "Odyssey."

101. The Marion County Sheriff does not deny that a problem exists, and admits that it is subjecting inmates to "over detentions." "Marion County sheriff sued for illegal detentions," The Indiana Lawyer, Dec. 22, 2014 (http://www.theindianalawyer.com/marion-county-sheriff-sued-for-illegal-detentions/PARAMS/article/35966) (last accessed 1/15/15) ("In a statement, the Sheriff's Office said since the department began its largest-ever information technology changes in June, it 'has grappled with early releases and over detentions ... The transition has not gone as well as expected.'").

102. The Sheriff has blamed the problem on his adoption or operation of computer software to interface with the Odyssey computer system.

103. The Sheriff states that these computer software problems are caused by the City/County and its Information Services Agency, and/or the City/County's computer services contractors.

104. The Sheriff states that it is required to utilize the computer services of the City/County.

105. The Sheriff states that it has not been unable to avoid the information technology problems created by the City/County and its computer services contractors.

106. The City/County requires the Sheriff to utilize its information technology services provided by the City/County's Information Services Agency.

107. The Indiana counties surrounding Marion County utilize the Odyssey software computer system and have not experienced an increase in their average half-hour release times.

-14-

108. The Sheriff has enacted an unreasonable policy of not abiding by court orders for the release of jail inmates when such orders appear on the Odyssey system until after three separate sheriff department employees manually read the court's entire case minutes for the inmate's criminal case in order to "make sure" the court really wants the inmate released.

109. The surrounding counties do not triple check a court's order appearing on Odyssey.

110. The surrounding counties do not follow a 72 hour release policy, as does the Marion County Sheriff.

111. The surrounding counties do not operate their computer software in a manner which unreasonably delays prisoner releases.

112. The Marion County criminal courts have recognized the Sheriff's procedures delaying the release of detainees as a problem and have complained to the Sheriff about it, but to no avail. See e.g., "Delayed releases continuing problem at Marion County Jail," The Indiana Lawyer," Aug. 15, 2014 ("Two Marion Superior criminal court judges said Friday they continue to be frustrated by delayed releases of arrestees detained after orders have been signed for their release.").

(http://www.theindianalawyer.com/delayed-releases-continuing-problem-at-marion-county-jail/PARAMS/article/34923) (last accessed 1/15/15).

113. Attorneys for inmates have also recognized this as a problem and have complained about it. See "Public defender blasts Marion County Jail" The IndyChannel.com, Dec. 12, 2014 ("A Marion County public defender questioned why the jail kept her client two days after he was supposed to be released")

(http://www.theindychannel.com/news/local-news/public-defender-blasts-marion-county-jail) (last accessed 12/17/14).

114. The problem is widespread and affects numerous individuals. "Delayed releases continuing problem at Marion County Jail," The Indiana Lawyer," Aug. 15, 2014 (http://www.theindianalawyer.com/delayed-releases-continuing-problem-at-marion-county-jail/PARAMS/article/34923) (last accessed 1/15/15) ("[Marion Superior Court Judge] Stoner said bailiffs in his court have told him 'it happens so often they feel like the only way they can deal with it is doing it by paper,' either faxing or delivering release orders [to the jail]." ).

115. These policies and procedures followed by the Sheriff of: enacting a 72 hour release procedure; re-arresting and imprisoning individuals released on their own recognizance or found not guilty; refusing to accept the payment of bonds and instead outsourcing their collection and processing; employing and operating a computer system in a manner which delays prisoner releases; keeping prisoners in jail past their release dates until Community Corrections is ready to process them; and, ignoring court orders for release until it manually triple checks the court's entire docket for the case, are common to the class and result in unreasonable periods of detention.

116. The individual plaintiffs and the class of similarly situated individuals they represent have suffered damages as a result of these unreasonable practices in the form of prolonged and unreasonable detentions, physical discomfort, loss of liberty, lost opportunities, and emotional distress.

117. At all times relevant, the defendant was acting under color of state law.

118. Plaintiffs properly served defendants with notices of tort claims on behalf of themselves and the class pursuant to Indiana's Tort Claim Statute.

## V. Claims

119. Defendant's actions and inactions constitute unreasonable seizures and detentions in contravention of the fourth amendment, actionable pursuant to 42 U.S. C. § 1983.

120. Defendant's actions and inactions constitute the deprivation of liberty without due process of law in contravention of the fourteenth amendment, actionable pursuant to 42 U.S. C. § 1983.

121. Defendant's actions and inactions constitute false imprisonment under Indiana state law.

122. Defendant's actions and inactions constitute negligence under Indiana state law.

123. Plaintiffs and the class reserve the right to proceed with any and all claims which the facts averred in this Complaint support, pursuant to the notice pleading requirements of Federal Rule of Civil Procedure 8.

## VI.  Jury Trial Requested

124. The plaintiffs and Class request a jury trial on their claims.

## VII.  Relief Requested

125. The plaintiffs and Class seek all relief available under the law, including the creation of a common fund from which all class members can claim compensatory damages, attorney fees and costs, and all other appropriate relief.

                                                            Respectfully submitted,

Dated: May 5, 2015                          */s/ Richard A. Waples*
                                                        Richard A. Waples
                                                        Attorney for Plaintiffs and the Class

Dated: May 5, 2015                          */s/ John Young*
                                                        John Young
                                                        Attorney for Plaintiffs and the Class

| | |
|---|---|
| **WAPLES & HANGER** | **YOUNG & YOUNG** |
| 410 N. Audubon Road | 128 N. Delaware St. 3rd Floor |
| Indianapolis, Indiana 46219 | Indianapolis, IN 46204 |
| TEL: (317) 357-0903 | (317) 639-5161 |
| FAX: (317) 357-0275 | TOLL FREE 1 (888) 639-5161 |
| EMAIL: rwaples@wapleshanger.com | Fax (317) 639-4978 |
| | EMAIL: john@youngandyoungin.com |

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 5, 2015, a copy of this document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

aoverholt@fbtlaw.com

Adriana.Katzen@indy.gov

Amanda.Dinges@indy.gov

*/s/ Richard A. Waples*
Richard A. Waples

**WAPLES & HANGER**
410 N. Audubon Road
Indianapolis, IN 46219
TEL: (317) 357-0903
FAX: (317) 357-0275
EMAIL: rwaples@wapleshanger.com