# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### Case No.: 1:23-cv-00423-WO-JLW

| | | |
|---|---|---|
| CHAPLIN, et al. | ) | **JUDICIAL DEFENDANTS'** |
| | ) | **MEMORANDUM OF LAW IN** |
| *Plaintiffs*, | ) | **SUPPORT OF THEIR** |
| | ) | **MOTION TO DISMISS** |
| v. | ) | |
| | ) | |
| ROWE, et al. | ) | |
| | ) | |
| *Defendants.* | ) | |

---

Defendants Ryan Boyce, Brad Fowler, Blair Williams, Susie K. Thomas, and Elisa Chinn-Gary (collectively, "Judicial Defendants"), hereby submit this Memorandum of Law in Support of their Motion to Dismiss all claims against them.

## STATEMENT OF THE CASE

On February 28, 2024, Plaintiffs filed their Second Amended Complaint (hereinafter "Complaint"). [DE 77] In Claim Six, Plaintiffs assert a state law false imprisonment claim against the Clerk Defendants (Defendants Chinn-Gary, Williams, and Thomas) in their individual capacity, on behalf of themselves and the proposed Overdetention class. Plaintiffs Fields, Nunez, and Hayward bring the claim against Clerk Chinn-Gary on behalf of themselves and the proposed Overdetention Class. Plaintiffs Spruill, Chaplain, McNeil, Robertson, Jallal, Bradley, and Lassiter, bring the claim against Clerk Williams on behalf of themselves and the proposed Wrongful Arrest Class. Plaintiff Castellanos brings the claim against Clerk Thomas on behalf of

1

himself and the proposed Overdetention Class. In Claim Seven, all named Plaintiffs assert an official capacity 42 U.S.C. § 1983 claim for injunctive relief against Director Boyce, Mr. Fowler, the Clerk Defendants, and the Sheriff Defendants on behalf of themselves and the proposed Injunctive Relief Class. [DE 77 at ¶ 335]

## STATEMENT OF FACTS[1]

Historically, North Carolina courts depended on paper filing, which provided many opportunities for error and inefficiency. [DE 77, ¶ 54] In 2016, the North Carolina Commission on the Administration of Law and Justice recommend an integrated case management system ("ICMS")—a single-source, digital application used to manage all aspects of court administration. [DE 77, ¶¶ 56-60] The North Carolina Administrative Office of the Courts ("NCAOC") partnered with the National Center for State Courts to develop a Request for Proposal to identify and engage a vendor to effectuate this shift. [DE 77, ¶¶ 60-65] A selection committee comprised of stakeholders throughout the Judicial Branch ultimately recommended NCAOC engage Defendant Tyler to implement the ICMS. [DE 77, ¶ 68]

On June 7, 2019, NCAOC and Defendant Tyler entered a contract wherein Defendant Tyler would license its ICMS software (Odyssey) and develop and license an online, statewide repository of warrants (eWarrants) (collectively "eCourts"). [DE 77, ¶¶ 70-72; DE 77-3, pp. 3-4] Prior to eWarrants' July 2022 launch, "NCAOC conducted over 170 pre-implementation training sessions with magistrates and clerks

---

[1] Judicial Defendants do not hereby admit the truth of any allegations of the Complaint, but present them here as true as required under the motion to dismiss standard.

Case 1:23-cv-00423-WO-JLW   Document 94   Filed 04/09/24   Page 2 of 41

and over 60 law enforcement train-the-trainer training sessions." [DE 77, ¶ 74; 77-3, p. 3]

Odyssey launched in Wake, Lee, Harnett, and Johnston counties on February 13, 2023, and in Mecklenburg County on October 9, 2023. [DE 77, ¶¶ 75; DE 77-3, p. 3] The Odyssey ICMS "is designed to replace NCAOC's legacy criminal, civil, and juvenile mainframe hosted indexes, the agency's financial management system, and the court system's paper-based filing and records management processes." [DE 77-3, p. 4] To prepare for Odyssey, NCAOC conducted "over 50 mock court walkthroughs in local courthouses," and "90 multi-day training sessions in the four pilot counties and Mecklenburg County." [DE 77-3, p. 4] NCAOC "provided dedicated on-staff support in each county to assist with questions and to report any software defects or procedural issues." [*Id.*]

The thirteen Plaintiffs allege they experienced arrest or detention issues across six counties. [DE 77, ¶¶ 101-228] The following information is based on the facts alleged in the Complaint, supplemented by official court records.[2] [*See* Exhibit 1 through Exhibit 9] This Court may take judicial notice of state court records on a motion to dismiss without converting the motion into one for summary judgment because they are court records and are referenced in and integral to the Complaint. *See, e.g., Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of

---

[2] These state court records are also available on the North Carolina Judicial Branch eCourt Portal, at: https://portal-nc.tylertech.cloud/Portal/.

public record"); *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (permitting judicial notice of more specific statistics found in the public record than those generally alleged in the complaint on a Rule 12(b)(6) motion); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material when materials are "integral to and explicitly relied on in the complaint"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239–40 (4th Cir. 1989) (confirming the propriety of judicially noticing court records); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (Courts "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss"); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint).

### 1. *Sarah Fields*

Ms. Fields was arrested on October 7, 2023, and held without bond. [Ex. 1-D] On October 9, 2023, a magistrate issued a release order holding Ms. Fields on a secured bond at the Mecklenburg County Detention Center ("MCDC"). [DE 77, at ¶¶ 101-102; Ex.1-F] A district court judge later modified Ms. Fields' conditions of release to an unsecured bond. [Ex. 2-F] Ms. Fields alleges that she was held at the MCDC until October 10 at approximately 1:30 PM. [DE 77, at ¶ 106]. Ms. Fields alleges that an integration issue between Odyssey and eWarrants caused her overdetention. [DE 77, at ¶ 108]

The Mecklenburg County Chief District Court Judge explained the integration issue in an October 17, 2023, email. [DE 77, at ¶ 91; DE 77-4] During this period, the modified conditions of release entered into eWarrants "[i]n some cases" did not automatically migrate to the Odyssey [] System, resulting "in situations … in which Odyssey [] and Portal do not reflect the updated conditions of release." [DE 77-4 at 1] The information in Odyssey [] must be updated to process the appearance bond and release. [*Id.*] To mitigate this issue, clerks received daily integration reports and processed manual updates. Further, Judge Trosch directed magistrates under her supervision, [*see* N.C.G.S. 7A-146], who were effectuating the release of a defendant to check both systems and, where necessary, update the Odyssey system to process the release. [DE 77-4 at 2] Defendant McFadden was informed of the issue and the work-around processes to ensure that criminal defendants would be released. [*Id.*]

Ms. Fields' case did not experience an integration issue. The modified release order was created in eWarrants on October 9 at 4:37 PM, [Exs. 1-A, 1-J], and the order was available in the Odyssey Case Manager system October 9 at 4:39 PM. [Ex. 1-A (Case Events, Release Order Modified, Created Date)]

### 2. Sayeline Nunez

Ms. Nunez was arrested on October 9, 2023, given a secured bond at her initial appearance, and held at the MCDC. [DE 77, at ¶¶ 109-110; Ex. 2-C] A district court judge later modified Ms. Nunez' conditions of release to an unsecured bond. [Ex. 2-D] Ms. Nunez was returned to a holding cell at the MCDC and not released until the next day, October 11, at 1:30 PM. [DE 77, at ¶¶ 113-14] On December 4, Ms. Nunez

pled guilty and received a sentence of one day in jail, with credit for time served for the day she spent in the MCDC in October. [Ex. 2-G at 2]

Ms. Nunez alleges that an integration issue between Odyssey and eWarrants caused her overdetention. [DE 77, at ¶ 116] Her case did not experience an integration issue. The modified release order was created and signed in eWarrants on October 10 at 12:26 PM, [Exs. 2-A, 2-I] and available in the Odyssey system October 10 at 12:27 PM. [Ex. 2-A (Case Events, Release Order Modified, Created Date)]

### 3. Thomas Hayward

On December 2, 2023, Mr. Hayward was arrested and held without bond. [Ex. 3-C] On December 4, a magistrate issued a release order holding Mr. Hayward on a secured bond at the MCDC. [DE 77, at ¶¶ 117-119; Ex. 3-D] A district court judge later modified Mr. Haywards' conditions of release to an unsecured bond. [Ex. 3-F] Mr. Hayward alleges that he posted bond at 1:00 PM on December 4, but was held at the MCDC until December 5 at approximately 3:41 AM. [DE 77, at ¶¶ 121-124]

Mr. Hayward alleges that an integration issue between Odyssey and eWarrants caused his overdetention. [DE 77, at ¶ 125] His case did not experience an integration issue. The modified release order with the unsecured bond conditions of release was created and signed in eWarrants on December 4 at 10:13 AM, [Ex 3-H], and available in the Odyssey system on December 4 at 10:16 AM. [Ex. 3-A (Case Events, Release Order Modified, Created date)] A magistrate processed Mr. Haywards' appearance bond on December 4 at 1:05 PM. [Ex. 3-A (Case Events, Bond, Created Date), Ex. 3-G]

6

### 4. *Paulino Castellanos*

On Friday, February 10, 2023, Mr. Castellanos was arrested in Lee County for various sex offenses against children and given a bond that he could not afford. [DE 77, ¶ 203; Exs. 4A, 5A] Mr. Castellanos was brought before the magistrate to set conditions of release at approximately 11:05 AM that day. [Exs. 4-C at 7, 5-B at 7] Mr. Castellanos' attorney endeavored to have a judge review his pretrial release conditions set by the magistrate that same day, but his file allegedly could not be located. [DE 77, ¶ 204] The following Monday, February 13, 2023, the day eCourts went live in Lee County, a Grand Jury indicted Mr. Castellanos and bound him over to Superior Court. [DE 77, ¶¶ 207-208] On Wednesday, the Superior Court modified his bond and ordered his conditions of release to include electronic monitoring. [Exs. 4-F, 5-F] Mr. Castellanos did not meet his modified conditions of release until February 23, 2023. [Ex. 4-H, 5-H] Mr. Castellanos initially alleged the court-ordered electronic monitoring was unavailable until this time. [DE 1, ¶ 85]

Mr. Castellanos alleges that he was unable to move for a bond reduction earlier because he didn't have his case number and that a new case number was issued once he was indicted which allowed him to move for a bond reduction. The Court records reflect that Mr. Castellanos case number was set as 23CR230013-250 when he was arrested on Friday, February 10, 2023, and remained the same throughout his case. [*Compare* Exs. 4-C, 5-B *to* Exs. 4-F, 5-E]

### 5. *Kevin Spruill*

Mr. Spruill was arrested on a Wake County warrant on February 11, 2023 in Durham County, a non-eCourts county, where he also had his initial appearance and posted bond. [[DE 77, ¶ 126, Ex. 6-D at 5, 12] Mr. Spruill was subsequently twice briefly detained on the original warrant. [DE 77, ¶¶ 127-137]

### 6. *Timia Chaplin*

Ms. Chaplin failed to appear ("FTA") in Wake County district court on December 13, 2022, and the court issued an order for arrest ("OFA"). [DE 77, ¶ 139-140] On March 4, 2023, she was arrested for her FTA and released on a bond. [DE 77, ¶ 141] On March 16, her charges were dismissed, which was accurately reflected in Odyssey. [DE 77, ¶ 142] On April 9, Ms. Chaplin alleges she was arrested on the December 13, 2022, OFA. [DE 77, ¶ 144] Ms. Chaplin alleges that her rearrest was because "Odyssey did not communicate that [case] resolution to eWarrants, in contravention of the software's intended design." [DE 77, ¶ 144] Ms. Chaplin's Wake County criminal case no longer exists. [Ex. 7, ¶¶ 3-4]

### 7. *Rotesha McNeil*

Ms. McNeil was cited for driving with a suspended license in July of 2021. [DE 77, ¶ 147] On August 11, 2022, a Wake County arrest warrant[3] was issued for Ms.

---

[3] Plaintiffs use the terms "order for arrest" and "warrant for arrest" interchangeably throughout the Complaint. They are different. An OFA may be issued when a defendant fails to appear in court, N.C.G.S. § 15A-305(b)(2). A warrant for arrest issues upon a finding of probable cause to believe the named person has committed a criminal offense. N.C.G.S. §15A-304. Judicial officials, including clerks, are authorized to issue both. N.C.G.S. §§ 15A-305(a) -304(f)(5).

McNeil's for failure to appear. Ms. McNeil alleges she appeared in court and pled guilty on September 12, 2022. Ms. McNeil notes that Odyssey reflects that her case was disposed that date. [DE 77, ¶ 151] On May 29, 2023, Ms. McNeill alleges she was arrested on the August 11 OFA, and detained for approximately five hours until she was released on a $1,000 bond. [DE 77, ¶¶ 152-155] Ms. McNeil alleges that the clerk apologized for failing to recall the outstanding process from the eWarrants system. [DE 77, ¶ 157]

### 8. *Qiana Robertson*

Ms. Robertson alleges she was not notified that her Wake County district court date for Driving While Impaired was "Reset by Court." [DE 77, ¶¶ 164-65] As a result, Ms. Robertson did not appear and an OFA issued. [DE 77, ¶¶ 166-167] On June 11, 2023, Ms. Robertson was arrested on the OFA and posted a $2,000 bond. [DE 77, ¶¶ 167-168]

### 9. *Yousef Jallal*

Mr. Jallal alleges that his citation for misdemeanor marijuana possession was dismissed on June 6, 2023. [DE 77, ¶ 171] The docket reflects that Mr. Jallal was called and failed in Wake County district court on June 6 and an OFA was issued on July 3. [Exs. 8-A ( Case Events,), 8-C] Mr. Jallal was arrested on August 10, and detained for approximately six hours until he was released on a $1,000 bond. [DE 77, ¶¶ 173-177] Mr. Jallal's case was dismissed on August 11, 2023, after the district attorney's office informed the clerk that the case was dismissed without leave. [Ex. 8-A (see Dispositions)]

### 10. *Messiejah Bradley*

In August 2022, Mr. Bradley was arrested for possession of marijuana in Wake County. [DE 77, ¶ 178] On July 20, 2023, Mr. Bradley's charges were dismissed. [DE 77, ¶ 179] Mr. Bradley alleges that Odyssey "incorrectly marked his case on July 20, 2023 as called and failed," [DE 77, ¶ 181] that he was arrested on December 27, 2023 on an FTA "warrant" and held for five hours prior to posting a $1000 bond. [DE 77, ¶¶ 182-184] On September 28, 2023, Odyssey indicated his case was dismissed on July 20, 2023. [DE 77, ¶ 185] Mr. Bradley's Wake County criminal case no longer exists. [Ex. 7, ¶¶ 5-6]

### 11. *Dennis Keith Lassiter*

On March 30, 2023, Mr. Lassiter was arrested for felony possession of cocaine and misdemeanor possession of drug paraphernalia in Wake County. [DE 77, at ¶ 186; Ex.9-A] Mr. Lassiter failed to appear for court on March 31 and May 23, OFAs issued, and he later had those OFAs recalled. [Ex. 9-A (see Case Events)] He was scheduled for court on July 7, 2023, and alleges that he went to court, was present for roll call, and that an Assistant District Attorney told him that he would be given his next court date at a later time. [DE 77, at ¶ 186] On July 7, the court ordered him called and failed and an OFA was issued on August 17, 2023.  [Ex.9-A (Case Events); Ex. 9-B]

On October 19, 2023, Mr. Lassiter was arrested on the OFA. [DE 77, at ¶ 194] The Wake County magistrate reviewing his conditions of release identified an unserved Johnston County warrant in Odyssey. [DE 77, at ¶ 196; Ex.10, pp. 5-6]] The magistrate issued a "Service without Process" document on which the Wake County

Sheriff's officer arrested Mr. Lassiter. [Ex. 10, pp. 6-12] The document noted "Criminal process confirmed via Electronic Warrants and/or Odyssey, a printout of which is attached," though no criminal process was attached and instead attached was a printout from the Odyssey system noting that an arrest warrant had been issued in 2001 and that the case had been transferred to Harnett County. [*Id.*]

### 12. Robert Lewis

In 2016, Mr. Lewis' client, who lived in Guilford County, took out a restraining order against him, but he alleges it was dissolved. [DE 77, ¶ 214] In 2022, police were called out to investigate after Mr. Lewis and his neighbor got into an altercation. [DE 77, ¶ 215] The responding officer saw the restraining order in eWarrants and arrested him. [DE 77, ¶ 216] Mr. Lewis was held in custody for two days before posting bond. [DE 77, ¶ 217] The District Attorney eventually dismissed Mr. Lewis' case. [DE 77, ¶ 219].

### 13. Allen Sifford

In 2009, an arrest warrant was issued for Mr. Sifford in Gaston County but never served. [DE 77, ¶¶ 220-21] In 2022, Mr. Sifford's application for a commercial driver license was denied due to his outstanding warrant. [DE 77, ¶ 222] On October 25, 2022, Mr. Sifford alleges his case was dismissed. [DE 77, ¶ 224] On July 7, 2023, Mr. Sifford was pulled over for committing a traffic offense, arrested on the 2009 warrant that appeared valid in eWarrants, and held for more than 48 hours in the Gaston County jail. Mr. Sifford's case is now expunged. [DE 77, ¶¶ 226-27]

11

## LEGAL STANDARD

The court must address subject matter jurisdiction as a threshold question before it considers the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). Federal courts have limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court must grant a motion to dismiss for lack of subject matter jurisdiction if the court lacks authority to decide the dispute. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving subject matter jurisdiction on a motion to dismiss. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

A claim must be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level," however, the complaint must have "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the

12

court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 679 (citations omitted).

## LAW AND ARGUMENT

The adage "third time's a charm" does not apply here. Plaintiffs' third complaint continues to exhibit fundamental factual gaps and deficiencies (often subverted by publicly available court records), basic legal errors about the legal duties of clerks of superior court, and incoherent, contradictory, and formulaic legal theories that are inconsistent with both basic concepts of federal jurisdiction and efforts to brings these claims as a class action.

More specifically, Plaintiffs' false imprisonment claims against the Clerk Defendants are barred by both quasi-judicial and public official immunity, as the conduct at issue is integrally related to both their public office and the judicial process, and Plaintiffs have failed to allege corruption or malice. These claims also are contradicted by court records and a simple lack of factual allegations necessary for their associated legal claims. Second, Plaintiffs' claim for injunctive relief against the Judicial Defendants is barred by the Eleventh Amendment, as *Monell* liability does not extend to state entities and Plaintiffs fail to identify either a recognized constitutional deprivation or take issue with (or even identify) any specific policy or practice of the Judicial Defendants. Finally, Plaintiffs' complaint invites this Court to defy both *Burford* and *O'Shea* abstention principles by inserting itself into a complex state administrative process and effectively creating an ongoing federal audit of state court proceedings.

As such, the Judicial Defendants respectfully request that this Court dismiss all claims against them.

## I. PLAINTIFFS' FALSE IMPRISONMENT CLAIM IS BARRED BY QUASI-JUDICIAL IMMUNITY AND PUBLIC OFFICIAL IMMUNITY, AND FAILS TO STATE A CLAIM

### A. Quasi-judicial immunity bars Plaintiffs' claims.

Quasi-judicial immunity is accorded to individuals who play an integral part in the judicial process. *See Briscoe v. LaHue*, 460 U.S. 325, 335 (1983). This immunity extends to claims involving "tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Jarvis v. Chasanow*, 448 F. App'x 406 (4th Cir. 2011) (internal citations omitted). Clerks of court assist in carrying out judicial functions and, therefore, enjoy derivative absolute judicial immunity. *See Hamilton v. Murray*, 648 F. App'x 344, 345 (4th Cir. 2016); *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012); *Jackson v. Houck*, 181 F. App'x 372, 373 (4th Cir. 2006).

Clerk Williams is entitled to quasi-judicial immunity for the false imprisonment claims brought against him. Plaintiffs Chaplin, McNeill, and Spruill allege that they were falsely imprisoned when they were arrested after the Odyssey system failed to recall orders for arrest or mark warrants as not active in eWarrants. [DE 77, ¶¶ 126-159] Plaintiff Robertson alleges that she was falsely imprisoned when her court date was "Reset by Court" in Odyssey but she was not given notice of the rescheduled date, missed court, and was arrested on the OFA. [DE 77, ¶¶ 160-169] Plaintiffs Bradley, Jallal, and Lassiter allege that they were falsely imprisoned when they were incorrectly

14

marked as called and failed on a scheduled court date and were arrested on the resulting orders for arrest. [DE 77, ¶¶ 170-195].

Even if Clerk Williams were responsible for these alleged failures, he is entitled to quasi-judicial immunity. Signing orders for arrest, noting a defendant's appearance or non-appearance, scheduling and noticing hearings, and documenting the court record are all tasks integral to the judicial process and thus entitled to quasi-judicial immunity. *See, e.g.*, *Bryan v. Stewart*, 123 N.C. 92, 98 (1898) (finding clerk acts in their judicial capacity when they issue processes for arrest); *Freeman v. Scotland Cnty.*, No. 1:22CV653, 2022 WL 21827483 (M.D.N.C. Dec. 30, 2022), *report and recommendation adopted,* No. 1:22CV653, 2023 WL 8604259 (M.D.N.C. Mar. 15, 2023) (quasi-judicial immunity bars claim where clerk of court incorrectly put D.O.C. on commitment papers instead of county jail); *Johnson v. Turner*, 125 F.3d 324, 332 (6th Cir. 1997) (finding clerk's office employees, acting as a judge's designee, are entitled to quasi-judicial immunity); *Rankin v. Sykes*, No. 1:18CV353, 2019 WL 203184 (M.D.N.C. Jan. 15, 2019) (dismissing claims as frivolous because clerks are entitled to quasi-judicial immunity for signing orders for arrest for FTA and for failing to note the plaintiff's appearance on the docket resulting in a warrant for arrest for FTA); *Arroyo v. Zamora*, No. 3:17-CV-721-FDW-DCK, 2018 WL 1413195 (W.D.N.C. Mar. 21, 2018) (clerks entitled to quasi-judicial immunity for acts involving scheduling hearings, providing notice of hearings, and handling notices of appeal); *Brown v. Knox*, 788 F. App'x 194 (4th Cir. 2019) (finding a clerk's alleged failure to acknowledge an appeal is not ministerial, but rather an act entitled to quasi-judicial immunity.)

15

Clerk Thomas is also entitled to quasi-judicial immunity. Mr. Castellanos alleges that he was falsely imprisoned because Clerk Thomas lost his court file and his attorney was unable to file a bond reduction motion resulting in his overdetention. [DE 77, ¶¶ 202-212] Even if these allegations are true, Clerk Thomas is entitled to quasi-judicial immunity because filing documents is a task integral to the judicial process. *See Washington v. Savis*, No. CV22203580BHHMHC, 2023 WL 3766242 (D.S.C. May 12, 2023), *report and recommendation adopted,* No. 2:22-CV-3580-BHH, 2023 WL 3752186 (D.S.C. June 1, 2023) (finding clerk entitled to quasi-judicial immunity for failing to file documents).

Clerk Chinn-Gary is also entitled to quasi-judicial immunity. Plaintiffs Fields, Nunez, and Hayward allege that they were falsely imprisoned because Clerk Chinn-Gary did not ensure that their release orders were available in the system such that their release could be effectuated. [DE 77, ¶¶ 101-125, 309, 312, 318, 320] Even if these allegations are true, clerks are entitled to quasi-judicial immunity for failing to properly deliver court orders, including orders related to detention. *See Wiley v. Buncombe Cnty.*, 846 F. Supp. 2d 480, 485 (W.D.N.C.), *aff'd,* 474 F. App'x 285 (4th Cir. 2012) (quasi-judicial immunity applied to clerk who failed to properly deliver judge's writ of habeas corpus); *Fullard v. Horne*, No. 5:17-CT-3159-FL, 2018 WL 3302732 (E.D.N.C. July 5, 2018), *aff'd,* 747 F. App'x 162 (4th Cir. 2019) (finding that a clerk transmitting a court order is entitled to derivative judicial immunity).

The Court should dismiss Plaintiffs' false imprisonment claims against each Clerk Defendant as barred by quasi-judicial immunity.

## B. Public official immunity bars Plaintiffs' claims.

Public official immunity shields public officials from individual liability for acts connected to their service as public officials. This immunity "derives from the state's sovereign immunity," as "the public official's employment or authority flows from the State or a State agency." *See Epps v. Duke Univ., Inc.*, 122 N.C. App. 198, 203 (1996). A public official may not be held liable unless it is alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties. *Meyer v. Walls*, 347 N.C. 97, 112 (1997). Conclusory allegations that a public official's action, or failure to act, is corrupt, malicious or outside the scope of his duties is not sufficient, rather, the facts alleged in the complaint must support such a conclusion. *Doe v. Wake Cnty.*, 264 N.C. App. 692, 696 (2019). The Clerk Defendants are entitled to public official immunity on the false imprisonment claims brought against them.

First, Plaintiffs fail to allege any facts that support finding the Clerk Defendants' actions or failure to act were corrupt or done with malice. Further, all the allegations relate to activities that are in the scope of the Clerk Defendants' duties. A clerk of superior court is a North Carolina constitutional officer. N.C. Const. art. IV, § 9(3), N.C. Gen. Stat. § 7A-100(a). The North Carolina General Assembly prescribes the jurisdiction and powers of the clerk. N.C. Const. art. IV, § 12(3). These include the authority to issue orders for arrest, N.C. Gen. Stat. § 15A-305, and the duty to accurately record legal proceedings in accordance with of recordkeeping rules promulgated by the NCAOC Director. N.C. Gen. Stat. §§ 7A-109, 7A-180(3).

17

Plaintiffs allege that they were falsely imprisoned because the Clerk Defendants incorrectly issued orders for arrest, and/or kept inaccurate court records. [DE 77, ¶¶ 101-212]. Plaintiffs' conclusory allegations that the Clerk Defendants acted "outside the scope of their authority," [DE 6 ¶ 322], is contrary to North Carolina's constitution and statutes. Further, Plaintiffs' Seventh Claim, seeking an injunction directing the Clerk Defendants adopt failsafe procedures to prevent future liberty deprivations, necessarily concedes that the Clerk Defendants' alleged actions or omissions fall within their duties. Accordingly, this Court should dismiss the false imprisonment claims against Clerk Defendants as barred by public official immunity because there are no allegations to support finding that they acted, or failed to act, corruptly or maliciously, or that they acted outside of and beyond the scope of their duties.

### C. Plaintiffs fail to state a false imprisonment claim against any of the Clerk Defendants.

Plaintiffs appear to bring Claim Six – "False Imprisonment Against Clerk Defendants, Individually" – pursuant to North Carolina tort law. In North Carolina, false imprisonment is "the illegal restraint of a person against his will." *Marlowe v. Piner*, 119 N.C. App. 125, 129 (1995). The North Carolina Pattern Jury Instructions provide that a plaintiff must prove that the defendant both intentionally and unlawfully detained the plaintiff against his will. *See* False Imprisonment, NC Pattern Jury Inst. - Civ. 802.00. [Ex 10] Illegality is an essential element of false imprisonment. *See Pearson v. Newcomb*, 60 F.3d 824 (4th Cir. 1995). "Illegal or unlawful necessarily implies deliberateness in a defendants' actions." *Emory v. Pendergraph*, 154 N.C. App. 181, 185

18

(2002). Intent requires the defendant desire to cause the consequences of his action or believes the consequences are substantially certain to occur. *See* Definition of [Intent] [Intentionally], NC Pattern Jury Inst. - Civ. 101.46. [Ex. 11] Evidence of negligence or recklessness does not satisfy the intent required for a false imprisonment claim. *See e.g., Frazier v. Murray*, 135 N.C. App. 43, 48 (1999) (finding that false imprisonment is an intentional act which is legally distinguishable from a negligent act); *Silver v. Sears, Roebuck & Co.*, No. 5:98CV984-BO(3), 2000 WL 33682675 (E.D.N.C. July 31, 2000) (rejecting false imprisonment claim because negligent or even reckless conduct fails to raise the inference the defendant intentionally caused plaintiff's detention).

"An employer may be held liable for the torts of an employee under the doctrine of *respondeat superior* only in circumstances where: (1) the employer expressly authorizes the employee's tortious act; (2) the tort is committed by the employee in the scope of employment and in furtherance of the employer's business; or (3) the employer ratifies the employee's tortious conduct." *Denning-Boyles v. WCES, Inc.*, 123 N.C. App. 409, 414 (1996) (citation omitted). If there is no tort, there is no *respondeat superior* liability.

### 1. Mecklenburg County Plaintiffs

Plaintiffs Fields, Nunez, and Hayward (Mecklenburg Plaintiffs) bring their false imprisonment claim against Clerk Chinn-Gary, individually and on behalf of the Overdetention class. [DE 77, ¶ 309] Plaintiffs define this class as individuals who were

19

released from jail more than two hours[4] after the basis for their detention ended, "due to Defendants' adoption, implementation and design of eCourts." [DE 77, ¶ 229]

The Mecklenburg Plaintiffs allege Clerk Chinn-Gary "failed to maintain accurate electronic databases . . . and ensure that release orders were properly effectuated" causing them to be falsely imprisoned. [DE 77, ¶¶ 309, 312, 318, 320] They allege their overdetention was "caused by Defendants' adoption and implementation of eCourts, including an integration defect between Odyssey and eWarrants." [DE 77, ¶¶ 108, 116, 125]

These allegations as supplemented by the official court records do not allege a false imprisonment claim against Clerk Chinn-Gary. The Mecklenburg Plaintiffs point to no specific conduct by Clerk Chinn-Gary, or any employee of her office, and make the unwarranted conclusion and deduction of fact that the MCDC did not release them because of an integration issue noted in an email that only occurred in "some cases." [DE 77-4] The public court records attached hereto, however, demonstrate that neither an employee of the Clerk's office, nor an integration issue between Odyssey and eWarrants, caused the MCDC to overdetain the Mecklenburg Plaintiffs.

Additionally, and contrary to Plaintiffs' allegation, clerks of court are not responsible for "ensuring that release orders are properly effectuated." N.C.G.S. § 15A-537 provides:

---

[4] The Seventh Circuit rejected a two-hour timeframe for defining an overdetention class because "reasonableness of detention is a standard rather than a rule and because one detainee's circumstances differ from another's, common questions do not predominate and class certification is inappropriate." *Portis v. City of Chicago, Ill.*, 613 F.3d 702 (7th Cir. 2010).

Following any authorization of release of any person in accordance with the provisions of this Article, any judicial official must effect the release of that person upon satisfying himself that the conditions of release have been met. In the absence of a judicial official, any law-enforcement officer or custodial official having the person in custody must effect the release upon satisfying himself that the conditions of release have been met, but law-enforcement and custodial agencies may administratively direct which officers or officials are authorized to effect release under this section. … [N]o judicial official, officer, or custodial official may be held civilly liable for actions taken in good faith under this section.

N.C. Gen. Stat. § 15A-537.

In Mecklenburg County, the clerks are not present at MCDC—as such, that duty falls to the magistrate on duty and the custodial officials. [DE 77-4] Once the magistrate, or custodial official, is satisfied that the conditions of bond have been met, only then may a detainee be released. Importantly, this statute provides no judicial official may be held civilly liable for any actions taken in good faith under this section.

In sum, the Mecklenburg Plaintiffs' claims of false imprisonment are merely naked assertions of wrongdoing without any factual or legal support, expressly contradicted by the public court files. This is insufficient to allege a claim for relief. *Iqbal*, 556 U.S. 678-69. There is no allegation to support that a tort was committed by any employee of Clerk Chinn-Gary, and no facts to support Clerk Chinn-Gary's *respondeat superior* liability for any tortious act of an employee. This Court should dismiss the Mecklenburg Plaintiffs' false imprisonment claim against Clerk Chinn-Gary because Plaintiffs fail to state a claim under any theory of liability.

## 2. Lee County Plaintiff

Mr. Castellanos, individually and on behalf of the Overdetention class, brings a false imprisonment claim against Clerk Thomas, alleging she "failed to maintain accurate electronic databases" and that he was unlawfully detained against his will as a result. [DE 77, ¶¶ 311, 312, 318, 320] But Mr. Castellanos' detention was lawful.

Mr. Castellanos was arrested and charged with felony criminal offenses on February 10, 2023. A magistrate set his initial conditions of release, and he was unable to meet them. Mr. Castellanos alleges he was falsely imprisoned when he was unable to schedule an immediate, additional bond determination hearing before a judge because Clerk Thomas had no record of his case and the case was lost in the new eCourts system. [DE 77, ¶¶ 206, 209] Mr. Castellanos does not allege that he tried to pay his secured bond and could not, but rather was unable to afford the bond, and wanted another judicial official to review it.[5] His detention was not unlawful, nor was he overdetained because the basis for his detention did not end until he met the conditions of release on February 23, 2023. Accordingly, these allegations do not state a false imprisonment claim against Clerk Thomas.

---

[5] When the Superior Court Judge reviewed his pretrial conditions the following Wednesday, he imposed an electronic monitoring requirement. The monitoring equipment was unavailable until February 23, 2024, which has nothing to do with eCourts and is wholly outside of the control of Clerk Thomas.

3.     **Wake County Plaintiffs**

a.  **Plaintiffs Chaplin and McNeil**

Plaintiffs Chaplin and McNeil bring their false imprisonment claim, individually and on behalf of the Wrongful Arrest class. They allege they were re-arrested on OFAs resolved in disposed cases because those orders were not appropriately recalled by the system. [DE 77, ¶¶ 139-159][6] They allege that Clerk Williams failed to maintain accurate electronic case records or identify and remove invalid OFAs from Odyssey and eWarrants. Ms. Chaplin specifically alleges that her rearrest was because "Odyssey did not communicate that [case] resolution to eWarrants, in contravention of the software's intended design." [DE 77, ¶ 144]. Ms. McNeil alleges that the clerk apologized for failing to recall the outstanding process from the eWarrants system and does not allege a software defect caused her re-arrest. [DE 77, ¶ 157] Defendants Chaplin and McNeil fail to state a claim.

Ms. Chaplin does not allege any act or omission of Clerk Williams or an employee of his office to have caused her re-arrest. Instead, she blames a software issue[7] and the lack of proper training of a law enforcement officer. [DE 77, ¶ 144] Ms. Chaplin does not allege that Clerk Williams had any knowledge of the alleged software issue or had any role in training law enforcement. Ms. Chaplin fails to allege any facts to support her claim that Clerk Williams or one of his employees intentionally and

---

[6] No public court records exist of Ms. Chaplin's case. [Ex. 7, ¶¶ 3-4]

[7] Ms. Chaplin's assertions on the design of the Odyssey and eWarrants systems could not be based on actual knowledge and not alleged upon information and belief. This Court should treat them as unsupported speculation.

deliberately failed to recall an arrest order, either directly or pursuant to a *respondeat superior* theory, with the purpose of restraining Ms. Chaplin against her will.

Ms. McNeil's claim that an employee of the clerk's office failed to recall her OFA, and thus falsely imprisoned her, does not state a claim for false imprisonment. Ms. McNeil alleges no facts to support that Clerk Williams, or an employee, intentionally and deliberately failed to recall her OFA with the purpose of unlawfully restraining her against her will.

Defendants Chaplin and McNeil at most allege negligence, which cannot satisfy the intent required for a false imprisonment claim. *See e.g., Frazier*, 135 N.C. App. at48; *Silver*, 2000 WL 33682675.

### b. Plaintiffs Bradley, Jallal, and Lassister

Defendants Bradley, Jallal, and Lassister bring their false imprisonment claim, individually and on behalf of the Wrongful Arrest class. They allege they were noted as called and failed when they had appeared in court and were arrested on the resulting OFAs. [DE 77, ¶¶ 170-195] They further allege that Clerk Williams failed to maintain accurate electronic case records, to identify and remove invalid warrants from Odyssey and eWarrants, and to confirm that arrest orders for FTAs were not issued in error. Mr. Lassister also alleges that he was arrested on a resolved 2001 warrant issued in a Johnston County case. [DE 77,¶¶ 196-201] Defendants Bradley,[8] Jallal, and Lassister fail to state a claim.

---

[8] Mr. Bradley's Wake County criminal case no longer exists. Ex.7, ¶¶ 5-6 ().

Defendants Bradley, Jallal, and Lassiter make no factual allegations that Clerk Williams took any action to cause them to be noted as called and failed when they were in fact in court or that he was aware of an employee doing so and ratified this action. To the contrary, Mr. Bradley specifically alleges that Odyssey "incorrectly marked his dismissed case as called and failed" [DE 77, ¶ 181],[9] but does not allege that Clerk Williams had any knowledge of this alleged software issue.

Mr. Jallal's allegations are particularly weak. He alleges that he was called and failed on the day his case was dismissed. The public court records do not reflect that the District Attorney submitted a dismissal on the date he was noted as called and failed, instead his case was dismissed several months later. [Ex. 8-A (Case Information noting disposed 08/11/2023)].

In sum, Bradley, Jallal, and Lassiter allege no facts to support that Clerk Williams, or an employee, intentionally and deliberately failed to document their alleged presence in court for the purpose of unlawfully restraining them against their will. At most, they allege negligence, which cannot satisfy the intent required for a false imprisonment claim. *See e.g., Frazier v. Murray*, 135 N.C. App. 43, 48 (1999); *Silver*, 2000 WL 33682675.

Mr. Lassiter's allegation that Clerk Williams is responsible for his arrest on the 2001 Johnston County warrant also fails to state a claim. Clerk Williams is the clerk

---

[9] Mr. Bradley's assertions on the operation of Odyssey cannot be based upon actual knowledge and is not alleged upon information and belief. This Court should treat them as unsupported speculation.

of court for Wake County and has no authority or control over Johnston County case records. *See* N.C.G.S. §§ 7A-106, 7A-109, 7A-180.

### c. Plaintiff Spruill

Mr. Spruill brings his false imprisonment claim, individually and on behalf of the Wrongful Arrest class, against Clerk Williams. Mr. Spruill was arrested in Durham County on a felony warrant on February 11, 2023 [DE 77, ¶ 126], had an initial appearance in Durham and posted bond in Durham. [Ex. 6-C, p.3 (Return of Service lists DCSO), p.5 (Release Order issued in by "Durham for Wake" County)] Durham County is not an eCourts county and was not at the time of the arrest. He alleges that he was twice detained (though not arrested) on the already served warrant because "the warrant for his arrest remained as marked 'active' in eWarrants." [DE 77, ¶¶ 126-138]

Mr. Spruill alleges Clerk Williams became aware of this warrant issue when Plaintiff appeared in court on March 8, 2023. [DE 77, ¶ 134, 137] Mr. Spruill acknowledges that Clerk Williams updated his information in eCourts that day and does not allege any further issue with his arrest warrant. [DE 77, ¶ 137]

Mr. Spruill makes no factual allegations relating to any act by Clerk Williams, or any employee of his office, that caused the arrest warrant to continue to appear active in eWarrants after it was served by Durham County officials. Mr. Spruill fails to allege sufficient facts to support his claim that Clerk Williams falsely imprisoned him by intentionally and deliberately unlawfully restraining him against his will. At

most, Mr. Spruill alleges negligence, which cannot satisfy the intent required for a false imprisonment claim. *See e.g., Frazier*, 135 N.C. App. at 48; *Silver*, 2000 WL 33682675.

### d. Plaintiff Robertson

Ms. Robertson alleges she was not notified that her court date was "Reset by Court." [DE 77, ¶¶ 164-65] As a result, Ms. Robertson was called and failed and an OFA issued. [DE 77, ¶¶ 166-167] On June 11, 2023, Ms. Robertson was arrested on the OFA. [DE 77, ¶¶ 167-168] Ms. Robertson does not know how or why her court date was reset. [DE 77, ¶164]

Ms. Robertson also fails to state a claim. Ms. Robertson alleges no facts to support that Clerk Williams, or an employee, intentionally and deliberately changed her court date for the purpose of unlawfully restraining her against her will. Ms. Robertson, at most, alleges negligence, which cannot satisfy the intent required for a false imprisonment claim. *See e.g., Frazier,* 135 N.C. App. at 48; *Silver*, 2000 WL 33682675.

## II. PLAINTIFFS' INJUNCTIVE RELIEF CLAIM IS BARRED BY THE ELEVENTH AMENDMENT AND FAILS TO STATE A CLAIM

Plaintiffs sue Director Boyce, Mr. Fowler, Clerk Williams, Clerk Thomas, and Clerk Chinn-Gary, in their official capacities, pursuant to 42 U.S.C. § 1983 for violations of their Fourth and Fourteenth Amendment rights. [DE 77, ¶¶ 330-331] Generally, a 42 U.S.C. § 1983 claim requires a plaintiff to prove: (1) deprivation of rights secured by the Constitution and laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *West v. Atkins*, 487

27

U.S. 42, 48 (1988). Plaintiffs' claim should be dismissed because they do not sufficiently allege either of these elements and the Eleventh Amendment bars the claim.

### A. The Eleventh Amendment bars Plaintiffs' claim.

The Eleventh Amendment restricts the ability of individuals to sue states in federal court. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This immunity extends to "arms[s] of the State," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), including state agencies and state officers acting in their official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Gray v. L.*, 51 F.3d 426, 430 (4th Cir. 1995).

Plaintiffs bring their claim against Director Boyce and Mr. Fowler, alleging *Monell* liability. Under *Monell*, municipalities and other local government units may be held liable via § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). A plaintiff who seeks to assert a § 1983 claim against a municipality or county is obligated "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). However, "*Monell* has not been interpreted to extend § 1983 liability to policies or customs made by *state* governments or its agents." *Benton v. Layton*, 628 F. Supp. 3d 661, 666 (E.D. Va. 2022) (emphasis in original) (*citing Gray*, 51 F.3d at 431 The Eleventh Amendment protects states, state entities, and state officials from *Monell* liability, and therefore, Plaintiffs' claims here fail.

## B. Plaintiffs' injunctive relief claim fails to state a claim.

In Claim Seven, Plaintiffs broadly allege that the Judicial Defendants' "adoption and implementation of administrative policies in connection with the ongoing use of the defective eCourts system" "constitute a policy or custom of inaction and a policy or custom amounting to deliberate indifference to the Fourth and Fourteenth Amendment rights of Plaintiffs and the Injunctive Relief Class." [DE 77, ¶ 330-31] Even if *Monell* applies to state officials these allegations are insufficient to state a claim.

"[A] government entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Liability only arises when the offensive acts are taken in furtherance of a governmental entity's policy or custom. *Burgess v. Goldstein*, 997 F.3d 541 (4th Cir. 2021). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Hunter v. Town of Mocksville, N. Carolina*, 897 F.3d 538, 554 (4th Cir. 2018). Plaintiffs also allege, without any factual enhancement, that the unidentified administrative policies themselves are unconstitutional. [DE 77, ¶ 333]

When alleging *Monell* liability, the alleged unconstitutional policy or practice at issue must be defined "with precision" to state a claim. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). An assertion that a policy or practice exists is insufficient. *See Gen.*

*Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 (1982). Plaintiffs' burden requires them to identify the specific practice or policy they are attacking. *Cf. Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988) (citing *Connecticut v. Teal*, 457 U.S. 440 (1982)). In addition to identifying the specific policy, a plaintiff must also plead facts attributing the policy or custom to the government and describe how that policy or custom proximately caused the deprivation of a constitutional right. *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 781 (M.D.N.C. 2011).

Plaintiffs' allegations fall short of this standard merely providing a "formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. Plaintiffs cannot survive a Rule 12(b)(6) motion without identifying a specific policy or custom that Judicial Defendants have adopted or implemented, let alone one that violates their constitutional rights. *See, e.g., Walker v. Prince George's Cnty., MD*, 575 F.3d 426, 431 (4th Cir. 2009) (dismissing complaint that contained threadbare recitals of a policy or custom but did not specifically identify the policy or custom); *Wilson v. Arthur*, 2023 U.S. Dist. LEXIS 43114, *10 (E.D. Va Mar. 14, 2023) ("Because [Plaintiff] fails to identify any policy, much less a specific policy or custom of Defendants [], that deprived him of his constitutional rights, he fails to state a claim for relief. For this reason alone, Wilson's claims against Defendants [] should be DISMISSED."), *aff'd* 2023 U.S. App. LEXIS 30234 (4th Cir. 2023); *Robinson v. Baltimore Cty.*, 2022 U.S. Dist. LEXIS 149477, *13 (D. Md. Aug. 18, 2022)); *Clemons v. City of Greensboro*, No. 1:19CV961, 2021 WL 781537 (M.D.N.C. Mar. 1, 2021) (dismissing 1983 claim

against City for failure to identify a "'specific policy with precision'"); *Booker v. City of Lynchburg*, No. 6:20-CV-00011, 2020 WL 4209057 (W.D. Va. July 22, 2020) (finding plaintiff failed to allege a Monell claim where he did "not reference any specific policy statement or decision of any policymaker in his complaint . . . in more than conclusory terms").

Not only are Plaintiffs' threadbare allegations insufficient to survive a Rule 12(b)(6) motion, they fail to satisfy Rule 8(a)'s short and plain statement requirement. While the pleading need not be minutely detailed, it must give a "defendant fair notice of what plaintiff's claim is and the grounds upon which it rests." *Cole v. Teamsters Local Union No. 391*, No. 1:08CV499, 2008 U.S. Dist. LEXIS 89346, at *3 (M.D.N.C. Oct. 30, 2008). "This duty of fair notice under Rule 8(a) requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief." *Id.* at *3-4. The Complaint does not describe **any** administrative policy or practice of the NCAOC or the respective Offices of the Wake, Lee, or Mecklenburg County Clerk of Superior Court, much less describe a policy with specificity. In addition, Plaintiffs do not demonstrate that Mr. Fowler has the authority to promulgate or enforce policies or practices because they do not allege **any facts whatsoever** against him. Indeed, Plaintiffs' Complaint is so lacking that Judicial Defendants could not possibly prepare a defense to it. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978) (Pleadings put the defendant on notice as to the nature of the claims against him so that he may adequately prepare a defense).

31

## C. Plaintiffs also fail to sufficiently allege a constitutional deprivation.

The Fourth and Fourteenth Amendments protect against deprivations of liberty accomplished without due process of law. *Baker v. McCollan*, 443 U.S. 137, 145 (1979); *see also Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("The deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.") In order to establish that an arrest or detention is unlawful, a plaintiff must allege a deprivation of liberty accomplished without due process. *Id.* The complaint fails to allege facts sufficient to make that determination, or pleads facts that do not rise to the level of a due process violation.

### 1. Wrongful Arrest Class (Spruill, Chaplin, McNeil, Robertson, Jallal, Bradley, Lassiter Sifford)

The majority of these allegations relate to orders for arrest that appeared valid in eWarrants but were allegedly either already served, issued in a now dismissed case, recalled, or issued in error. Plaintiffs' allegations, at most, allege negligence, by the Sheriff Defendants, unidentified employees of the Clerk Defendants, other law enforcement officers, or issues in the eCourts software. [DE 77, ¶¶ 243, 199, 254, 294, 318] The Supreme Court has held, however, that negligence cannot be the basis for a claim of constitutional violation, stating that " . . . to hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries old principle of due process of law." *Daniels v. Williams*, 474 U.S. 327, 332 (1986)..

32

Detention pursuant to a facially valid warrant later determined to be served, recalled, or issued in error, does not, without more, violate due process, and thus is not constitutionally unlawful. *See Baker*, 443 U.S. 137 (noting a three-day detention over a holiday weekend did not amount to a deprivation of liberty for a detainee who was arrested in a case of mistaken identity because the warrant was facially valid); *see also Mitchell v. Aluisi*, 872 F.2d 577 (4th Cir. 1989) (finding no due process violation when Plaintiff was arrested and detained on a facially valid warrant that had been recalled, unbeknownst to the arresting officers); *Peacock v. Mayor & City Council of Baltimore*, 199 F. Supp. 2d 306, 309 (D. Md. 2002) (finding a ten-day detention pursuant to a warrant did not violate the Fourth Amendment because it was facially valid in the Sherriff's "in house computer system," even though the warrant was actually invalid as the suspect had already served the sentence for which the warrant had been issued). Accordingly, the facts alleged by the Wrongful Arrest class Plaintiffs do not sufficiently allege a constitutional violation or injury.

### 2. Overdetention Class

#### a.  Castellanos

Mr. Castellanos' allegations are internally inconsistent, contrary to the official court records, and do not allege a constitutional violation. [DE 77, ¶¶ 206, 209] Mr. Castellanos was afforded due process when he appeared before a magistrate for his initial appearance and a bond was set and when a judge heard his February 12, 2023, bond reduction motion. [DE 77, ¶¶ 209-210; Exs. 4-B, 4-F, 5-C, 5-E] His detention was never unlawful, nor does he allege he was detained beyond the time he should

33

have been released. Instead, he could not make the bond set by the magistrate so he wanted it reduced by a different judicial official, and once his bond was unsecured, he could not meet his electronic monitoring requirement for eight days. [Exs. 4H, 5H; DE 1, ¶ 85] There is no absolute constitutional right to be released on bail, *see e.g. United States v. Salerno*, 481 U.S. 739, 752 (1987), nor is there a constitutional right to an immediate review of bond conditions by another judicial official. The Complaint fails to allege any constitutional violation or injury.

b.    Fields, Nunez, Hayward

Plaintiffs Fields, Nunez, and Hayward allege that they were overdetained because of "Defendants' adoption and implementation of eCourts, including an integration defect between Odyssey and eWarrants." [DE 77, ¶¶ 108, 116, 125]. These allegations are contrary to the official court records, which document that their cases were not affected by an integration issue between Odyssey and eWarrants, their release orders were updated in Odyssey and eWarrants within minutes of entry, and that magistrates timely processed appearance bonds authorizing their release.

The Overdetention Class representatives have not alleged any facts that support a finding that (1) they experienced a constitutional violation and injury requiring prospective injunctive relief, or (2) that a policy of the Judicial Defendants caused a constitutional violation.

## III. THIS COURT SHOULD ABSTAIN TO AVOID INTERFERENCE WITH NORTH CAROLINA'S JUDICIAL PROCESSES AND TO PREVENT INTRUSION INTO COMPLEX STATE ADMINISTRATIVE PROCESSES

The extraordinary permanent injunctive relief requested by Plaintiffs implicates concepts of equity, federalism, and comity. Based on these concepts, this Court should abstain from exercising jurisdiction.

Although federal courts have an obligation to exercise jurisdiction when proper, certain classes of cases justify "the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do[.]'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (citing *Younger v. Harris*, 401 U.S. 37, 45 (1971)). "To avoid friction between federal and state courts, abstention doctrines prohibit a federal court from deciding a case within its jurisdiction when a state proceeding is pending or state judicial processes are implicated." *Bishop v. Funderburk*, No. 3:21-CV-679-MOC-DCK, 2022 WL 1446807 (W.D.N.C. May 6, 2022).

### A. *O'Shea* requires abstention to avoid intrusion in state court processes.

In *O'Shea*, the Supreme Court articulated abstention principals applicable here. *O'Shea v. Littleton*, 414 U.S. 488 (1974). The *O'Shea* plaintiffs sought injunctions in connection with the discriminatory administration of the criminal justice system in an Illinois county. *Id.* at 491–92. They challenged criminal prosecutions "brought under seemingly valid state laws" and sought an order that would likely lead to future "interruption of state proceedings to adjudicate assertions of noncompliance" by the

defendants. *Id.* at 500. The Supreme Court held that "an injunction aimed at controlling or preventing the occurrence of specific events that might take place" in future proceedings would lead to the federal interference in state judicial proceedings prohibited under the abstention principles. *Id.* The *O'Shea* abstention doctrine aims to protect state judicial processes from intrusions by federal courts.

Plaintiffs' requested injunctive relief would amount to an ongoing federal audit of state proceedings, an outcome the Supreme Court rejects. *Id.* The Supreme Court explained:

> What [plaintiffs] seek is an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials. The order the Court of Appeals thought should be available if [plaintiffs] proved their allegations would be operative only where permissible state prosecutions are pending against one or more of the beneficiaries of the injunction. Apparently the order would contemplate interruption of state proceedings to adjudicate assertions of noncompliance by petitioners. This seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris,* […] and related cases sought to prevent. A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable.

*O'Shea*, 414 U.S. at 500. Here, Plaintiffs seek prospective injunctive relief to "prevent future harms" that "are still being understood." [DE 77, ¶ 6, 93] This request for equitable relief is precisely the kind of "audit" prohibited by *Shea*.

**B.** ***Burford*** **requires abstention because the requested relief unduly intrudes upon complex state administrative processes.**

Plaintiffs also ask this Court to unduly intrude upon North Carolina's independence and create and implement state court case management policies for

36

North Carolina. *Burford* abstention considers whether federal adjudication "threatens to frustrate the purpose of a state's complex administrative system." *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 331–32 (1943)). Under the *Burford* doctrine, "[c]ourts must balance the state and federal interests to determine whether . . . the state interest in uniform regulation outweighs the federal interest in adjudicating the case at bar." *Martin*, 499 F.3d at 364. Specifically, the *Burford* doctrine "permits abstention when federal adjudication would 'unduly intrude' upon 'complex state administrative processes' because either: (1) 'there are difficult questions of state law . . . whose importance transcends the result in the case then at bar'; or (2) federal review would disrupt 'state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Id.* (quoting *New Orleans Public Service, Inc.*, 491 U.S. at 361–63).

North Carolina's transition to digital case management is exceedingly complex, requiring the coordination of an array of activities and numerous parties within and external to the judiciary, taking thousands of hours of ongoing training, legislative and regulatory efforts, and vast amounts of technological configuration to implement. [DE 77, ¶¶ 55-76, DE 77-1, 77-3] Federal interference here would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Service, Inc.*, 491 U.S. at 361–63. North Carolina has an important interest in maintaining the efficient operation of its criminal justice system without undue federal interference. *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986) ("[T]he States'

interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief.") Federal court intervention would have an impermissibly disruptive effect on state policies related to management of North Carolina courts and implicates important state interests. Abstention is appropriate.

## <u>CONCLUSION</u>

The eCourts project presents a fundamental change for the North Carolina Judicial Branch, its state and local government partners, and the attorneys and public it serves. The Branch has continually recalibrated and fine-tuned trainings and business practices as needed. Nothing in the Plaintiff's third complaint warrants federal interference in this process. Instead, the Complaint continues to be based on unsupported, conclusory allegations of systemic failures based on speculation and conjecture, which are many times contradicted by the public court records. The Complaint provides no basis for the alleged violations by Judicial Defendants, or the extraordinary relief requested. For all these reasons, Judicial Defendants request the Court grant their Motion to Dismiss.

Respectfully submitted this the 9th day of April, 2024.

JOSHUA H. STEIN
Attorney General

/s/Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885
E-mail: eobrien@ncdoj.gov
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6800
Fax: (919) 716-6755
*Counsel for Defendants Boyce, Fowler,*
*Williams, Thomas, and Chinn-Gary*

**<u>CERTIFICATE OF WORD COUNT</u>**

I hereby certify that this brief, including the body of the brief, headings and footnotes, but excluding the caption, signature lines, certificate of service, certificate of word count and any cover page or index not included, does not exceed the 10,000-word limit granted by the Court. [DE 85]

<u>/s/ Elizabeth Curran O'Brien</u>
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice

## CERTIFICATE OF SERVICE

This certifies that the undersigned has this day electronically filed the foregoing **JUDICIAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS** using the CM/ECF system, which will send notification of such filing to all the counsel of record for the parties who participate in the CM/ECF system.

This the 9th day of April, 2024.

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice