UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO: 1:23-cv-423

| | |
|---|---|
| TIMIA CHAPLIN, *et al.*<br><br>Plaintiffs,<br>v.<br><br>GARRY L. MCFADDEN, *et al.*<br><br>Defendants. | **SHERIFF GARRY MCFADDEN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

## NATURE OF THE CASE

This is a purported class action alleging constitutional violations resulting from implementation and technical errors with North Carolina's adoption of eCourts pursuant to a $100 million contract between Tyler Technologies, Inc. and the North Carolina Administrative Offices of the Courts. Plaintiffs do not allege, nor could they, that Sheriff McFadden was consulted on the contract with Tyler Technologies, or the adoption and implementation of Odyssey, the "bespoke" system it created for North Carolina. Specific to Sheriff McFadden, Plaintiffs allege that issues with the rollout of Odyssey in the days and weeks following its implementation caused delays in the releases of Plaintiffs Sarah Fields, Sayeline Nunez, and Thomas Hayward from the Mecklenburg County Detention Center - Central ("MCDCC").

But while dense, Plaintiffs' Second Amended Complaint alleges no conduct by Sheriff McFadden that would make him liable for any over-detention of any named Plaintiff. In fact, Plaintiffs' meandering allegations consistently blame Sheriff McFadden

for one failing, on the one hand, but then blame someone else for the same transgression, on the other.

Plaintiffs' incongruent accusations fail to pinpoint any action by Sheriff McFadden that violated their constitutional rights. While someone *may* be to blame for the delays in their release, it is not Sheriff McFadden. He should be dismissed from this suit.

## FACTS

To modernize its court system, and particularly recordkeeping, the North Carolina Administrative Office of the Courts ("NCAOC") contracted with Defendant Tyler Technologies, Inc. ("Tyler Technologies") to implement an electronic recordkeeping program for the North Carolina court system. (Doc. 77 (Second Amended Complaint), ¶¶ 65, 68). The contract with Tyler Technologies was worth $100 million. (*Id.* at ¶ 70). Pursuant to that contract, Tyler Technologies agreed to (i) "develop eWarrants—an online warrant repository bespoke to North Carolina," (ii) implement an electronic document management and processing software known as "Odyssey," (iii) host Tyler Technologies' software in the cloud so NCAOC could "retire its own mainframe," and (iv) provide technical and customer support to resolve defects in its systems. (*Id.* at ¶ 71). The contract assured NCAOC that eCourts "will perform without Defects during the [contract] term." (*Id.* at ¶ 72 & Ex. B (Doc. 77-2) (brackets in original)). It also anticipated that configuration and statewide rollout would take five years. (Doc. 77, ¶ 73).

Early rollout of eCourts in the pilot counties of Wake, Lee, Harnett, and Johnston in February 2023 was marred by issues. (*Id.* at ¶¶ 77-83). In fact, Harnett County

suspended nearly all district court proceedings for a full week. (*Id.* at ¶ 84). This included eWarrants. In June 2023, NCAOC staff held a meeting to discuss urgent issues related to eWarrants, including inadvertent deletion of release orders for 179 warrants, subjecting individuals already released from jail to re-arrest. (*Id.* at ¶¶ 85-87).

In July 2022, eWarrants was implemented prior to the adoption of Odyssey. However, Mecklenburg County's chief information officer publicly acknowledged that "Tyler Technologies continued to struggle with several defects pushing the [launch] date for eWarrants back." (*Id.* at ¶ 74 (brackets in original)). Expansion of eCourts into Mecklenburg County was delayed several times because of defects. (*Id.* at ¶ 88). Odyssey was officially launched in Mecklenburg County on October 9, 2023. (*Id.* at ¶ 75). Prior to the launch of eCourts, Plaintiffs allege it would take only 2-4 hours to process a detainee for release; shortly following the launch of eCourts, it may have taken 2-3 days in some circumstances. (*Id.* at ¶ 92).

Plaintiffs do not allege that any of North Carolina's 100 sheriffs, including Sheriff McFadden, were consulted regarding the adoption of eCourts, eWarrants, or Odyssey.

***<u>Sheriff McFadden</u>***

The few facts that pertain to Sheriff McFadden are found scattered amongst Plaintiffs' Second, Third, Fifth, and Seventh Claims for Relief in the Second Amended Complaint. Plaintiffs' primary allegations against Sheriff McFadden are:

- "During the first four days following the launch of eCourts in Mecklenburg County, and due to these technological defects, approximately 66 people were detained well beyond the point their conditions of release were

satisfied[,]" (Doc. 77, 272), though they do not specify who these individuals are or how long they were detained; and

- "Sheriff McFadden failed to adequately train his employees on the Odyssey and eWarrants systems and how to use those systems to ensure that individuals were timely released from detention." (*Id.* at ¶ 277).

All other allegations against Sheriff McFadden flow from these foundational claims.

***The Mecklenburg Plaintiffs***

Three specific Plaintiffs allege claims against Sheriff McFadden: Sarah Fields, Sayeline Nunez, and Thomas Hayward (the "Mecklenburg Plaintiffs"). (*Id.* at ¶¶ 101-25). None of the Mecklenburg Plaintiffs allege they were arrested by Sheriff McFadden, one of his deputies, or pursuant to an invalid warrant. (*Id.*)

***A. Plaintiff Sarah Fields***

Fields was arrested on October 7, 2023, and held on bond at MCDCC.[1] (*Id.* at ¶¶ 101-02). She was ordered released on unsecured bond at approximately 12:00 pm on October 9, 2023. (*Id.* at ¶ 104). However, Fields was not released until the next day at approximately 1:30 pm. (*Id.* at ¶ 106). Plaintiffs allege Fields' over-detention was the result of eCourts. (*Id.* at ¶ 108).

***B. Plaintiff Sayeline Nunez***

On October 9, 2023 (the day Fields was ordered released), Nunez was arrested and held on bond at MCDCC. (*Id.* at ¶¶ 109-10). At 11:00 am on October 10, 2023, Nunez was ordered released. (*Id.* at ¶ 112). However, Nunez was not released until the next day

---

1 The Second Amended Complaint does not specify whether she was a resident at the Mecklenburg County Detention Center Central or some other facility.

at approximately 1:30 pm. (*Id.* at ¶ 114). Plaintiffs allege Nunez's over-detention was the result of eCourts. (*Id.* at ¶ 116).

### *C. Plaintiff Thomas Hayward*

On December 2, 2023, Hayward was arrested and held without bond at MCDCC. (*Id.* at ¶¶ 117-18). Hayward was ordered released around 10:00 am on December 4, 2023, on $2,500 bond. (*Id.* at ¶ 120). Hayward posted bond around 1:00 pm that same day. (*Id.* at ¶ 121). Hayward was not released until 3:41 am the following morning. (*Id.* at ¶ 123). Plaintiffs allege Hayward's over-detention was the result of eCourts. (*Id.* at ¶ 125).

### *Class Allegations*

Plaintiffs allege three classes: an over-detention class, wrongful arrest class, and injunctive relief class. (*Id.* at ¶ 229). Plaintiffs allege these classes consist of "at least hundreds of individuals" across the entire State of North Carolina. The Mecklenburg Plaintiffs allege claims against Sheriff McFadden only for their over-detention. *See* (Doc. 77, ¶ 259).

## QUESTIONS PRESENTED

I. Whether Sheriff McFadden can be liable on Plaintiffs' negligence claim because he has no duty to look beyond the face of a warrant when executing one.

II. Whether Plaintiffs' *Monell* claim fails because they failed to allege specific conduct on behalf of Sheriff McFadden sufficient to confer liability on him.

III. Whether Plaintiffs can maintain a claim against Sheriff McFadden for action on his official bond without any underlying negligent conduct.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "Although for the purposes of this motion to dismiss [the Court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, "[a]lthough the pleading requirements stated in Rule 8 [of the Federal Rules of Civil Procedure] mark[ ] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" and therefore should be dismissed. *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## ARGUMENT

Plaintiffs incorrectly allege only that Sheriff McFadden is liable for the over-detention of the Mecklenburg County Plaintiffs (Fields, Nunez, and Hayward). They assert the following claims against Sheriff McFadden: Second Claim for Relief (Negligence),

Third Claim for Relief (*Monell*), and their Fifth Claim for Relief (Action on Bond).[2] Of these three claims, only the *Monell* claim is alleged specifically against Sheriff McFadden.

Nevertheless, they still seek to hold Sheriff McFadden liable for their alleged over-detention. But the Second Amended Complaint fails to allege any conduct by Sheriff McFadden that caused Plaintiffs' alleged harm. Sheriff McFadden, along with the State's other 99 sheriffs, was never consulted on the contract for Odyssey, including how, or even whether, to implement it. What is more, sheriffs and their deputies are obligated to execute warrants provided to them, and—explicitly pursuant to statute—have no duty to look beyond the face of a warrant prior to execution.

Consequently, Plaintiffs fail to state a claim for relief against Sheriff McFadden, and he should be dismissed.

## I. PLAINTIFFS FAIL TO ALLEGE ANY NEGLIGENT CONDUCT BY SHERIFF MCFADDEN

Plaintiffs bring a claim for "Negligence Against All Sheriff Defendants," (Doc. 77, Second Claim for Relief), though Plaintiffs Fields, Nunez, and Hayward only allege Sheriff McFadden is liable for their over-detention. (Doc. 77, ¶ 248). However, to the extent they also lump Sheriff McFadden with all other named sheriff Defendants and allege he was negligent in the Mecklenburg Plaintiffs' arrest and detention, this claim fails.

2 Plaintiffs also seek injunctive relief against all Defendants in their Seventh Claim for Relief. (Doc 77, ¶¶ 325-36).

### A. **The Sheriff Has No Authority Over the Administration or Issuance of Warrants.**

Plaintiffs allege, in conclusory fashion, that the "Sheriff Defendants" were "negligent and breached duties owed to Plaintiffs" by, *inter alia*, failing to "identify warrants issued in their respective counties and appearing in eWarrants that were invalid"; failing "to confirm the validity of warrants prior to arresting individuals pursuant to a warrant"; and "[i]n such further ways as may be shown by the evidence." (Doc. 77, ¶¶ 253-54). Plaintiffs also allege that the "Defendant Sheriffs' negligence" caused them to be "wrongfully arrested and detained." (*Id.* at ¶¶ 253-257).

These allegations are insufficient to state a claim against Sheriff McFadden. First, as stated above, neither he nor his deputies had any duty "to confirm the validity of warrants prior to arresting individuals pursuant to a warrant." *See* N.C. Gen. Stat. § 162-16. Importantly,

> An officer or other employee designated as provided in subsection (b), and serving process as provided in subsection (b), receiving under this section or under G.S. 15A-301.1 criminal process which is complete and regular on its face may serve the process in accordance with its terms ***and need not inquire into its regularity or continued validity, nor does he incur criminal or civil liability for its due service***.

N.C. Gen. Stat. § 15A-301(f) (titled "Protection of Process Server") (emphasis added).[3] "Subsection (f), 'Protection of officer,' is new, added to insure that an officer may execute criminal process promptly without fear or danger of encountering difficulty because of

---

[3] As referenced in the quoted excerpt, subsection (b) explicitly applies to warrants. *See* N.C. Gen. Stat. 15A-301(b) ("Warrants for arrest and orders for arrest . . . .").

some deficiency not apparent to him." Criminal Code Commission Commentary to N.C. Gen. Stat. § 15A-301(f).

Second, until a warrant is recalled, Sheriff McFadden and his deputies are obligated to serve it. General Statute 162-16 sets forth a Sheriff's obligation in serving process: "Whenever the sheriff may be required to serve or execute any summons, order or judgment, or to do any other act, ***he shall be bound to do so in like manner as upon process issued to him***." N.C. Gen. Stat. § 162-16 (emphasis added).

And no sheriff—McFadden or otherwise—has the authority or the capability to recall, whether through eWarrants or any other Odyssey-related program, any purportedly "invalid" process, paper, or document. This authority lies only with judicial officials or their agents. *See* N.C. Gen. Stat. §§ 15A-301(g), (g)(1); *cf. Wool v. Saunders*, 108 N.C. 729, 13 S.E. 294, 297 (1891) (recognizing sheriffs as executive officers); 70 Am. Jur. 2d Sheriffs, Police, and Constables § 2 ("the sheriff's office is an agency of the executive branch of government"). It is the judicial official's responsibility to (i) enter the recall and then (ii) notify the sheriff's office that he or she has recalled the warrant. Relevant here,

> When the process is in the Electronic Repository, the recall shall promptly be entered in the Electronic Repository, and no further copies of the process shall be printed in paper form. The recall shall also be communicated by any reasonable means to each agency that is known to be in possession of a copy of the process in paper form and that does not have remote electronic access to the Electronic Repository.

N.C. Gen. Stat. § 15A-301(g)(3).

Thus, the liability Plaintiffs allege for not "confirm[ing] the validity of" the warrants

against Fields, Nunez, and Hayward is **explicitly barred** by North Carolina law. Indeed, for over 150 years, Plaintiffs' theory that Sheriff McFadden (and his deputies) should have gone beyond the face of a warrant to investigate its propriety has been consistently rejected by North Carolina courts. *State v. Ferguson*, 67 N.C. 219, 221 (1872) (where a writ directs the sheriff to dispossess a tenant, and no irregularity appeared on the face of the paper, the sheriff was justified in dispossessing the defendant thereunder); *see also McGloughan v. Mitchell*, 126 N.C. 681, 36 S.E. 164 (1900) ("[t]he sheriff must execute writs issued and directed to him from a superior or justice's court, under the penalty of $100 for neglecting to make return."); *Thomas v. Sellers*, 142 N.C. App. 310,312, 42 S.E.2d 283, 285 (2001) (officers "are not expected to go beyond the face of the order." (citing *State ex. rel. Jacobs v Sherard*, 36 N.C. App. 60, 65, 243 S.E.2d. 184, 188 (1978)).

Nor does Sheriff McFadden have any control over policies related to his administrative access to the Odyssey system. Indeed, Plaintiffs' own pleading alleges that the Odyssey contract was between NCAOC and Tyler Technologies and that Tyler Technologies was contractually tasked with training and technical support for all end-users. (Doc. 77, ¶¶ 239-41).

Finally, neither Plaintiffs' negligence claim nor the rest of their Second Amended Complaint contains specific factual allegations describing any other acts of Sheriff McFadden that could in any way be considered negligent. Indeed, Plaintiffs do not allege that Fields, Nunez, or Hayward was arrested by Sheriff McFadden (or his deputies), in the first instance, or even pursuant to an invalid warrant. *See* (Doc. 77, ¶¶ 101, 109, 117). Nor

do Plaintiffs otherwise describe any acts of Sheriff McFadden that caused any Mecklenburg Plaintiff to be arrested, incarcerated, or detained after the court ordered him or her to be released. To be sure, Plaintiffs allege that their over-detention "was caused by Defendants' adoption and implementation of eCourts, including an integration defect between Odyssey and eWarrants." (*Id.* at ¶¶ 108, 116, 125). But, as discussed more fully below, indiscriminate group pleading is insufficient to allege wrongful conduct on Sheriff McFadden. *See Langford v. Joyner*, 62 F.4d 12 (4th Cir. 2023).

Such bald, unsupported, and conclusory allegations fail to state a claim against Sheriff McFadden. Accordingly, Plaintiffs' negligence claim against Sheriff McFadden should be dismissed.

**B. <u>Group Pleading Does Not Confer Liability</u>.**

Similarly, Plaintiffs' collective allegations against "Defendants" fail to state any claim against Sheriff McFadden. As the Fourth Circuit recently held in *Langford v. Joyner*, 62 F.4th 122 (4th Cir. 2023), "generalized, conclusory, and collective allegations" against undifferentiated "Defendants" do not plausibly plead or state a claim against a particular defendant. *Id.* at 124-26. As the court explained:

> Courts have been critical of complaints that "fail[ ] to isolate the allegedly constitutional acts of each defendant." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008), or that "make[ ] only categorical references to 'Defendants.'" *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012).
>
> The courts have reasoned that requiring specific factual allegations for each defendant gives fair notice to *that* defendant of the plaintiff's claim and the underlying factual support. *See e.g., Robbins*, 519 F.3d at 1250 ("Given the

> complaint's use of … the collective term 'Defendants' . . . it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *Marcilis,* 693 F.3d at 569-97 (collecting cases).
>
> . . .
>
> On appeal, Langford argues that the repeated general references to "Defendants" in his complaint are sufficient because he brings the same allegations against each Defendant, so "Defendants" functions as a shorthand alternative to listing each Defendant by name. But Langford has the burden of pleading a facially plausible claim. *Iqbal,* 556 U.S. at 678, 129 S. Ct. 1937. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the* defendant is liable for the misconducted alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955) (emphasis added). And it is not reasonable to infer liability against each Defendant based on the facts alleged.

*Id.* (emphasis in original); *accord, e.g., Inpatient Consultants of North Carolina, P.C. v. Goad*, 2023 WL 2611128 at* 8 (W.D. Va. 2023) (unpublished) (in RICO case, court granted motion to dismiss because "when claims are made against multiple defendants, the complaint must, at the very least, 'minimally . . . apprise each defendant[ ] of who did what to whom and when'") (internal citations omitted); *Whaley v. Multiple Unknown Defendants*, 2023 WL 5757689 at *2 (D.SC. 2023) (unpublished) (citing *Langford* for proposition that "collective allegations" against "all Defendants" without identifying how each individual defendant personally interacted with plaintiff or was responsible for the denial of constitutional rights do not comply with the tenets of *Twombly* and *Iqbal*.").

That NCAOC could have conducted more thorough diligence prior to contracting with Tyler Technologies does not imbue liability to Sheriff McFadden or his deputies related to the execution of warrants through the eWarrants system or Plaintiffs' releases

from MCDCC. *See* (Doc. 77 at 97 (detailing issues with Odyssey in discrete counties in other states)). Nor do other allegations in other states put Sheriff McFadden "on notice of the likelihood of overdetentions[.]" (Doc. 77, ¶ 264). *See, e.g.*, *O'Rourke v. Dominion Voting Sys. Inc.*, 552 F. Supp. 3d 1168, 1190 (D. Colo. 2021) (court held attorneys could not sign a complaint with allegations mirroring other failed lawsuits because "it was not enough to merely accept as true (or potentially true) what might be stated in the media, what had been pushed out over the Internet, or even what was included in other lawsuits filed around the country."), *modified on reconsideration*, No. 20-CV-03747-NRN, 2021 WL 5548129 (D. Colo. Oct. 5, 2021). Indeed, Plaintiffs allege that the eWarrants program for which they now seek to hold Sheriff McFadden liable "is bespoke to North Carolina." (Doc. 77, ¶ 71(a)). Thus, any system that is the subject of any other lawsuit, irrespective of a common creator, is necessarily different from North Carolina's and could not put Sheriff McFadden on notice that the system Tyler Technologies fashioned uniquely for North Carolina would have the same, if any, issues as these other pending lawsuits.[4]

---

4 Similarly, because any Tyler Technologies system for another state is necessarily different, it is questionable, at best, whether evidence of these other lawsuits would even be admissible at trial. *Accord, e.g.*, *Shostrom v. Ethicon, Inc.*, No. 20-CV-1933-WJM-STV, 2022 WL 2237341, at *1 (D. Colo. June 22, 2022) ("However, the Court finds that evidence of other lawsuits involving unrelated products manufactured by Johnson & Johnson companies, including other medical devices, drugs, and cosmetic products, are irrelevant and prejudicial under Rule 403, and are excluded.").

## II. <u>PLAINTIFFS FAIL TO ALLEGE *MONELL* LIABILITY AGAINST SHERIFF MCFADDEN</u>

Plaintiffs seek to impose *Monell* liability upon Sheriff McFadden related to their alleged over-detention. (Doc. 77, Third Claim for Relief). This claim also fails.

A local government entity can only be held liable under Section 1983 for a deprivation of a plaintiff's rights if that deprivation occurred "through an official policy or custom." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). An official policy may arise from written ordinances and regulations, *id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)), affirmative decisions of policymaking individuals, *id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)), or omissions of policymakers manifesting "deliberate indifference to the rights of citizens." *Id.* (citing *Canton v. City of Harris*, 489 U.S. 378, 388-89 (1989)). An official custom is said to exist where "a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Id.* (quoting *Monell*, 436 U.S. at 691). The policy or custom must be the "moving force" behind the specific constitutional violation alleged. *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984).

Plaintiffs fail to plausibly allege any conduct by Sheriff McFadden that caused their over-detention. The only substantive allegations against Sheriff McFadden in Plaintiffs' 336-paragraph Second Amended Complaint are:

- Sheriff McFadden is the Sheriff of Mecklenburg County and has a statutory obligation to run and care for the MCDC, including setting policy for the MCDC, (Doc. 77, ¶¶ 13-14, 260);
- He oversees the Courts division, which is "tasked with protecting the

Mecklenburg County Courthouse and is responsible for ensuring that court papers are properly issued and that court cases are processed efficiently," (*id.* at ¶ 15);

- He oversees the Arrest Processing division at the Mecklenburg County Sheriff's Office, (*id.* at ¶ 16);
- He waived governmental and sovereign immunity, (*id.* at ¶ 17);
- He is "responsible for compliance with court orders for release of MCDC inmates," (*id.* at ¶ 261);
- He was "on notice" of the risk of over-detentions based on litigation in other states, the rollout of eCourts in other North Carolina counties, and "meetings with stakeholders," (*id.* at ¶ 264);
- He "expressed concerns about whether his staff would be able to operate the new electronic system," (*id.* at ¶ 265);
- He "failed to implement a failsafe system, such as paper-based process to notify jail staff of a release order that could be transferred with inmates to the MCDC," (*id.* at ¶ 266);
- He was aware that an integration issue caused delays in the communication of release orders to his staff, (*id.* at ¶ 269);
- He publicly stated that the wait times for releases were longer and "attributed the delays to inadequate training for his staff as well as glitches and crashes in the system," (*id.* at ¶¶ 273, 275); and
- He failed to train his staff on how to use Odyssey and eWarrants, (*id.* at ¶ 277).

Based on this, Plaintiffs allege that "Sheriff McFadden's policies, customs, practices, omissions, and failures to train, as related to the adoption and implementation of eCourts, caused Plaintiffs and members of the Overdetention Class to be detained after the time they were ordered released." (*Id.* at ¶ 278).[5]

But none of these allegations establish conduct by Sheriff McFadden that caused

---

[5]     Sheriff McFadden does not address Plaintiffs' class allegations herein as no class has been certified, nor does Sheriff McFadden believe one is likely to be.

any delay in Plaintiffs' releases, much less conduct that would establish *Monell* liability. Indeed, Plaintiffs explicitly allege that "***Tyler Technologies'*** breach brought about the actions of the governmental actors that wrongfully arrested and detained Plaintiffs and members of each Class." (Doc. 77, ¶ 243) (emphasis added).[6]

What is more, Plaintiffs' allegations against Sheriff McFadden do not even comport with the remaining 300-plus paragraphs of their Second Amended Complaint. For example, it was not Sheriff McFadden's responsibility to train his staff on the use of Odyssey. According to Plaintiffs' own pleading, it was—contractually—Tyler Technologies'. *Compare* (Doc. 277, ¶ 277) *with* (*id.* at ¶ 241(d)). Nor could Sheriff McFadden have "implement[ed] a failsafe system such as paper-based process to notify jail staff of a release order that could be transferred with inmates to the MCDC," (*id.* at ¶ 266), because Odyssey "must" be used by all court personnel once implemented. (*Id.* at ¶ 76). And even if Sheriff McFadden did have authority to implement a non-Odyssey "failsafe system" despite the requirement that all personnel exclusively use Odyssey, what benefit would a paper-based "failsafe system" provide if "[t]he delays in release began ***immediately upon the rollout of eCourts*** in Mecklenburg County"? (*Id.* at ¶ 267)

---

[6] But, "[a]s *Pinder* makes clear, it is not an affirmative act triggering § 1983 liability to make a decision 'that makes injury at the hands of a third party more likely,' and it is not a creation of danger to 'simply fail[ ] to provide adequate protection from' the source of the danger." *McClure v. Charlotte-Mecklenburg Bd. of Educ.*, No. 320CV00005RJCDCK, 2021 WL 7448762, at *8 (W.D.N.C. Mar. 19, 2021) (quoting *Pinder v. Johnson*, 54 F.3d 1169, 1175 (4th Cir. 1995)), *report and recommendation adopted as modified*, No. 320CV00005KDBDCK, 2022 WL 317641 (W.D.N.C. Feb. 2, 2022).

(emphasis added).

That Plaintiffs blame Sheriff McFadden for these issues is nonsensical, and they offer no facts supporting any of their conclusory allegations. Nor could they, as Sheriff McFadden had no responsibility for the design, "adoption and implementation," (Doc. 77, ¶ 278), or even the agreement to use eCourts, Odyssey, or eWarrants. Indeed, according to Plaintiffs, this was all undertaken between Tyler Technologies and the NCAOC. *See* (*id.* at ¶ 241).

Plaintiffs also fail to identify any specific policy, or the absence thereof, that proximately caused their alleged constitutional harm. Instead, they merely recite the legal criteria for a *Monell* claim. However, "[t]o state such a claim, a plaintiff must identify the specific policy or custom in the Complaint." *Majeed v. Columbus Cnty. Bd. of Educ.*, 213 F.3d 631 (4th Cir. 2000) (citing *Spell v. McDaniel*, 824 F .2d 1380, 1389 (4th Cir.1987). Failure to do so is "fatal." *Manning v. Dva Well Path Correct Care Sols.*, No. 1:20CV8, 2021 WL 2414119, at *9 (M.D.N.C. June 14, 2021) (citing *Blackwell v. Houser*, No. 5:16-CV-67-FDW, 2017 WL 4684188, at *8 (W.D.N.C. Oct. 18, 2017), *aff'd*, 719 F. App'x 263 (4th Cir. 2018)). Indeed, "numerous courts in the Fourth Circuit have held that 'boilerplate allegations' and 'generalized' claims without 'details about [the] policies and practices and how they are inadequate, inaccurate, or ineffective' are insufficient as a matter of law 'to establish a custom or practice' claim under *Monell*." *I.P. by Newsome v. Pierce*, No. 5:19-CV-228-M, 2020 WL 1231809, at *6 (E.D.N.C. Mar. 9, 2020) (quoting *Lyles v. Prawdzik*, No. PWG-15-1056, 2016 WL 3418847, at *5 (D. Md. June 22, 2016)); *accord Stokes v.*

*Johnson*, No. 3:16-CV-127-FDW, 2018 WL 310145, at *5 (W.D.N.C. Jan. 5, 2018) ("failure to allege a specific policy or custom is fatal"); *Barrett v. Board of Educ. of Johnston Cty.*, 13 F. Supp. 3d 502, 511 (E.D.N.C. Apr. 9, 2014) (dismissing § 1983 *Monell* claim because the allegations were "nothing more than a formulaic recitation of the legal standard for finding municipal liability under § 1983 . . . . no non-conclusory factual allegations. . . . plaintiffs point to no particular policy at all."). Because their own pleading makes clear that Sheriff McFadden was not responsible for the approval, implementation, and maintenance of the eCourts system, or the training of its end-users, Plaintiffs fail to plausibly allege any specific policy or custom by Sheriff McFadden that was the "moving force" behind their alleged harm. *Monell*, 436 U.S. at 694; *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 182 (4th Cir. 2023).

Finally, "[s]poradic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014) (quotation omitted); *see also Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 875 (4th Cir. 1989) (noting that a "single act of the type here alleged cannot suffice, standing alone, to establish the existence of . . . a policy"). The only specific events Plaintiffs allege in support of Sheriff McFadden's purported policy and custom are three instances of over-detention, one for each Mecklenburg Plaintiff. This is insufficient.

To be sure, Plaintiffs do allege that "[d]uring the first four days following the launch of eCourts in Mecklenburg County, ***and due to these technological defects***"—which

Sheriff McFadden did not control—"approximately 66 people were detained well beyond the point their conditions of release were satisfied." (Doc. 77, ¶ 272) (emphasis added). But Plaintiffs offer no factual support for this allegation, and conjecture is insufficient to support the imposition of *Monell* liability on Sheriff McFadden. Thus, Plaintiffs fail to allege "a practice" by Sheriff McFadden "that is so persistent and widespread as to constitute a custom or usage with the force of law." *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, No. 20-2334, 2022 WL 774732, at *2 (4th Cir. Mar. 15, 2022).

Plaintiffs also seek an injunction against the "Sheriff Defendants" and others. (Doc. 77, Seventh Claim for Relief). Here, Plaintiffs allege—again, in conclusory fashion—that "Defendants" adopted or implemented unspecified "administrative policies" that are "unconstitutional." (*Id.* at ¶¶ 331-33). Again, group pleading is insufficient to maintain a claim against Sheriff McFadden, and like the rest of Plaintiffs' Second Amended Complaint, Plaintiffs' Seventh Claim for Relief contains no factual allegations regarding any alleged wrongful or illegal action taken by Sheriff McFadden.

## III. PLAINTIFFS FAIL TO ALLEGE AN ACTION ON OFFICAL BOND CLAIM AGAINST SHERIFF MCFADDEN

Plaintiffs also seek to hold Sheriff McFadden liable for "action on official bond," along with the other Sheriff Defendants. (Doc. 77, ¶¶ 297-307). However, Sheriff McFadden can only be liable under this statute, N.C.G.S. § 58-76-5, where a person is "injured by the neglect, misconduct, or misbehavior in office" by an elected Sheriff. As there are no underlying acts of negligence or misconduct, this claim must be dismissed.

## CONCLUSION

For the reasons stated herein, Plaintiffs' Second Amended Complaint against Sheriff McFadden should be dismissed with prejudice.

This, the 9th day of April, 2024.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/Sean F. Perrin*
Sean F. Perrin (NCSB No. 22253)
Michael A. Ingersoll (NCSB 52217)
301 S. College Street, Suite 3500
Charlotte, North Carolina 28202
Telephone No. (704) 331-4900
Fax No. (704) 338-7814
E-mail: Sean.Perrin@wbd-us.com
E-mail: Mike.Ingersoll@wbd-us.com

/s/J. George Guise
N.C. State Bar. No. 22090
George.Guise@mecklenburgcountync.gov
Mecklenburg County Sheriff's Office
801 East Fourth St.
Charlotte, NC 28202
Telephone: 704- 336-8100

*Attorneys for Defendant Sheriff Garry McFadden in his official capacity of Sheriff of Mecklenburg County*

**CERTIFICATION OF COMPLIANCE**

1. In accordance with Local Civil Rule 7.1, this brief prepared using Times New Roman 13-point font, double-spaced, and not be less than one and one-quarter inch margins at the top of the page, with bottom, left and right margins not less than one inch.

2. In accordance with Local Civil Rule 7.3(d), counsel for Defendant certifies that this brief, excluding caption and signature line, does not exceed 6,250 words.

*/s/ Sean F. Perrin*