IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:23-cv-00423-WO-JLW

| | |
|---|---|
| TIMIA CHAPLIN; SARAH FIELDS; SAYELINE NUNEZ; THOMAS HAYWARD; KEVIN SPRUILL; ROTESHA MCNEIL; QIANA ROBERTSON; YOUSEF JALLAL; MESSIEJAH BRADLEY; DENNIS KEITH LASSITER; PAULINO CASTELLANOS; ROBERT LEWIS; and ALLEN SIFFORD, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>GARY L. MCFADDEN, officially, as the Sheriff of Mecklenburg County; JOHN DOE SURETY, as surety for the Sheriff of Mecklenburg County; WILLIE R. ROWE, officially, as the Sheriff of Wake County; BRIAN ESTES, officially, as the Sheriff of Lee County; THE OHIO CASUALTY INSURANCE COMPANY, as surety for the Sheriffs of Wake County and Lee County; TYLER TECHNOLOGIES, INC.; RYAN BOYCE, officially, as the Executive Director of the North Carolina Administrative Office of the Courts; BRAD FOWLER, officially, as the eCourts Executive Sponsor and Chief Business Officer of the North Carolina Administrative Office of the Courts; ELISA CHINN-GARY, individually and officially, as the Mecklenburg County Clerk of Superior Court; BLAIR WILLIAMS, individually and officially, as the Wake County Clerk of Superior Court Court; SUSIE K. THOMAS, individually and officially, as the Lee County Clerk of Superior Court; and DOES 1 THROUGH 20, INCLUSIVE,<br><br>*Defendants*. | **PLAINTIFFS' RESPONSE IN OPPOSITION TO SHERIFF MCFADDEN'S MOTION TO DISMISS** |

Plaintiffs respectfully submit this Response in Opposition to Defendant Mecklenburg County Sheriff Gary McFadden's Motion to Dismiss. Sheriff McFadden's motion should be denied in its entirety.

## INTRODUCTION

Dozens of people have been overdetained in Mecklenburg County since eCourts launched there last October. (ECF 77 ¶¶ 88-92, Exhibit D; Exhibits E & F accompanying this brief.) In the days following the launch, more than 60 individuals were detained long after satisfying their conditions of release. (*Id.* ¶¶ 92.) Months later, the same problems persist. (*E.g. id.* ¶¶ 117-25 (December 2023 overdetention); Exhibit F (March 2024 overdetention).)

Sheriff McFadden has publicly acknowledged that "wait times are much longer [than before]." (ECF 77 ¶ 273.) Weeks after the initial rollout, his office remained "inundated" with "calls from citizens . . . worried about when [their loved ones were] going to be released."[1] (*Id.* ¶

---

[1] Sheriff McFadden tries to downplay the number of overdetentions. (*See* ECF 96 at 18-19 (referring to Plaintiffs' allegations of mass overdetentions as "conjecture").) At this stage, the Court must accept Plaintiffs' factual allegations as true. But for good measure, Plaintiffs include two Exhibits here that demonstrate (1) the frequency of overdetentions and (2) that overdetentions are continuing to occur more than six months after Mecklenburg County's transition to eCourts.

**Exhibit E** is a non-exhaustive spreadsheet, assembled by public defenders serving Mecklenburg County and provided to Plaintiffs, which identifies nearly 70 instances of overdetention in October, 2023 alone. The information in the spreadsheet is publicly available through North Carolina's eCourts Portal (https://portal-nc.tylertech.cloud/Portal) or the Mecklenburg County Sheriff's website (https://inmateinquiryweb.mecklenburgcountync.gov).

**Exhibit F** contains the publicly available docket sheet, release order, and jail card for Darius Hunsucker. Although Mr. Hunsucker was ordered released from the MCDC on March 19, 2024, he was not actually released until March 26, 2024.

This Court may take judicial notice of both Exhibits, as they are, or are directly derived from, public court and jail records. *See, Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

273.) Yet he has failed to implement a process to timely and reliably "notify jail staff of a release order." (*Id.* ¶ 266.)

As explained below, Plaintiffs plausibly allege that their overdetentions resulted—at a minimum—from Sheriff McFadden's negligence. And they plausibly allege that the Sheriff failed to correct a pattern and practice of overdetention in the jails he controls—the "hallmark" of a *Monell* claim. *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 403 (4th Cir. 2014). This Court should deny Sheriff McFadden's motion to dismiss (ECF 95) and allow Plaintiffs' well-pleaded claims against him to proceed.

## STATEMENT OF FACTS

The operative complaint focuses on three Plaintiffs whose experiences are typical of a wider class—Sarah Fields, Sayeline Nunez, and Thomas Hayward. (*Id.* ¶¶ 101-25.) Fields and Nunez were each held for more than 24 hours in the Mecklenburg County Detention Center ("MCDC") after a judge ordered them released. (*Id.* ¶¶ 101-16.) Hayward was held for nearly 15 hours after posting bond. (*Id.* ¶¶ 117-25.) Notably, Hayward's overdetention happened in December, 2023—two months after Mecklenburg County transitioned to eCourts, and well after the initial wave of overdetentions at MCDC. (*Id.*)

Sheriff McFadden oversees the MCDC and related facilities. (*Id.* ¶¶ 14, 260.) In that role, he is responsible for timely processing detainees' releases. (*Id.* ¶ 261.) Prior to eCourts, it would take the Sheriff's Office 2-4 hours (on average) to free a detainee who had satisfied her conditions of release. (*Id.* ¶ 274.) Now, it can take days. (*Id.* ¶ 92.)

Sheriff McFadden was on notice that the transition to eCourts would likely lead to overdetentions. Before the launch in Mecklenburg County, the Sheriff attended stakeholder meetings with the local District Attorney's Office, the Public Defender's Office, and others. (*Id.*

3

¶¶ 265.) There, he expressed concern over "whether his staff would be able to operate the new system." (*Id.*) His concern was informed by the experiences of his fellow sheriffs in North Carolina's pilot counties, as well as elsewhere in the country. (*See, e.g. id.* ¶ 97 (describing how counties in California, Texas, Tennessee, and Indiana struggled to maintain timely jail processes after transitioning to eCourts software)). Still, the Sheriff failed to implement a process that would ensure timely release. (*Id.* ¶ 266.)

As alleged in the operative complaint, Plaintiffs' overdetentions resulted directly from Sheriff McFadden's practices, acts, and omissions in the wake of Mecklenburg County's transition to eCourts:

In **Count Two**, Plaintiffs Fields, Nunez, and Hayward allege that they (and many others) were overdetained as a result of Sheriff McFadden's negligence. (*Id.* ¶¶ 248, 251-57.) Sheriff McFadden has a duty "to ensure that individuals are not held unnecessarily in the jails and other facilities" he supervises. (*Id.* ¶ 253.) But since October 2023, he has "repeatedly detained individuals"—including Fields, Nunez, and Hayward—"[well] beyond the time they had been ordered released or otherwise satisfied their conditions of release." (*Id.* ¶¶ 253-54.)

In **Count Three**, Plaintiffs further allege that Sheriff McFadden, through his "policies, customs, practices, omissions, and failures to train" violated Plaintiffs' Fourth and Fourteenth Amendment rights. (*Id.* ¶¶ 258-79.) In support of this *Monell* claim, Plaintiffs allege that Sheriff McFadden knew that his staff was ill-prepared for the transition to eCourts; saw immediate delays in release times; recognized that the delays were due to inadequate policies and training; yet failed to alter his policies and practices to prevent overdetentions. (*E.g. id.* ¶¶ 262, 265-68, 275-79.)

In **Count Five**, Plaintiffs properly allege that Sheriff McFadden's conduct gives rise to an action on his official bond. (*Id.* ¶ 229, 302, 304-05.)

And in **Count Seven**, Plaintiffs allege that Sheriff McFadden should be required to adopt failsafe procedures to prevent overdetentions, as his current policies and practices demonstrate "deliberate indifference" to the constitutional rights of Plaintiffs Fields, Nunez, and Hayward, as well as others. (*Id.* ¶ 328-331, 333, 335.)

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests only "the sufficiency of a complaint." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). In conducting its review, the Court must accept as true all well-pleaded allegations and draw all reasonable inferences in Plaintiffs' favor. *Id.*

While "legal conclusions" and "conclusory statements" do not suffice, a complaint should withstand dismissal if it contains "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).

## ARGUMENT

**I. Plaintiffs state a plausible negligence claim against Sheriff McFadden.**

As an initial matter, Plaintiffs' negligence claim against Sheriff McFadden concerns *overdetentions only*. Sheriff McFadden acknowledges as much, (ECF 96 at 6-7), but nonetheless spends several pages of his brief discussing the execution of warrants, (*see id.* at 8-11). Those arguments have no bearing on Plaintiffs' claims against Sheriff McFadden.

**A. The complaint alleges facts to support each element of a negligence claim.**

With that clarification, the operative complaint plausibly alleges that Sheriff McFadden's negligence caused Fields, Nunez, and Hayward (among others) to be overdetained.

5

To state a negligence claim, a plaintiff must show "(1) a legal duty, (2) a breach thereof, and (3) injury proximately caused by such breach." *Tise v. Yates Const. Co., Inc.*, 345 N.C. 456, 461-62, 480 S.E.2d 677, 680 (1997). Accepted as true, the straightforward allegations in the complaint satisfy each of those elements. *Cf. McNeal v. La. Dept. of Corrections*, 598 F. Supp. 3d 428, 434-35 (M.D. La. 2022) (negligence claim survived 12(b)(6) dismissal where plaintiff alleged that officials "implemented policies that were a legal cause of [his] overdetention"); *Harbeck v. Smith*, 814 F. Supp. 2d 608, 631 (E.D. Va. 2011) (detainee plausibly alleged negligence against clerk who failed to effectuate his timely release).

First, Sheriff McFadden has a legal duty to timely free detainees who have satisfied their conditions of release. This duty is both inherent in the Sheriff's role as jailer and conferred by statute. *See, e.g. Porter v. Epps*, 659 F.3d 440, 445-46 (5th Cir. 2011) (jailers have a "duty to effect [detainees'] timely release"); *State v. Lemus*, 273 N.C. App. 155, 158, 848 S.E.2d 239, 241-42 (2020) ("[O]nce the conditions of . . . release are satisfied, the [jailer] must immediately release the defendant. This is . . . mandatory, not optional."); N.C. Gen. Stat. § 15A-537 (jailers "must effect . . . release" once conditions have been met); (ECF 77 ¶ 260-61).

Second, Sheriff McFadden breached that duty. (*Id.* ¶ 254(d)-(e).) As alleged, Fields was held at the MCDC for "25.5 hours after the time she was ordered released"; Nunez was held for "26.5 hours after the time she was ordered released"; and Hayward was similarly held for "14.5 hours after the time he posted bond securing his release." (*Id.* ¶¶ 107, 115, 124.)

Finally, Fields, Nunez, and Hayward suffered obvious injuries as a result. (*Id.* ¶ 256-57.) That these Plaintiffs were harmed by being detained for "longer than legally authorized" is self-evident—it's time they can never get back. *See West v. Prince George's Cnty.*, No. TDC-210863, 2022 WL 125936, at *4-5 (D. Md. Jan. 13, 2022). And as alleged in the operative

6

complaint, their injuries were directly and proximately caused by Sheriff McFadden, who literally held the keys to their cells. (*Id.* ¶ 254(d)-(e) (alleging that Sheriff McFadden "failed to implement systems to ensure that [Fields, Nunez, and Hayward] would be released in a timely fashion," and did in fact overdetain them).

### B. The operative complaint does not have a *Langford* problem.

Sheriff McFadden tries to portray the negligence claim against him as an improper "group pleading." (ECF 96 at 11-13.) But while Count Two is nominally directed at all "Sheriff Defendants," its specific allegations are more than sufficient "to allow the court to infer liability as to *each* defendant." *Langford v. Joyner*, 62 F.4th 112, 126 (4th Cir. 2023) (emphasis in original).

In *Langford*, the Fourth Circuit affirmed dismissal of a complaint that alleged that a broad set of "Defendants" acted with indifference towards a prisoner's urgent medical needs. *Id.* at 123-26. There, the complaint was "completely silent as to who Defendants are, what positions they held at [the prison], or in what capacity they interacted with Plaintiff or were responsible for the alleged violations." *Langford v. Joyner*, No. 5:21-cv-00811-TMC, 2021 WL 4841248, at *4 (D.S.C. Oct. 18, 2021). "[N]o Defendant [was] specifically mentioned by name in the complaint" outside the caption and a single paragraph identifying the parties. *Langford*, 62 F.4th at 126. And the collective term "Defendants" was only used once, when the plaintiff alleged that he "continually brought [his medical needs] to the attention of the Defendants." *Id.* On those paltry facts, dismissal was warranted. *Id.* at 126-27.

In contrast, Count Two of the operative complaint specifically identifies Sheriff McFadden as the target of Fields, Nunez, and Hayward's negligence claims. (ECF 77 ¶ 248.) And the specific factual allegations pertaining to those Plaintiffs make clear that the negligence alleged on the part of Sheriff McFadden relates to their specific overdetentions:

7

- Sheriff McFadden oversees the MCDC and is responsible for processing releases, (*id.* ¶¶ 13-14);

- Despite having a duty to "ensure that individuals are not held unnecessarily" at the MCDC, Sheriff McFadden "repeatedly detained individuals for over two hours beyond the time they [became entitled to release]," (*id.* ¶ 253-54); and

- Fields, Nunez, and Hayward were overdetained in that manner at the MCDC for 25.5, 26.5, and 14.5 hours, respectively, (*id.* ¶¶ 101-25).

Simply put, the operative complaint alleges "sufficient facts to allow the court to infer [negligence] liability as to [Sheriff McFadden]." *Langford*, 62 F.4th at 126.

## II. Plaintiffs state a plausible *Monell* claim against Sheriff McFadden.

Plaintiffs also adequately plead a *Monell* claim against Sheriff McFadden.

"Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens*, 767 F.3d at 403. And as the Sheriff correctly notes, a local government entity can be liable for constitutional deprivations through (1) an express policy; (2) the decisions of a person with final policymaking authority; (3) an omission, like a failure to train, that shows "deliberate indifference to the rights of citizens"; or (4) through a "persistent and widespread" practice or custom. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

With respect to the fourth method ("custom"), a plaintiff can establish liability by showing "(1) actual or constructive knowledge [of a custom or practice] by responsible policymakers" and "(2) their failure . . . thereafter to correct or stop the practices." *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987). In other words, a local government entity may be held liable through a policymaker's "acquiescence" to unconstitutional conduct. *Riddick v.*

*Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 522-53 (4th Cir. 2000); *see also Owens* 767 F.3d at 403 (complaint plausibly alleged *Monell* liability under a "custom-by-condonation" theory).

Here, Plaintiffs allege that Sheriff McFadden knew of a "persistent and widespread practice" leading to overdetentions, but failed to correct that practice—the "hallmark" of a custom-or-usage *Monell* claim. *Owens*, 767 F.3d at 403.

Plaintiffs allege that, before the Mecklenburg launch, Sheriff McFadden knew that his staff would be unable to use eCourts effectively, (*see* ECF 77 ¶¶ 264-65); that more than 60 people were, in fact, overdetained in the first few days after the launch, (*id.* ¶ 92; Exhibit E); and that, months after that initial wave, overdetentions continued to occur, (*id.* ¶ 276; Exhibit F).

Moreover—in what can only be viewed as a direct admission—Sheriff McFadden acknowledged that "[t]the wait times are much longer" than before, and that, weeks into the rollout, his office remained "inundated with people from the community worried about when [their loved one] is going to be released." (*Id.* ¶ 273.) Yet the Sheriff failed to ensure that jail staff would timely effectuate releases. As a direct result, Plaintiffs Fields, Nunez, and Hayward (along with dozens of others) were overdetained. (*Id.* ¶¶ 107, 115, 124).

In sum, Plaintiffs allege that Sheriff McFadden had "actual or constructive knowledge" of "a widespread pattern of unconstitutional conduct," but "failed to put a stop to [it]."[2] *Spell*, 824 F.2d at 1390. Those allegations state a plausible *Monell* claim.

In an effort to dodge liability, Sheriff McFadden wrongly asserts that Plaintiffs have failed to allege that his office "proximately caused their alleged constitutional harm." (ECF 96 at 16-17.) But the operative complaint specifically alleges that the Sheriff:

---

[2] These allegations equally support the injunctive relief claim against Sheriff McFadden (Count Seven), which realleges and incorporates the complaint's preceding paragraphs. (*See* ECF 96 at 18-19.)

9

- Failed to implement a failsafe process "to [timely] notify jail staff of a release order," (ECF 77 ¶ 266);
- "[F]ailed to adequately train his employees on the Odyssey and eWarrants systems," including on "how to use those systems to ensure that individuals were timely released from detention," despite knowing that the risk of overdetentions was high, (*id.* ¶ 277);
- And failed to timely "compl[y] with court orders for release of MCDC inmates," even after being "inundated" with calls from the community, (*id.* ¶¶ 273, 277).

These allegations pin responsibility for Plaintiffs' overdetentions squarely on Sheriff McFadden. Indeed, "[i]n a constitutional sense, how much more basic could it get[?]" *Armstrong v. Squadrito*, 152 F.3d 564, 578–79 (7th Cir. 1998). Sheriff McFadden "hold[s] not only the keys to the jail cell, but also the knowledge of who sits in the jail and for how long they have sat there." *Id.* Thus, his alleged course of conduct is "directly depriving detainees of liberty." *Id.*

Sheriff McFadden also tries to divert attention from Plaintiffs' allegations by focusing on those made against Defendant Tyler Technologies. (ECF 96 at 15-16.) But the allegations against Tyler do not relieve the Sheriff of liability.

For starters, Rule 8 expressly provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2). Indeed, the Rules even permit a party to "set forth inconsistent statements" where necessary, in recognition of the fact that, at the early stages of litigation, parties "frequently lack complete information about the factual background of the case or the legal bases that underlie affirmative recovery." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1283 (4th ed. 2023). Because "alternative pleading is permitted, just as is inconsistent pleading," the allegations pertaining to

Tyler do not counteract those made against Sheriff McFadden. *See Day v. Robbins*, 179 F. Supp. 3d 538, 542-43 (D. Md. 2016).

Nor can the Sheriff hide behind the fact that Tyler contracted to provide training for eCourts end-users. (ECF 96 at 16, 18.) The notion that Sheriff McFadden is powerless to train his own staff or implement his own process for governing release (a theme throughout his brief) runs contrary to the allegations in the complaint—which at this stage must be taken as true.

### III. Plaintiffs can pursue an action on Sheriff McFadden's official bond.

Finally, North Carolina law provides for an action on a sheriff's official bond when a person is "injured by" a sheriff's "neglect, misconduct, or misbehavior in office." N.C. Gen. Stat. § 58-76-5. Because Plaintiffs have plausibly alleged both negligence and unconstitutional conduct by McFadden, this claim should also survive dismissal. (*See* ECF 96 at 19.)

### CONCLUSION

Plaintiffs have plausibly alleged negligence, *Monell*, bond, and injunctive-relief claims against Sheriff McFadden. His motion to dismiss (ECF 95) should therefore be denied. Respectfully submitted this the 7th day of May, 2024.

/s/ Zachary Ezor
Zachary Ezor (NCSB #: 55070)
Email: zezor@tinfulton.com
Gagan Gupta (NCSB #: 53119)
Email: ggupta@tinfulton.com
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN PLLC
119 Orange Street
Durham, NC 27701
Telephone: (919) 307-8400

*Counsel for Plaintiffs on behalf of themselves and all others similarly situated*

## CERTIFICATE OF WORD COUNT

I certify that the foregoing complies with all style and word-count requirements set forth in the Local Rules, including Local Civil Rule 7.3(d)(1). Specifically, the brief does not exceed 6,250 words, as reported by our word-processing software.

/s/ Zachary Ezor
Zachary Ezor

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed using the Court's CM/ECF system, which will automatically notify all counsel of record.

This 7th day of May, 2024.

/s/ Zachary Ezor
Zachary Ezor
