| | |
|---|---|
| TIMIA CHAPLIN; SARAH FIELDS; SAYELINE NUNEZ; THOMAS HAYWARD; KEVIN SPRUILL; ROTESHA MCNEIL; QIANA ROBERTSON; YOUSEF JALLAL; MESSIEJAH BRADLEY; DENNIS KEITH LASSITER; PAULINO CASTELLANOS; ROBERT LEWIS; and ALLEN SIFFORD, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> GARY L. MCFADDEN, officially, as the Sheriff of Mecklenburg County; JOHN DOE SURETY, as surety for the Sheriff of Mecklenburg County; WILLIE R. ROWE, officially, as the Sheriff of Wake County; BRIAN ESTES, officially, as the Sheriff of Lee County; THE OHIO CASUALTY INSURANCE COMPANY, as surety for the Sheriffs of Wake County and Lee County; TYLER TECHNOLOGIES, INC.; RYAN BOYCE, officially, as the Executive Director of the North Carolina Administrative Office of the Courts; BRAD FOWLER, officially, as the eCourts Executive Sponsor and Chief Business Officer of the North Carolina Administrative Office of the Courts; ELISA CHINN-GARY, individually and officially, as the Mecklenburg County Clerk of Superior Court; BLAIR WILLIAMS, individually and officially, as the Wake County Clerk of Superior Court Court; SUSIE K. THOMAS, individually and officially, as the Lee County Clerk of Superior Court; and DOES 1 THROUGH 20, INCLUSIVE, <br><br> *Defendants*. | **PLAINTIFFS' RESPONSE IN OPPOSITION TO SHERIFF ROWE'S MOTION TO DISMISS** |

Plaintiffs respectfully submit this Response in Opposition to Defendant Wake County Sheriff Willie Rowe's Motion to Dismiss. Sheriff Rowe's motion should be denied in its entirety.

**INTRODUCTION**

Less than a month into the rollout of eCourts, individuals began to be arrested and detained on invalid Wake County warrants. Plaintiffs allege that Wake County Sheriff Willie Rowe—who bears responsibility for processing, executing and maintaining these warrants—was on direct notice that these illegal arrests were occurring. Even so, Sheriff Rowe continued to execute and process these warrants without conducting any review of their legality or sufficiently training his officers on use of the eCourts system. For his negligence and his acquiescence to a pattern of illegal arrests, Sheriff Rowe bears liability.

Sheriff Rowe claims that he cannot be held liable for Plaintiffs' arrests because he was required under state law to enforce facially valid warrants. He then admits, pursuant to *Mitchell v. Aluisi*, 872 F.2d 577, 580 (4th Cir. 1989), that his office could bear liability if they had a "policy of serving invalid warrants." (ECF 89, Rowe Brief at 9.) Plaintiffs agree. By engaging in a pattern and practice of processing and executing invalid warrants, Sheriff Rowe has effectively acquiesced to this unconstitutional policy. As explained in *Mitchell*, "proof of an unconstitutional custom or practice" to execute invalid warrants—even if facially valid—may serve as the basis for *Monell* liability. *Mitchell*, 872 F.2d at 580.

Because Plaintiffs have properly alleged facts sufficient to prove liability for both *Monell* and negligence, the Court should deny Sheriff Rowe's motion to dismiss and permit Plaintiffs' claims to proceed.

## STATEMENT OF FACTS

Numerous individuals have been arrested or detained based on invalid Wake County warrants since eCourts launched there in February of 2023. (ECF 77 ¶¶ 280-96.) This includes the seven individuals named in the operative complaint: Kevin Spruill, Timia Chaplin, Rotesha McNeil, Qiana Robertson, Yousef Jallal, Messiejah Bradley, and Dennis Keith Lassiter. *Id.* The first of these illegal detentions occurred on March 4, 2023, three weeks after the roll out. (*Id.* ¶ 129.) The last wrongful arrest of a named Plaintiff occurred over six months later on October 19, 2023. (*Id.* ¶ 194.)

Sheriff Rowe was on direct notice that his office was maintaining and executing invalid warrants. In addition to Plaintiffs' cases, the Sheriff—who bears responsibility for processing, executing and maintaining Wake County warrants—received repeated notifications from the Wake County Public Defender's Office that, by April of 2023, "individuals were being wrongfully arrested on cleared warrants because of defects in the eCourts software." (*Id.* ¶¶ 21-22, 290.) Many of these invalid arrests—including those of Spruill, Chaplin, McNeil and Lassiter—could have been prevented by simply confirming on Odyssey that Plaintiffs' criminal cases or warrants had been resolved. (*See, e.g. Id.* ¶¶ 132, 142-43, 151-52.) Such information is widely available to deputies and the public through the eCourts Portal.

Still, Sheriff Rowe failed to institute a policy to identify invalid Wake County warrants in the eWarrants system and continued to instruct his deputies to arrest individuals without attempting to determine the validity of their warrants. (*Id.* ¶¶ 291-92.) Sheriff Rowe also failed to adequately train his employees on the Odyssey and eWarrants systems and how to use those systems to confirm the validity of outstanding Wake County warrants. (*Id.* ¶ 293.)

As alleged in the operative complaint, these invalid arrests were avoidable and were directly caused by the negligence, customs and practice, and deliberate indifference of Sheriff Rowe:

In **Count Two**, Plaintiffs Kevin Spruill, Timia Chaplin, Rotesha McNeil, Qiana Robertson, Yousef Jallal, Messiejah Bradley, and Dennis Keith Lassiter, allege that they (and others) were wrongfully arrested as a result of Sheriff Rowe's negligence. (*Id.* ¶¶ 248, 251-57.) Sheriff Rowe was on notice of invalid arrests occurring as a result of faulty warrants. He therefore had a duty to identify invalid warrants and/or confirm the validity of warrants in the eCourts system prior to arresting individuals. (*Id.* ¶ 253.) But since February of 2023, he has consistently failed to identify invalid warrants, leading directly to Plaintiffs' wrongful arrests. (*Id.* ¶¶ 253-54.)

In **Count Four**, Plaintiffs further allege that Sheriff Rowe, through his "policies, customs, practices, omissions, and failures to train" caused Plaintiffs' wrongful arrests on invalid warrants. (*Id.* ¶¶ 280-96.) In support of this *Monell* claim, Plaintiffs allege that Sheriff Rowe was on direct notice that invalid warrants were present in the eCourts system; that there was a pattern and practice of his deputies serving these invalid warrants without attempting to confirm their validity; that Sheriff Rowe failed to review and determine the validity warrants or to train his staff on how to use the eCourts system to determine the validity of warrants; and that these failures resulted directly in the wrongful arrests of Plaintiffs and others. *Id.*

In **Count Five**, Plaintiffs allege that Sheriff Rowe's conduct gives rise to an action on his official bond. (*Id.* ¶¶ 300, 305-07.).

And in **Count Seven**, Plaintiffs allege that Sheriff Rowe should be required to adopt failsafe procedures to prevent wrongful arrests on invalid warrants, as his current policies and

practices demonstrate "deliberate indifference" to the constitutional rights of Plaintiffs and others. (*Id.* ¶ 328-331, 333, 335.)

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests only "the sufficiency of a complaint." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). In conducting its review, the Court must accept as true all well-pleaded allegations and draw all reasonable inferences in Plaintiffs' favor. *Id.*

While "legal conclusions" and "conclusory statements" do not suffice, a complaint should withstand dismissal if it contains "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).

## ARGUMENT

Sheriff Rowe was on direct notice of a pattern of illegal arrests based on invalid Wake County warrants. Still, he persisted in processing and executing warrants without reviewing their legality or instructing his officers on how to review warrants in the eCourts system. This resulted directly in the illegal arrests of Plaintiffs. As such, Sheriff Rowe is liable under *Monell* and for his negligence.

### A. Plaintiffs have adequately pled a *Monell* claim against Sheriff Rowe.

As recognized by the Fourth Circuit, a local government entity can be liable for constitutional deprivations through (1) an express policy; (2) the decisions of a person with final policymaking authority; (3) an omission, like a failure to train, that shows "deliberate indifference to the rights of citizens"; or (4) through a "persistent and widespread" practice or custom. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

5

Case 1:23-cv-00423-WO-JLW   Document 102   Filed 05/07/24   Page 5 of 13

"Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 403 (4th Cir. 2014). To prove a custom or practice using the fourth method, Plaintiffs must show that "a pattern of comparable practices has become actually or constructively known to responsible policymakers." *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987). In other words, a pattern or practice can support *Monell* liability "if its continued existence can be laid to the fault of municipal policy-makers, and a sufficient causal connection between the municipal custom and usage and the specific violation can then be established." *Howard v. City of Durham*, 68 F.4th 934, 952–53 (4th Cir. 2023) (cleaned up).

To be liable, "(1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage." *Id.*

Here, Plaintiffs have satisfied both elements.

First, Sheriff Rowe and his office knew of wrongful arrests based on invalid warrants as early as March 4, 2023, when Kevin Spruill was pulled over and detained on an invalid Wake County warrant. (*Id.* ¶¶ 129-33.) Mr. Spruill was able to produce his release paperwork proving that he had cleared his warrant. *Id.* As a result, the officer released Mr. Spruill and then called the Wake County Sheriff's Office to "update the system" and inform them that the warrant was invalid. *Id.* Four days later, Mr. Spruill appeared for court and was—for a second time—wrongfully arrested on the same invalid warrant. (*Id.* ¶ 134.) Once again, he was released after deputies in the Wake County Sheriff's Office reviewed his file and determined that he had in fact already cleared his warrant. (*Id.* ¶ 137.)

In the weeks following Mr. Spruill's arrests, the Wake County Public Defender's Office repeatedly notified Sheriff Rowe that "individuals were being wrongfully arrested on cleared warrants because of defects in the eCourts software." (*Id.* ¶¶ 21-22, 290.)

At this time, Sheriff Rowe was certainly aware that individuals were being arrested pursuant to invalid warrants processed and maintained by the Wake County Sheriff's Office. Sheriff Rowe knew that he and his staff had the capability to review and clear invalid warrants; to refuse to execute invalid warrants; and that he had the ability to train his deputies on how to identify invalid warrants on eCourts; yet, he failed to take any of these corrective measures to prevent further wrongful arrests. (*Id.* ¶¶ 280-96.)

As a direct result, on April 9, 2023, Timia Chaplin was pulled over and arrested based on an invalid Wake County warrant. (*Id.* ¶ 143.) The warrant against Ms. Chaplin was for a case that had been dismissed weeks prior and at the time of her wrongful arrest, the case was marked as "resolved" on Odyssey. (*Id.* ¶¶ 143-44.) A week later, Ms. Chaplin was pulled over again and informed that the same warrant was still showing as active on the eWarrrants system. (*Id.* ¶ 145.)

Similar to Mr. Spruill and Ms. Chaplin, on May 29, 2023, Rotesha McNeil was arrested on a warrant issued by the Wake County Sheriff's office for a case that had been disposed of in 2022. (*Id.* ¶¶ 151-52.) Odyssey reflected that Ms. McNeil had pled guilty and the case was "disposed". (*Id.* ¶¶ 151-52.) At Ms. McNeil's request, the arresting officer called the Wake County Sheriff's Office to determine the validity of the warrant. (*Id.* ¶ 154.) An employee of the Wake County Sheriff's Office reported that the warrant was valid. *Id.* As a result, Ms. McNeil was illegally detained for nearly 5 hours before being released on a $1,000 bond. (*Id.* ¶ 155.) The following day, Ms. McNeil learned that the warrant was improperly in the system, that her case

7

was in fact marked on Odyssey as "disposed", and that she did not have any pending charges. (*Id.* ¶ 157.)

Ms. Chaplin, Mr. Spruill and Ms. McNeil are representative of a class of "hundreds of individuals" across the state, including the other named Wake County Plaintiffs, who were wrongfully arrested on invalid warrants. (*Id.* ¶¶ 230, 294).

Defendants argue that they cannot be held liable under *Monell* for serving facially valid warrants.[1] This argument was squarely addressed and rejected by the Fourth Circuit in *Mitchell v. Aluisi*, 872 F.2d 577, 580 (4th Cir. 1989). In *Mitchell,* the plaintiff was arrested pursuant to a facially valid warrant that had been "withdrawn" by the court. The court held that, because the plaintiff was unable to produce evidence of "any other example of service of a recalled bench warrant," she could not properly plead *Monell* liability. *Id.* However, the court went on to explain that a plaintiff with "proof of an unconstitutional custom or practice" to execute invalid warrants—even if facially valid—*could* properly allege *Monell* liability. *Id.*

The upshot of *Mitchell* is that plaintiffs can state a *Monell* claim by alleging that a Sheriff has a practice of "ignoring . . . unlawful arrests and detentions that result from relying on warrants that should have been recalled." *Easter v. Caldwell,* No. CIV.A. 14-0967, 2015 WL

---

[1] Sheriff Rowe also argues that his deputies are bound by state law to immediately execute facially valid warrants. In practice, however, deputies routinely exercise discretion in warrant execution—including by refusing to execute certain warrants, or by allowing individuals to turn themselves in at a later date on an active warrant. (*See, e.g.*, *id.* ¶ 186-201, discussing the case of Dennis Lasster, who had a warrant dating back to 2001 that remained unexecuted even as he attended court in Wake County.) Even assuming Sheriff Rowe is correct, a well-pled *Monell* claim and violation of federal law would take precedence over any conflicting state statute. *Row v. Row*, 185 N.C. App. 450, 453, 650 S.E.2d 1, 3 (2007) ("The Supremacy Clause of the United States Constitution provides that federal laws supercede state laws in conflict with federal laws.").

1281022, at *6 (W.D. La. Mar. 20, 2015). For example, in *McMurry v. Sheahan,* 927 F. Supp. 1082, 1091 (N.D. Ill. 1996), the court permitted a *Monell* claim to proceed where the "plaintiff sufficiently alleged policies and customs of the Sheriff of ignoring deficiencies in their systems which resulted in unlawful arrest," thereby demonstrating "deliberate indifference" to plaintiffs' rights. *Id.*

Here, Plaintiffs have pled the same. Sheriff Rowe was on notice that his deputies were repeatedly executing invalid warrants. Instead of seeking to remedy this issue through clearing invalid warrants or training his deputies on use of the eCourts system and giving them the discretion to not execute invalid warrants, Sheriff Rowe disclaimed all responsibility. This indifference directly caused Plaintiffs' illegal arrests and detentions.

### B. Plaintiffs have adequately pled a negligence claim against Sheriff Rowe.

To state a negligence claim, a plaintiff must show "(1) a legal duty, (2) a breach thereof, and (3) injury proximately caused by such breach." *Tise v. Yates Const. Co., Inc.*, 345 N.C. 456, 461-62, 480 S.E.2d 677, 680 (1997). "In a negligence action, a law enforcement officer is held to the standard of care that a reasonably prudent person would exercise in the discharge of official duties of like nature under like circumstances." *Prior v. Pruett,* 143 N.C. App. 612, 620, 550 S.E.2d 166, 172 (2001). This duty of care arises any time "the defendant might have foreseen that some injury would result from his conduct or that consequences of a generally injurious nature might have been expected." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010). An officer who effects an arrest without probable cause would be acting "contrary to [their] duty." *Brown v. Town of Chapel Hill,* 233 N.C. App. 257, 265–66 (2014).

9

Sheriff Rowe and his staff were on notice that, after the adoption of eCourts, individuals were being arrested based on Wake County warrants that were invalid or lacked probable cause. Barring any change in the Sheriff's policies and practices, further invalid arrests were undoubtedly foreseeable. Still, Sheriff Rowe failed to investigate and determine the legality of the warrants his office was charged with executing and maintaining—causing Plaintiffs unlawful arrests. (*Id.* ¶¶ 253-54.) This breach of duty caused Plaintiffs' injuries in the form of illegal arrest and detention.

### C. Governmental Immunity is not a barrier to Plaintiffs' suit.

Sheriff Rowe "concedes that []his immunity is waived under North Carolina law but only to the extent of the Sheriff's bond or insurance." (ECF 89, Rowe Brief at 17.) Plaintiffs agree. It is well-established that to "overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity." *Paquette v. Cnty. of Durham,* 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) (internal citations omitted), *disc. review denied*, 357 N.C. 165, 580 S.E.2d 695 (2003). Here, Plaintiffs allege that Sheriff Rowe "waived governmental or sovereign immunity from the state law tort claims in this case pursuant to N.C.G.S. § 153A-435, either by participating in a government risk pool or through purchasing commercial insurance that will indemnify him and his agents for any judgment against him or his agents named in this action." (*Id.* ¶ 23.) Accordingly, Plaintiffs have properly pled that Sheriff Rowe has waived governmental immunity and it cannot serve as a barrier to this suit.

### CONCLUSION

Plaintiffs respectfully request that the Court deny Sheriff Willie Rowe's motion to dismiss the complaint.

Respectfully submitted this the 7th day of May, 2024.

/s/ Abraham Rubert-Schewel
Zachary Ezor (NCSB #: 55070)
Email: zezor@tinfulton.com
Gagan Gupta (NCSB #: 53119)
Email: ggupta@tinfulton.com
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN PLLC
119 Orange Street
Durham, NC 27701
Telephone: (919) 307-8400

*Counsel for Plaintiffs on behalf of themselves and all others similarly situated*

11

**CERTIFICATE OF WORD COUNT**

I certify that the foregoing complies with all style and word-count requirements set forth in the Local Rules, including Local Civil Rule 7.3(d)(1). Specifically, the brief does not exceed 6,250 words, as reported by our word-processing software.

/s/ Abraham Rubert-Schewel  
Abraham Rubert-Schewel

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed using the Court's CM/ECF system, which will automatically notify all counsel of record.

This 7th day of May, 2024.

/s/ Abraham Rubert-Schewel
Abraham Rubert-Schewel