UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:23-cv-00423-WO-JLW

TIMIA CHAPLIN; PAULINO CASTELLANOS; SARAH FIELDS;
SAYELINE NUNEZ; THOMAS HAYWARD; KEVIN SPRUILL;
ROTESHA MCNEIL; QIANA ROBERTSON; YOUSEF JALLAL;
MESSIEJAH BRADLEY; DENNIS KEITH LASSITER; ROBERT
LEWIS; and ALLEN SIFFORD, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

   v.

GARY L. MCFADDEN, officially as the Sheriff of
Mecklenburg County, JOHN DOE Surety, as surety
for the Sheriffs of Wake and Lee Counties; WILLIE
R. ROWE, in his capacity as Sheriff of Wake
County; BRIAN ESTES, in his official capacity as
the Sheriff of Lee County; THE OHIO CASUALTY
INSURANCE COMPANY, as the surety for the Sheriffs
of Wake and Lee Counties; NORTH CAROLINA
ADMINISTRATIVE OFFICE OF THE COURTS; TYLER
TECHNOLOGIES, INC; and DOES 1 THROUGH 20,
INCLUSIVE,

        Defendants.


REPLY BRIEF IN SUPPORT OF DEFENDANT
TYLER TECHNOLOGIES, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.   Plaintiffs' negligence claim fails.................. 1

     A.   Plaintiffs do not allege a recognized
          duty ......................................... 2

          1.   "Foreseeability" is not a
               freestanding duty, and Plaintiffs
               provide no other basis for an
               independent legal duty owed by Tyler ....... 3

          2.   Tyler has not assumed any legal duty
               to Plaintiffs because of its
               contract with the State ................... 4

     B.   Plaintiffs cannot plausibly allege
          causation ..................................... 8

          1.   Plaintiffs expressly allege their
               harm was caused by state actors ........... 8

          2.   Plaintiffs cannot evade their
               failure on causation by arguing
               alternate theories of liability .......... 12

II.  Plaintiffs' class claims fail as a matter of
     law................................................ 12

     A.   The Complaint makes clear Plaintiffs
          cannot satisfy Rule 23 as a matter of law ...... 13

     B.   No discovery will solve the need for
          individualized mini-trials .................... 16

CONCLUSION ............................................. 18

CERTIFICATE OF COMPLIANCE .............................. 20

**Cases**

*Barnes v. Dist. of Columbia,*
  793 F. Supp. 2d 260 (D.D.C. 2011).......................16

*Council v. Dickersons, Inc.,*
  233 N.C. 472, 64 S.E.2d 551 (1951)....................5, 6

*Davidson & Jones, Inc. v. New Hanover Cnty.,*
  41 N.C. App. 661, 255 S.E.2d 580 (1979)..................6

*Driver v. Marion Cnty.,*
  859 F.3d 489 (7th Cir. 2017)...........................15

*Fussel v. N. Carolina Farm Bureau Mut. Ins. Co.,*
  364 N.C 222, 695 S.E.2d 437 (2010).......................3

*Kirkman v. N. Carolina R.R. Co.,*
  220 F.R.D. 49 (M.D.N.C. 2004)..........................14

*L.J. v. Wilbon,*
  633 F.3d 297 (4th Cir. 2011)...........................15

*Lampkin v. Hous. Mgmt. Res.,*
  220 N.C. App. 457, 725 S.E.2d 432 (2012)................2

*Lassiter v. Cohn,*
  168 N.C. App. 310, 607 S.E.2d 688 (2005)................7

*Layani v. Ouzana,*
  No. ELH-20-420, 2021 WL 805405 (D. Md. Mar. 3,
  2021).............................................13, 17

*Loftis v. BI-LO, LLC,*
  No. 3:18-CV-3003-MGL, 2020 WL 3288181 (D.S.C. June
  18, 2020).............................................15

*McKinney Drilling Co. v. Nello L. Teer Co.,*
  38 N.C. App. 472, 248 S.E.2d 444 (1978).................5

Case 1:23-cv-00423-WO-JLW   Document 111   Filed 06/07/24   Page 3 of 24

*Mozingo by Thomas v. Pitt Cnty. Mem'l Hosp., Inc.*,
  101 N.C. App. 578, 400 S.E.2d 747 (1991), *aff'd,*
  331 N.C. 182, 415 S.E.2d 341 (1992).......................7

*Mulholland v. Brownrigg*,
  9 N.C. 349 (1823)........................................6

*Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co.*,
  47 N.C. App. 518, 268 S.E.2d 12 (1980)...................6

*Sawyers v. United Parcel Serv.*,
  No. 1:18CV1037, 2019 WL 4305771 (M.D.N.C. Sept. 11,
  2019)..................................................1, 2

*Scadden v. Holt*,
  222 N.C. App. 799, 733 S.E.2d 90 (2012)..................2

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015)............................12

*Sellers v. Rodriguez*,
  149 N.C. App. 619, 561 S.E.2d 336 (2002).................7

*White v. Collins Bldg.*,
  209 N.C. App. 48, 704 S.E.2d 307 (2011)..................6

*Williams v. Potomac Fam. Dining Grp. Operating Co.*,
  NO.GJH-19-1780, 2020 WL 4207589 (D. Md. July 22,
  2020)................................................17, 18

*Williamson v. Liptzin*,
  141 N.C. App. 1, 539 S.E.2d 313 (2000)...................9

**Rule**

Fed. R. Civ. P. 23(b)(3) .................................14

Despite multiple amendments, Plaintiffs have not stated a plausible claim against Tyler, individually or as a class.

Plaintiffs' negligence claim fails. Plaintiffs do not (and cannot) allege a legally cognizable duty. And Plaintiffs cannot adequately plead causation because their Complaint repeatedly alleges that other parties caused their alleged harms, not Tyler.

In addition, the class claims against Tyler fail as a matter of law. Determining whether a class member was detained or arrested unlawfully will require an individualized mini-trial for every class member, preventing Plaintiffs from satisfying Rule 23. No discovery can change this.

## I. Plaintiffs' negligence claim fails.

Plaintiffs have not responded to Tyler's arguments that the Complaint fails to allege either a claim for negligent training, ECF No. 91 ("Tyler Br.") at 10-13, or for failure to warn, *id.* at 21-24. Plaintiffs have abandoned those claims, and the Court should dismiss them. *See Sawyers v. United Parcel Serv.*, No. 1:18CV1037, 2019 WL 4305771, at *3

1

(M.D.N.C. Sept. 11, 2019) ("[F]ailing to respond to an argument constitutes an abandonment of a claim.").

Plaintiffs' negligence claim also fails on duty and causation.

## A. Plaintiffs do not allege a recognized duty.

Plaintiffs do not deny Tyler's primary point – that in "general, there is neither a duty to control the actions of a third party, nor to protect another from a third party." *Scadden v. Holt*, 222 N.C. App. 799, 802, 733 S.E.2d 90, 92 (2012). Indeed, Plaintiffs' cases all reflect this rule. ECF No. 103 ("Opp.") at 9-13. North Carolina courts have recognized only limited special relationships that create a duty otherwise. But the touchstone of all such relationships is the ability to control the conduct causing the plaintiff's alleged injury. *See, e.g.*, *Lampkin v. Hous. Mgmt. Res.*, 220 N.C. App. 457, 460, 725 S.E.2d 432, 435 (2012). "[I]n the absence of control, there is no duty." *Id.* at 460, 725 S.E.2d at 435.

Plaintiffs try an end-run around this caselaw, but neither of their two arguments has merit.

2

### 1. "Foreseeability" is not a freestanding duty, and Plaintiffs provide no other basis for an independent legal duty owed by Tyler.

Plaintiffs first argue that "Tyler owes a common-law duty" because Plaintiffs' alleged injuries were "foreseeable." Opp. 8-9. But foreseeability alone does not create a duty to prevent harm to third parties. Rather, foreseeability is only a guiding factor once a plaintiff has invoked an established common-law duty.

*Fussel v. North Carolina Farm Bureau Mutual Insurance Co.*, on which Plaintiffs rely, illustrates this point. 364 N.C 222, 695 S.E.2d 437 (2010). In *Fussel*, the court held that a duty existed because courts in North Carolina "have long held" that "a municipal corporation selling water for private consumption is acting in a proprietary capacity and can be held liable for negligence." *Id.* at 225, 695 S.E.2d at 440. With a cognizable duty invoked, foreseeability defined the duty's contours. Foreseeability alone did not create the duty.

Plaintiffs point to no North Carolina case that uses "foreseeability" as an independent basis to create a legal duty, and Tyler is aware of none. Plaintiffs provide no

3

other legal basis to impose an independent legal duty running from Tyler to Plaintiffs.

> **2. Tyler has not assumed any legal duty to Plaintiffs because of its contract with the State.**

Instead, Plaintiffs argue that Tyler assumed a legal duty owed by the State to Plaintiffs. Opp. 9-13. This argument is foreclosed by Plaintiffs' allegations and settled law.

First, Plaintiffs misrepresent the nature of Tyler's responsibilities under its contract. In their Complaint and brief, Plaintiffs continually claim that "Tyler guaranteed that eCourts would 'perform without defects.'" Opp. 2. Tyler of course made no such promise, as the portion of the "Tyler Software Warranty" provision of the contract omitted by Plaintiffs makes clear:

> [eCourts] will perform without Defects during the term of this Contract. If [eCourts] does not perform as warranted, Tyler will use all reasonable efforts … to cure the Defect in accordance [with the Contract]…. If Tyler cannot cure a Defect consistent with this warranty, NCAOC may exercise other rights under this Contract.

ECF No. 77-2 at 18, § 12(e). This provision does not, as Plaintiffs claim, create a duty to provide a software free of all possible defects. Rather, it provides a warranty

4

from Tyler to NCAOC that provides an express procedure for addressing any discovered defects.  Plaintiffs cite no law allowing a warranty between Tyler and NCAOC to create a legal duty from Tyler to Plaintiffs, and the law is to the contrary.  "North Carolina preserves the privity requirement in actions based on breach of warranty," even in actionable negligence cases.  *See McKinney Drilling Co. v. Nello L. Teer Co.*, 38 N.C. App. 472, 475, 248 S.E.2d 444, 446 (1978).

Second, Plaintiffs have no argument that Tyler has otherwise assumed any duty owed by the State to Plaintiffs. The cases on which Plaintiffs rely impose a duty in the context of a historical special-relationship duty or where the duty arose from a statute.  Neither is true here.

For example, in *Council v. Dickersons, Inc.*, the plaintiff was injured while traveling on a highway while the defendant, a highway contractor, was "actually working on the road under its contract with the" State.  233 N.C. 472, 475, 64 S.E.2d 551, 553 (1951).  The North Carolina Supreme Court held that the defendant had assumed a duty to protect the plaintiff from harm "because it was then and there engaged in an active course of conduct" related to

5

the highway. *Id.* That duty traced its lineage all the way back to an 1823 decision that itself looked to the law of England. *See Mulholland v. Brownrigg*, 9 N.C. 349, 357 (1823).

Other cases Plaintiffs cite rely on a recognized duty by contractors or architects to protect third parties from physical harm. *See White v. Collins Bldg.*, 209 N.C. App. 48, 704 S.E.2d 307 (2011); *Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co.*, 47 N.C. App. 518, 268 S.E.2d 12 (1980); *Davidson & Jones, Inc. v. New Hanover Cnty.*, 41 N.C. App. 661, 255 S.E.2d 580 (1979).

Each of these cases also involves historically established duties where "[l]iability arises from the negligent breach of a common law duty of care flowing from the parties' working relationship." *Davidson & Jones, Inc.,* 41 N.C. App. at 667, 255 S.E.2d at 584. Tyler is not aware of any North Carolina case recognizing a duty between a software vendor and parties not in privity with its client contract.

The remaining cases passingly relied upon by Plaintiffs similarly turn on historically recognized duties or are cases where the duty was a "statutory standard of care."

6

*Mozingo by Thomas v. Pitt Cnty. Mem'l Hosp., Inc.*, 101 N.C. App. 578, 585, 400 S.E.2d 747, 751 (1991), *aff'd,* 331 N.C. 182, 415 S.E.2d 341 (1992).

The Court should not extend the law as requested by Plaintiffs. North Carolina severely limits the ability to recognize a special-relationship duty between public officials and the general citizenry. *See Lassiter v. Cohn*, 168 N.C. App. 310, 319, 607 S.E.2d 688, 694 (2005) ("A search of North Carolina case law reveals favorable consideration by our Courts for only a limited number of alleged special relationships in the public duty context."); *Sellers v. Rodriguez*, 149 N.C. App. 619, 624, 561 S.E.2d 336, 339 (2002).

Plaintiffs here want to go a step further, by arguing that not only does a duty exist between the State and Plaintiffs, but that it should be imported to Tyler, a third-party vendor under an arm's-length contract with NCAOC. There is no basis to extend the law in this fashion.

7

**B.   Plaintiffs cannot plausibly allege causation.**

    **1.   Plaintiffs expressly allege their harm was caused by state actors.**

Plaintiffs do not – and cannot - dispute that their allegations all focus on injuries that allegedly "resulted *directly* from [state actor's] practices, acts, and omissions."  ECF No. 101 ("McFadden Opp.") at 4 (emphasis added); *see also* SAC ¶¶ 243, 256; Tyler Br. 20-24.  Indeed, Plaintiffs emphasize that, for example:

- "overdetentions resulted … from Sheriff McFadden's negligence," McFadden Opp. 3;

- the allegations "pin responsibility for Plaintiffs overdetentions squarely on Sheriff McFadden," *id.* at 9-10;

- "invalid arrests were avoidable and were directly caused by the negligence, customs and practice, and deliberate indifference of Sheriff Rowe," ECF No. 102 at 4; and

- Sheriff Rowe's conduct "resulted directly in the illegal arrests of Plaintiffs," *id.* at 5.

Plaintiffs' own arguments confirm that any purported connection between Tyler and Plaintiffs' alleged injuries

8

is too attenuated to establish proximate cause. *See*
*Williamson v. Liptzin*, 141 N.C. App. 1, 10-11, 539 S.E.2d
313, 319-20 (2000).

As Plaintiffs allege, Tyler's role was to license
specific software and assist with its implementation. SAC
¶ 71. Tyler was not responsible, by way of example, for
arresting or detaining Plaintiffs; entering, verifying,
issuing, or executing warrants; processing release
paperwork; or ensuring that individuals are timely
released. *See* Tyler Br. at 20-24. To the extent relevant
to Plaintiffs' allegations, law enforcement and court
personnel were responsible for, and performed, these
actions. *See, e.g.*, SAC ¶¶ 14-16, 21-22, 27-28, 313. No
well-pleaded allegation links the actions allegedly causing
Plaintiffs' injuries to Tyler.

To evade this, Plaintiffs point in a conclusory fashion
to an unspecified "known integration issue" in eCourts for
the three Mecklenburg County Plaintiffs. Opp. 14. Yet
these same Plaintiffs expressly allege that their
overdetentions were the "direct and proximate result" of
Defendant McFadden's "policies, customs, practices,
omissions, and failures to train … his employees on … how

9

to use [eCourts] to ensure that individuals were timely released from detention."  SAC ¶¶ 260, 275-79.

Plaintiffs' reliance on an email from Judge Trosch does not overcome this defect.  This email states that Tyler "provides NCAOC a daily report" and that either the Clerk of Superior Court or magistrate are responsible for updating the file.  SAC, ECF No. 77-4.  This is consistent with the allegations of the Complaint that state actors were responsible for confirming information before issuing or executing warrants.  *See*, *e.g.*, SAC ¶¶ 14-16, 21-22, 27-28, 313.

The same is true for Plaintiffs in the arrest subclass.  For example, the Complaint asserts that state actors arrested Plaintiff Chaplin on a warrant designated as "resolved" in Odyssey.  SAC ¶¶ 142-43.  Plaintiffs concede that Ms. Chaplin's arrest "could have been prevented by simply confirming on Odyssey that Plaintiffs' criminal case[] had been resolved."  McFadden Opp. 3 (citing SAC ¶¶ 132, 142-43, 151-52).  And the Complaint alleges that state clerks — who Plaintiffs have now dismissed from this lawsuit — are responsible for "issuing arrest orders and warrants," and "ensuring that release orders are properly

10

effectuated." SAC ¶ 313. The Complaint also alleges that Sheriff Rowe "had a policy, practice, and custom of arresting individuals pursuant to invalid Wake County warrants, without first confirming their validity." SAC ¶ 292. Thus, the acts that allegedly caused Ms. Chaplin's arrest and detention were all outside of Tyler's control.

Similarly, Plaintiff Sifford alleges that state actors arrested and detained him on a stale 2009 warrant dissolved in 2022. SAC ¶¶ 220-28. No allegation ties this stale warrant to eCourts, much less Tyler, as opposed to clerks inputting information into the system. *E.g.,* SAC ¶ 313. The allegations about the other named Plaintiffs fare no better. *See* Tyler Br. 22-24.

Plaintiffs again try to fall back on inapposite allegations from other states. But allegations about different software systems in other states have nothing to do with this case. *This case* involves separate conduct in North Carolina, and (as Plaintiffs concede, Opp. 13-14; SAC 61-63, 70-71) software implemented specifically for North Carolina. *See* Tyler Br. 27-28.

### 2. Plaintiffs cannot evade their failure on causation by arguing alternate theories of liability.

Plaintiffs cannot overcome this causation deficiency by arguing that they have pleaded alternate theories of liability under Rule 8. Opp. 13-14. The Complaint does not allege multiple, alternate theories of liability. There is no alleged theory of liability that does not rely upon the conduct of state actors, *see* Tyler Br. 20-24, breaking any causal chain to Tyler.

At most, Plaintiffs impermissibly attempt to muddle the causal chain by taking a scattershot approach and lumping Tyler in with state actors. But a plaintiff cannot choose to "lump [defendants] together in the complaint without explanation" and ask the Court to sort it out later. *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

## II. Plaintiffs' class claims fail as a matter of law.

Plaintiffs' opposition makes clear they have no substantive response on class certification. Instead, Plaintiffs try to confuse the issue and try to punt the analysis of their class deficiency to another day. But no discovery can save Plaintiffs. Because Plaintiffs' class

12

claims fail as a matter of law, as revealed by Plaintiffs'
own allegations, the Court can and should dismiss the class
claims now.

**A. The Complaint makes clear Plaintiffs cannot satisfy Rule 23 as a matter of law.**

Plaintiffs agree that dismissal of class claims is
warranted if "it is clear from the face of the complaint
that" they have not alleged "facts sufficient to make out a
class." *Layani v. Ouzana*, No. ELH-20-420, 2021 WL 805405,
at *39 (D. Md. Mar. 3, 2021) (cleaned up); Opp. 17. This
standard is satisfied here.

Tyler listed in detail the many individualized
questions that would have to be answered for each class
member in order to determine liability. Tyler Br. 28-29,
33. Plaintiffs offer no rebuttal to this argument. Nor do
Plaintiffs argue that these individualized questions will
*not* be required.

Plaintiffs instead try to change the subject, arguing
that "the predominant inquiry" is "whether injuries to the
class can be traced to a common source." Opp. 19. But the
legal question under Rule 23(b) is not what the
"predominant inquiry" is. Rather, the question is: Do
common questions predominate over individualized questions?

13

Fed. R. Civ. P. 23(b)(3). In *every* case, a "predominant inquiry" is whether the defendant harmed the plaintiff. This alone cannot and does not justify class certification. If, as here, individualized mini-trials are needed to determine whether a class member is injured, then common questions do not predominate over individual ones, there is no efficiency gained by a class action, and Rule 23(b) is not satisfied. *See Kirkman v. N. Carolina R.R. Co.*, 220 F.R.D. 49, 52-53 (M.D.N.C. 2004).

In any event, even the required questions as framed by Plaintiffs would require individualized inquiry and have nothing to do with Tyler at all. For the overdetention class, Plaintiffs contend the question turns on "whether an individual was released more than two hours after the basis for detention ended." Opp. 19. But determining when "the basis for detention ended" will require an individualized inquiry for every class member; that question is not subject to common proof.

Plaintiffs go on to say the Court must determine "how long it should take a jail, as a general matter, to complete the administrative steps attendant to release." Opp. 19. Even if this question were relevant, this has

14

nothing to do with Tyler, and thus can play no role in class certification as to Tyler. Moreover, this question likely also is subject to an individualized determination for each jail, and the unique circumstances of individuals within each jail.

Plaintiffs do not even attempt to justify the arrest class, instead making conclusory arguments in a footnote that do not preserve any arguments. *E.g.*, *L.J. v. Wilbon*, 633 F.3d 297, 305 (4th Cir. 2011); *Loftis v. BI-LO, LLC*, No. 3:18-CV-3003-MGL, 2020 WL 3288181, at *2 (D.S.C. June 18, 2020).

Nor do the cases Plaintiffs cite alter this analysis. Opp. 19-20.

For example, *Driver v. Marion County* concerned claims for damages against a Sheriff's Department (not a software vendor) based on a department policy regarding inmate release. 859 F.3d 489, 490 (7th Cir. 2017). Plaintiffs' claims against Tyler do not involve a generally-applicable policy.

Similarly, *Barnes v. District of Columbia* did not involve a software vendor, or even a technology system; it instead addressed constitutional claims against the DC

15

Department of Correction's policy to detain and strip search individuals for processing *after* they had been ordered released. 793 F. Supp. 2d 260, 266 (D.D.C. 2011). The case did not involve individualized questions of duty, causation, or injury, but rather a generally-applicable policy. *Id.*

Plaintiffs cannot avoid the individualized inquiries needed to determine, not only whether a class member was arrested or detained, but whether that arrest or detention was "unlawful." The individualized circumstances around:

- the arrest/detention,

- the basis for the arrest/detention,

- when the arrest/detention "should" have ended,

- the reasons for detainment beyond this point, and

- whether the eCourts system played any role at all,

will require mini-trials and will overwhelm any common questions. Plaintiffs cannot satisfy Rule 23.

### B. No discovery will solve the need for individualized mini-trials.

With no meritorious substantive response, Plaintiffs instead ask to kick the can down the road so they can get unspecified discovery. Opp. 16-19. Notably, Plaintiffs do

16

not identify what discovery could preclude the need for these individualized inquiries – because there is none.

No amount of discovery will address the need to ask individual questions, for each class member, about: the circumstances of their arrest/detention; the length of the detention; whether the arrest/detention was justified; when the detention "should" have ended; how long it took to release the individual; and whether eCourts had anything to do with the individual's alleged unlawful arrest/detention. Plaintiffs cannot "generate common *answers*" to the many individualized inquiries necessary to determine liability and class membership. *Layani*, 2021 WL 805405, at *42 (emphasis in original).

In circumstances like these, it would be an inefficient use of judicial resources to permit futile class discovery, when none of the discovery would alleviate the need for the highly individualized questions. Rather, because "it is clear from the face of the complaint that" Plaintiffs have not alleged "facts sufficient to make out a class," the Court can and should dismiss the class claims on the pleadings. *Layani*, 2021 WL 805405, at *39 (emphasis in original); *Williams v. Potomac Fam. Dining Grp. Operating*

17

*Co.*, NO.GJH-19-1780, 2020 WL 4207589, at \*12-14 (D. Md. July 22, 2020).

## CONCLUSION

Tyler requests that this Court dismiss the Complaint against Tyler with prejudice.

This 7th day of June, 2024.

s/ Gregory L. Skidmore
Gregory L. Skidmore
N.C. Bar No. 35571
gskidmore@robinsonbradshaw.com

H. Hunter Bruton
N.C. Bar No. 50601
hbruton@robinsonbradshaw.com

Garrett A. Steadman
N.C. Bar No. 55449
gsteadman@robinsonbradshaw.com

**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone:  (704) 377-2536
Facsimile:  (704) 378-4000

*Attorneys for Defendant Tyler Technologies, Inc.*

19

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief contains fewer than 3,125 words (not counting the portions of the brief excluded by Local Rule 7.3(d)(1) as reported by the word-processing software.

This 7th day of June, 2024.

s/ Gregory L. Skidmore
Gregory L. Skidmore