UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO: 1:23-cv-423

| | |
|---|---|
| TIMIA CHAPLIN, *et al.* <br><br> Plaintiffs, <br> v. <br><br> GARRY L. MCFADDEN, *et al.* <br><br> Defendants. | **SHERIFF GARRY L. MCFADDEN'S REPLY TO PLAINTIFFS' OPPOSITION TO HIS MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs' Response, (Doc. 101), fails to elucidate the bases for liability against Sheriff McFadden. The scant facts that Plaintiffs do allege to impute liability to Sheriff McFadden do not plausibly comport with the law or reality.

At bottom, the Second Amended Complaint's allegations make clear that Plaintiffs' theory of liability against Sheriff McFadden is predicated entirely upon alleged failures of a software program for which he had no input or role in choosing or implementing. But technical infirmities with computer software outside Sheriff McFadden's control do not create liability for his office.

## ARGUMENT

**I. PLAINTIFFS FAIL TO ALLEGE SHERIFF MCFADDEN IGNORED CLEAR MANDATES FOR RELEASE**

Plaintiffs criticize Sheriff McFadden for "spend[ing] several pages of his brief discussing the execution of warrants," despite Plaintiffs' own shotgun allegations necessitating such arguments. *See* (Doc. 77, ¶¶ 253-57 (asserting against all "Sheriff

Defendants"—of which Sheriff McFadden is one—allegations regarding warrant validity). Lumping Sheriff McFadden in with the "Sheriff Defendants" and raising allegations surrounding the validity and proper execution of warrants requires a response.

Nevertheless, Plaintiffs concede that the only allegations against Sheriff McFadden are with respect to their over-detentions. They allege these over-detentions violated their Fourth and Fourteenth Amendment rights. *See, e.g.*, (Doc. 77, ¶ 293). "A Fourteenth Amendment claim based on over-detention 'must meet the elements of common law false imprisonment and establish that the imprisonment worked a violation of [F]ourteenth [A]mendment due process rights.'" *Powell v. Sheriff, Fulton Cnty. Georgia*, 511 F. App'x 957, 961 (11th Cir. 2013) (quotation omitted) (brackets in original).

In North Carolina, a claim of false imprisonment requires a showing of "the illegal restraint of a person against his will." *Marlowe v. Piner*, 119 N.C. App. 125, 129, 458 S.E.2d 220, 223 (1995) (citation omitted). "'Illegal' or 'unlawful' of necessarily implies deliberateness in defendants' actions." *Emory v. Pendergraph*, 154 N.C. App. 181, 185, 571 S.E.2d 845, 848 (2002); *accord, e.g.*, (Doc. 77, ¶¶ 1, 17, 98, 263 (characterizing Plaintiffs' alleged over-detentions as unlawful).

Plaintiffs allege that their over-detentions were caused by a technical problem—an "integration issue" with eCourts and Odyssey. Conspicuously absent from Plaintiffs' Second Amended Complaint are any allegations that Sheriff McFadden (i) disregarded a release order, (ii) knew the details of release orders yet kept Plaintiffs incarcerated, or (iii) that he knew they had release orders at all. Nor would any such allegations be plausible,

2

as knowledge of release orders using the eCourts system is predicated upon the system's delivery of those orders to the Sheriff's Office (and, even more fundamentally, those orders being entered by a judicial official in the first place).

But critically, Plaintiffs do not allege Sheriff McFadden received a clear mandate for their release. *Emory v. Pendergraph*, 154 N.C. App. 181, 186, 571 S.E.2d 845, 848 (2002) ("The orders did not provide a clear mandate to defendants for plaintiff's release."). Without one, he could not have deliberately disregarded their releases, and, consequently, cannot be liable for their alleged over-detentions. *Id.* ("Because plaintiff's release date was ambiguous, defendants did not deliberately disregard a clear mandate and did not intentionally restrain plaintiff.").

## II. PLAINTIFFS DO NOT ALLEGE FACTS SUFFICIENT TO CONFER *MONELL* LIABILITY

### A. Sheriff McFadden is Not Liable for Technical Software Issues Outside His Control.

Plaintiffs argue that Sheriff McFadden "recognized that the delays were due to inadequate policies and training." (Doc. 101, at 4 (citing Doc. 77, ¶¶ 262, 265-68, 275-89)). He did not, and Plaintiffs' own allegations confirm this: "Sheriff McFadden was aware that ***because of an 'integration issue' between eWarrants and Odyssey***, orders of release were not being communicated in a timely manner to officials at the MCDC." (Doc. 77, ¶ 269 (emphasis added)).

Similarly, Plaintiffs assert that, "[w]ith respect to overdetentions, Chief Judge Trosch explained in exacting detail how the 'known integration issue between eWarrants

3

and Odyssey' was *a central cause of the Mecklenburg County overdetentions*." (Doc. 103, at 14). Indeed,

> The three Mecklenburg County Plaintiffs allege that this "known integration issue" *caused their overdetentions*. SAC at ¶¶ 108, 116, 125. ***But for these defects***, these Plaintiffs would have been timely released from detention, as others were prior to eCourts. *Id.* at ¶¶ 91-92. Taken as true, these allegations amount to a plausible claim that Tyler's defective product was ***the*** proximate, substantial cause of the overdetentions.

(*Id.* at 14-15 (emphasis added)).[1]

Put simply, Plaintiffs' Second Amended Complaint plainly acknowledges it was not a Sheriff's Office issue causing their harm, it was a technical one. Thus, Sheriff McFadden does not "wrongly assert[ ] that Plaintiffs have failed to allege that his office 'proximately caused their alleged constitutional harm.'" (Doc. 101, at 9). In their own words, they clearly believe others have. This is not an "effort to dodge liability," (Doc. 101, at 9)—it is Plaintiffs' explicit theory of their own case.[2]

---

[1] To be clear, Sheriff McFadden does not "hide behind" the allegations Plaintiffs raised against Tyler Technologies. (Doc. 101, at 10-11). Sheriff McFadden has no control over Plaintiffs' claims, which at bottom seek to assert rights and recover damages under a contract to which neither they *nor Sheriff McFadden* are parties. That their theory of liability against Sheriff McFadden—failure to train his staff on eCourts and to implement an amorphous "failsafe" system—is directly contradicted by their own allegations and the plain language of the contract upon which they rely is therefore fatal to their claims.

[2] Given this, it is unclear what Plaintiffs believe Sheriff McFadden "directly admitted" in recognizing technical issues from the eCourts rollout. (Doc. 101, at 9). Those issues, and their downstream effects, were not the result of any action or inaction by Sheriff McFadden.

4

It appears that Plaintiffs' theory of liability against Sheriff McFadden assumes he never received the Mecklenburg Plaintiffs' release orders. Thus, for the "integration issue" to create liability for him, Plaintiffs' allegations require several significant *additional* assumptions: first, that Sheriff McFadden knew a release order had been issued for one of the Mecklenburg Plaintiffs; second, that the release order was entered into the eCourts system by judicial staff; third, that the release order had been entered properly; and finally, that the release order was unconditional, *i.e.* it required immediate release.[3] This information, of course, would likely be impossible for him to know, as release orders could not be transmitted to him prior to being entered and uploaded by judicial staff. Indeed,

> Barring exceptional circumstances, **_the court_ must sign and file its orders, judgments, decrees, and other documents electronically in Odyssey**. A document filed by the court in Odyssey is filed when it is electronically file-stamped by the clerk of superior court or by another judicial official who is authorized by law to accept the document. The court may send notices and other communications to a person in Odyssey.

General Rules of Practice and Procedure, Rule 5(b)(8) (Feb. 13, 2023). Thus, court orders—including release orders—must be signed and filed electronically using Odyssey, and an order is not officially filed until it is electronically stamped.

For these reasons, it is also unclear how Sheriff McFadden could put in place a "failsafe process," (Doc. 101, at 10), to mitigate the "integration issue" that was both the "central cause of the Mecklenburg County overdetentions," (Doc. 103, at 14), and "the

---

[3] Nor do Plaintiffs allege that their attorneys, or anyone acting on their behalf, otherwise notified Sheriff McFadden that they were to be released at a specific date and time.

5

proximate cause of Plaintiffs' harms." (*Id.*) The Sheriff was required to use eCourts. (*Id.* at ¶ 76). But even if he were not, the requirement that all orders be entered into Odyssey *by a judicial official*, and are not final until stamped—in Odyssey—*by a judicial official*, would preclude Sheriff McFadden from even knowing such orders exist until those steps were followed. Indeed, before then, there is no order with which to comply because "'an order rendered in open court is not enforceable until it is "entered," *i.e.*, until it is reduced to writing, signed by the judge, and filed with the clerk of court.'" *Carland v. Branch*, 164 N.C. App. 403, 405, 595 S.E.2d 742, 744 (2004) (internal citations omitted).

### B. Plaintiffs' Group Pleading Fails to State a Claim.

Plaintiffs claim they do not "have a *Langford* problem," but they do. (Doc. 101, at 7). Indiscriminate group pleading is insufficient. *Langford v. Joyner*, 62 F.4th 122, 124-26 (4th Cir. 2023). Plaintiffs do not explain how or why *Sheriff McFadden* caused their over-detention, what authority he had to circumvent the General Rules' explicit requirement that judicial officials use Odyssey exclusively for the entry of orders, or what steps he took (or did not take) in order to "not release" the Mecklenburg Plaintiffs. Such bare, conclusory allegations are insufficient to make out a claim for a constitutional violation or create *Monell* liability.

To avoid this, Plaintiffs distinguish the facts of *Langford*, but simply distinguishing *Langford*'s facts does nothing to undermine the applicability of *Langford*'s black letter rules. Nor do the specific allegations Plaintiffs cite from their Second Amended Complaint change the actual facts: the Sheriff, who was neither a party to the Odyssey contract nor

6

consulted on its terms, is not responsible for training his staff on its use. And because Odyssey was mandated and no other system was available to the Sheriff upon its rollout, *see* General Rules of Practice and Procedure, Rule 5(b)(8); *accord* (Doc. 77, ¶ 76), nor was he able to implement "failsafe" procedures.

In sum, while Plaintiffs argue that the Mecklenburg Plaintiffs' "injuries were directly and proximately caused by Sheriff McFadden," (Doc. 101, at 7), they admit, emphatically, that "Tyler's defective product was the proximate, substantial cause of the overdetentions." (Doc. 103, at 14). Thus, Plaintiffs' own briefing blames eCourts for the delays in their releases. *Accord* (Doc. 101, at 3 ("Prior to eCourts, it would take the Sheriff's Office 2-4 hours (on average) to free a detainee who had satisfied her conditions of release. Now, it can take days." (internal citations omitted))). It is hard to see how "these allegations pin responsibility for Plaintiffs' over-detentions squarely on Sheriff McFadden[,]" (Doc. 101, at 10), when they so unambiguously "pin responsibility" on eCourts and elsewhere.

For this same reason, Plaintiffs' allegations fail to "give[ ] fair notice to *that* defendant"—Sheriff McFadden—"of [their] claim and the underlying factual support." *Langford*, 62 F.4th at 125 (emphasis in original) (brackets added). And, while Rule 8 provides Plaintiffs the flexibility to plead inconsistent and incompatible alternative allegations, "a 'plausible' claim for relief must be articulated." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012). Fed. R. Civ. P. 8(a)(2). Rule 8 does not salvage Plaintiffs otherwise deficient group pleading. *See* (Doc. 101, at

7

10-11); *see also* (Doc. 103, at 13).  Like their Second Amended Complaint, Plaintiffs' briefing continues to impute responsibility on Defendants *collectively*, without identifying specifically which one are liable for which conduct and under which theory.  Thus, even with an opportunity to elaborate, the unsupported nature of Plaintiffs' allegations against Sheriff McFadden precludes Plaintiffs from articulating distinctions between the individual Defendants and the conduct for which they are allegedly liable.

    **C. The Inability of the Sheriff to Correct Novel Problems from a "Bespoke" Software System Does Not Indicate Widespread Policies or Customs.**

An official custom subjecting a governmental entity to liability exists where "a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)

Plaintiffs accurately describe the eCourts system as "bespoke."  So, too, are the issues arising from it.  "Nevertheless, unique problems require unique solutions," *Action Grp. v. Deason*, 615 So. 2d 683, 686 (Fla. 1993), and a county sheriff not immediately implementing a unique solution to a never-before-encountered, distinctly technical issue cannot, by definition, be an act "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978).

    **D. Elemental Recitations are Insufficient to State a *Monell* Claim.**

Finally, Plaintiffs argue that their boilerplate recitation of the elements of a *Monell* claim is sufficient to avoid dismissal.  (Doc. 101, at 8-9).  It is not.  *See I.P. by Newsome*

8

Case 1:23-cv-00423-WO-JLW   Document 112   Filed 06/07/24   Page 8 of 15

*v. Pierce*, No. 5:19-CV-228-M, 2020 WL 1231809, at *6 (E.D.N.C. Mar. 9, 2020) ("numerous courts in the Fourth Circuit have held that 'boilerplate allegations' and 'generalized' claims without 'details about [the] policies and practices and how they are inadequate, inaccurate, or ineffective' are insufficient as a matter of law 'to establish a custom or practice' claim under *Monell*." (quoting *Lyles v. Prawdzik*, No. PWG-15-1056, 2016 WL 3418847, at *5 (D. Md. June 22, 2016)).

## III. PLAINTIFFS' NEGLIGENCE CLAIM FAILS

Relying on a general duty to "timely free detainees who have satisfied the conditions of release," Plaintiffs argue that they sufficiently pled the elements of a negligence claim. (Doc. 101, at 5-7). They argue that Sheriff McFadden breached that duty because they were held longer than necessary, and he failed to take *additional* steps to ensure that residents of the Mecklenburg County Detention Center Central ("MCDCC") would be released according to their alleged release orders. Yet, Plaintiffs fail plausibly to allege factual support that Sheriff McFadden knew they had release orders, that he was aware they satisfied the conditions of their release, and still ignored that information, thereby breaching his duty to them. Instead, as discussed above, Plaintiffs repeatedly blame others, explicitly, for being the proximate cause of their alleged over-detentions. *See* (Doc. 103, at 14). Accordingly, while they may have raised boilerplate, elemental allegations of negligence, they fail to plead any plausible factual support and, in fact, directly undermine their claim against Sheriff McFadden in their arguments against other Defendants.

9

## IV. PLAINTIFFS CANNOT MAINTAIN A CLAIM AGAINST SHERIFF MCFADDEN'S BOND

Plaintiffs do not and cannot plausibly allege that they were "injured by the neglect, misconduct, or misbehavior in office" of Sheriff McFadden. N.C. Gen. Stat. § 58-76-5. Consequently, they cannot maintain action against the Sheriff's bond.

## V. THE EXHIBITS TO PLAINTIFFS' OPPOSITION ARE NOT JUDICIALLY NOTICEABLE

Additionally, Plaintiffs attach two new exhibits to their Opposition, Exhibits E and F, which purport to be a spreadsheet created by public defenders and provided to Plaintiffs, (Doc. 101-1), and an inmate report from the Mecklenburg County Sheriff's Office (Doc. 101-2), respectively. A court may take judicial notice of a document attached to a motion to dismiss if it is integral to the complaint and its authenticity is not challenged. *Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) (internal citations omitted). A "document is integral to the complaint where the complaint relies heavily upon its terms and effect." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Neither Exhibit E nor F meets these criteria.

First, Plaintiffs argue that the Court may judicially notice Exhibit E because it is "directly derived from, public court and jail records." (Doc. 101, at 2 n.1 (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Plaintiffs are incorrect. While *Philips* stands for the general axiom that courts "may properly take judicial notice of matters of public record[,]" *Philips*, 572 F.3d at 180, it does not support (or even address) Plaintiffs' position that documents created by third-parties "and provided to Plaintiffs" that

10

include information purportedly "derived from" public records are judicially noticeable. Indeed, such documents frequently are not. *See, e.g.*, *Baron v. HyreCar Inc.*, No. CV 21-6918 PA (JCX), 2022 WL 2102993, at *2 (C.D. Cal. Feb. 16, 2022) (declining to take judicial notice of charts prepared by defendants' counsel); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 n.6 (7th Cir. 1996) (holding district court could not take judicial notice of joint status report prepared by the defendant).

This is especially true where—as here—no supporting documentation is included with Exhibit E. Indeed, even the title of the final column of Exhibit E confirms that the data it contains is not exact, but rather an approximation. *See* (Doc. 101-1, p. 2). For these reasons, Sheriff McFadden disputes the information contained in Exhibit E, and this Court should not consider it. *Accord, e.g.*, *Smith v. Pinion*, No. 1:10-CV-29, 2013 WL 3895035, at *1 (M.D.N.C. July 29, 2013) ("Here, the report is not an appropriate subject for judicial notice because its contents are subject to reasonable dispute.").

Second, Exhibit F appears to be a printout of an inmate inquiry from the Sheriff's Office's public website, and Sheriff McFadden does not dispute that it may generally be judicially noticeable. However, Exhibit F does not support the proposition for which it is offered—that "[a]lthough Mr. Hunsucker was ordered released from the MCDC on March 19, 2024, he was not actually released until March 26, 2024." (Doc. 101, at 2 n.1).

While Mr. Hunsucker may have obtained a release order on $10,000 secured bond, it was only for the charge related to case number 24CR249597-590. *See* (Doc. 101-2, p. 6). Mr. Hunsucker also had active charges related to nonpayment of child support (charge

11

number 385500, case number 15CVD18966) and was subject to a Failure to Comply ("FTC") order, which is an order for arrest issued after an individual fails to comply with a court order. (*Id.* at p. 9).[4] As a result, a hold order was issued for Mr. Hunsucker, coded a "1099" as shown in Exhibit F. A "1099" requires a MCDCC resident to be held for additional processes to be served and would necessarily prevent his release. (*Id.*) Therefore, Mr. Hunsucker was not over-detained; rather, his detainment was lawfully extended based on the 1099 hold order.

## CONCLUSION

For the reasons stated herein and in his principal brief, (Doc. 96), Sheriff McFadden's Motion to Dismiss should be granted.

This, the 7th day of June, 2024.

                                             **WOMBLE BOND DICKINSON (US) LLP**

                                             */s/Sean F. Perrin*
                                             */s/Michael A. Ingersoll*
                                             Sean F. Perrin (NCSB No. 22253)
                                             Michael A. Ingersoll (NCSB 52217)
                                             301 S. College Street, Suite 3500
                                             Charlotte, North Carolina 28202
                                             Telephone No. (704) 331-4900
                                             Fax No. (704) 338-7814
                                             E-mail: Sean.Perrin@wbd-us.com
                                             E-mail: Mike.Ingersoll@wbd-us.com

                                             */s/J. George Guise*
                                             N.C. State Bar. No. 22090
                                             George.Guise@mecklenburgcountync.gov

---

[4] For an explanation of the codes appearing in Exhibit F, Sheriff McFadden refers the Court to the Mecklenburg County Sheriff's Office Inmate Inquiry FAQ, available at https://mecksheriffweb.mecklenburgcountync.gov/Inmate/FAQ (last visited June 5, 2024).

Mecklenburg County Sheriff's Office
801 East Fourth St.
Charlotte, NC 28202
Telephone: 704- 336-8100

*Attorneys for Defendant Sheriff Garry McFadden in his official capacity of Sheriff of Mecklenburg County*

## CERTIFICATION OF COMPLIANCE

1. In accordance with Local Civil Rule 7.1, this brief prepared using Times New Roman 13-point font, double-spaced, and not be less than one and one-quarter inch margins at the top of the page, with bottom, left and right margins not less than one inch.

2. In accordance with Local Civil Rule 7.3(d), counsel for Defendant certifies that this brief includes **3,004** words.

*/s/Mike Ingersoll*
Michael A. Ingersoll

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2024, I filed the foregoing document using the CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/Mike Ingersoll*