IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:23-cv-00423-WO-JLW

| | |
|---|---|
| TIMIA CHAPLIN *et al.*,<br><br>                    *Plaintiffs*,<br><br>   v.<br><br>GARY L. MCFADDEN *et al.*,<br><br>                    *Defendants*. | **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION TO DEFENDANT TYLER TECHNOLOGIES**<br><br>***Pursuant to LR 7.3(c), Plaintiffs respectfully request an immediate hearing on this motion*** |

       Pursuant to Federal Rules of Civil Procedure 34 and 37, Plaintiffs respectfully move to compel Defendant Tyler Technologies ("Tyler") to immediately begin producing electronically stored information ("ESI") responsive to Plaintiffs' First Request for Production of Documents (the "RFPs"). Despite requesting and receiving a 30-day extension to respond to the RFPs, Tyler produced no documents with its written responses to the RFPs and failed to propose any timeline for production. After initially refusing to provide a production schedule, Tyler later proposed a timeline under which no ESI would be produced until approximately February 2026—five months after Plaintiffs served the RFPs and only four months before the close of fact discovery. Such delay is plainly unreasonable. Accordingly, Plaintiffs respectfully request that this Court order Tyler to commence immediate production of ESI responsive to the RFPs.

       Pursuant to Local Rule 7.3(c), Plaintiffs respectfully request an immediate hearing on this motion. If the motion is not heard on an expedited basis, the requested relief will become moot, and Tyler will continue to refuse to produce responsive documents. Indeed, when Plaintiffs advised Tyler of their intent to file this motion, Tyler asserted that the motion would be moot before this Court could render a decision.

# FACTUAL BACKGROUND

1. **The Parties Have Nine Months to Complete Fact Discovery and Judge Webster Has Cautioned That They Should Not Anticipate Any Extensions**

On August 8, 2025, the parties filed their Joint Rule 26(f) Report, requesting that this case be assigned to the Exceptional Track pursuant to Local Rule 26.1 and requested nine months to complete discovery, running from September 1, 2025, to July 1, 2026. (ECF 123 ¶ 2(c)-(e).) The parties also agreed that that "Plaintiffs collectively may serve up to 50 requests for production on each Defendant." (*Id.* ¶ 2(f)(iii).) Finally, the parties agreed "to substantially complete written discovery and document productions on *all fact issues* no later than March 1, 2026." (*Id.* ¶ 2(f)(i) (emphasis added).)

At the initial pretrial conference, Judge Webster expressed skepticism regarding the time needed to complete discovery but nevertheless adopted the parties' proposed schedule. In the accompanying order, Judge Webster cautioned that the parties "should not anticipate extensions of the deadlines[.]" (ECF 124 at 2.)

2. **Plaintiffs Promptly Commenced Discovery While Tyler Sought a 30-Day Extension and Rejected Plaintiffs' Efforts to Confer on Search Terms**

On September 12, 2025, promptly after the commencement of fact discovery, Plaintiffs propounded upon Tyler a first set of interrogatories and RFPs with a response deadline of October 13, 2025.

On October 6, Tyler's counsel requested a 30-day extension of the response deadline—from October 13, 2025, to November 12, 2025—stating: "We're working diligently to prepare responses, but our client needs additional time to gather the necessary information." Ex. 1 (Email thread, dated Oct. 6, 2025). Plaintiffs consented to the extension. (*Id.*)

On October 16, the parties entered a proposed ESI order that required each party to "initially design and implement the methods it uses to identify, cull, and review its potentially

responsive ESI based on its knowledge and understanding of its own data," including applying search terms. (ECF 126-1 ¶ 12.) After designing and implementing search methods, the producing party must then "disclose search terms and other methodologies used to identify and cull potentially responsive ESI." (*Id.*) The receiving party may then "object to the producing Party's proposed search terms or methodologies and may request reasonable modifications" as well as "additional ESI or Documents beyond discovery from the named Custodians." (*Id.* ¶¶ 12-13.) Judge Webster entered the proposed order. (ECF 128.)

On October 22—weeks before Tyler's initial discovery responses were due—Plaintiffs contacted all Defendants to expedite the "search terms process before receiving [Defendants'] initial responses," "given the short discovery timeline." Ex. 2 (Email thread, dated Oct. 22, 2025 to Oct. 27, 2025.) Plaintiffs specifically requested involvement in the search term process "ahead of [Tyler's] initial productions" to "avoid unnecessary delays." (*Id.*)

In response, Defendant McFadden provided the search terms he was using to identify and produce documents responsive to the RFPs, and offered to meet and confer on additional search terms after his initial production as anticipated by the ESI order. (*Id.*) Tyler meanwhile stated: "We are still working with our client to identify appropriate custodians and search terms. We will follow up once we have a list of custodians and search terms together." (*Id.*)

3. **Tyler Produced No Documents with Its Written Responses and Proposed a Timeline That Gives It More Time to Produce ESI Than Plaintiffs Have to Complete Fact Discovery**

On November 12—*60 days* after Plaintiffs served the RFPs—Tyler served written responses to the RFPs. Ex. 3 (Tyler's Responses to Pls.' RFPs). Although Tyler objected to all twelve RFPs, it stated that it would produce documents responsive to five requests—RFPs 1, 4, 5, 6, and 7 ("the Undisputed RFPs"). *However, Tyler did not produce a single document responsive to those requests and failed to provide any timeline for production.*

3

By contrast, Defendant McFadden served written responses to Plaintiffs' RFPs and produced responsive emails identified using the search terms he applied—as anticipated by the ESI Order.

On November 13, one day after receiving Tyler's responses, Plaintiffs wrote to Tyler demanding an immediate meet-and-confer and requested that Tyler come prepared to "discuss the estimated number of potentially responsive documents and how that estimate was determined, as well as a production schedule." Ex. 4 (Rubert-Schewel Ltr., dated Nov. 13, 2025).

At the November 18 meet-and-confer, Tyler stated that it would not provide any documents or a production timeline—including for the five RFPs to which it had agreed to produce responsive documents—until (1) all disputes regarding *unrelated* RFPs were resolved and (2) the parties agreed on search terms for all RFPs, which Tyler asserted could only occur after those disputes were resolved. *See* Ex. 5 (Rubert-Schewel Ltr., dated Nov. 19, 2025).

In a letter following the parties' conferral, Plaintiffs advised Tyler that its position—refusing to provide search terms or produce documents until the parties reached complete agreement on all RFPs—was untenable, in violation of the Federal Rules, and would unduly delay discovery. *See id.* Plaintiffs therefore requested that Tyler immediately begin producing responsive documents or, at minimum, provide proposed search terms for the undisputed RFPs if it insisted on receiving Plaintiffs input on the search terms before production. *See id.*

On November 21, during a follow-up meet-and-confer, Tyler stated that it could not commit to producing any documents before December 19 and, even then, would only begin producing non-ESI documents. Tyler could not, however, provide an estimate of the number of non-ESI documents it intended to produce.

Tyler also stated that it could not commit to proposing search terms for ESI until December 19, 2025.[1] Even assuming Plaintiffs are able to meaningfully provide feedback at that time, the intervening holidays and the need to assess document hit counts resulting from any modifications to the proposed search terms would likely delay finalization of the search protocol until after the new year. Thereafter, it would likely take several additional weeks for technicians to collect and process the ESI, pushing completion into mid-January. Tyler would then require further time to conduct relevance and privilege reviews of the documents identified by the search terms, adding several more weeks to the schedule. Therefore, *under Tyler's proposal, it would not begin producing ESI responsive to Plaintiffs' first set of RFPs—which cover only 12 of their 50 allotted requests—until approximately February 2026, five months after Plaintiffs served the RFPs and just four months before the close of fact discovery.*

Plaintiffs would then have only four months—less time than it took Tyler to produce a single page of ESI—to: (1) review hundreds of thousands, if not millions, of documents[2]; (2) propound additional RFPs, await responses, and review the resulting productions; (3) complete all motion practice relating to document production or withholding; and (4) conduct fact depositions.

## ARGUMENT

1. **Tyler's Responses Violate the Federal Rules by Producing No Documents and Failing to Provide Any Timeline for Production**

In its responses to Plaintiffs' RFPs, Tyler stated that it would produce documents responsive to the Undisputed RFPs, notwithstanding its objections to those requests. Despite

---

[1] On November 24, Tyler sent a letter stating that it would propose search terms by December 12. *See* Ex. 6 at 2. This belated assurance does nothing to cure the unreasonable delay.

[2] During their conferral, the parties acknowledged that they anticipate Tyler's total productions in this case to be voluminous and likely exceed over a million pages.

seeking a 30-day extension and having a total of 60 days, Tyler produced no documents with its written responses and failed to provide any timeline—let alone a reasonable one—for beginning, much less completing, production on the Undisputed RFPs. This conduct squarely violates the Federal Rules and is treated as a failure to respond under Rule 34 and Rule 37.

Federal Rule of Civil Procedure 34(2)(B) provides:

> *Responding to Each Item.* For each item or category, *the response must either state that inspection and related activities will be permitted as requested* or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. *The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.*

Fed. R. Civ. P. 34(b)(2)(B) (first emphasis in original; later emphasis added). The requirements of Rule 34 are clear. A party responding to a discovery request must do one of two things: state that it will permit inspection or state that it will produce documents. If the party agrees to permit inspection or produce documents in response to any request, it must either comply by the time specified in the request or specify another reasonable time in its response.

Tyler violated this requirement of Rule 34. Tyler stated that it would produce documents responsive to the five Undisputed RFPs, but even after Plaintiffs extended the production deadline—from 30 days to 60 days—Tyler failed to produce a single page of responsive material with its written responses. Worse still, after wasting two of the nine months of the discovery period without producing any documents, Tyler did not provide any timeline—much less a reasonable one—for when it would produce responsive documents. Courts have routinely held that such responses, where a party "state[s] an intention to make some production at an unspecified date of its own choosing," "is not a complete answer as required by Rule 34(b) and, therefore, pursuant to Rule 37(a)(3) is treated as a failure to answer or respond." *See, e.g.,*

*Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 247 (M.D.N.C. 2010) (*quoting Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D. Md. 1997)).

### 2. Tyler's Post-Response Discovery Proposal Violates the ESI Order, Delays Discovery, and Prejudices Plaintiffs

During the parties' meet-and-confers regarding Tyler's deficient responses, Tyler offered two reasons for violating the Federal Rules by failing to produce documents or provide a timeline for production. First, Tyler claimed it would be more efficient to resolve all disputes concerning the RFPs to which it objected—RFPs 2, 3, 8, and 9 (the "Disputed RFPs")—before beginning any search for or production of documents responsive to the Undisputed RFPs. Second, Tyler asserted that the parties should first reach agreement on search terms for all RFPs before it began applying those terms to locate responsive documents for any request, including those currently undisputed. Not only is this post hoc reasoning conspicuously absent from Tyler's written responses, but it is also illogical, contrary to the ESI order, and demonstrates bad faith, as Plaintiffs proactively sought to avoid undue delay by reaching out to Tyler while the Requests were pending to resolve any search term issues that could impede production.

*First*, Tyler has provided no authority supporting its position that it is proper to delay searching for and producing documents responsive to Undisputed RFPs until agreement is reached on the Disputed RFPs. To the contrary, Rule 34 treats each request for production as distinct. It expressly requires a responding party to respond to and permit inspection or production of "each item" separately. Fed. R. Civ. P. 34(b)(2)(B). Indeed, at no point during the parties' initial conferrals—including the multiple sessions necessary to finalize the Joint Rule 26(f) Report (ECF 123) and the ESI Order (ECF 126, 128)—nor in response to Plaintiffs' email while the RFPs were pending to confer about search terms to prevent undue delay, did Tyler ever indicate an intention to search for and respond to discovery requests *by set* rather than *by request*.

***Second,*** Tyler's position—that the parties must reach agreement on search terms before it begins searching for and producing documents responsive to any of the RFPs—is inconsistent with both the ESI Order and common sense. The ESI Order states that the producing party "shall *initially design* and *implement* the methods it uses to identify, cull, and review its potentially responsive ESI," including creating and "apply[ing] search terms." (ECF 128 ¶ 12 (emphasis added).) That makes good sense. As the ESI Order recognizes, "the producing party" has the best "knowledge and understanding of its own data." (*Id.*) At no point before the meet-and-confer regarding Tyler's deficient responses did Tyler ever suggest that the parties should *jointly* design a search protocol before it began searching its own systems for responsive information.

Indeed, Tyler did not take this position when Plaintiffs emailed to discuss search terms while the RFPs were pending. In that email, Plaintiffs made clear that they were not in a position to design a search protocol—because they lacked access to individuals with relevant information—but expected Tyler to produce documents with its initial written responses, and simply sought involvement in the process to avoid delay. Plaintiffs stated: "Since you have access to the relevant information, it makes sense for you to take the lead in proposing both custodians and search terms. That said, we'd appreciate being involved in the process ahead of your initial productions so we can make the most of the limited time and avoid unnecessary delays." Ex. 2. Tyler did not respond by stating that it wanted the parties to jointly design a search protocol before beginning its search and production, nor did it indicate that it would not produce any documents with its written responses. Instead, Tyler simply stated that it was in the process of identifying appropriate custodians and search terms. *See id.*

Tyler's proposal is also unreasonable because Plaintiffs cannot meaningfully object to Tyler's search protocol without first reviewing at least some of the search results. As Plaintiffs

8

explained in their email to Tyler, there is currently no basis—prior to any document production—on which they can agree (or object) to search terms. Plaintiffs do not know how Tyler's custodians internally discuss issues relevant to the case or the RFPs. That is why the ESI Order contemplates that Tyler will conduct searches of its database and at least begin its production before Plaintiffs object to search terms or methodologies. It states: "Parties agree to disclose search terms and other methodologies used to identify and cull potentially responsive ESI" (ECF 128 ¶ 12), indicating that identification and culling occur *prior* to disclosure of search terms and methodologies. Thereafter, "the receiving Party shall have the right to object to the producing Party's proposed search terms or methodologies and may request reasonable modifications" (*Id*.). This two-step method makes sense as the receiving party would otherwise have little basis to object to search terms without reviewing any documents.

**Third,** although Tyler initially refused to provide any timeline for producing responsive documents or even to share initial search terms for Plaintiffs' review, at the parties' last meet-and-confer, Tyler committed to proposing search terms by December 19. Then, on the afternoon of the day this motion was filed, Tyler revised their commitment, stating they would do so by December 12. This belated concession remains unreasonable because it will still be months before a single page of ESI is produced, leaving Plaintiffs with insufficient time to complete fact discovery.

Even assuming Plaintiffs could offer meaningful feedback at that time, as explained above, *see supra* 5, the intervening holidays, the time required to finalize search terms, collect and process ESI, and review and produce documents means Tyler would likely not produce its first ESI document until nearly February—five months after Plaintiffs served the RFPs and only four months before the close of fact discovery. This would leave Plaintiffs with less time than

9

Tyler had to produce a single ESI document to review potentially millions of documents, propound and review documents responsive to additional RFPs, complete motion practice on production disputes, and conduct fact depositions. To the extent Tyler's oral proposal constitutes providing a timeline under Rule 34, it is plainly not "reasonable." Fed. R. Civ. P. 34(b)(2)(B).

## CONCLUSION

Tyler has already squandered more than two months of the nine-month discovery period and now seeks to waste even more time with its proposal, which would severely impair Plaintiffs' ability to conduct meaningful discovery during the limited time remaining. As such, this Court should order Tyler to promptly establish a search protocol and begin producing documents responsive to the Undisputed RFPs, and any other RFP that is undisputed at the time of this Court's Order.

Accordingly, Plaintiffs respectfully request that this Court order the following:

- Within seven (7) days, Tyler shall begin producing documents using search terms applied to the five custodians it identifies as most likely to possess the most pertinent information responsive to each Undisputed RFP, as well as any other RFPs that are undisputed at the time of this Court's Order.

- Within twenty-one (21) days of the initial production, Tyler shall produce substantially all responsive documents from the five selected custodians for each RFP and disclose to Plaintiffs the search methodologies and search terms employed.[3]

---

[3] Tyler continues to insist—and will likely argue—that it should have until March 1 to produce substantially all responsive ESI to the RFPs. *See* Ex. 6 at 1. This is wrong. The March 1 deadline applies to substantially completing document production on "all fact issues" (ECF 123 ¶ 2(f)(i)), not to Plaintiffs' first RFPs. The deadline for responding to Plaintiffs' first RFPs is governed by Rule 34, which requires production of documents within a reasonable time. *See* Fed. R. Civ. P. 34(b)(2)(B).

To date, Plaintiffs have served only 12 of their allotted 50 requests for production (ECF 123 ¶ 2(c)-(e)), and they fully expect to use all 50. However, Plaintiffs must first review documents responsive to their initial requests before serving additional requests. Tyler's delay therefore causes substantial prejudice to Plaintiffs.

This 25th day of November, 2025.

/s/ Abraham Rubert-Schewel
Zachary Ezor (NCSB #: 55070)
Email: zezor@tinfulton.com
Gagan Gupta (NCSB #: 53119)
Email: ggupta@tinfulton.com
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN PLLC
119 Orange Street, Floor 2
Durham, NC 27701
Telephone: (919) 307-8400

A. Dami Animashuan
Email: dami@animashuan.me
355 S. Grand Ave, Ste. 2450
Los Angeles, CA 90071
Telephone: (929) 266-3971

*Counsel for Plaintiffs on behalf of themselves and all others similarly situated*

## LR 37.1 CERTIFICATE

I certify that on the dates listed below, the parties conferred regarding the issues raised in this motion but were unable to reach an agreement.

November 18, 2025

- Plaintiffs' counsel present at conference: Abraham Rubert-Schewel and A. Dami Animashaun
- Defendant Tyler's counsel present at conference: Patrick Hill and Garret Steadman
- Defendant McFadden's counsel present at conference: Mike Ingersoll

November 21, 2025

- Plaintiffs' counsel present at conference: Abraham Rubert-Schewel and A. Dami Animashaun
- Defendant Tyler's counsel present at conference: Patrick Hill and Greg Skidmore
- Defendant McFadden's counsel present at conference: Mike Ingersoll

*/s/* Abraham Rubert-Schewel

## LR 7.3 CERTIFICATE

I certify that this motion contains 3,399 words, which is fewer than the maximum of 6,250 words permitted by Local Rule 7.3(d).

<u>*/s/* Abraham Rubert-Schewel</u>