# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:23-cv-00423-WO-JLW

TIMIA CHAPLIN *et al.*,

        *Plaintiffs*,

  v.

GARY L. MCFADDEN *et al.*,

        *Defendants*.

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL RESPONSE TO RFP 5

Pursuant to Federal Rules of Civil Procedure 34 and 37, Plaintiffs respectfully move to compel Defendant Mecklenburg Sheriff Gary L. McFadden ("McFadden") to immediately produce a report or spreadsheets containing information responsive to Plaintiffs' Request for Production No. 5, which seeks information identifying the events triggering detainee releases and the timing of those releases from the Mecklenburg County Jail (the "Jail").

Plaintiffs first requested this information on September 12, 2025, promptly after discovery commenced. Over the last six months, McFadden has offered a bevy of excuses for why he cannot or will not produce the requested information in the requested format, most notably by repeatedly claiming that the Jail lacks the capability to produce the information.

After Plaintiffs began reviewing McFadden's belated discovery production, it became apparent that his prior representations were false. It has now become abundantly clear that the Jail's software has the capability to generate the information requested in spreadsheet format and that McFadden has, for years, routinely used that capability to produce similar reports and spreadsheets in response to public records requests and in the ordinary course of jail

administration. Nevertheless, McFadden still refuses to produce that information in this litigation.

This Court should order immediate production. Each additional day of nonproduction severely prejudices Plaintiffs by reducing the already-limited time available for Plaintiffs and their experts to merge, standardize, analyze, and otherwise render the information usable for expert analysis, class certification, and dispositive motion practice.

## FACTUAL BACKGROUND

**1. Plaintiffs Promptly Commenced Discovery and Explicitly Sought a Spreadsheet Documenting Information Pertinent to Class Certification.**

On September 12, 2025, promptly after the commencement of fact discovery, Plaintiffs propounded upon McFadden a first set of interrogatories and request for production of documents ("Pls.' RFPs"), with a response deadline of October 13, 2025. *See* Ex. 1. This included RFP 5, the subject of this motion to compel, and which sought:

> *Documents or a spreadsheet sufficient to show the following for every detainee released from the Jail between October 9, 2023, and the date of the trial in this matter:*

> a. *The name of the detainee.*
> b. *The date and time the detainee was booked into the Jail.*
> c. *The release-triggering event entitling the detainee to release.*
> d. *The date and time of the release-triggering event.*
> e. *The date and time the release-triggering event was entered into any computer system to which Defendant has access.*
> f. *The date and time the detainee was released from the Jail.*

McFadden's counsel requested a 30-day extension of the response deadline—from October 13, 2025, to November 13, 2025. Plaintiffs consented to the extension. On November 13—sixty days after Plaintiffs served the RFPs—McFadden served his written responses. *See* Ex. 2 (McFadden's Responses to Pls.' RFPs). McFadden objected to RFP 5 as "overbroad" and

because the information sought was "not maintained by Defendant in the ordinary course of daily operations." *Id.* at 2.

## 2. Plaintiffs Repeatedly Sought the Information in RFP 5 and Defendant McFadden Repeatedly Claimed He Could Not Produce the Information in Spreadsheet Format.

On December 2, 2025, Plaintiffs' counsel wrote a deficiency letter to McFadden's counsel regarding deficiencies in the response to RFP 5. *See* Ex. 3 (Pls.' December 2, 2025, Deficiency Letter) at 2. On December 9, 2025, counsel met and conferred regarding RFP 5.

At this meeting, Plaintiffs' counsel explained that in numerous lawsuit in which they have requested information similar to that sought in RFP 5 from correctional facilities the information was produced without difficulty. Plaintiffs' counsel further explained that they had no doubt Sheriff McFadden could produce the requested information in spreadsheet form—as a modern jail system could not operate effectively without the capability to generate such reports—and that production in spreadsheet format would be the least burdensome method of production, particularly when compared to alternative approaches such as producing tens of thousands of individual jail records.

McFadden's counsel responded that, for the period before the Jail began using Odyssey, the requested information existed only in paper form and could not be extracted from any database or produced in spreadsheet format. *See* Ex. 4 at 1 (Pls.' December 15, 2025 Letter). As to the post-Odyssey period, McFadden's counsel stated that he would need to look into the matter and follow up. *See id.* at 2. On December 18, 2025, McFadden's counsel followed up in writing, stating that the "Sheriff's Office has no administrative permissions or access to Odyssey, and thus . . . cannot pull reports from Odyssey." Ex. 5 (McFadden December 18, 2025, Response Letter) at 4. McFadden did not mention or identify any other Jail software or database from which the requested information could be extracted or produced.

3

On January 13, 2026, Plaintiffs' counsel and McFadden's counsel again met and conferred to discuss outstanding discovery. At that meeting, Plaintiffs' counsel explained that they had independently reviewed McFadden's online Jail database—which is different from the Odyssey database—and determined that the information sought in RFP 5 was maintained in the Jail's database and could be extracted into a spreadsheet for production.

Later that day, Plaintiffs' counsel memorialized the meeting and Plaintiffs' request regarding RFP 5:

> **Odyssey and Other Databases**. You confirmed the Sheriff's Office doesn't have admin access to Odyssey and can't generate reports with the info we're seeking in RFP No. 5.
>
> We also discussed the Sheriff's separate database (https://mecksheriffweb.mecklenburgcountync.gov/Inmate) where much of this info seems to be stored. You agreed to check with Sheriff's Office personnel about that database and asked us to put our request in writing. We need the following:
>
> 1. The name of the database
> 2. What info is stored there (including categories of data, e.g. release times, bond, etc)
> 3. How long the Sheriff has used it
> 4. Whether reports can be generated from it

Ex. 6 (Pls.' January 13, 2026, Email) at 1–2.

On February 16, 2026, McFadden's counsel responded via email and requested that Plaintiffs' counsel agree that Plaintiffs' email qualifies as Plaintiffs' seventh interrogatory. Plaintiffs' counsel agreed and on February 16, 2026, McFadden's counsel provided the below response to Plaintiffs' January 13 Email:

> 1. The referenced website draws information from the Offender Management System (OMS).
>
> 2. The portal stores inmate-identifying information, including name, address, date of birth, height, weight, race, sex, alias(es), and personal identification numbers, as well as the individual inmate's housing, arrest identification number, case number(s), charge(s), case disposition, bond information,

4

> sentence(s), time committed to detention by Arrest Processing staff once presented to Arrest Processing staff for detention, and time released from detention.
>
> 3. The system was implemented in approximately 2005. The month and day are unknown.
>
> 4. For each individual inmate queried, OMS can provide an inmate inquiry summary which reflects the information identified in subpart 3.[1]

*See* Ex. 7 (McFadden's Resp. to Pl's 7th Rog).

Plaintiffs' counsel asked to meet and confer regarding McFadden's response to Interrogatory 7 and specifically sought the name of the software that hosts the Jail's OMS system and requested clarification on "whether this software can produce a spreadsheet of this information for a group of inmates." *See* Ex. 8 (Pls.' February 21, 2026, Email). On February 24, 2026, Plaintiffs' counsel and McFadden's counsel again met and conferred and Plaintiffs' counsel once again re-iterated that they were certain that OMS can produce the information sought in RFP 5 in a single spreadsheet or report.

For the first time, McFadden's counsel asserted that McFadden was not required to generate such a spreadsheet because doing so would constitute the creation of a new document. Plaintiffs explained that this position was incorrect and provided relevant authorities in a follow-up email. *See* Ex. 9 (Pls.' Feb. 24, 2026 Email). Plaintiffs' counsel also offered to participate in a call with McFadden's IT staff to explain both the nature of the information sought and the report that could be generated. *See id*.

Later that day, McFadden's counsel requested "an example of the type of report you are certain can be generated," but refused Plaintiffs' offer to communicate directly with IT staff. Ex.

---

[1] Implying that OMS purportedly lacked the capability to extract the requested information into a single report or spreadsheet for thousands of detainees, as requested.

10 (McFadden's February 24, 2026 Email) at 5. On February 27, 2026, Plaintiffs' counsel responded and again requested the name of the software provider and offered to "conduct our own research to show you how the reports can be generated. But this is also something that your IT department should be able to do." Ex. 10 (Pl's February 27, 2026 Email) at 4-5. Plaintiffs further stated that if they did not receive the requested information in a report by March 3, 2026, that they would move the Court for relief. *Id.*

During this time (February 27-March 3), Plaintiffs received five separate document productions containing hundreds of thousands of ESI documents from McFadden. While reviewing these productions, Plaintiffs continued to follow up with counsel for McFadden and requested clarity on whether the spreadsheets and information sought in RFP 5 was contained in McFadden's productions. *See* Ex. 10 (Pl's March 4 and March 11 Emails) at 3-4.

On March 13, 2026, counsel for McFadden responded and stated that he would not inquire further with McFadden's IT staff regarding OMS reports without Plaintiffs' counsel providing an example of a report sought. Ex. 10 (McFadden March 13 Email) at 3.

On March 17, 2026, after reviewing a portion of McFadden's productions, Plaintiffs' counsel discovered multiple OMS spreadsheet reports in McFadden's disclosures. Plaintiffs' counsel immediately wrote counsel for McFadden, provided the OMS reports, and re-iterated Plaintiffs' request for the information responsive to RFP in spreadsheet format.

> Attached are two reports that were provided in the Sheriff's discovery production and appear to be produced by the Sheriff's OMS system. These reports contain much, if not all, of the information we requested you produce in spreadsheet form for RFP 5.

> Moreover, there are multiple emails in your production addressed to the Mecklenburg Sheriff Management analyst (Dustin Elliott, see 80811) requesting arrest and processing records, which the Sheriff's office then provides in spreadsheet form. In two of the attached emails (80723 and 235998) *Dustin Elliott discusses using OMS to create a spreadsheet of inmate information*.

6

…

> We have now spent nearly two months going back and forth over RFP 5 and whether Defendant McFadden could produce this information in the format we requested.

> Please confer with the appropriate staff in the Sheriff's Office and let us know by Friday when you intend to produce the reports and release logs.

Ex. 10, (Pls.' March 17, 2026, Email) at 2 (emphasis added); *see also* Ex. 10 (Pls.' March 17, 2026 Email) at 1 (explaining that this matter could be quickly resolved by sending an email to the "Sheriff's Management analyst. It looks like he has been producing the OMS reports we want in response to public records requests for years.")

On March 23, 2026, McFadden's counsel responded via email and wrote that the Sheriff's Management analyst had "quit about a month ago" and that he was trying to determine who to ask to produce the responsive information. Ex. 11 (McFadden's March 23, 2026 Email). On March 25, 2026 Plaintiffs' counsel responded via email and asked McFadden's counsel to produce the spreadsheets regarding RFP 5 by Friday March 27, 2026, or provide a date certain on when they would provide the information, or Plaintiffs would move for court intervention. Ex. 12 at 2 (Pl's March 25, 2026 Email). On March 26, 2026, McFadden's counsel responded that McFadden's IT "guy" left "several weeks ago" and stated "I am having conversations later today and next week to try and address your concerns. Ill be in touch." Ex. 12 at 1 (McFadden's March 26, 2026 Email).

As of today, April 3, 2026, Plaintiffs' have yet to receive the reports responsive to RFP 5, or any information regarding when they will be provided.

**ARGUMENT**

**1. The Information Sought in RFP 5 is Plainly Relevant.**

Plaintiffs brought this class action alleging that, following the rollout of eCourts in Mecklenburg County, Sheriff McFadden overdetained several named Plaintiffs and a class of similarly situated individuals by failing to timely release them once they were legally entitled to release. Plaintiffs allege that these overdetentions occurred because McFadden failed, among other things, to implement adequate fail-safe systems to ensure timely release, even after becoming aware that defects in the new software were causing release delays. (*See, e.g.*, ECF No. 77 ¶¶ 258–279.)

The information sought in RFP No. 5—namely, data concerning the cause and timing of detainee releases before and after the rollout of eCourts—is plainly relevant to both class certification and the merits. That information will establish who is a member of the proposed class, which is defined to include individuals detained for more than two hours after they became entitled to release. (*See id.* ¶ 229.) It will also permit a comparison of release times before and after the implementation of eCourts, thereby providing critical evidence regarding the existence, scope, and systemic nature of the alleged overdetention practices and McFadden's liability for those practices.

**2. Despite His Assertions to the Contrary, Sheriff McFadden Routinely Produces OMS-Generated Spreadsheets and Is Required to Do So Here.**

As Plaintiffs have insisted for months, notwithstanding McFadden's claim to the contrary, McFadden can use the Jail's OMS system to produce the information sought in RFP 5 in spreadsheet form. And he has, for years. McFadden, in his ESI productions, disclosed multiple spreadsheets that were created using the Jail's OMS system and contain much of the information sought by Plaintiffs. *See e.g.*, Ex. 13, MCSO 114967.

8

Sheriff McFadden likewise often produces OMS spreadsheets in response to records requests *within a few days*. *See* Ex. 14, MCSO 80811 (responding with a completed OMS spreadsheet 5 days after a public records request); *see also* Ex. 15, MCSO 235998 (filling a public records request for all inmates booked at the Jail "since January 1, 2021, including their name, date booked, date released, reason for being jailed, arresting agency, case number.").

And, as Sheriff McFadden now appears to accept, he is required to produce the information sought in RFP 5 in spreadsheet format.[2] *Branch v. Gov't Emps. Ins. Co.*, 286 F. Supp. 3d 771, 778 (E.D. Va. 2017) ("Producing limited data from a larger database is more akin to reviewing a set of documents in response to a discovery request and producing only responsive documents, than it is creating a new data compilation or document for the purposes of litigation.") (citation omitted); *see also Frasier Healthcare Consulting, Inc. v. Grant Mem'l Hosp. Reg'l Healthcare Ctr.*, No. 2:12-CV-87, 2014 WL 12701042, at \*4 (N.D.W. Va. Jan. 9, 2014) ("Requiring the Production of the Data Is Not the Same as Requiring the Creation of New Data or Documents").

The Spreadsheets responsive to RFP 5 must be produced.

### 3. Plaintiffs are Prejudiced by McFadden's Dilatory and Willful Conduct.

Plaintiffs have been, and continue to be, severely prejudiced by Sheriff McFadden's failure to produce the requested spreadsheets. Over the past six months of a ten-month discovery period, McFadden has repeatedly and falsely claimed that he lacks the ability to generate this information, even though he routinely produces similar spreadsheets in the ordinary course of jail administration and in response to records request. This prolonged refusal, coupled with shifting

---

[2] Pursuant to Rule 34, Plaintiffs are permitted to "specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C).

and demonstrably false justifications, reflects a clear intent to delay Plaintiffs' ability to prosecute this action.

Plaintiffs have repeatedly explained during meet-and-confer discussions that once the data is produced, it will take months for Plaintiffs and their experts to clean, standardize, and validate the data before it can be meaningfully analyzed. Additional time will then be required to develop and test the underlying code necessary to analyze a dataset that will consist of tens of thousands of rows. McFadden's six-month delay has thus deprived Plaintiffs of a substantial portion of the time needed to complete expert analysis critical to class certification and dispositive motion practice, causing severe prejudice that can only partially be remedied by immediate production.

**CONCLUSION**

Sheriff McFadden has already squandered roughly six months of the ten-month discovery period by refusing to provide information sought by Plaintiffs in a spreadsheet format. Sheriff McFadden clearly has the capability to provide the information as sought, and in fact routinely does so, but continues to refuse to do so for Plaintiffs.

Accordingly, Plaintiffs respectfully request that this Court order the following:

- Within seven (7) days, McFadden shall produce the OMS reports sought by Plaintiffs' counsel responsive to RFP 5.

This 3rd day of April, 2026.

/s/ Abraham Rubert-Schewel
Zachary Ezor (NCSB #: 55070)
Email: zezor@tinfulton.com
Gagan Gupta (NCSB #: 53119)
Email: ggupta@tinfulton.com
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN PLLC
119 Orange Street, Floor 2
Durham, NC 27701
Telephone: (919) 307-8400

10

A. Dami Animashuan
Email: dami@animashuan.me
355 S. Grand Ave, Ste. 2450
Los Angeles, CA 90071
Telephone: (929) 266-3971

*Counsel for Plaintiffs on behalf of
themselves and all others similarly situated*

11

## LR 37.1 CERTIFICATE

I certify that on the dates listed below, the parties conferred regarding the issues raised in this motion but were unable to reach an agreement.

December 9, 2025

- Plaintiffs' counsel present at conference: Abraham Rubert-Schewel and A. Dami Animashaun
- Defendant McFadden's counsel present at conference: Mike Ingersoll

January 13, 2026

- Plaintiffs' counsel present at conference: Abraham Rubert-Schewel and A. Dami Animashaun
- Defendant McFadden's counsel present at conference: Mike Ingersoll

February 24, 2026

- Plaintiffs' counsel present at conference: Abraham Rubert-Schewel and A. Dami Animashaun
- Defendant McFadden's counsel present at conference: Mike Ingersoll

*/s/* Abraham Rubert-Schewel

12

# LR 7.3 CERTIFICATE

I certify that this motion contains 2,775 words, which is fewer than the maximum of 6,250 words permitted by Local Rule 7.3(d).

<u>*/s/* Abraham Rubert-Schewel</u>