IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:23-cv-00423-WO-JLW

| | | |
|---|---|---|
| TIMIA CHAPLIN *et al.*,<br><br>Plaintiffs,<br>v.<br><br>GARY L. MCFADDEN *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY'S MOTION TO QUASH SUBPOENA |

NOW COMES Spencer Merriweather III, by and through the undersigned counsel, and hereby submits this memorandum of law in support of his motion to quash the subpoena pursuant to Fed. R. Civ. P. 45(d).

## NATURE OF THE CASE

Plaintiffs commenced this civil suit on May 23, 2023 asserting various claims against numerous defendants. [DE-1] Plaintiffs filed their first amended complaint on October 27, 2023. [DE-30] Plaintiffs filed their second amended complaint February 28, 2024. [DE-77] On August 27, 2026, the trial court entered a text order granting Plaintiffs" motion to amend the scheduling order. [DE-151] On August 28, 2026, the trial court amended the deadline for fact discovery to October 19, 2026. On September 23, 2026, the District Attorney was served with a subpoena seeking 30(b)(6) deposition testimony on

nine (9) topics on October 8, 2026, and production of "all documents pertaining to those matter" seven (7) days before the deposition. [Ex. 1]

On Wednesday September 30, 2026, counsel for the District Attorney conferred with Plaintiffs' counsel to discuss its objections to the subpoena and narrowing the deposition topics and scope. Plaintiffs' counsel and counsel for the District Attorney have exchanged proposals to narrow the scope of the subpoena and the related requests for production; however, no agreement has been reached to date. Counsel for the District Attorney is optimistic that the parties can agree on a narrowed scope and appropriate timing for the 30(b)(6) deposition or affidavit in lieu of deposition, but files this motion in an abundance of caution to comply with the timeframes set forth in the Federal Rules of Civil Procedure.

## LEGAL STANDARD

A district court enjoys broad discretion in managing discovery. *Virginia Dep't of Corr. V. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). The scope of discovery is generally limited by Fed. R. Civ. P. 26(b)(1) in two ways: relevance to the case and proportionality "to the needs of the case." When discovery is sought from nonparties, "its scope must be limited even more." *Id.* at 189. Even if a non-party has information that falls within the ordinary scope of party discovery, they "should not be drawn into the parties' dispute without some good reason." *Id.* at 188. The party issuing and serving a subpoena "must take

reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction," if a party or attorney fails to comply. Fed. R. Civ. P. 45(d)(1).

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena" if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). "[T]he ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient," On a motion to quash subpoena, the moving party bears the burdens of proof and persuasion. *Virginia Dep't of Corr.,* 921 F.3d at 189.

In deciding whether to compel a non-party to comply with a subpoena, the court must be sensitive to the danger of undue burden on a non-party and give "non-party status special weight leading to an even more 'demanding and sensitive' inquiry than one governing discovery generally." *Id. (*quoting *Weinman v. Cable*, 427 f.33d 49, 53 (1st Cir. 2005)). Factors to consider in addition to relevance include the requester's need for the information sought, and whether the information is obtainable from another source. Furthermore, the requesting party should explain why it cannot obtain the requested

information from one of the parties to the litigation for another, more logical third-party. *Id.* When a party requests information from a non-party, that information "must likely (not just theoretically) . . . offer some value over and above what the requesting party already has, not . . . mere *de minimis* benefit." *Id.*

## ARGUMENT

### I. The subpoena and request for production is unduly burdensome and overly broad

As an initial matter, the subpoena to the District Attorney's office is unduly burdensome. It seeks 30(b)(6) testimony with fewer than thirty (30) days to prepare for the deposition, which is unreasonable particularly considering the obligations of the District Attorney's in ongoing criminal cases. Further, the District Attorney's in-house counsel at the North Carolina Administrative Office of the Court's Office of General Counsel has scheduling conflicts that prevent earlier preparation for a 30(b)(6) deposition. In the event the subpoena is not quashed, the District Attorney would ask this Court for additional time to prepare for the deposition, specifically a time the last week of October or the first week of November.

The subpoena to the District Attorney, a non-party, is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant information. It seeks information that Plaintiffs can readily obtain from

parties directly involved in this litigation. The requested materials are available from more appropriate and accessible sources, requiring a non-party to produce them is improper and imposes an undue burden.

Counsel addresses these arguments for each proposed topics below.

a. Topic 1

Topic 1 seeks:

> The manner in which dispositions, dismissal orders, release orders, bond modifications, changes to conditions of release, and other events affecting a detainee's custody status are entered, recorded, processed, or transmitted by the District Attorney in Odyssey, Portal, eCourts, or any other case-management system since October 2023, including the persons responsible for such entries; the timing and procedures governing such entries; or any policies, practices, training, or guidance relating thereto.

Pursuant to North Carolina law, the District attorneys do not have the legal authority to issue dispositions, dismissal orders, release orders, bond modifications, and changes to conditions of release, and any other order that may impact a detainee's custody status. *See e.g.*, N.C.G.S. Chapter 15A. Further, pursuant to law, the clerk of court, not the district attorney, is the custodian of court records and the district attorney does not "enter, record, or process" orders into the clerk's case-management system. *See* N.C.G.S. 7A-109 (clerk of court is the custodian of the record and keeps them in accordance with Rules of the Director of the Administrative Office of the Courts). It is

unreasonable to compel the District Attorney's Office to provide testimony on matters in which it is not involved and for which the law designates other entities as the responsible authorities.

With regard to the transmittal of case dismissals, the district attorney does file case dismissals with the court and is willing to provide testimony regarding the office's timing and procedures governing the filings and policies and practices on same. However, information on the training that the district attorney's office received or provided on the filing of case dismissals with the court since October 2023 is of little to no relevance to the issues in the federal case and would be significantly more work for the district attorney's office to prepare because it staff with the most knowledge on this issue is no longer with the office.

Further, seeking all documents that pertain to this matter is overbroad as it would include every single case dismissal that the district attorney's office has transmitted to the court since October 2023. To comply with this request would impose a significant and unjustified burden. It would require the District Attorney's Office to locate every dismissed case, determine the basis for each dismissal, and retrieve any corresponding documents—an exhaustive investigative effort that is wholly improper to demand from a non-party. This excessive document request is not reasonably related to the issues in this case.

In summary, the Court should quash this topic because there is little to no benefit to the Plaintiffs in obtaining discovery from the District Attorney's office on this Topic, while the burden to the District Attorney's office is great. *See Virginia Dep't of Corr.*, 921 F.3d at 189.

To balance the burden to the District Attorney and benefit to the Plaintiffs, the District Attorney asks this Court to narrow Topic 1 to: the manner in which the District Attorney's office files case dismissals with the court, including the persons responsible for filing, the timing and procedures governing such filings, and any policies, practices or guidance relating thereto. The District Attorney's office also asks this Court to narrow the document request to documents sufficient to show information in the requested Topic.

b. Topic 2.

Topic 2 seeks:

> The manner in which the District Attorney is notified of events occurring in Odyssey, Portal, eCourts, or any other case-management system since October 2023; the content and timing of such notifications; the methods by which notifications are transmitted; the persons or entities responsible for establishing, maintaining, or receiving such notifications; and how, when, and why the District Attorney came to receive such notifications.

The manner in which the District Attorney's office is notified of events in the clerk's Odyssey, Portal, eCourts systems is not relevant to the claims in

this case or at best would provide a *de minimis* benefit in the litigation. It has no bearing on what notifications the Sheriff's office receives or has received in the past for purposes of releasing detainees. It has no bearing on whether the systems provided by Tyler Technologies were defective in providing notifications to the Sheriff so that the Sheriff could release detainees.

Further, Plaintiffs could have obtained information related to event notification from Tyler Technologies, which provides the Odyssey, Portal, eCourts systems. Tyler would have information on the system's capability for event notification and how the system operated. Plaintiffs also can obtain information from the Sheriff's office on the manner in which it is notified of events in the Odyssey, Portal, eCourts systems.

In summary, the Court should quash this topic because there is little to no benefit to the Plaintiffs in obtaining discovery from the District Attorney's office on this topic and the parties to this case can provide any relevant event notification information to Plaintiffs. *See Virginia Dep't of Corr.*, 921 F.3d at 189. For this reason, the District Attorney asks the Court to quash this topic in its entirety.

c. Topic 3.

Topic 3 seeks:

> The policies, procedures, directives, protocols, or other

> instructions of the District Attorney from 2022 through the present day (whether written, electronic, or communicated by email or otherwise) regarding notifying the Sheriff or Jail of off-docket events affecting detainees, including but not limited to entry of dismissal orders, changes to conditions of release, including bond modifications, or any other event that may render a detainee eligible for release.

This topic is overly broad and unduly burdensome because, pursuant to North Carolina, law the District Attorney's office is not obligated to, and does not, notify the Sheriff of "off-docket … dismissal orders, [or] changes to conditions of release, including bond modifications." Plaintiffs have acknowledged to undersigned Counsel that pursuant to North Carolina law, the District Attorney's legal responsibility is to notify the jail of when it files a written dismissal of a case outside of a court session. G.S. 15A-931(a1).

The District Attorney's internal policies, procedures, directives, protocols, and instructions regarding its notification to the jail of written dismissals are not relevant to this lawsuit. The only thing that would be relevant is how the district attorney notified the jail of written dismissals. To the extent Plaintiffs seek this information, it should be obtained from the Sheriff, who is a party to this action and the entity properly responsible for producing it. Requiring the District Attorney's Office to provide information available from a party is improper and imposes an undue burden on a non-party.

This topic is also unduly burdensome and overly broad because the phrase to "any other event that may render a detainee eligible for release" is impermissibly vague. The District Attorney's Office cannot reasonably prepare to address an undefined and potentially unlimited category of events. In addition, seeking all documents that pertain to this topic is unduly burdensome for a non-party that would need to search for communications to try to identify records that might pertain to this topic.

In summary, the Court should quash this topic. Plaintiffs gain no meaningful benefit from seeking this discovery from a non-party, particularly where the Sheriff, as a party and the proper source of such information, can provide any relevant records regarding notifications of written dismissals. *See Virginia Dep't of Corr.*, 921 F.3d at 189. For this reason, the District Attorney asks the Court to quash this topic in its entirety.

d. Topic 4.

Topic 4 seeks:

> All communications, agreements, understandings, arrangements, policies, practices, procedures, or protocols, whether formal or informal, written or unwritten, that have been proposed, considered, adopted, implemented, or followed between October 2022 and the present concerning the notification of the Sheriff or Jail regarding off-docket (also referred to as off-calendar) events affecting detainees, including but not limited to the entry of dismissal orders, changes to conditions of release (including bond modifications), judicial release orders, or any other event that may

render a detainee eligible for release, between the following entities:

a. District Attorney Merriweather and the Sheriff,
b. District Attorney Merriweather and the Jail,
c. District Attorney Merriweather and Tyler Technologies,
d. District Attorney Merriweather and the Clerk or Administrative Office of the Courts, and
e. Merriweather and the Mecklenburg Public Defender's Office.

This topic is overly broad and unduly burdensome because pursuant to North Carolina, law the District Attorney's office is not obligated to, and does not, notify the Sheriff of all off-docket events affecting detainees. Plaintiffs have acknowledged to undersigned Counsel that pursuant to North Carolina law, the District Attorney's legal responsibility is to notify the jail of when it files a written dismissal of a case outside of a court session. G.S. 15A-931(a1).

The District Attorney's internal policies, procedures, directives, protocols, and instructions regarding its notification to the jail of written dismissals (or other case events if such notifications were occurring) are not relevant to this lawsuit. Nor are its communications with the Clerk, the Administrative Office of the Courts, or the Public Defender regarding notifications to the Sheriff. The only thing that would be relevant is how the District Attorney's office notifies the jail of written dismissals or other case events if such notifications occurred. To the extent Plaintiffs seek this information, including any communications,

agreements, or understandings, written or unwritten, it must be obtained from the Sheriff.

Any proposals or considerations by the District Attorney's Office are irrelevant to the claims against the Sheriff and have no probative value in this action. To the extent Plaintiffs seek information about any proposals or considerations by the Sheriff regarding notifications from the District Attorney, that information must be obtained from the Sheriff. As a party to this action and the entity properly responsible for these matters, the Sheriff, not the District Attorney's Office, is the appropriate source.

In summary, the Court should quash this topic because there is little to no benefit to the Plaintiffs in obtaining discovery from the District Attorney's office on this topic and the parties to this case can provide any relevant event notification information to Plaintiffs. *See Virginia Dep't of Corr.*, 921 F.3d at 189. For this reason, the District Attorney asks the Court to quash this topic in its entirety.

e. Topic 5

Topic 5 seeks:

> The purpose, content, scope, and operation of all Odyssey Job Processing notifications sent to the Jail or Sheriff's Office, including when and why such notifications were implemented; who proposed, approved, and implemented them; the problems they were intended to address; the manner in which they function;

> any limitations or deficiencies identified in their operation; and any alternative systems, procedures, or solutions that were considered, proposed, tested, or implemented to address the same issues.

This topic is overly broad and unduly burdensome. The District Attorney's Office does not send, generate, or control Odyssey Job Processing notifications to the Jail or the Sheriff's Office. Upon information and belief, Plaintiffs' counsel is aware that the Mecklenburg County Clerk of Superior Court's office sends these notifications, not the District Attorney's office, based on the Clerk's March 17, 2026, response and objection to Plaintiffs' subpoena to the Clerk in this case.

Further, the District Attorney's testimony regarding these notifications is not relevant to the case. Any information the District Attorney's office has regarding these emails from the Clerk to the Sheriff would be speculative, secondhand information about decisions made by others. The Sheriff, not the District Attorney, is the appropriate party to testify regarding the Odyssey Job Processing notifications it receives, including when and why they were implemented, who approved and implemented them, the problems they were intended to address, how they function, any limitations or deficiencies identified, and any alternative procedures or systems the Sheriff's Office considered.

In summary, the Court should quash this topic because there is no benefit to the Plaintiffs in obtaining discovery from the District Attorney's office on this topic and the parties to this case can provide any relevant event notification information to Plaintiffs. *See Virginia Dep't of Corr.*, 921 F.3d at 189. For this reason, the District Attorney asks the Court to quash this topic in its entirety.

f. Topic 6

Topic 6 seeks:

> Trainings received or given by the District Attorney on the use of eCourts, eWarrants, Odyssey, or other components of North Carolina's integrated, electronic case management system.

The trainings that the District Attorney's office received or gave for eCourt, eWarrants, Odyssey, or other components on case management systems are not relevant to Plaintiff's claims in this case, which are against the Sheriff and Tyler Technologies. Further, before eCourts launched in Mecklenburg the District Attorney's office received training on the new internal attorney case manager system and Portal, which are arguably part of eCourts, and also on filing with the clerk's office. To require the District Attorney's Office to reconstruct training that occurred three to four years ago would require substantial time and effort.

In summary, the Court should quash this topic because there is no benefit

to the Plaintiffs in obtaining discovery from the District Attorney's office on this topic and the parties to this case can provide any relevant information to Plaintiffs regarding training that they received on the eCourts, eWarrants, and other case management systems. *See Virginia Dep't of Corr.*, 921 F.3d at 189. For this reason, the District Attorney asks the Court to quash this topic in its entirety.

g. Topics 7 and 8

Topic 7 seeks

> Data or records kept by the District Attorney from October 2022 through the present day regarding case dismissals, changes to conditions of release, or any other event that may have rendered a detainee eligible for release.

Topic 8 seeks:

> Data or records kept by the District Attorney from October 2022 through the present day regarding individuals who were not timely released from the Jail after becoming entitled to release, including any records reflecting delayed releases, overdetentions, release-processing errors, notification failures, software failures, or similar incidents.

Topics 7 and 8 are overly broad and unduly burdensome. They would require the District Attorney's Office to conduct an extensive and exhaustive review of every criminal case file handled since October 2022 for information on (1) case dismissals, changes to conditions of release,

or any other event that may have rendered a detainee eligible for release, and (2) when defendants were released from jail including delayed releases, overdetentions, release-processing errors, notification failures, software failures, or similar incidents. The sheer volume and scope of this undertaking for a non-party are wholly unreasonable. For example, in fiscal year 2025, Mecklenburg County has 76,123 criminal district and superior court cases filed and 89,646 disposed. *See* https://www.nccourts.gov/data.

Further, the parties would have information on this topic and the Plaintiffs should seek it from the parties, and not the District Attorney's office which is not a party to this case.

Plaintiffs have subsequently agreed to narrow these topics to lists or compilations of the information sought and not seek records from individual case files. Counsel for the District Attorney has represented the District Attorney's office does not keep responsive lists or compilations of the information sought.

In summary, the Court should quash this topic because, as written, the topics are excessively burdensome to the non-party District Attorney. The parties to the case should have responsive information, and as narrowed, there is no benefit to the Plaintiffs in obtaining discovery from

the District Attorney's office on this topic because the District Attorney's office does not keep lists of compilations of this information. *See Virginia Dep't of Corr.*, 921 F.3d at 189. For this reason, the District Attorney asks the Court to quash these topics in their entirety.

h. Topic 9

Topic 9 seeks:

> The District Attorney's position, policies, practices, and procedures regarding when a person may be released from the Jail following the District Attorney's dismissal of a criminal case, including any policies, practices, procedures, criteria, or legal authorities governing such release.

This topic is overly broad and unduly burdensome. It also improperly seeks a legal conclusion, as it asks the District Attorney's Office to interpret or apply the law regarding when a person may be released from the Jail following dismissal of a criminal case.

Compelling the District Attorney to offer legal-opinion testimony would improperly force a non-party prosecutor into the role of a legal expert, which Rule 45(d)(3)(B)(ii) expressly protects against and which is a determination reserved for the Court. Likewise, the District Attorney's policies, practices, or procedures regarding release following a dismissal are not relevant except to the extent they were conveyed to the Sheriff. However, that information may be obtained from the Sheriff, who is a party to this case.

In summary, the Court should quash this topic because, as written, the topics are not relevant and would compel the District Attorney to act as an unpaid expert witness, and any relevant information would be available from the parties to the case. *See Virginia Dep't of Corr.*, 921 F.3d at 189. For this reason, the District Attorney asks the Court to quash these topics in their entirety.

Overall, Plaintiffs cannot justify the burden of this extensive request to a non-party. If there is a need for the documents in question, Plaintiffs have the opportunity to obtain them from parties to the litigation. Any information requested from the District Attorney would be of *de minimis* benefit in the pending litigation. The subpoena and the request for production are overly broad and unduly burdensome and must be quashed.

WHEREFORE, District Attorney Merriweather respectfully asks this court to QUASH Plaintiff's Subpoena in its entirety; and for such other and further relief as the court deems just and proper.

Respectfully submitted, this the 7th day of October, 2026.

**JEFF JACKSON**
**Attorney General**

/s/ Dorian Woolaston
Dorian Woolaston
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602

Telephone: (919) 716-6816
Facsimile: (919) 716-6755
dwoolaston@ncdoj.gov
State Bar No. 54228
*Attorney for Merriweather*

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief, including the body of the brief, headings and footnotes, but excluding the caption, signature lines, certificates of service, and any cover page or index not included, contains 3,780 words. Counsel relies upon the word count feature of Microsoft Word in making this certification. See LR 7.3(d)(1).

/s/Dorian Woolaston
Special Deputy Attorney General

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this day electronically filed the **MEMORANDUM OF LAW IN SUPPORT OF MERRIWEATHER'S MOTION TO QUASH** using the CM/ECF system, which will send notification of such filing to all the counsel of record for the parties who participate in the CM/ECF system and addressed to the following individuals:

Abe Schewel
Tin Fulton Walker & Owen PLLC
119 Orange Street

Durham, NC 27701

schewel@tinfulton.com

Attorney for Plaintiffs

This the 7th day of October, 2026.

/s/ Dorian Woolaston
Dorian Woolaston
Special Deputy Attorney General
N.C. Department of Justice